UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FEDERAL HOME LOAN BANK OF ATLANTA, | |
| Plaintiff, | |
| v. | Case No.: 1:11-cv-00489-TWT |
| COUNTRYWIDE FINANCIAL CORPORATION, ET AL., | |
| Defendants. | **DEFENDANTS' JOINT BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND** |

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

ARGUMENT AND CITATION OF AUTHORITIES ............................................ 2

I.      THE COURT HAS FEDERAL QUESTION JURISDICTION ..................... 2

II.     FHLBA'S FEDERAL CHARTER CONFERS FEDERAL SUBJECT MATTER JURISDICTION ........................................................... 6

III.    THIS COURT HAS DIVERSITY JURISDICTION .................................. 12

IV.     "RELATED TO" BANKRUPTCY REMOVAL WAS PROPER ............... 17

        A.      This Court Has "Related To" Jurisdiction ........................... 17

        B.      Equitable Remand Should Be Denied ................................. 21

        C.      There is No Basis for Mandatory Abstention .................... 25

V.      THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR ATTORNEYS FEES ................................................................... 26

CONCLUSION ........................................................................... 30

# TABLE OF AUTHORITIES

## CASES

*55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*,
  885 F. Supp. 410 (E.D.N.Y. 1994) ................................................................11

*Adventure Outdoors, Inc. v. Wallace and Wallace, Inc.*,
  552 F.3d 1290 (11th Cir. 2008) .....................................................................3

*In re Aegis Mortg. Corp.*,
  No. 07-bk-11119 (Bankr. D. Del. Oct. 20, 2010)................................. 19, A-1

*Allen v. Wilford & Geske*, No. 10-4747 (JRT/JSM),
  2010 WL 4983487 (D. Minn. Dec. 2, 2010) ..................................................11

*In re Alliance Bancorp*, Case No. 07-10942
  (Bankr. D. Del. Sept. 16, 2008) .........................................................A-1, A-2

*In re Am. Home Mortg. Holdings, Inc.*, No. 07-bk-11047 (Bankr. D. Del.
  Feb. 23, 2009) ............................................................... 19, A-2, A-3

*Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247 (1992)......................................... *passim*

*Appatek Indus., Inc. v. Biolab, Inc.*, No. 09-CV-00645,
  2010 WL 731366 (M.D.N.C. Feb. 25, 2010) ................................................24

*Ayres v. Gen. Motors Corp.*, 234 F.3d 514 (11th Cir. 2000)............................3, 4, 6

*Bankers Trust Co. v. Texas & Pacific Ry. Co.*, 241 U.S. 295 (1916)..........12, 13, 14

*Bartels v. Ala. Commercial Coll., Inc.*, 54 F.3d 702 (11th Cir. 1995) ............7, 8, 11

*In re Briarpatch Film Corp.*, 281 B.R. 820 (Bankr. S.D.N.Y. 2002)......................24

*Broder v. Cablevision Systems Corp.*, 418 F.3d 187 (2d Cir. 2005) ....................5, 6

*C.C. Port, Ltd*, 891 F. Supp. 371 (S.D. Tex. 1994) .................................................11

*C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288 (5th Cir. 1995).................10

*Charles Schwab Corp. v. Banc of Am. Sec. LLC*, No. 10-CV-03489-LHK,
   2011 WL 864978 (N.D. Cal. Mar. 11, 2011) ................................................18

*City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*,
   572 F. Supp. 2d 314 (E.D.N.Y. 2008) ....................................................18, 19

*Connelly v. Fed. Nat'l Mortg. Ass'n*, 251 F. Supp. 2d 1071 (D. Conn. 2003) ........11

*In re EZ Pay Servs., Inc. v. Alternative Debt Portfolios, LLC*,
   390 B.R. 421 (Bankr. M.D. Fla. 2007) .........................................................25

*Ewing v. Fed. Home Loan Bank of Des Moines*,
   645 F. Supp. 2d 707 (S.D. Iowa 2009) ........................................................12

*In re Fannie Mae 2008 Sec. Litig.*, No. 09 Civ. 1352 (PAC),
   2009 WL 4067266 (S.D.N.Y. Nov. 24, 2009) ..............................................11

*Fed. Home Loan Bank of Chicago v. Banc of Am. Sec. LLC*,
   No. 10 Civ. 09105 (C.D. Cal. Mar. 15, 2011) ...................................... *passim*

*Fed. Home Loan Bank of Pittsburgh v. SMWNPF*, No. 94-1565 (W.D. Pa.
   Sept. 14, 1994) ..............................................................................................17

*Fed. Home Loan Bank of S.F. v. Deutsche Bank Sec., Inc.*, No. 10-3039 SC,
   2010 WL 6394742 (N.D. Cal. Dec. 20, 2010) ..............................................18

*Fed. Home Loan Bank of Seattle v. Deutsche Bank Sec., Inc.*, No. C10-0140,
   2010 WL 3512503 (W.D. Wash. Sept. 1, 2010) ...........................................18

*Fed. Home Loan Bank of Seattle v. Deutsche Bank Secs., Inc.*,
   736 F. Supp. 2d 1283 (W.D. Wash. 2010) ...................................................27

*Fed. Home Loan Bank of Topeka v. Nationsbank, N.A.*, No. CV-97-1510R
   (W.D. Okla. Sept. 16, 1997) ........................................................................17

*In re Finley*, 62 B.R. 361 (Bankr. N.D. Ga. 1986) ...........................................22

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
   545 U.S. 308 (2005)....................................................................................2, 3

*Griffin v. Fed. Nat'l Mortg. Ass'n*, No. 10-CV-306-TJW-CE,
2010 WL 5535618 (E.D. Tex. Dec. 9, 2010) ...................................................11

*Grun v. Countrywide Home Loans, Inc.*, No. Civ. A. SA-03-CA-0141-XR,
2004 WL 1509088 (W.D. Tex. July 1, 2004)...................................................11

*Hampton-Stein v. Erwin I. Katz, Ltd.*, No. 09-80798-CIV-
COHN/SELTZER, 2009 U.S. Dist. LEXIS 130425 (S.D. Fla. July 5,
2009) ....................................................................................................................19

*Harry v. Marchant*, 291 F.3d 767 (11th Cir. 2002) .....................................................9

*Iceland Seafood Corp. v. Nat'l Consumer Coop. Bank*,
285 F. Supp. 2d 719 (E.D. Va. 2003) .......................................................13, 16

*Indus. Indem., Inc. v. Landrieu*, 615 F.2d 644 (5th Cir. 1980)................................10

*JP Morgan Chase Bank v. Traffic Stream (BVI)*, 536 U.S. 88 (2002) ....................16

*Jimenez v. Gregorio*, No. 03-CV-1638 (N.D. Ga. filed Aug. 12, 2003) ...................6

*Lawrence v. Goldberg*, 573 F.3d 1265 (11th Cir. 2009) ..........................................19

*In re Lemco Gypsum, Inc.*, 910 F.2d 784 (11th Cir. 1990).......................................19

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ..........................................................................18

*Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603 (11th Cir. 1995)...........................15

*Martin vs. Franklin Capital Corp.*, 546 U.S. 132 (2005) ...................................27, 28

*Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*,
399 B.R. 119 (E.D.N.Y. 2009) ........................................................................19

*McGovern v. CBT Direct, LLC*, No. 07-CV-1245,
2007 U.S. Dist. LEXIS 83849 (M.D. Fla. Nov. 13, 2007).............................5

*New Jersey v. Fuld*, No. 09-CV-1629,
2009 U.S. Dist. LEXIS 54481 (D.N.J. June 24, 2009)..................................18

*O'Connor Enter. Group, Inc. v. Spindustry Interactive Inc.*, No. 09-CV-
    01483 (S.D. Tex. May 18, 2009) ............................................................12, 17

*Peoples Mortg. Co. v. Fed. Nat'l Mortg. Ass'n*,
    856 F. Supp. 910 (E.D. Pa. 1994) ................................................................11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust ex rel. Fed. Nat'l.
    Mortg. Ass'n v. Raines*, 534 F.3d 779  (D.C. Cir. 2008) ....................... *passim*

*Rodriguez v. Fed. Nat'l Mortg. Ass'n*, 268 F. Supp. 2d 87 (D. Mass. 2003) ..........11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, No. 10-CV-07275
    MRP (MANx), 2010 WL 5559973 (C.D. Cal. Dec. 29, 2010) ............. *passim*

*In re Toledo*, 170 F.3d 1340 (11th Cir. 1999) ...........................................................19

*Wachovia Bank  v. Schmidt*, 546 U.S. 303 (2006) ....................................................14

*Williams v. United States*, 458 U.S. 279 (1982) ........................................................3

*Zahn Assocs. v. Leeds Bldg. Prods. (In re Leeds Bldg. Prods.)*,
    160 B.R. 689 (Bankr. N.D. Ga. 1993) ..........................................................20

## **STATUTES**

12 U.S.C. § 1423 ........................................................................................................14

12 U.S.C. §§ 1431 ........................................................................................................6

12 U.S.C. § 1432(a) ...........................................................................................*Passim*

12 U.S.C. § 1723a(a) .................................................................................................10

15 U.S.C. § 77v(a) .....................................................................................................23

18 U.S.C. § 1014 ..........................................................................................................3

28 U.S.C. § 1331 ..........................................................................................................1

28 U.S.C. § 1332 ....................................................................................................1, 17

28 U.S.C. § 1334(b) ...............................................................................................1, 25

28 U.S.C. § 1334(c)(2)................................................................25, 26

28 U.S.C. § 1348................................................................................14

12 U.S.C. § 1432(a) ...........................................................................1

28 U.S.C. § 1441...........................................................................2, 27

28 U.S.C. § 1441(a) .........................................................................12

28 U.S.C. § 1447(c) ....................................................................26, 28

28 U.S.C. § 1452(b) .........................................................................21

Fed. R. Civ. P. 12(b)(6)....................................................................10

## **MISCELLANEOUS**

Stephen N. Zach, *Solve the crisis in state courts*, The Atlanta Journal
    Constitution, Feb. 8, 2011, www.ajc.com/opinion/solve-the-crisis-in-
    831821.html ................................................................................26

*Annual Report: Georgia Courts 12 (2010)*, http://Georgiacourts.gov/files/
    FY%2010%20AR_web.pdf ..........................................................26

Paulo Prado & Corey Dade, *Cases Pile Up in Georgia Courts: Budget
    Squeeze Forces Cuts in Spending for Judiciary, Creating Months-
    Long Delays*, Wall St. J., Sept. 8, 2009 .......................................26

In this case, a *federally* chartered and regulated bank, which shares a common overseeing *federal* regulator (the FHFA) with all *Federal* Home Loan Banks, has asserted fraud and RICO claims predicated on the *federal* banking laws in connection with *federally* registered securities offerings by a group of *federally* regulated financial institutions.  Plaintiff itself contends in its complaint that the mission of the Federal Home Loan Banks is to effectuate the *federal* policy of extending access to home ownership, and that its purchases of the securities at issue in this case where made in furtherance of that mission.  (Compl. ¶¶ 1, 3, 28-31.)  Notwithstanding these overwhelmingly federal interests, the Federal Home Loan Bank of Atlanta ("Plaintiff" or "FHLBA"), which emphatically denies being a citizen of Georgia or any state, filed this action in Georgia *state* court and now seeks remand back to that court.

There are four independent and valid grounds for federal jurisdiction over this action: (1) Plaintiff's allegations raise federal questions, 28 U.S.C. § 1331; (2) Plaintiff is a federally-chartered corporation authorized by Congress to "sue and be sued, to complain and to defend, in any court of competent jurisdiction, State or Federal," 12 U.S.C. § 1432(a); (3) complete diversity exists among the parties and the amount in controversy exceeds $75,000, 28 U.S.C. § 1332; and (4) this action is "related to" ongoing bankruptcy proceedings, 28 U.S.C. § 1334(b).  Although

Plaintiff denies that any of these grounds supports removal, other Federal Home Loan Banks themselves have relied on at least two of these grounds as basis for federal jurisdiction when they preferred to be in federal court.

Defendants candidly acknowledged in their removal petition that some of their arguments against remand have been rejected in non-controlling district court decisions from other circuits. Defendants respectfully submit that those decisions were in error. In any event, though, those cases arose in other circuits; Eleventh Circuit precedent militates in favor of a different result. Moreover, this case differs significantly from those cases (several of which turned on discretionary equitable remand determinations) because it includes RICO claims predicated, in substantial part, on complex (and perhaps unprecedented) questions of federal law.

The Court should deny Plaintiff's motion.

## ARGUMENT AND CITATION OF AUTHORITIES

## I.     THE COURT HAS FEDERAL QUESTION JURISDICTION

This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1441 because the complaint raises multiple federal-law issues that are "disputed and substantial." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005). As discussed above, federal interests are Plaintiff's reason for being and the alleged reason it made the residential mortgage-backed securities

2

("RMBS") purchases at the heart of this case.  (Compl. ¶¶ 1, 3, 28-31.)

Accordingly, there can be no debate that this case implicates issues of substantial

federal interest.  *See Grable & Sons*, 545 U.S. at 315.[1]

Plaintiff relies on two separate alleged federal crimes as predicates for its

RICO claims, including federal bank fraud and false statements to a Federal Home

Loan Bank.  Substantial federal issues will therefore need to be decided in this

case.  *See Ayres v. Gen. Motors Corp.*, 234 F.3d 514 (11th Cir. 2000) (declining to

remand Georgia RICO claim predicated on violations of federal criminal law); *see

also Adventure Outdoors, Inc. v. Wallace and Wallace, Inc.*, 552 F.3d 1290, 1302

(11th Cir. 2008) (noting that *Ayres* was not "inconsistent" with *Grable* and

subsequent cases).  Furthermore, the complexity and implications of these federal

issues weigh especially against remand.

For example, the "false statements to a Federal Home Loan Bank" predicate

(18 U.S.C. § 1014) is based on a statute the U.S. Supreme Court has described as

"not unambiguous in its terms."  *Williams v. United States*, 458 U.S. 279, 290

(1982).  If this action is remanded, the state court will be (to Defendants'

---

[1]   For example, FHLBA's status as a Federal Home Loan Bank, including its ownership by other banks, its federal mandate, and its consequent knowledge of the mortgage and housing markets, is likely to bear substantially on its ability to prove (as is required) that it reasonably relied on the alleged misrepresentations and omissions that form the basis of its claims.

knowledge) the first to interpret § 1014 in the context of an RMBS purchaser action (and indeed the first to apply it to statements made in offering documents issued in connection with a federally regulated public securities offering).   Issues related to the scope of the federal criminal law – particularly where unprecedented – should be resolved in a federal forum.  *Ayres*, 234 F.3d at 518.

Plaintiff cannot distinguish the decision in *Ayres*.  In *Ayres*, the Eleventh Circuit held that it had federal question jurisdiction over a complaint asserting claims under the Georgia RICO statute that were, as here, predicated on violations of the federal criminal law.  *Id*.  The court did not base its holding (that the federal issue was sufficiently significant to invoke federal jurisdiction) on whether the Plaintiff's claims turned "entirely" on issues of federal law, as Plaintiff argues. (Pl. Br. 14.)  Rather, it was the presence of federal issues that were of "considerable magnitude and substantial federal interest" and that needed to be resolved to decide the Plaintiff's claim that provided a basis for federal jurisdiction.  *Ayres*, 234 F.3d at 518.  Moreover, given the multiple federal issues present here – including those related to the novel interpretation of ambiguous federal criminal statutes – this case is just like *Ayres* and not like the more routine RICO cases predicated on alleged violations of the more easily interpreted federal mail and wire fraud statutes that are cited by Plaintiff.  (Pl. Br. 16 n.57.)

4

Plaintiff's argument that resolution of federal issues is "unnecessary" or that the federal issues are not "exceptional" because Plaintiff can succeed on its RICO claim without having to prove that any Defendant violated a federal law (Pl. Br. 15-17) conflates Plaintiff's causes of actions with its underlying claims. As a Florida district court observed, "a cause of action, as described by a plaintiff, does not necessarily comprise a 'claim' for the purposes of evaluating federal jurisdiction." *McGovern v. CBT Direct, LLC*, No. 07-CV-1245, 2007 U.S. Dist. LEXIS 83849, at *5 (M.D. Fla. Nov. 13, 2007). Instead, the "'question is whether at least one federal aspect of [the] complaint is a logically separate claim, rather than merely a separate theory that is part of the same claim as a state-law theory.'" *Id*. (quoting *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005)).

Although it is true that the complaint alleges violations of state law as predicate acts of the Georgia RICO claim, it also alleges predicate acts based on violations of federal law. Accordingly, the complaint's Georgia RICO cause of action should be viewed as a series of claims based on a variety of permutations of predicate acts, including those that involve federal law. *Id*. Because Plaintiff has not abandoned its RICO claims based on federal law, as had the plaintiff in one of

the cases Plaintiff cites[2], a court must, at some point, decide whether those federal

statutes were violated. *Broder*, 418 F.3d at 195. Because of the overlapping

federal interests and significant, disputed questions of law regarding the scope of

important federal statutes, "federal question" jurisdiction has been properly

invoked and this case should not be remanded. *Ayres*, 234 F.3d at 518.

## II.  FHLBA'S FEDERAL CHARTER CONFERS FEDERAL SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction based on Plaintiff's federal charter,

12 U.S.C. §§ 1431, *et seq.*, which is part of the Federal Home Loan Bank Act of

1932. This charter authorizes Plaintiff to "sue and be sued, to complain and to

defend, in any court of competent jurisdiction, State or Federal." 12 U.S.C. §

1432(a); *See Am. Nat'l Red Cross v. S.G.*, 505 U.S. 247, 252-57 (1992) (holding

that charter language "authorizing organization to sue or be sued in federal courts"

was sufficient to confer federal jurisdiction).

Plaintiff's argument that its charter is not an independent source of subject

matter jurisdiction because it includes the language "court of competent

jurisdiction" (Pl. Br. 10) fails for at least three reasons.

*First*, in *Red Cross*, the Supreme Court explained that federal charters like

---

[2]  *See Jimenez v. Gregorio*, No. 03-CV-1638, Slip Op. at 7 (N.D. Ga. filed Aug. 12, 2003).

Plaintiff's that reference federal courts expressly confer federal jurisdiction.  505 U.S. at 252-57.  In reaching this conclusion, the Supreme Court reviewed over two centuries of cases and held that the "basic rule" is clear: a congressional charter is "necessary and sufficient to confer [federal] jurisdiction" if it includes specific reference to federal courts in its "sue and be sued" provision.  *Id.* at 252-57.  The Court made "clear" that a "sue and be sued" provision "should be read to confer jurisdiction" where it "expressly authoriz[es] the organization to sue and be sued in federal courts." *Id.* at 257.

The Eleventh Circuit has held that *Red Cross* "drew a distinction between 'sue and be sued' clauses that specifically referenced the federal courts and those that do not."  *Bartels v. Ala. Commercial Coll., Inc.*, 54 F.3d 702, 707 (11th Cir. 1995).  Finding that the "sue and be sued" provision of the Higher Education Act of 1965 "'specifically mentions the federal courts,'" the Eleventh Circuit held that the "sue and be sued" provision "constitutes a separate and independent jurisdictional grant."  *Id.* (quoting *Red Cross*, 505 U.S. at 255).

Here, Plaintiff's charter expressly authorizes it to sue and be sued "in federal court."  This serves as an independent source of federal subject matter jurisdiction.  *See* 12 U.S.C. § 1432(a).  If Congress had intended otherwise, it would have, as the Supreme Court suggested in *Red Cross*, 505 U.S. at 257, excluded any reference to

federal courts in Plaintiff's charter.  Moreover, if Congress had intended to require litigants to look outside the "sue and be sued" provision for jurisdictional authority, as Plaintiff contends, Congress would have struck the provision's explicit reference to federal courts during one of the six times that it revised or amended 12 U.S.C. § 1432(a), including the two amendments since *Red Cross*.  Plaintiff's arguments are not novel; in fact, the Supreme Court rejected them in *Red Cross*.  *See Red Cross*, 505 U.S. at 265-275 (Scalia, J., dissenting); *see also Bartels*, 54 F.3d at 708-709 (discussing Justice Scalia's dissent in *Red Cross*).

*Second*, in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust ex rel. Federal National Mortgage Ass'n v. Raines* – the only federal court of appeals decision that has addressed the jurisdictional implications of a charter substantially identical to Plaintiff's charter – the D.C. Circuit rejected Plaintiff's arguments. 534 F.3d 779, 784-88 (D.C. Cir. 2008).  Applying the basic rule reiterated by the Supreme Court in *Red Cross*, the D.C. Circuit held in *Pirelli* that a substantively identical charter to Plaintiff's charter (including the same "of competent jurisdiction" language), conferred federal subject matter jurisdiction because it "expressly refers to the federal courts."  *Pirelli*, 534 F.3d at 784.  The *Pirelli* court reasoned that Congress would not include the exact language required to grant federal jurisdiction in a charter, and then "attempt[] a bank shot by adding the

8

words 'of competent jurisdiction'" to negate that grant.  *Id.* at 786.  Plaintiff's

reading of the phrase "State or Federal" to confer no independent subject matter

jurisdiction renders these words meaningless because the charter would have the

same meaning without them).  *See id.*  In contrast, Defendants' reading of the

charter gives meaning to all of its terms and therefore is the correct one.  *See Harry*

*v. Marchant*, 291 F.3d 767, 771 (11th Cir. 2002) (it "'is an elementary principle of

statutory construction that, in construing a statute, we must give meaning to all the

words in the statute'" (citation omitted)).

Plaintiff incorrectly contends that applying the *Red Cross* holding to the

FHLB charter would deprive the charter's "competent jurisdiction" language of all

meaning.  This argument fails, as an initial matter, because the Supreme Court was

"well aware of the opinion's significance for statutes that included the 'of

competent jurisdiction' language."  *Pirelli*, 534 F.3d at 785 n.3.  Indeed,

"[c]onsistent with a position previously advanced by the Solicitor General, the Red

Cross identified those 'of competent jurisdiction' statutes to the Court and argued

that the 'of competent jurisdiction' language did not detract from the jurisdictional

force of a sue-and-be-sued clause that referred to federal courts."  *Id.*; *see* Brief of

Petitioner American National Red Cross at 32 n.4, *Red Cross*, 505 U.S. 247 (1992)

(No. 91-594) (pointing the court to the FHLB chartering statute) (Ex. 1 at 21).

Moreover, as explained in *Pirelli*, the words "of competent jurisdiction" in the FHLB charter are not meaningless.  Instead, they clarify that: (1) "litigants in state courts of limited jurisdiction must satisfy the appropriate jurisdictional requirements"; (2) "litigants, whether in federal or state court, must establish that court's personal jurisdiction over the parties"; and (3) "litigants relying on the 'sue-and-be-sued' provision can sue in federal district courts but not necessarily in all federal courts."  *Pirelli*, 534 F.3d at 785.

Plaintiff argues that the Court should disregard *Pirelli* and instead follow *Industrial Indemnity, Inc. v. Landrieu*, 615 F.2d 644, 647 (5th Cir. 1980).  But this argument ignores that *Industrial Indemnity* was decided before the Supreme Court decided *Red Cross*, which reaffirmed the long-standing "basic rule" that reference to the federal courts in a "sue and be sued" statute is a grant of federal subject matter jurisdiction.  *Red Cross* 505 U.S. at 252-57.  Indeed, the Fifth Circuit follows *Red Cross* and has affirmed the exercise of federal subject matter jurisdiction based on the substantively identical Fannie Mae charter.  *See C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995) (affirming dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of a claim removed to the Southern District of Texas on the basis of 12 U.S.C. § 1723a(a) – the "sue and be sued" provision of the Federal National Mortgage Association).  Thus, to the extent that

any confusion existed before *Red Cross*, the decision clarified that federal subject matter jurisdiction exists based on a "sue or be sued" provision that references federal courts and the federal circuit decisions have followed that rule.

Following the reasoning of *Red Cross* and *Pirelli*, numerous district courts have held that "sue and be sued" clauses with express references to federal courts confer federal subject matter jurisdiction – even when these charters include the phrase "of competent jurisdiction."[3] Neither Plaintiff nor the recent district court decisions to which it refers offers any persuasive reason to depart from the *Pirelli* analysis, and the Eleventh Circuit's decision in *Bartels* suggests this circuit clearly recognizes the independent jurisdictional basis created by "sue or be sued" clauses.

*Third*, another Federal Home Loan Bank has successfully removed two cases to federal court based on the Federal Home Loan Bank charter, and relied on

---

[3]   *See, e.g.*, *Griffin v. Fed. Nat'l Mortg. Ass'n*, No. 10-CV-306-TJW-CE, 2010 WL 5535618, at *2 (E.D. Tex. Dec. 9, 2010); *Allen v. Wilford & Geske*, No. 10-4747 (JRT/JSM), 2010 WL 4983487, at *2 (D. Minn. Dec. 2, 2010); *In re Fannie Mae 2008 Sec. Litig.*, No. 09 Civ. 1352 (PAC), 2009 WL 4067266, at *3 (S.D.N.Y. Nov. 24, 2009); *Grun v. Countrywide Home Loans, Inc.*, No. Civ. A. SA-03-CA-0141-XR, 2004 WL 1509088, at *2 (W.D. Tex. July 1, 2004); *Connelly v. Fed. Nat'l Mortg. Ass'n*, 251 F. Supp. 2d 1071, 1072-73 (D. Conn. 2003) (addressing Fannie Mae's charter); *C.C. Port, Ltd*, 891 F. Supp. at 372, *aff'd*, 61 F.3d 288 (5th Cir. 1995); *Peoples Mortg. Co. v. Fed. Nat'l Mortg. Ass'n*, 856 F. Supp. 910, 917 (E.D. Pa. 1994); *Rodriguez v. Fed. Nat'l Mortg. Ass'n*, 268 F. Supp. 2d 87, 89-90 (D. Mass. 2003) (concluding the same in *dicta*); *55 Motor Ave. Co. v. Liberty Indus. Finishing Corp.*, 885 F. Supp. 410, 415, 419 (E.D.N.Y. 1994) (addressing "sue or be sued" provision in the Reconstruction Finance Corporation Act).

*Red Cross* and *Pirelli* in support of its argument that the charter confers removal jurisdiction.  *See* Notice of Removal in *O'Connor Enter. Group v. Spindustry Sys. Inc.*, Civ. No. 4:09-CV-01483 (S.D. Tex. May 18, 2009) (*See* Ex. 2 at 1-2); *see also Ewing v. Fed. Home Loan Bank of Des Moines*, 645 F. Supp. 2d 707, 711 (S.D. Iowa 2009).  Federal Home Loan Banks, which share a common charter, should not be entitled to invoke that charter as a basis for removal when they wish to be in federal court and deny that the charter confers federal jurisdiction when they wish to be in state court.

## III.   THIS COURT HAS DIVERSITY JURISDICTION

This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1441(a).  The parties agree that the amount in controversy exceeds $75,000 and that no Defendant is a citizen of Georgia.  Plaintiff contends, however, that FHLBA is not a citizen of any state under the Supreme Court's decision in *Bankers Trust Co. v. Texas & Pacific Ry. Co.*, 241 U.S. 295, 309-10 (1916).  Plaintiff is mistaken.  It is a citizen of Georgia under two well-recognized exceptions to the rule articulated in *Bankers Trust*.

Plaintiff is a citizen of Georgia under the first exception to the *Bankers Trust* rule because the Federal Home Loan Bank Act and FHLBA's certificate of organization incorporated FHLBA as a "body corporate" of Georgia.  241 U.S. at

309-10.  The Federal Home Loan Bank Act expressly requires that each Federal Home Loan Bank file "an organization certificate."  12 U.S.C. § 1432(a).  Here, FHLBA filed such a certificate, specifying that it will be established in the State of Georgia and that the location of its principal office will be in Georgia.  Further, the Federal Home Loan Bank Act provides that "[u]pon the making and filing of such organization certificate . . . , such bank shall become, as of the date of the execution of its organization certificate, a body corporate."  12 U.S.C. § 1432(a).  Thus, upon filing its organization certificate, FHLBA was made a "body corporate" of the State of Georgia.  Therefore, it is a citizen of the State of Georgia for purposes of diversity jurisdiction.  *Bankers Trust*, 241 U.S. at 309-10.

Without citing any authority, Plaintiff asserts that the "body corporate" exception does not apply here because the Federal Home Loan Bank Act does not specifically mention Georgia.  But as the court in *Iceland Seafood Corp. v. National Consumer Cooperative Bank*, explained, "a federally chartered corporation, even with wide spread actual and authorized activities, may have state citizenship for diversity purposes" where "the chartering statutes [1] expressly provide for citizenship in a particular state, *or* [2] incorporate the entity as a 'body corporate' of a particular state."  285 F. Supp. 2d 719, 723 (E.D. Va. 2003) (emphasis added) (citations omitted).  Here, Congress, through its designee, the

FHFA, effectively directed that Plaintiff be incorporated as a "body corporate" of Georgia.  *See* 12 U.S.C. § 1423 (designating the FHFA authority to divide the United States into up to twelve "Federal Home Loan Bank districts" and to "establish, in each district, a Federal Home Loan Bank at such city as may be designated by the [FHFA, whose] title shall include the name of the city at which it is established").

Moreover, the position advanced by FHLBA (that it should be treated as a citizen of no particular state) would be inconsistent with the Supreme Court's decision in *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).  In holding that a national bank is a citizen solely of the state identified as its main office in its articles of association for diversity jurisdiction purposes under 28 U.S.C. § 1348, the Supreme Court recognized that if "a national bank is additionally a citizen of every State in which it has established a branch, the access of a federally chartered bank to a federal forum would be drastically curtailed in comparison to the access afforded state banks and other state-incorporated entities."  *Wachovia Bank*, 546 U.S. at 307.  The same logic applies here.

Plaintiff also is a citizen of Georgia for diversity jurisdiction purposes under the second exception to *Bankers Trust* because its activities are localized in Georgia.  241 U.S. at 309-10.  At least in the Eleventh Circuit – which is precedent

that may not have been considered by those courts reaching a different result in other RMBS-related cases brought by Plaintiff's sister banks in other jurisdictions – this exception applies if the activities of a federally chartered corporation occur *primarily* in one state, even if the corporation engages in out-of-state business activities.  *See, e.g.*, *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (the localized activities exception is not limited to corporations that conduct all of their activities in one state).

In deciding whether the "localization" exception applies, courts examine a number of factors including: (1) the principal place of business; (2) the existence of branch offices outside of the state; (3) the amount of business transacted in different states; and (4) any other evidence that the corporation is local or national in nature, all of which weigh in favor of treating FHLBA as a citizen of Georgia. *Id.* at 606; *see also id.* ("Determining whether a federal corporation is localized for diversity purposes . . . . should involve a more expansive investigation into the corporation's business.").

*First,* Plaintiff's one and only office – its principal place of business – is located in Georgia.  *Second*, Plaintiff has no branches or offices in any state other than Georgia.  Thus, all of Plaintiff's corporate functions and operations are directed from its Georgia headquarters.  Plaintiff's name – the Federal Home Loan

Bank of *Atlanta* – further evinces its localization.  *See Iceland Seafood Corp.*, 285

F. Supp. 2d at 726 (distinguishing defendant in that case from defendants in cases

that recognized state citizenship for federally chartered entities that were localized,

which "all involve federal banks or loan associations bearing the name of a

particular state or region, and all having a corresponding scope of activity").

*Third*, the fact that some of Plaintiff's shareholders are citizens of other states or

that Plaintiff conducts business in other states is irrelevant.  Just like any other

corporate entity, Plaintiff is legally distinct from its shareholders.  *JP Morgan

Chase Bank v. Traffic Stream (BVI)*, 536 U.S. 88, 98 (2002) (holding the "notion of

corporate citizenship derived from natural persons is irrelevant to jurisdictional

enquiry in the United States today" because "outdated legal construct of

corporations as collections of shareholders linked by contract" has "long since

[been] replaced by the conception of corporations as independent legal entities.").

And while FHLBA may conduct business outside of the state, it operates that

business out of only one state, Georgia.  *Fourth*, no other evidence counsels in

favor of national citizenship.  FHLBA's activities are fundamentally local in

nature; its nerve center is in Georgia and it operates, at most, regionally.

Moreover, other Federal Home Loan Banks have claimed to have a principal

place of business in the state of their headquarters for purposes of establishing

federal diversity jurisdiction, despite advancing loans to member banks outside of

the state of their headquarters.  *See, e.g.*, Ex. 3 at 1-2 (Complaint *Fed. Home Loan*

*Bank of Pittsburgh v. SMWNPF*, No. 94-1565 (W.D. Pa. Sept. 14, 1994)) (alleging

that FHLB Pittsburgh's principal place of business is in Pittsburgh, Pennsylvania

and the court "has jurisdiction over this action under 28 U.S.C. § 1332 because

there is diversity of citizenship between the parties . . . ."); *Fed. Home Loan Bank*

*of Topeka v. Nationsbank*, No. CV-97-1510R (W.D. Okla. Sept. 16, 1997); Ex. 2 at

1-2 (Notice of Removal in *O'Connor*) (stating Federal Home Loan Bank of Des

Moines's principal place of business is Iowa and removing the case based, in part,

on diversity jurisdiction).  Federal Home Loan Banks should not be permitted to

invoke diversity jurisdiction when they prefer to be in federal court but claim

immunity from such jurisdiction when they prefer to be in state court.

## IV.   "RELATED TO" BANKRUPTCY REMOVAL WAS PROPER

### A.   This Court Has "Related To" Jurisdiction

This action is "related to" ongoing bankruptcy proceedings because four of

the six Defendants in this case – Countrywide Financial Corporation, Countrywide

Securities Corporation, Countrywide Home Loans, Inc. (the "Countrywide

Defendants") and J.P. Morgan Securities, LLC (together with the Countrywide

Defendants, the "Indemnified Defendants") – have indemnification claims

variously against three different bankrupt mortgage loan originators who were involved in one or more of the securitizations at issue in this lawsuit.[4]  Indeed, it appears that every other court addressing this issue has held that these types of indemnification claims confer "related to" jurisdiction.  *See, e.g.*, *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 386-87 (5th Cir. 2010).[5]

---

[4]   Four of the offerings in this case – CWHL 2005-HYB6, CWHL 2006-HYB2, CWHL 2006-HYB3, and JPMMT 2006-A5 – included mortgage loans originated by Debtors (defined below).  (Compl. ¶ 20); Ex. 4 at S-13-18, S-75-78; Ex. 5 at S-25-30, S-91-93; Ex. 6 at S-26-39, S-101-103; Ex. 7 at 7, 25, 53.  More specifically, Aegis Mortgage Corporation ("Aegis") originated or acquired approximately 4.12% of the mortgages in the $89,358,100 1-A-1 tranche of CWHL 2005-HYB6, and 5.35% of the mortgages in the $459,732,000 2-A-1 tranche of CWHL 2005-HYB6.  Alliance Bancorp ("Alliance") originated or acquired approximately 0.73% of the mortgages in the $75,548,000 2-A-1A tranche of CWHL 2006-HYB2.  American Home Mortgage Holdings Inc. ("American Home," together with Aegis and Alliance, the "Debtors") originated or acquired approximately 38.54% of the mortgages in the $75,548,000 2-A-1A tranche of CWHL 2006-HYB2, approximately 1.81% of the mortgages in the $218,684,000 4-A-1A tranche of CWHL 2006-HYB3, 8.99% of the mortgages in the $193,023,000 3-A-1B tranche of CWHL 2006-HYB3, and 9.20% of the mortgages in JPMMT 2006-A5.  The total value of the mortgage loans that are subject to indemnification agreements in the four offerings above is $283,168,690.84.

[5]   *See also Fed. Home Loan Bank of Chicago v. Banc of Am. Sec. LLC*, No. 10 Civ. 09105, slip op. at 8-10 (C.D. Cal. Mar. 15, 2011); *Charles Schwab Corp. v. Banc of Am. Sec. LLC*, No. 10-CV-03489-LHK, 2011 WL 864978, at *6-7 (N.D. Cal. Mar. 11, 2011); *Fed. Home Loan Bank of S.F. v. Deutsche Bank Sec., Inc.*, No. 10-3039 SC, 2010 WL 5394742, at *14 (N.D. Cal. Dec. 20, 2010); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, No. 10-CV-07275 MRP (MANx), 2010 WL 5559973 (C.D. Cal. Dec. 29, 2010); *Fed. Home Loan Bank of Seattle v. Deutsche Bank Secs., Inc.*, No. C10-0140, 2010 WL 3512503, at *6 (W.D. Wash. Sept. 1, 2010); *New Jersey v. Fuld*, No. 09-CV-1629, 2009 U.S. Dist. LEXIS

Like those other courts, the Eleventh Circuit applies the "conceivable effect" test to determined whether "related to" jurisdiction exists.  Under this test, "a civil proceeding is related to bankruptcy [when] the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." *Lawrence v. Goldberg*, 573 F.3d 1265, 1270-71 (11th Cir. 2009) (quoting *In re Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990)).  As the Eleventh Circuit has observed, its "related to" bankruptcy test uses the word "conceivable" to "make[] the jurisdictional grant extremely broad."  *In re Toledo*, 170 F.3d 1340, 1345 (11th Cir. 1999) (citation omitted).  Contrary to Plaintiff's argument (Pl. Br. 23), this test applies even after a plan has been confirmed. [6]  *See, e.g.*, *Hampton-Stein v. Erwin I. Katz, Ltd.*, No. 09-80798-CIV-COHN/SELTZER, 2009 U.S. Dist. LEXIS 130425, at *7-8 (S.D. Fla. July 5, 2009) (applying "conceivable effect" test in the context of post-confirmation proceeding and denying remand upon finding

---

54481, at *8-11 (D.N.J. June 24, 2009); *Mass. Bricklayers & Masons Trust Funds v. Deutsche Alt-A Sec., Inc.*, 399 B.R. 119, 121, 123 (E.D.N.Y. 2009); *City of Ann Arbor Employees' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc.*, 572 F. Supp. 2d 314, 318-19 (E.D.N.Y. 2008).

[6]   Plans of reorganization have been confirmed in the American Home bankruptcy and the Aegis bankruptcy.  *See In re Am. Home Mortg. Holdings, Inc.*, No. 07-bk-11047 (Bankr. D. Del. Feb. 23, 2009) (Dkt. No. 7042); *In re Aegis Mortg. Corp.*, No. 07-bk-11119 (Bankr. D. Del. Oct. 20, 2010) (Dkt. No. 5544).  The Alliance proceeding is a Chapter 7 liquidation in which there is no plan of reorganization. The background facts relevant to the bankruptcy of each Debtor are set forth in Appendix A.

of "related to" bankruptcy jurisdiction).[7]

It is beyond argument that this case could conceivably have an effect on the estate being administered in bankruptcy.  Plaintiff principally alleges misstatements and omissions concerning the quality of mortgage loans underlying 35 different RMBS certificates, which are exactly the type of claims with respect to which Aegis, Alliance, and American Home agreed to indemnify and advance defense costs to the Indemnified Defendants.[8]  Contrary to Plaintiff's arguments,

---

[7]  *Zahn Assocs. v. Leeds Bldg. Prods. (In re Leeds Bldg. Prods.)*, 160 B.R. 689, 691 (Bankr. N.D. Ga. 1993), cited by Plaintiff, did not mention the "close nexus" test but rather held that the particular dispute before the court "d[id] not involve the implementation or interpretation of any provisions of the Plan."  The court in that case noted, however, that "[o]f course, a bankruptcy court does not lose all jurisdiction once a chapter 11 plan has been confirmed."  *Id.*  Thus, even if the close nexus test applied, "related to" jurisdiction would still exist where, as here, there are indemnification claims that "necessarily affect 'the interpretation, implementation, consummation, execution, or administration'" of a confirmed plan.  *Stichting*, 2010 WL 5559973, at *4 (citation omitted).

[8]  The three bankrupt entities, Aegis, Alliance and American Home, all agreed to indemnify at least one Defendant for costs and judgments incurred in defending lawsuits involving one or more of the securitizations at issue here.  In each case, the debtor agreed to indemnify Countrywide Home Loans, Inc. (and in one case J.P. Morgan Mortgage Acquisition Corporation), its successor in interest, and any assignees for any losses (including legal costs) arising from lawsuits alleging that the supplemental prospectus for the securitization at issue contained material misstatements or omissions regarding the loans purchased from that debtor (or in the case of J.P. Morgan Mortgage Acquisition Corp., losses that might result from any breach of the representations made by AHM with respect to the mortgage loans).  *See* Mortgage Loan Purchase Agreement §§ 3.1, 3.4 (Ex. 8 at 8-15); Amendment Reg AB to the Mortgage Loan Purchase and Interim Servicing

these indemnification claims are not speculative or contingent on future litigation. In some instances, they arose immediately upon the filing of this action, and, as to defense costs, are already accruing. *Stichting*, 2010 WL 5559973, at *4 (addressing identical indemnification agreements by American Home and concluding that "American Home obligations to defend [] arose immediately upon the filing of this lawsuit"); *id.* (finding "no merit" to argument that another separate lawsuit would have to proceed before the bankruptcy case would be impacted); *Fed. Home Loan Bank of Chicago*, *v. Banc of Am. Sec. LLC*, No. 10-CV-09105 MRP (MANx), slip. op. at 9 (C.D. Cal. Mar. 15, 2011) (same) [hereinafter *FHLB-Chicago (Los Angeles)*].

## B.      Equitable Remand Should Be Denied

As mentioned, it appears that every court that has resolved the question has held that the Indemnified Defendants' claims against the various bankrupt entities confers "related to" jurisdiction.  Despite this, several courts have exercised their discretion to remand actions to state court pursuant to 28 U.S.C. § 1452(b) based on equitable considerations.  *See, e.g.*, *FHLB-Chicago (Los Angeles)*, slip op. 10-13; *but see Stichting*, 2010 WL 5559973, at *6-7 (declining equitable remand).

---

Agreement § 2(g) (Ex. 9 at 12); *See* Amendment No. 1 to Mortgage Loan Purchase Agreement and Interim Servicing Agreement §§ 1, 5, 9 (Ex. 10); Mortgage Loan Sale Agreement §§ 7.03, 14 (Ex. 11 at 39-41, 60).

This Court should not follow those decisions, particularly because the unique and novel claims in this case – which include RICO claims predicated on violations of federal banking laws – weigh in favor of keeping it in federal court.

Plaintiff identifies seven equitable factors to consider, each of which weighs *against* remand: (1) the effect of the action on the administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty of applicable state law; (4) comity; (5) the relatedness or remoteness of the action to the bankruptcy estate; (6) the existence of a right to a jury trial; and (7) prejudice to the party involuntarily removed from state court.  (Pl. Br. 25; *see also In re Finley*, 62 B.R. 361, 366 (Bankr. N.D. Ga. 1986) (denying remand based on consideration of similar factors); *Stichting*, 2010 WL 5559973, at *6 (same).)

As to the second factor, even though the Plaintiff has pleaded state law claims, this does not favor equitable remand here because Plaintiff's RICO claims are based in substantial part on allegations of violations of several different federal criminal banking laws.  (Compl. ¶¶ 265-78.)  The federal interest in this lawsuit is even higher because it was brought by a federally chartered and federally regulated plaintiff, against federally regulated defendants, based on federally registered securities.  These overlapping federal interests are notably different from what was at stake in other lawsuits mentioned above – none of which included RICO claims

predicated on alleged violations of federal criminal banking laws – that were remanded based on equitable considerations.[9]

Moreover, this Court routinely applies and interprets Georgia state law, but Georgia state courts rarely have occasion to interpret and apply federal criminal banking laws. Accordingly, this factor weighs heavily against remand. *Stichting*, 2010 WL 5559973, at *7 ("most significant[] factor" was that lawsuit presented "complex and in some respects novel" issues of federal law).

As to the first and fifth factors, the Indemnified Defendants already have claims for fees and costs against the Debtors. The amount of those claims will only increase in amount as this litigation progresses. Thus, this action unquestionably has and will continue to have an effect on the administration of the various bankruptcy estates. *See, e.g.*, *Id*. at *4 (case "related to" American Home bankruptcy proceeding because indemnity claims based on "obligation to defend" arose immediately upon filing of lawsuit). Plaintiff's argument that these factors

---

[9]   Unlike this case, the plaintiffs in several of the cases remanded pursuant to Section 1452(b) had brought claims under the Securities Act of 1933, which contains a provision providing that "no case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." 15 U.S.C. § 77v(a). This has been taken as evidence of a congressional judgment that comity requires 1933 Act claims to stay in state court. *See Fed. Home Loan Bank of Chicago*, slip op. at 12 n.4 (C.D. Cal. Mar. 15, 2011) (stating, in discussion of equitable remand, that plaintiffs' Securities Act claims were "expressly non-removable" under 15 U.S.C. § 77v(a)).

do not weigh in favor of federal court because the indemnity claims relate to only some of the securitizations in the case is misplaced.  (Pl. Br. 26.)  The focus of this inquiry is not on the prevalence of claims in *this* lawsuit that are indemnified, but whether and to what extent the indemnity claims will impact the Debtors.

Here, Plaintiff seeks compensatory damages, treble damages, punitive damages, and attorneys' fees and costs.  *See* Compl., WHEREFORE Clause.  Even if only a small portion of their claims are based on the mortgages giving rise to the indemnity claims, the costs of defending against these claims, when combined with the costs of potential liability, will clearly affect the administration of the Debtors' estates.  *See, e.g.*, *Appatek Indus., Inc. v. Biolab, Inc.*, No. 09-CV-00645, 2010 WL 731366, at *3 (M.D.N.C. Feb. 25, 2010) (denying equitable remand where "a damages award or equitable remedy of the sort contemplated by the parties will directly alter the estate's assets by hundreds of thousands of dollars").

Comity between the federal and state courts (the fourth factor) is not implicated here because there is no state court proceeding currently pending with which this proceeding would conflict if it were to remain in federal court.  *In re Briarpatch Film Corp.*, 281 B.R. 820, 831 (Bankr. S.D.N.Y. 2002) (remanding case for comity concerns because state court had issued orders).  Moreover, because Defendants do not and will not seek a transfer to bankruptcy court, there is

no possible prejudice to Plaintiff's jury trial right (the sixth factor).  Finally,

Plaintiff has identified no prejudice (other than litigating in a forum other than the

one it apparently prefers for this case) to its rights if the case proceeds in this Court

(the seventh factor).

### C.    There is No Basis for Mandatory Abstention

Plaintiff contends that the Court must remand this action pursuant to the

mandatory abstention provision set forth in 28 U.S.C. § 1334(c)(2).  (Pl. Br. 20-

21.)  But Plaintiff has not met its burden of proving "by a preponderance of the

evidence" the existence of the following four elements required for mandatory

abstention:  (1) the claim has no independent basis for federal jurisdiction other

than § 1334(b), (2) the claim is a non-core proceeding, (3) an action has been

commenced in state court, and (4) the action could be adjudicated timely in state

court.  *In re EZ Pay Svcs, Inc. v. Alt. Debt Portfolios, LLC*, 390 B.R. 421, 424

(Bankr. M.D. Fla. 2007) ("The party requesting abstention must prove the

existence of each element by a preponderance of the evidence.") (citation omitted).

Here, Plaintiff "is not entitled to mandatory abstention [because] it fail[ed]

to prove" the first and fourth elements.  *Id.*; *see also id.* ("A party is not entitled to

mandatory abstention if it fails to prove any one of the statutory requirements."

First, this action could "have been commenced in a court of the United States

absent" "related to" bankruptcy jurisdiction.  As discussed herein, federal charter jurisdiction, diversity jurisdiction, and federal question jurisdiction would have been proper bases to commence this action in this Court.  28 U.S.C. § 1334(c)(2).

*Second*, this action may not be timely adjudicated in state court.  As the president of the American Bar Association recently observed, the case load in Georgia state courts is "ballooning" and "increasingly clogged."[10]  *Id.*  Plaintiff's argument that this action can be timely adjudicated in state court (Pl. Br. 20-21) – contained in an otherwise completely conclusory single paragraph argument – falls far short of establishing this element by a preponderance of evidence.

## V.   THE COURT SHOULD DENY PLAINTIFF'S REQUEST FOR ATTORNEYS FEES

For the reasons discussed above, removal was proper, reasonable, and in good faith.  Indeed, Plaintiff's motion to remand should be denied.  Plaintiff nevertheless requests an award of fees and costs pursuant to 28 U.S.C. § 1447(c)

---

[10]   Stephen N. Zach, *Solve the crisis in state courts*, The Atlanta Journal Constitution, Feb. 8, 2011, www.ajc.com/opinion/solve-the-crisis-in-831821.html. *See also Annual Report: Georgia Courts* 12 (2010), http://Georgiacourts.gov/files/ FY%2010%20AR_web.pdf (reporting that in calendar year 2009, of the 999,443 cases filed in Georgia's state courts, only 764,913 were disposed of); Paulo Prado & Corey Dade, *Cases Pile Up in Georgia Courts: Budget Squeeze Forces Cuts in Spending for Judiciary, Creating Months-Long Delays*, Wall St. J., Sept. 8, 2009, at A5 ("The wheels of justice in Georgia are grinding more slowly each day.  Cuts in spending for the state court system have led to fewer court dates available for hearings and trials, creating a growing backlog of cases.").

because of Defendants' allegedly "improper removal."  Even assuming remand were granted, however, Plaintiff's request for fees and costs clearly should be denied.

In *Martin v. Franklin Capital Corp.*, the Supreme Court explained that the award of attorney's fees on remand is left to the district court's discretion.  546 U.S. 132 (2005).  Such discretion, however, should not work to "undermin[e] Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."  *Id.* at 140.  "A civil case commenced in state court may, as a general matter, be removed by the defendant to federal district court, if the case could have been brought there originally."  *Id.* at 134 (citing 28 U.S.C. §1441).  Here, Defendants have asserted four grounds for removal, all of which, as set forth above, provide an independent basis for federal jurisdiction and are supported by substantial authority.

Courts have found federal subject matter jurisdiction based on the arguments Defendants make in favor of removal.  With respect to "related to" bankruptcy jurisdiction, while Plaintiff asserts that four courts have "rejected" Defendants' arguments, Plaintiff fails to acknowledge that every court reaching the issue to which the Plaintiff refers expressly confirmed the existence of "related to" federal subject matter jurisdiction, yet chose to remand on equitable grounds (*see supra*

18) – grounds which are necessarily dependent on the facts of a particular case and are left to the individual discretion of the presiding federal judge.  *Compare Stichting*, 2010 WL 5559973 (C.D. Cal. Dec. 29, 2010) (denying order to remand finding "related to" bankruptcy jurisdiction) *with* Order of Remand *FHLB-Chicago (Los Angeles)* (same federal district judge who denied remand on equitable grounds in *Stichting* granting equitable remand in a similar RMBS case).

Plaintiff has failed to identify a single case in which a court awarded fees pursuant to 28 U.S.C. §1447(c) where remand was ordered not for lack of subject matter jurisdiction, but on equitable or abstention grounds.  In fact, such an award may be foreclosed by the statutory text itself, which, in the immediately preceding sentence addresses situations where "it appears that the district court *lacks* subject matter jurisdiction."  28 U.S.C. § 1447(c) (emphasis added).  In any event, where a court undoubtedly possesses federal subject matter jurisdiction but chooses not to exercise it, it cannot be said that an "objectively reasonable basis" for removal is lacking.  *Martin*, 546 U.S. at 141.  This is especially true, where, as in the RMBS cases, the decision to exercise federal "related to" bankruptcy jurisdiction may turn on narrow factual questions.

Moreover, with respect to the language in Plaintiff's charter, the only federal circuit level decision addressing substantially identical language to that appearing

in Plaintiff's charter found federal subject matter jurisdiction because the language

"expressly refers to the federal courts."  *Pirelli*, 534 F.3d at 784.  In contrast, only

district court decisions – none of which emanate from this district or is controlling

– directly support Plaintiff's argument.  Furthermore, given that Federal Home

Loan Banks themselves have cited the same charter as a basis *for* removal, Plaintiff

should not be heard to argue that when an opposing party makes the same

argument it has acted so unreasonably as to be subject to fees and costs.  *See supra*

11-12.

Similarly, with respect to diversity jurisdiction, other Federal Home Loan

Banks have asserted that they are a citizen of the state in which their principal

place of business is located for purposes of federal diversity subject matter

jurisdiction.  *See supra* 16-17.  Finally, the RICO claim presents unique and novel

substantial federal questions involving a federally chartered institution that were

not presented in previous cases, and thus it was entirely reasonable for Defendants

to remove this action based on controlling Eleventh Circuit authority.  *See supra* 3-

4.

Although, as Defendants specifically acknowledged in their Notice of

Removal, some federal district courts in Federal Home Loan Bank cases have

declined to exercise jurisdiction in similar cases, removal in this case is supported

by substantial authority, and Plaintiff's suggestion that none of the bases for removal was reasonable (when in fact all are more than reasonable) is unfounded. Virtually all of the Federal Home Loan Bank cases have been removed, and regardless of the arguments or outcomes on remand motions, no other Federal Home Loan Bank ever sought fees and costs even where, as here, there were prior remand motions granted. Indeed, this case includes *more* grounds for removal than the prior FHLB cases. There is no basis for Plaintiff's request for fees and costs, and the Court should deny it.

## CONCLUSION

For all of the foregoing reasons, Plaintiff's motion to remand and its request for fees and costs should be denied.

Dated this 28th day of March 2011.

Respectfully submitted,


/s/ Bethany M. Rezek
Bethany M. Rezek
Georgia Bar No. 553771
B. Warren Pope
Georgia Bar No. 583723
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, GA  30309
Tel:  (404) 572-4600
Fax:  (404) 572-5100
brezek@kslaw.com
wpope@kslaw.com

Adam S. Hakki
Kirsten N. Cunha
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022
Tel:  (212) 848-4000
Fax:  (212) 848-7179
ahakki@shearman.com
kirsten.cunha@shearman.com
brian.burke@shearman.com

*Attorneys for Defendants
Countrywide Financial Corporation
Countrywide Securities Corporation
Countrywide Home Loans, Inc.*

/s/ Thomas S. Richey
(with express permission by Bethany M. Rezek)
Thomas S. Richey
Georgia Bar No. 604525
William V. Custer
Georgia Bar No. 202910
Stacey Godfrey Evans
Georgia Bar No. 298555
BRYAN CAVE LLP
One Atlantic Center
Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, GA 30309
Tel:  (404) 572-6600
Fax:  (404) 572-6999
tom.richey@bryancave.com
bill.custer@bryancave.com
stacey.evans@bryancave.com

OF COUNSEL

Jonathan Rosenberg
William J. Sushon
Asher L. Rivner
O'MELVENY & MYERS LLP
7 Times Square
New York, NY  10036
Tel:  (212) 728-5693
Fax:  (212) 326-2061
jrosenberg@omm.com
wsushon@omm.com
arivner@omm.com

*Attorneys for Defendant*
*Bank of America Corporation*

32

/s/ Richard H. Sinkfield
(with express permission by Bethany M. Rezek)
Richard H. Sinkfield
Georgia Bar No. 649100
Ben A. Rogers
Georgia Bar No. 612090
ROGERS & HARDIN
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA  30303
Tel:  (404) 420-4605
Fax:  (404) 230-0970
rsinkfield@rh-law.com
brogers@rh-law.com

OF COUNSEL

Brent J. McIntosh
Henry Quillen
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, NW
Washington, DC  20006
Tel:  (202) 956-6930
Fax:  (202) 956-7571
mcintoshb@sullcrom.com
quillenh@sullcrom.com

*Attorneys for Defendant*
*J.P. Morgan Securities, LLC*

/s/ John G. Parker

(with express permission by Bethany M. Rezek)

John G. Parker

Georgia Bar No. 562425

PAUL, HASTINGS, JANOFSKY &
  WALKER LLP

600 Peachtree Street, NE

Atlanta, GA  30308

Tel:  (404) 815-2222

Fax:  (404) 685-5222

johnparker@paulhastings.com

OF COUNSEL

William F. Sullivan

John S. Durrant

PAUL, HASTINGS, JANOFSKY &
  WALKER LLP

515 South Flower Street

Los Angeles, CA  90071

Tel: (213) 683-6000

Fax: (213) 627-0705

williamsullivan@paulhastings.com

johndurrant@paulhastings.com

*Attorneys for Defendant*
*UBS Securities LLC*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1D of the Local Rules of the United States District Court for the Northern District of Georgia, I hereby certify that the foregoing brief has been prepared in Times New Roman, 14 point font, as permitted by Local Rule 5.1B.

/s/ Bethany M. Rezek
Bethany M. Rezek

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 28, 2011, I electronically filed the foregoing

Joint Brief in Opposition to Plaintiff's Motion to Remand with the Clerk of the

Court using the CM/ECF system:

H. Lamar Mixson
David G.H. Brackett
Ronan P. Doherty
Bret R. Hobson
Mary W. Pyrdum
Naveen Ramachandrappa
BONDURANT, MIXSON & ELMORE, LLP
3900 One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309

Thomas S. Richey
William V. Custer
Stacey Godfrey Evans
BRYAN CAVE LLP
One Atlantic Center
Fourteenth Floor
1201 West Peachtree Street, NW
Atlanta, GA 30309

Jonathan Rosenberg
William J. Sushon
Ashner L. Rivner
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036

Richard H. Sinkfield
Ben A. Rogers
ROGERS & HARDIN LLP
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303

Brent J. McIntosh
Henry Quillen
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, NW
Washington, DC 20006

John G. Parker
PAUL, HASTINGS, JANOFSKY & WALKER LLP
600 Peachtree Street, NE
Atlanta, GA 30308

William F. Sullivan
John S. Durrant
PAUL, HASTINGS, JANOFSKY & WALKER LLP
515 South Flower Street
Los Angeles, CA 90071

/s/ Bethany M. Rezek
Georgia Bar No. 553771
KING & SPALDING LLP
1180 Peachtree Street
Atlanta, Georgia 30309
Telephone:  (404) 572-4600
brezek@kslaw.com

*Attorneys for Defendants*
*Countrywide Securities Corp.*
*Countrywide Financial Corp.*
*Countrywide Home Loans, Inc.*