# EXHIBIT 1

No. 91-594

# In The Supreme Court of the United States

OCTOBER TERM, 1991

———————————————

AMERICAN NATIONAL RED CROSS, PETITIONER

*v.*

S.G. AND A.E., RESPONDENTS

———————————————

**On Writ of Certiorari to the
United States Court of Appeals
for the First Circuit**

———————————————

**BRIEF FOR THE PETITIONER**

———————————————

KENNETH S. GELLER
  *Counsel of Record*
ROY T. ENGLERT, JR.
JAMES G. DUNCAN
  *Mayer, Brown & Platt*
  *2000 Pennsylvania Avenue, N.W.*
  *Washington, D.C.  20006*
  *(202) 463-2000*

BRUCE M. CHADWICK
BRENDAN COLLINS
  *Arnold & Porter*
  *1200 New Hampshire Avenue, N.W.*
  *Washington, D.C.  20036*

KAREN SHOOS LIPTON
  *General Counsel*
EDWARD L. WOLF
  *Associate General Counsel*
  *American National Red Cross*
  *17th & D Streets, N.W.*
  *Washington, D.C.  20006*

*Counsel for Petitioner*

## QUESTION PRESENTED

Whether 36 U.S.C. § 2, which provides that the American National Red Cross has the right "to sue and be sued in courts of law and equity, State or Federal," vests federal courts with original jurisdiction over actions to which the Red Cross is a party, so that the Red Cross may remove to federal court under 28 U.S.C. § 1441(a) and (b) a tort action brought in state court.

TABLE OF CONTENTS

OPINIONS BELOW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STATUTORY PROVISION INVOLVED  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

STATEMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

      A.    The Red Cross and its Charter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

      B.    The Proceedings Below . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

INTRODUCTION AND SUMMARY OF ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . .

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

THE RED CROSS CHARTER CREATES ORIGINAL FEDERAL
JURISDICTION OVER ALL CASES INVOLVING THE RED CROSS  . . . . . . . . . . . . . . . . . .

I.     *OSBORN* V. *BANK OF THE UNITED STATES* IS DISPOSITIVE  . . . . . . . . . . . . . . . .

      A.    The Grounds On Which The First Circuit Attempted To Distinguish *Osborn* Are
            Inconsistent With This Court's Reasoning In That Case And Subsequent
            Cases  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

           1.    The Distinction Between A Charter That Mentions A Specific Federal
                 Court And One That Refers Generally To The Federal Courts Is Insignifi-
                 cant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

           2.    The Reference In The *Osborn* Charter To State Courts Of "Competent
                 Jurisdiction" Is Irrelevant To The Holding That The Reference To The
                 Federal Courts Is A Grant Of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . .

      B.    There Is No Good Reason To Narrow *Osborn*  . . . . . . . . . . . . . . . . . . . . . . . . . .

II.    TO THE EXTENT THIS CASE CALLS FOR A PARTICULARIZED INQUIRY
      INTO THE INTENT OF CONGRESS IN AMENDING THE RED CROSS
      CHARTER, THAT INQUIRY CONFIRMS THAT THE SUE-AND-BE-SUED
      CLAUSE IS JURISDICTIONAL  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

APPENDIX  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IV

TABLE OF AUTHORITIES

## CASES

*Aetna Casualty & Surety Co.* v. *Flowers*, 330 U.S. 464
    (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Anonymous Blood Recipient* v. *Sinai Hospital*,
    692 F. Supp. 730 (E.D. Mich. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Astoria Federal Savings & Loan Association* v. *Solimino*,
    111 S. Ct. 2166 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Bank of the United States* v. *Deveaux*, 9 U.S.
    (5 Cranch) 61 (1809) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Bank of the United States* v. *Planters' Bank of Georgia*,
    22 U.S. (9 Wheat.) 904 (1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Bankers Trust Co.* v. *Texas & Pacific Railway*,
    241 U.S. 295 (1916) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Bowen* v. *Massachusetts*, 487 U.S. 879 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Califano* v. *Sanders*, 430 U.S. 99 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Cannon* v. *University of Chicago*, 441 U.S. 677 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Christianson* v. *Colt Industries Operating Corp.*,
    486 U.S. 800 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*D'Oench, Duhme & Co.* v. *FDIC*, 315 U.S. 447 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Department of Employment* v. *United States*, 385 U.S. 355
    (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Freytag* v. *Commissioner of Internal Revenue*, 111 S. Ct.
    2631 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*FSLIC* v. *Kearney Trust Co.*, 151 F.2d 720
    (8th Cir. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Gully* v. *First National Bank*, 299 U.S. 109 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Harrison* v. *PPG Industries, Inc.*, 446 U.S. 578 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Hilton* v. *South Carolina Public Railways Commission*,
    60 U.S.L.W. 4056 (U.S. Dec. 16, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*In re Young*, 869 F.2d 158 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*International Primate Protection League* v. *Administrators*
    *of Tulane Educational Fund*, 111 S. Ct. 1700 (1991) . . . . . . . . . . . . . . . . . . . . . . . . .

v

*Jones-Hailey* v. *TVA*, 660 F. Supp. 551 (E.D. Tenn. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*K mart Corp.* v. *Cartier, Inc.*, 485 U.S. 176 (1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Kaiser* v. *Memorial Blood Center*, 938 F.2d 90
     (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Lehman* v. *Nakshian*, 453 U.S. 156 (1981)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Curran,*
     456 U.S. 353 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Mesa* v. *California*, 489 U.S. 121 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Miles* v. *Apex Marine Corp.*, 111 S. Ct. 317 (1990)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Okoro* v. *Children's Hospital National Medical Center,*
     Civ. No. 5325-87 (D.C. Super. Ct.
     May 30, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Osborn* v. *Bank of the United States*, 22 U.S. (9 Wheat.)
     738 (1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Pacific Railroad Removal Cases*, 115 U.S. 1 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Patterson* v. *American Nat. Red Cross*, 101 F. Supp. 655
     (S.D. Fla. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Pennsylvania* v. *Union Gas Co.*, 491 U.S. 1 (1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Portsmouth Redevelopment & Housing Authority* v. *Pierce,*
     706 F.2d 471 (4th Cir.), cert. denied,
     464 U.S. 960 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Reisner* v. *Regents of the University of California,*
     No. CV-91-1252-JMI (JRx) (C.D. Cal. Aug. 22, 1991)  . . . . . . . . . . . . . . . . . . . . . . . . . . .

*South Carolina* v. *Catawba Indian Tribe, Inc.*, 476 U.S. 498
     (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*The Mayor* v. *Cooper*, 73 U.S. (6 Wall.) 247 (1867) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*United States* v. *City of Spokane*, 918 F.2d 84
     (9th Cir. 1990), cert. denied, 111 S. Ct. 2888
     (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Welch* v. *Texas Department of Highways & Public*
     *Transportation*, 483 U.S. 468 (1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Willingham* v. *Morgan*, 395 U.S. 402 (1969)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VI

STATUTES

12 U.S.C. § 635(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12 U.S.C. § 1432 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12 U.S.C. § 1432(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12 U.S.C. § 1441(c)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12 U.S.C. § 1441b(d)(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12 U.S.C. § 1702 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

12 U.S.C. § 1723a(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

15 U.S.C. § 78ccc(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

28 U.S.C. § 1349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

28 U.S.C. § 1367(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

28 U.S.C. § 1441(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

28 U.S.C. § 1441(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

36 U.S.C. § 1 note . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

36 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

36 U.S.C. § 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

36 U.S.C. § 5(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

36 U.S.C. § 6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

42 U.S.C. § 8105(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Act of Feb. 16, 1938, ch. 30, § 506, 52 Stat. 73 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Act of Jan. 5, 1905, ch. 23, § 2, 33 Stat. 600 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Act of Jan. 28, 1915, ch. 22, § 5,  38 Stat. 803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Act of June 9, 1947, ch. 101, § 1, 61 Stat. 130 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Act of June 29, 1948, ch. 704, § 4, 62 Stat. 1070 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

VII

MISCELLANEOUS

*American National Red Cross: Hearing on S. 591*
       *Before the Senate Comm. on Foreign Relations*,
       80th Cong., 1st Sess. (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

P. Bator, P. Mishkin, D. Meltzer & D. Shapiro,
       *Hart and Wechsler's The Federal Courts and the*
       *Federal System* (3d ed. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Brief for the Appellees, *Department of Employment* v.
       *United States*, 385 U.S. 355 (1966) (O.T. 1966, No. 78) . . . . . . . . . . . . . . . . . . . . . . . . .

Brief for the Respondent, *D'Oench, Duhme & Co.* v. *FDIC*,
       315 U.S. 447 (1942) (O.T. 1941, No. 206) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Brief for the Respondent in Opposition, *D'Oench, Duhme & Co.* v. *FDIC*,
       315 U.S. 447 (1942) (O.T. 1941, No. 206) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Brief for the Respondents in Opposition, *Portsmouth*
       *Redevelopment & Housing Authority* v. *Pierce*,
       464 U.S. 960 (1983) (No. 83-90) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

H.R. Rep. No. 337, 80th Cong., 1st Sess. (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

1A J. Moore & B. Ringle, *Moore's Federal Practice*
       (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

S. Rep. No. 38, 80th Cong. 1st Sess. (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3-4 G. Edward White, *The Oliver Wendell Holmes Devise History*
       *of the Supreme Court of the United States* (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

14A C. Wright, A. Miller & E. Cooper, *Federal Practice*
       *and Procedure* (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# In The Supreme Court of the United States

OCTOBER TERM, 1991

————————————————————

No. 91-594

AMERICAN NATIONAL RED CROSS, PETITIONER

*v.*

S.G. AND A.E., RESPONDENTS

————————————————————

**On Writ of Certiorari to the
United States Court of Appeals
for the First Circuit**

————————————————————

**BRIEF FOR THE PETITIONER**

————————————————————

## OPINIONS BELOW

The opinion of the court of appeals (Pet. App. 1a-16a) is reported at 938 F.2d 1494.  The opinions of the district court (Pet. App. 18a-30a) are unreported.

## JURISDICTION

The court of appeals entered its judgment on July 24, 1991.  The Red Cross filed its petition for a writ of certiorari on October 1, 1991, and the Court granted the petition on November 27, 1991.  The jurisdiction of this Court is invoked under 28 U.S.C. § 1254(1).

## STATUTORY PROVISION INVOLVED

Section 2 of the American National Red Cross charter, 36 U.S.C. § 2, provides, in relevant part, that the American National Red Cross "shall have * * * the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States."

## STATEMENT

Respondents, a husband and wife, sued the Red Cross in March 1990 in the Superior Court of Merrimack County, New Hampshire.  They alleged that the wife became infected with human immuno-deficiency virus (HIV), which causes AIDS, as a result of a transfusion of blood collected by the Red Cross in August 1984 (before any test to screen donated blood for HIV was available).  The Red Cross removed

2

the case to federal court under 28 U.S.C. § 1441, contending that the court had jurisdiction under 36

U.S.C. § 2.  The district court agreed that federal jurisdiction existed and denied respondents' motion to

remand the case to state court.  The district court ruled that the language in the Red Cross charter pro-

viding that the Red Cross has "the power to sue and be sued in courts of law and equity, State or Federal,"

creates original jurisdiction in the federal courts.  Pet. App. 24a.  The First Circuit reversed, holding that

the charter confers only the capacity to sue, not the right to federal jurisdiction.  *Id*. at 12a.

### A.      The Red Cross and its Charter

This case involves the construction of the Red Cross charter, as amended in 1947, in light of

*Osborn* v. *Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824), and its progeny.  Construction

of the 1947 charter amendments is aided by an understanding of the background of the Red Cross.

Since 1864, several Geneva Conventions have provided for neutral persons from various nations

to administer relief for the sick and wounded in times of war.  See 36 U.S.C. § 1  note; 36 U.S.C. § 3;

*Department of Employment* v. *United States*, 385 U.S. 355, 359 & n.8 (1966).  In 1881, what is now

known as the American National Red Cross was formed to serve that function.  See 36 U.S.C. § 1 note.

The Red Cross has been reincorporated several times and was granted its first congressional charter in

1905.  In granting the charter, Congress stated that it "believed that the importance of the work demands

a repeal of the present charter and a reincorporation of the society under Government supervision."  *Ibid*.

The 1905 charter formally assigned to the Red Cross various peacetime duties, including disaster

relief and prevention, in addition to its military-related duties.  See 36 U.S.C. § 3; *Department of*

*Employment*, 385 U.S. at 359.  The Red Cross's blood services program, directly at issue in the increasing

litigation against the Red Cross, plays a central role in discharging those important duties.  As Solicitor

General Thurgood Marshall advised this Court in *Department of Employment*:

> By carrying on an extensive blood collection program, maintaining blood banks and training
> people in such skills as nursing, first aid and life saving, the Red Cross is prepared to offer
> the nation effective help in case of disaster or war.

Brief for the Appellees 21-22, *Department of Employment* v. *United States*, 385 U.S. 355 (1966) (O.T.

1966, No. 78) [hereinafter *Department of Employment* Brief].

3

The 1905 charter empowered the Red Cross "to sue and be sued in courts of law and equity within the jurisdiction of the United States." Act of Jan. 5, 1905, ch. 23, § 2, 33 Stat. 600. Whatever the meaning of that clause, the 1905 charter unquestionably created original federal jurisdiction because, as of 1905, *all* federally chartered corporations were automatically within the jurisdiction of the federal courts. The then-prevailing law of original federal jurisdiction was stated in the *Pacific Railroad Removal Cases*, 115 U.S. 1 (1885), which held that the fact of federal incorporation *by itself* conferred federal jurisdiction over all cases involving federally chartered corporations.

This grant of federal jurisdiction over all Red Cross cases became less clear in 1925, when Congress overruled *Pacific Railroad* by passing what is now 28 U.S.C. § 1349, which may by its terms be limited to stock corporations.1/  It is unclear whether Congress intended Section 1349 to apply to the Red Cross, a non-stock corporation.  What is clear is that, notwithstanding Section 1349, Congress may confer federal jurisdiction over a corporation by specific language in its corporate charter.  In *Osborn* v. *Bank of the United States*, *supra*, this Court held that a sue-and-be-sued clause making specific reference to the federal courts conferred federal jurisdiction.  The sue-and-be-sued clause in *Osborn* gave the Bank the right "to sue and be sued * * * in all state courts having competent jurisdiction, and in any circuit court of the United States."  22 U.S. (9 Wheat.) at 817.

After the enactment of Section 1349, the Red Cross considered revisions to its charter and by-laws.  The Chairman of the Red Cross appointed a distinguished committee, known as the Harriman Committee, to recommend such changes. See Pet. App. 12a. The Harriman Committee Report is formally entitled *Report of the Advisory Committee on Organization* (June 11, 1946).  See C.A. App. 94-138; App., *infra*, 1a-2a.  Its recommendations were the acknowledged basis of Congress's 1947 amendments to the Red Cross charter. S. Rep. No. 38, 80th Cong., 1st Sess. 1 (1947); H.R. Rep. No. 337, 80th Cong., 1st Sess. 6 (1947). The Committee in 1946 recommended that the Red Cross charter be amended to "make it clear that the Red Cross can sue and be sued in the Federal Courts" because "in view of the limited nature of the *jurisdiction* of the Federal Courts it seems desirable that this *right* be clearly stated in the charter." Harriman Committee Report 35, 36, App., *infra*, 2a (emphasis added).  Congress

---

1/  That statute provides that "[t]he district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."

4

responded to that suggestion by adding the words "State or Federal" to the sue-and-be-sued clause, so

that it now entitles the Red Cross "to sue and be sued in courts of law and equity, *State or Federal*, within

the jurisdiction of the United States." 36 U.S.C. § 2 (emphasis added).  Neither the Senate nor the House

report comments on the purpose of the amendment beyond endorsing the Harriman Committee Report,

but Senator Walter George remarked at a hearing:  "I think the purpose of the bill is very clear, and that

is to give the jurisdiction in State courts and Federal courts, and I think we had better leave it there."

*American National Red Cross:  Hearing on S. 591 Before the Senate Comm. on Foreign Relations*,

80th Cong., 1st Sess. 10 (1947).

The charter revisions that were undertaken in 1946-1947 changed far more than the sue-and-be-

sued clause, and they served broad purposes identified in the Harriman Committee Report.  One such

purpose was "recognition of the national stature of the Red Cross and of the national interests in aid of

which the Red Cross now functions."  Harriman Committee Report 15, App., *infra*, 1a.  The Report also

acknowledged that the Red Cross is an "agency of the Government of the United States" for various

purposes.  *Id.* at 20, App., *infra*, 1a.  This Court likewise has noted that, "time and time again, both the

President and the Congress have recognized and acted in reliance upon the Red Cross' status virtually as

an arm of the Government"; thus, despite some "respects in which the Red Cross differs from the usual

government agency," it is a "tax-immune instrumentalit[y] of the United States."  *Department of

Employment*, 385 U.S. at 359-360; see also *United States* v. *City of Spokane*, 918 F.2d 84, 87 (9th

Cir. 1990) ("there can be no doubt" that "the Red Cross *is* an instrumentality of the United States"), cert.

denied, 111 S. Ct. 2888 (1991).

Several important national and international aspects of the Red Cross are among those that have

led this Court and others to conclude that the Red Cross is an instrumentality of the national government.

For example, the President of the United States appoints eight members of the Red Cross's Board of

Governors.  36 U.S.C. § 5(a).  The Department of Defense audits the Red Cross annually.  36 U.S.C. § 6.

The Red Cross in practice as well as by law works hand in hand with the United States Government.  See

generally *Department of Employment* Brief, *supra*.  It is *the* entity that performs the United States'

obligations under specified existing treaties and has even been designated in advance "to perform all the

duties devolved upon a national society" by any future "treaty or convention similar in purpose to which the

5

United States of America may hereafter give its adhesion."  36 U.S.C. § 3; see *Department of Employment* Brief 16-17.  In recognition of the Red Cross's international importance, its 1947 charter amendments were placed within the jurisdiction of the Senate Committee on Foreign Relations and the House Committee on Foreign Affairs.  See S. Rep. No. 38, 80th Cong., 1st Sess. (1947); H.R. Rep. No. 337, 80th Cong., 1st Sess. (1947).  John W. Davis, then Solicitor General and Counselor to the Red Cross, described the Red Cross in 1918 as "a quasi-governmental organization, * * * designated by Presidential order for the fulfillment of certain treaty obligations into which the United States has entered." *Quoted in Department of Employment* Brief 24-25.

The question presented here is whether this important instrumentality of the United States, whose charter originally provided for removal to federal court and now makes specific reference to those courts, may remove a nondiversity action from state court.

### B.     The Proceedings Below

The Red Cross removed this case from New Hampshire state court to the federal district court pursuant to 28 U.S.C. § 1441(a) and (b).  The district court denied respondents' motion to remand, holding that the sue-and-be-sued clause in the Red Cross charter creates original federal jurisdiction and thus entitles the Red Cross to remove to federal court actions to which it is a party.  Pet. App. 23a-24a.  The court relied on *Osborn* v. *Bank of the United States*, *supra*, in which this Court held that a sue-and-be-sued clause that referred expressly to federal courts did confer federal jurisdiction.

On interlocutory appeal, the First Circuit reversed.  The court determined that *Osborn* did not control the analysis because a broad reading of *Osborn* could not be sustained in light of "subsequent case law and legislation." Pet. App. 7a.  Apparently concluding that the Red Cross charter was "ineptly drafted" because it did not contain a clearer statement conferring federal jurisdiction (*id.* at 16a), the court held that the charter creates only the capacity to sue and be sued, not federal jurisdiction.

The court of appeals found this case closer to *Bankers Trust Co.* v. *Texas & Pacific Railway*, 241 U.S. 295 (1916), than to *Osborn*.  Pet. App. 7a-9a.  In *Bankers Trust*, this Court held that a sue-

6

and-be-sued clause that referred to "all courts of law and equity within the United States" was not a grant

of jurisdiction to federal courts, but merely conferred the capacity to sue and be sued where jurisdiction

was otherwise established.  Although there is no specific reference to the federal courts at all in that clause

(as there was in *Osborn* and is in the Red Cross charter), the First Circuit read *Bankers Trust* to turn on

the failure of the clause to "mention *a particular* federal court (i.e., the circuit court)."  *Id.* at 8a (emphasis

added); see also *id.* at 10a.  The First Circuit also inferred from *Bankers Trust*, and 28 U.S.C. § 1349,

a general rule "that a congressional grant of such jurisdiction should not be implied from ambiguous

language."  Pet. App. 9a.

The court of appeals further distinguished *Osborn* on the ground that the charter in *Osborn* gave

the Bank power to "sue and be sued * * * in all state courts *having competent jurisdiction*, and in any

circuit court of the United States."  22 U.S. (9 Wheat.) at 817, *quoted in* Pet. App. 9a (emphasis added

by the First Circuit).  The court reasoned that the presence of the phrase "of competent jurisdiction" in the

portion of the *Osborn* charter dealing with state courts, combined with its absence from the portion of the

charter dealing with federal circuit courts, justified reading the statute as one conferring jurisdiction on the

federal courts.  By contrast, the Red Cross charter refers to state and federal courts in a single clause

without the phrase "having competent jurisdiction."  The First Circuit deemed the "parallel" treatment of

state and federal courts in the Red Cross charter sufficient to distinguish it from the one at issue in *Osborn*.

*Id.* at 10a.

Finally, the court of appeals dismissed the legislative history of the Red Cross charter on the ground

that it showed no "clear intent on the part of Congress to confer original [federal] jurisdiction."  Pet. App.

12a.  The court acknowledged the reference to "jurisdiction" in the Harriman Committee Report but refused

to accord it weight because the word is not used in the formal recommendation, the statutory amendment,

or the Senate Report.  *Id.* at 12a-14a.  Relying on other contemporaneous statutes, the court also noted

that Congress could have made its intention to confer jurisdiction clearer.  *Id.* at 14a-15a.  The court

ordered that the case be remanded to state court if diversity jurisdiction did not provide an independent

basis for removal.  *Id.* at 2a-3a.  The district court, which had previously indicated its intention to join

7

nondiverse parties whom respondents had sued separately in state court (Pet. App. 21a-23a, 28a),

reaffirmed its position and remanded the case to state court (see Br. in Opp. App. 13a-15a).2/

## INTRODUCTION AND SUMMARY OF ARGUMENT

This Court has ruled consistently that an express reference to the federal courts in a federal

corporation's sue-and-be-sued clause creates federal jurisdiction over actions involving that corporation.

The seminal and still controlling case on point is *Osborn* v. *Bank of the United States*, 22 U.S. (9 Wheat.)

738 (1824).  In that case, the Bank's charter allowed it to "sue and be sued * * * in all State Courts having

competent jurisdiction, *and in any circuit court of the United States*."  22 U.S. (9 Wheat.) at 817

(emphasis added).  The Court determined that this charter language constituted an express grant of federal

jurisdiction over cases involving the Bank:

> These words seem to the Court to admit of but one interpretation; they cannot be made
> plainer by explanation.  They give, expressly, the right to "sue and be sued," "in every
> circuit court of the United States," and it would be difficult to substitute other terms which
> would be more direct and appropriate for the purpose.

22 U.S. (9 Wheat.) at 817.  This Court concluded that the Bank's sue-and-be-sued clause "confers

jurisdiction on the Circuit Courts of the United States, if Congress can confer it" (*id*. at 818).

In reaching that decision, the Court distinguished an earlier case involving the Bank's predecessor,

*Bank of the United States* v. *Deveaux*, 9 U.S. (5 Cranch) 61 (1809), on the ground that the charter in

*Deveaux* referred only to "courts of record" (*id*. at 85) and did not specify the federal courts.  Thus,

*Osborn* established the principle that reference to the federal courts in a sue-and-be-sued clause creates

federal jurisdiction.

In the *Pacific Railroad Removal Cases*, *supra*, this Court went well beyond *Osborn* by holding

that the mere fact of federal incorporation creates federal jurisdiction over cases involving those

corporations.  Congress reacted by withdrawing federal jurisdiction based solely on a railroad's federal

incorporation (Act of Jan. 28, 1915, ch. 22, § 5, 38 Stat. 803), and in 1925 limited the ability of a

corporation to invoke federal jurisdiction purely on the ground that it was federally chartered (see 28

---

2/  For the reasons stated in the Red Cross's reply brief at the petition stage (at 2-4), it is clear that the
remand to state court neither divests this Court of jurisdiction nor renders the case moot.  See, *e.g.*, *Aetna
Casualty & Surety Co.* v. *Flowers*, 330 U.S. 464, 466-467 (1947) (remand to state court cannot "defeat
this Court's jurisdiction"); 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure*
§ 3740, at 598 (1985); 1A J. Moore & B. Ringle, *Moore's Federal Practice* ¶ 0.169[2.-1], at 697
(1990).

8

U.S.C. § 1349).  Those enactments in no way undermine *Osborn*'s applicability to the present case, however, because *Osborn*'s statutory holding is grounded strictly in the charter language that referred to the federal courts, not in the fact of federal incorporation.

Subsequent case law confirms the validity of distinguishing between jurisdiction based on charter language and jurisdiction based on the fact of federal incorporation.  In *Bankers Trust Co.* v. *Texas & Pacific Railway*, 241 U.S. 295 (1916), this Court again construed charter language that empowered a railroad to sue and be sued "in all courts of law and equity *within the United States*" but did not refer expressly to the federal courts.  *Id.* at 302 (emphasis added).  The Court found that charter language to suffer from "the same generality" as the language in *Deveaux*, and held that it did not create federal jurisdiction.  *Id.* at 304-305.  Under *Osborn*, *Deveaux*, and *Bankers Trust*, it is clear that express reference to the federal courts in the sue-and-be-sued clause is necessary to create federal jurisdiction. It is equally clear, however, that reference to a *specific* federal court is *not* required for federal jurisdiction. Indeed, on the only occasion when this Court *has* confronted a sue-and-be-sued clause that referred specifically to the federal courts but not to any particular federal court, it found the clause to be a grant of jurisdiction.  *D'Oench, Duhme & Co.* v. *FDIC*, 315 U.S. 447, 455 (1942).

We submit that the foregoing case law is enough to decide this case.  Under *Osborn*, a reference to the federal courts in a sue-and-be-sued clause creates federal jurisdiction.  The First Circuit tried to limit *Osborn* to its facts, but there is no reason to do so.  *Osborn* did not turn on (or even mention) the distinctions that the First Circuit thought important:  the distinction between reference to a particular federal court and reference to the federal *courts* generally, and the distinction between "parallel" and unparallel treatment of state and federal courts.  Nor can either distinction be sustained after *D'Oench*.  In addition, there is no reason why a court *should* limit *Osborn* to its facts.  Doing so would frustrate the intent of a Congress that was entitled to rely on *Osborn* as written, promote complexity in the law of jurisdiction, and deprive the Red Cross of a needed federal forum.

9

If the Court believes it necessary to look beyond the case law to the legislative history of the Red Cross charter, it will find additional support for reading the charter as a grant of jurisdiction. The Harriman Committee expressly referred to the charter amendment as one pertaining to the jurisdiction of the federal courts and the "right" of the Red Cross to sue in those courts, and jurisdiction was referred to in the hearings on the amendments. There is no proper basis to discount those references. The First Circuit also erred by demanding a clearer statement from Congress before it would find jurisdiction. One could just as easily demand a clearer statement from Congress before finding that the Red Cross charter merely confers the *capacity* to sue in federal court, especially in light of the complete implausibility of reading the 1947 amendment as nothing but a reaffirmation of a capacity for federal suit that indisputably existed under the *1905* charter. The First Circuit's negative inferences are not a reliable way to ascertain the meaning of the Red Cross charter.

## ARGUMENT

### THE RED CROSS CHARTER CREATES ORIGINAL FEDERAL JURISDICTION OVER ALL CASES INVOLVING THE RED CROSS

The Red Cross charter provides that the American National Red Cross "shall have * * * the power to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States." 36 U.S.C. § 2. Under *Osborn* v. *Bank of the United States*, 22 U.S. (9 Wheat.) 738 (1824), such a sue-and-be-sued clause must be read to confer jurisdiction on the federal courts in all suits by or against the Red Cross. The legislative history of 36 U.S.C. § 2, although unnecessary to a decision in favor of jurisdiction, confirms that reading.

## I.   *OSBORN* V. *BANK OF THE UNITED STATES* IS DISPOSITIVE

The rule that emerges from this Court's past decisions, and should reemerge from this case, is a simple one: If Congress refers explicitly to federal courts when conferring on an entity the power to sue and be sued, the sue-and-be-sued clause confers jurisdiction on those courts. We read *Osborn* to stand for that exact proposition. Because the Red Cross charter specifically refers to the federal courts in its sue-and-be-sued clause, *Osborn* is dispositive, and the Court need not even consider arguments based on the circumstances surrounding the amendment of the Red Cross charter. See *Kaiser* v. *Memorial Blood Center*, 938 F.2d 90, 93 (8th Cir. 1991).

10

The First Circuit read *Osborn* quite differently. That court construed *Osborn* as a case narrowly limited to finding jurisdiction based on a charter worded *exactly* like the charter of the second Bank of the United States; the court thought the significance of the case "limited to its focus upon the `sue and be sued' language of the *particular* charter" (Pet. App. 7a (emphasis added)). As we will now show, it is wrong to read *Osborn* that way. First, the reasoning that the Court employed in *Osborn* is utterly inconsistent with the very distinctions that the First Circuit thought important, as is evident from careful examination of the *Osborn* litigation itself, and subsequent litigation including *D'Oench, Duhme & Co.* v. *FDIC*, 315 U.S. 447 (1942). Second, any effort to "reinterpret" *Osborn*, so as to confine it to its facts, would surely cause more harm than good.

A. **The Grounds On Which The First Circuit Attempted To Distinguish *Osborn* Are Inconsistent With This Court's Reasoning In That Case And Subsequent Cases**

The First Circuit posed the correct question: "whether the grant of power to `sue and be sued' expressly in a federal court, as well as in a state court, leads by itself to" the conclusion that an entity is subject to original federal jurisdiction, rather than merely having the capacity to sue in federal court. Pet. App. 7a. The court answered that question by refusing to ascribe "talismanic significance" to "a simple reference to federal courts in a congressional charter." *Ibid.* Rather, before the First Circuit would accept a charter as being within the *Osborn* rule, it would apparently demand two things: "mention [of] a *particular* federal court" (Pet. App. 8a (emphasis added); see also *id*. at 10a ("reference to the jurisdiction of specific courts")); and a reference to state courts of "competent jurisdiction" as opposed to a "parallel" treatment of state and federal courts in the sue-and-be-sued clause (*id*. at 9a-10a).

Each of those features happened to be present in the charter of the second Bank of the United States. Yet they played no role whatever in the arguments of counsel or the decision of the Court in *Osborn*. To reinterpret *Osborn* as *requiring* those features before a court will find jurisdiction would distort the Court's reasoning beyond recognition. Moreover, this Court has held that a sue-and-be-sued clause that lacks *either* of those features is a basis for federal jurisdiction. *D'Oench, Duhme & Co.* v. *FDIC, supra*. Although the First Circuit purported to find justification for its distinctions in other decisions of this Court, this Court has *never* rejected an argument for federal jurisdiction when the sue-and-be-sued

11

clause referred to the federal courts; its decisions rejecting jurisdictional arguments do not rest on the factors that the First Circuit cited.

    **1.**    *The Distinction Between A Charter That Mentions A Specific Federal Court And One That Refers Generally To The Federal Courts Is Insignificant*

In *Bank of the United States* v. *Deveaux*, 9 U.S. (5 Cranch) 61 (1809), and in *Bankers Trust Co.* v. *Texas & Pacific Railway*, 241 U.S. 295 (1916), this Court construed sue-and-be-sued clauses as conferring merely the capacity to sue in federal courts, rejecting the argument that they conferred jurisdiction on the federal courts. The clause in *Deveaux* gave the Bank the power to sue and be sued "in Courts of record, or in any other place whatsoever." The clause in *Bankers Trust* gave the railroad the power to sue and be sued "in all courts of law and equity within the United States." These decisions from 183 and 76 years ago are the only cases in which the Court has ever held that a sue-and-be-sued clause does not create federal jurisdiction. Cf. Pet. App. 11a n.5 (ascribing significance to the fact that only once "in the 166 years since *Osborn*" has this Court held that a sue-and-be-sued clause *does* create federal jurisdiction).

By contrast, in *Osborn* the Court construed a sue-and-be-sued clause as conferring jurisdiction on the federal courts. The clause in *Osborn* gave the Bank the power to sue and be sued "in all State Courts having competent jurisdiction, and in any Circuit Court of the United States."

The striking difference between the clauses held to be nonjurisdictional and the one held to be jurisdictional is that the former do not refer to the federal courts by name at all, whereas the latter does. Nevertheless, *solely* on the authority of *Deveaux* and *Bankers Trust*, the First Circuit held that the relevant distinction is between the mention of "a particular federal court (i.e., the circuit court)" in *Osborn* and the failure to mention any *specific* court in the other cases. Pet. App. 8a. There is not a word in any of the three opinions by this Court ascribing any significance to that distinction; the First Circuit simply invented it as a way to make the Red Cross charter look more like *Deveaux* and *Bankers Trust* than like *Osborn*.

In fact, *Osborn* and the later decision in *D'Oench* are flatly inconsistent with the First Circuit's revisionist interpretation of those cases. The words that Chief Justice Marshall chose to distinguish *Osborn* from *Deveaux* are important, for they demonstrate that it was the reference to the federal courts *generally*, not the reference to *a specific* federal court, that influenced the Court's decision:

12

> Whether this decision [*Deveaux*] be right or wrong, it amounts only to a declaration, that a general capacity in the bank to sue, *without mentioning the courts of the Union*, may not give a right to sue in those courts. To infer from this, that words expressly conferring a right to sue in *those courts*, do not give the right, is surely a conclusion which the premises do not warrant.

22 U.S. (9 Wheat.) at 818 (emphasis added). Likewise, the Chief Justice's opinion for the Court, in concluding that the jurisdiction so conferred was consistent with Article III of the Constitution, paraphrased the Bank's charter as one "enabling the Bank to sue in the Courts of the United States." *Id*. at 828. Had the Court thought it important that the circuit courts were mentioned specifically, rather than the federal courts generally, it surely would not have employed that phrase. Furthermore, the counsel who argued *Osborn* on behalf of the Bank never attempted to distinguish *Deveaux* on the ground that the clause in that case mentioned courts generally rather than a specific federal court. Rather, their argument was that the charter in *Deveaux* "did not confer the privilege of suing in *the Courts of the Union, they* not being specifically mentioned. But no doubt was intimated, that *those Courts* would have had jurisdiction, if *they* had been mentioned in the act." *Id*. at 805 (emphasis added).

There is a much more natural explanation than the one the First Circuit posited for the difference between the specific mention of the circuit courts in the Bank's charter and the general reference to the federal courts in the Red Cross charter. At the time of *Osborn*, the federal court system was "a curious one * * * [with] two tiers of trial courts," the district and circuit courts. P. Bator, P. Mishkin, D. Meltzer & D. Shapiro, *Hart and Wechsler's The Federal Courts and the Federal System* 31 (3d ed. 1988); see generally *id*. at 30-33, 34-36 (discussing structure of the federal judiciary from 1789 through mid-1800s). In order to confer trial jurisdiction through a sue-and-be-sued clause, Congress naturally specified which of the two possible trial courts would have jurisdiction. In 1911, however, there ceased to be "two sets of federal trial courts" when Congress "finally abolished the old circuit courts." *Id*. at 38-39 & nn.47 & 49. In seeking to confer jurisdiction on federal trial courts through a sue-and-be-sued clause, therefore, Congress no longer has any need to specify one or another such court; it is obvious that the district courts are intended. That difference between the federal judicial structure as of 1824 and the modern structure explains the difference between the *Osborn* charter, on the one hand, and modern charters such as the 1933 FDIC charter construed in *D'Oench* (discussed below) and the 1947 Red Cross charter, on the other. It does not make sense to read into that difference an intention to confer jurisdiction when a clause

13

refers to the circuit courts but not when it refers generally to the federal courts.  *Osborn* rests instead on

the distinction between a clause that refers to the federal courts and one that does not.

*Bankers Trust* adds nothing to the analysis.  The clause at issue in that case was indistinguishable

from the clause at issue in *Deveaux* (it did not refer to the federal courts), and the Court so held.  241 U.S.

at 304.

The First Circuit read into *Bankers Trust*, 241 U.S. at 303, a general principle that "a

congressional grant of [federal] jurisdiction should not be implied from ambiguous language." Pet. App.

9a.  There is, however, no such principle, at least not when the source of the jurisdictional grant is a sue-

and-be-sued clause resembling the clause in *Osborn*.  What the Court said at the cited page in *Bankers

Trust* was that "it seems reasonable to believe that Congress would have expressed" a purpose to grant

federal jurisdiction over all cases involving the railroad "in altogether different words" from the actual

language of the charter in that case, which made no mention of the federal courts.  One cannot generalize

from that statement to the proposition that, even when Congress *has* referred explicitly to the federal courts,

it will be assumed not to have conferred federal jurisdiction if it could have spoken more clearly.  Nor do

legislative developments since 1824 have anything to do with the proper analysis here, as the court of

appeals suggested (Pet. App. 7a, 8a).  This Court in *Bankers Trust* did not, as the First Circuit claimed,

"interpret[] * * * the railroad's charter in light of" a 1915 amendment to the Judiciary Act (Pet. App. 8a)

but rather held the charter to be indistinguishable from *Deveaux*.  See 241 U.S. at 303-305.  The 1915

statute (and the similar legislation now codified at 28 U.S.C. § 1349) are relevant only insofar as they show

that federally chartered entities seeking to invoke federal jurisdiction must rely -- precisely as the Red Cross

does here -- on their sue-and-be-sued clauses, not on the mere fact of federal incorporation.

*D'Oench* proves conclusively that the First Circuit erred.  It represents the only occasion when this

Court *has* confronted a sue-and-be-sued clause that referred specifically to the federal courts but not to

any particular federal court.  The Court found the clause to be a grant of jurisdiction.  It wrote:

> The jurisdiction of the District Court in this case, however, is not based on diversity of
> citizenship.  Respondent, a federal corporation, brings this suit under an Act of Congress
> authorizing it to sue and be sued "in any court of law or equity, State or Federal."

14

315 U.S. at 455.  In an accompanying footnote, the Court noted that the quoted Act "further provides" that

actions in which the FDIC is a party shall be deemed to arise under federal law, yet the Court made no

comment on the significance of that fact.  *Id.* at 455 n.2.  The fact that the Court regarded as having

jurisdictional importance was the one quoted in the text, *i.e.*, that the statute -- exactly like the Red Cross

charter -- authorized suit "in any court of law or equity, State or Federal."

Justice Jackson, concurring, stated even more explicitly that the "arising under" language found in

the majority's footnote had a substantive purpose (*i.e.*, directing the courts to fashion a federal common

law) and that jurisdiction itself was conferred by the statute's reference to the federal courts:

> This case is not entertained by the federal courts because of diversity of citizenship.  It is
> here because a federal agency brings the action, and the law of its being provides, with
> exceptions not important here, that:  "All suits of a civil nature at common law or in equity
> to which the Corporation shall be a party shall be deemed to arise under the laws of the
> United States: . . ."  *That this provision is not merely jurisdictional is suggested by the
> presence in the same section of the Act of the separate provision that the Corpora-
> tion may sue and be sued "in any court of law or equity, State or Federal."*

315 U.S. at 467-468 (emphasis added and footnote omitted).

The universally shared assumption in the 1940s (when the Red Cross charter was amended) that

a sue-and-be-sued clause referring to the federal courts confers jurisdiction is evident from the Solicitor

General's position before this Court.  When identifying the basis for federal jurisdiction in the case, the

Solicitor General cited only the sue-and-be-sued clause.  Brief for the Respondent in Opposition 8,

*D'Oench, Duhme & Co.* v. *FDIC*, 315 U.S. 447 (1942) (O.T. 1941, No. 206); Brief for the Respondent

17-18, 59, *D'Oench, Duhme & Co.* v. *FDIC*, 315 U.S. 447 (1942) (O.T. 1941, No. 206).3/  In light of

those affirmative statements by the Solicitor General, the First Circuit is wrong to have claimed that

"[n]either the parties nor the Court directly raised the validity of subject matter jurisdiction under the

F.D.I.C. charter."  Pet. App. 11a.  The basis of jurisdiction, although not the ultimate issue in *D'Oench*,

was addressed by the parties and important to the Court's analysis.

---

3/  The Solicitor General's brief in opposition stated that "[t]he jurisdiction of the federal court in this case
arose * * * from the statute of Congress authorizing respondent to sue and be sue in state and federal
courts."  The Solicitor General's merits brief stated, somewhat less clearly, that "the federal jurisdiction is
based upon an act of Congress (Federal Reserve Act, Sec. 12B (j), Appendix, *infra*, pp. 58-59))."  Any
ambiguity about whether the Solicitor General was relying on the sue-and-be-sued clause or the "arising
under" clause is removed, however, by reference to page 59 of the appendix, where the "arising under"
clause of subsection (j) was *omitted*.

15

The First Circuit conceded that this Court in *D'Oench* at least "not[ed] * * * incidentally that jurisdiction was premised on the `sue and be sued' clause," but it did not accept the proposition that the FDIC's sue-and-be-sued clause was adequate to confer jurisdiction.  Rather, the court embarked on its own self-guided tour of federal jurisdiction in FDIC cases.  Pet. App. 11a & n.5.  The court insisted that the "arise under" clause mentioned in a footnote as something the Act "further provides" -- not the sue-and-be-sued clause cited in the text of the majority opinion, the concurrence, and the government's briefs -- was the part of the statute that conferred jurisdiction.  But it is this Court's reasoning that must control, and this Court has held that a sue-and-be-sued clause that refers generally to the federal courts confers federal jurisdiction.

2.   *The Reference In The* **Osborn** *Charter To State Courts Of "Competent Jurisdiction" Is Irrelevant To The Holding That The Reference To The Federal Courts Is A Grant Of Jurisdiction*

The First Circuit purported, however erroneously, to find support in *Deveaux* and *Bankers Trust* for its distinction between charters that mention a specific federal court and charters that refer to the federal courts generally.  Yet it relied solely on *Osborn* in finding it significant that the Red Cross charter treats state and federal courts in "parallel fashion."  Pet. App. 9a-10a.  *Osborn*, as the First Circuit read it, turned on the peculiar indication in the Bank's charter that "Congress was concerned with the jurisdiction of the courts in which the bank could `sue and be sued'" (*id.* at 9a), namely its reference to "state courts *having competent jurisdiction*" (*ibid.*).  Thus, it is particularly important to review the *Osborn* litigation to see whether the absence of parallel treatment there -- the reference to "state courts *having competent jurisdiction*" but to "any circuit court of the United States" -- played any role in the Court's reasoning.  Such a review shows that it did not.

The First Circuit's argument, had anyone thought of it in 1824, would have perhaps been an ingenious way to try to distinguish the decision in *Deveaux*.  In that case, a unanimous Court had held in an opinion by Chief Justice Marshall that the first Bank of the United States had no power to sue in federal court even though its charter allowed it to "sue and be sued * * * in courts of record, or any other place

16

whatsoever." 9 U.S. (5 Cranch) at 85.  As Justice Johnson eventually pointed out in his *Osborn* dissent, the Court could have construed those expansive words as a grant of jurisdiction, because, "if the Circuit Courts were *Courts of record*, the right of suit given was as full as any other words could have made it." 22 U.S. (9 Wheat.) at 880.  But the Court chose not to construe those words expansively in *Deveaux*. Counsel for the second Bank of the United States thus had much reason to fear that the Marshall Court would construe its charter the same way, and their fear must have been exacerbated when the Court set *Osborn* for reargument on the jurisdictional question on March 10 and 11, 1824, in tandem with *Bank of the United States* v. *Planters' Bank of Georgia*, 22 U.S. (9 Wheat.) 904 (1824). See generally 3-4 G. Edward White, *The Oliver Wendell Holmes Devise History of the Supreme Court of the United States* 524, 526 (1988).

The argument presented by Henry Clay, Daniel Webster, and Thomas Sergeant on behalf of the Bank is reported in the United States Reports.  22 U.S. (9 Wheat.) at 804-811.  Despite their strong incentive to present every colorable argument they could muster, those historic figures did not present the argument that the First Circuit now regards as critical to *Osborn*'s holding.  Rather, they were content to argue that, in response to *Deveaux*, "Congress adopted the phraseology which is contained in the present charter, giving the Bank power `to sue and be sued in all State Courts having competent jurisdiction, and *in any Circuit Court of the United States*.' Power in the party `to sue,' confers jurisdiction on the Court." 22 U.S. (9 Wheat.) at 805 (emphasis in original).

The Court itself cited the affirmative language conferring the right to sue in federal courts, not the reference to "jurisdiction" in the portion of the clause dealing with state courts, as the basis of its holding. "To infer from this, that words expressly conferring a right to sue in those Courts, do not give the right, is surely a conclusion which the premises do not warrant.  The act of incorporation, then, confers jurisdiction on the Circuit Courts of the United States, if Congress can confer it." 22 U.S. (9 Wheat.) at 818.  Only one Justice mentioned the reference to state courts in his analysis, and he reached precisely the opposite conclusion from the First Circuit.  Justice Johnson maintained that the treatment of state and federal courts in the Bank's charter *was* parallel and that, because Congress could not have been "ignoran[t] of the fact" that it lacked any power to confer jurisdiction on state courts, it must not have conferred jurisdiction on the federal courts either.  *Id*. at 881-882 (Johnson, J., dissenting).

17

The thought that Congress demonstrated its desire to confer jurisdiction on federal courts by its lack of "parallel" treatment of state and federal courts played no role in the *Osborn* litigation. It is the brainchild of the First Circuit alone and is not a historically defensible way to limit *Osborn*.

Furthermore, *D'Oench* again disproves the First Circuit's theory of how *Osborn* and sue-and-be-sued clauses are to be read. The clause in that case permitted suit "in any court of law or equity, State or Federal," and thus treated state and federal courts in precisely parallel fashion. The First Circuit tried to escape from *D'Oench* on the ground that the sue-and-be-sued clause in that case was not the basis of federal jurisdiction, but, as we have explained above, that is not true. *D'Oench* thus reaffirms what *Osborn* demonstrates: a reference to the federal courts in a sue-and-be-sued clause is a grant of federal jurisdiction; nothing more is necessary. Accordingly, the Red Cross charter should be construed as a grant of jurisdiction.

**B.      There Is No Good Reason To Narrow *Osborn***

As we have shown, the only reading of *Osborn* that is faithful to its reasoning, and to its place within the larger body of precedent including *Deveaux*, *Bankers Trust*, and *D'Oench*, is contrary to the First Circuit's analysis. Even if we suppose for the sake of argument that a court is entitled to confine those precedents to their facts in order to reach a desirable result, the First Circuit's approach has nothing to recommend it. Rather, it would systematically misapprehend the intent of a legislature that for 168 years has had no reason to doubt that it can confer jurisdiction on the federal courts by referring to them specifically in the sue-and-be-sued clause of a federally chartered entity; it would introduce complexity and uncertainty into a jurisdictional field that should be marked by simple, easy-to-apply rules; and it would deprive the Red Cross of a federal forum even though litigation against the Red Cross may raise complex issues of federal immunity best decided by the federal courts.

1. The First Circuit's approach, which requires a presumption *against* jurisdiction that can be overcome only by unambiguous language (Pet. App. 8a-9a), is likely to frustrate rather than further the will of Congress, both in this case and generally. Congress has enacted charters and sue-and-be-sued clauses with every reason to expect that it was conferring jurisdiction by referring to the federal courts. It must have been clear to Congress ever since 1824 that adding the words "State or Federal" to a federal charter creates federal jurisdiction, because that has been the accepted interpretation of such a reference since

*Osborn.* One must, of course, presume that Congress intended those words to have the meaning that this Court had given them in similar legislation. *Miles* v. *Apex Marine Corp.*, 111 S. Ct. 317, 325 (1990); *Cannon* v. *University of Chicago*, 441 U.S. 677, 695-698 (1979); see also *Bowen* v. *Massachusetts*, 487 U.S. 879, 896 (1988). Congress is entitled to assume that the same interpretive standard will be applied to virtually identical jurisdictional provisions. *Christianson* v. *Colt Industries Operating Corp.*, 486 U.S. 800, 808 (1988) ("cases interpreting identical language in other jurisdictional provisions * * * have naturally applied the same test").

The principle that Congress could create federal jurisdiction over federally chartered corporations by identifying the federal courts in the sue-and-be-sued clause was particularly well established at the time Congress amended the Red Cross charter. Indeed, just a few years before Congress amended the charter, Justice Cardozo stated for a unanimous Court that "there was no thought to disturb" "the doctrine of the charter cases." *Gully* v. *First National Bank*, 299 U.S. 109, 114 (1936). Even closer to the time of the Red Cross charter amendments, this Court ruled in *D'Oench* that there is original federal jurisdiction over FDIC cases based on that agency's sue-and-be-sued clause, which is identical to the Red Cross's clause in all pertinent respects (including those the First Circuit thought important). See pp. 13-14, *supra*. However rigorous or unrigorous the analysis in that case, it clearly reflects the operating assumption of knowledgeable observers -- including both this Court and the Solicitor General -- that a reference to the federal courts in a sue-and-be-sued clause was a clear, proper, and adequate way to confer jurisdiction on the federal courts. And, only two years before Congress amended the Red Cross charter, the Eighth Circuit observed that federal jurisdiction existed over the Federal Savings and Loan Insurance Corporation as a result of that entity's power "to sue and be sued, complain and defend, in any court of law or equity, State or Federal." *FSLIC* v. *Kearney Trust Co.*, 151 F.2d 720, 724-725 (8th Cir. 1945) (quoting *D'Oench*).

Congress thus was entitled to rely on the proposition that a sue-and-be-sued clause that refers to the federal courts confers jurisdiction. Even if the Court *now* thought that a better rule would be to require a "clearer" statement of jurisdiction, it would be improper to undermine that reliance interest by denying effect to words that had been definitively construed as of the time Congress acted. In the closely related area of *stare decisis*, this Court just last month wrote that "*[s]tare decisis* has added force when the

19

legislature * * * ha[s] acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response." *Hilton* v. *South Carolina Public Railways Commission*, 60 U.S.L.W. 4056, 4057 (U.S. Dec. 16, 1991); see also *Pennsylvania* v. *Union Gas Co.*, 491 U.S. 1, 35 (1989) (opinion of Scalia, J.) (even a constitutional issue should not be revisited if Congress has passed statutes based on the assumption that this Court's prior resolution of that issue was the law); *Welch* v. *Texas Department of Highways & Public Transportation*, 483 U.S. 468, 496 (1987) (Scalia, J., concurring in part and concurring in the judgment) (same).

Congress has never had any reason to imagine that courts would attach significance to the creative distinctions (never mentioned in a judicial decision before litigation over the scope of the Red Cross charter began) that the First Circuit came up with in this case -- between a reference to a particular federal court and a reference to the federal courts generally, or between "parallel" and unparallel treatments of state and federal courts. Nor should Congress have to worry that the "currents of lawyerly invention" (*K mart*, 485 U.S. at 187) will spawn jurisdictional litigation over every slight variation of the wording in sue-and-be-sued clauses from entity to entity. The First Circuit's novel plain-statement requirement (Pet. App. 8a-9a) also cannot be viewed as a means of accurately ascertaining congressional intent. Such rules are imposed, at the expense of the occasional mistake in interpretation, when some special reason of policy requires that Congress speak with the utmost clarity. A plain-statement rule is not compelled by any overriding policy concern and has no basis here. See *Astoria Federal Savings & Loan Association* v. *Solimino*, 111 S. Ct. 2166, 2170 (1991) ("[r]ules of plain statement and strict construction prevail only to the protection of weighty and constant values").

In short, the approach most likely to ascertain congressional intent accurately, both in this case and in general, is also the approach most faithful to *Osborn*'s reasoning. Narrowing *Osborn* by reinterpretation would not serve congressional intent.

2. Simplicity in jurisdictional rules is a virtue not to be taken lightly. See, *e.g.*, *K mart Corp.* v. *Cartier, Inc.*, 485 U.S. 176, 187 (1988) (interpretation of jurisdictional rules should not "drift on the

20

currents of lawyerly invention"); *id*. at 196 (Scalia, J., dissenting) (same); *Bowen* v. *Massachusetts*, 487

U.S. at 930 (Scalia, J., dissenting).  The rule we advocate not only is compelled by *Osborn*, but also is

simple and easy to apply:  a sue-and-be-sued clause that refers to the federal courts expressly is a grant

of federal jurisdiction.

The First Circuit's approach, by contrast, is complicated and calls for a detailed comparison of any

charter to the *Osborn* charter to see whether linguistic variations raise some ambiguity that can then be

construed to negate the inference that the clause is a grant of jurisdiction.  The First Circuit's approach also

seems to call for a review of the legislative history in every case (see Pet. App. 12a-16a).

These are not trivial concerns, because other entities besides the Red Cross will be affected by this

Court's choice among the proposed modes of analysis.  Litigation by federal agencies over the jurisdictional

character of their charters, while fairly rare, has occurred, and has generally been resolved by an affirmative

finding of federal jurisdiction.  See *D'Oench, Duhme & Co.* v. *FDIC*, 315 U.S. at 455; *id*. at 468 n.5

(Jackson, J., concurring) (citing 12 U.S.C. § 1432, applicable to Federal Home Loan Banks, as a

jurisdiction-conferring statute indistinguishable from that of the FDIC); *Portsmouth Redevelopment &

Housing Authority* v. *Pierce*, 706 F.2d 471, 475 (4th Cir.) (12 U.S.C. § 1702, which provides that the

Secretary of Housing and Urban Development may "sue and be sued in any court of competent jurisdiction,

State or Federal," "confer[s] subject matter jurisdiction in the federal district court"), cert. denied, 464 U.S.

960 (1983); *FSLIC* v. *Kearney Trust Co.*, 151 F.2d at 724-725 (federal jurisdiction existed over the

Federal Savings and Loan Insurance Corporation as a result of that entity's power "to sue and be sued,

complain and defend, in any court of law or equity, State or Federal").  The Solicitor General also has

advised this Court:  "Plainly, Section 1702, by authorizing suit `in any court of competent jurisdiction, State

or Federal,' provides a basis for district court jurisdiction * * *."  Brief for the Respondents in Opposition

9, *Portsmouth Redevelopment & Housing Authority* v. *Pierce*, 464 U.S. 960 (1983) (No. 83-90).

Numerous agencies that have not so far litigated the jurisdictional character of their charters could

potentially be subject to such litigation, with its attendant uncertainties, if the First Circuit's complex position

prevails.4/

    3. Finally, there is no good reason to suppose that Congress intended to require the Red Cross

(or other entities whose charter interpretation will be affected by the decision in this case) to litigate in state

court.  To the contrary, there are good reasons to afford the Red Cross a federal forum in all cases.

    Congress determined in 1905 that the importance of the Red Cross's work warranted

reincorporation under federal supervision.  See p. 2, *supra*.  Congress deemed federal supervision

necessary because of the "*national* stature of the Red Cross" and the "*national* interests" served by the

Red Cross.  Harriman Committee Report 15, App., *infra*, 1a (emphasis added).  "[T]he federal

government still maintains ample supervision of and control over the Red Cross' activities through the

`specific duties' imposed upon it by Congress, the existing agreements between Red Cross and various

executive departments, the annual audit of the Red Cross by the Department of Defense, and the facts that

Red Cross personnel are subject to Defense Department regulations and, at least in time of war, to the

direction of the armed forces in battle areas."  *Department of Employment* Brief 30-31.  The Red Cross

is important as well in the field of foreign affairs (see p. 5, *supra*), in which the States necessarily play a

diminished role.  It is consistent with these interests for Congress to have provided jurisdiction for the Red

Cross in the *national* courts.  Even the First Circuit conceded that "[a]s a matter of practical sense, it is

easy to imagine that Congress would have conferred federal subject matter jurisdiction in cases by and

---

4/   12 U.S.C. § 1432(a) (Federal Home Loan Banks); 12 U.S.C. § 1441(c)(8) (FHLBB's Financing Corporation); 12 U.S.C. § 1441b(d)(8) (Resolution Funding Corporation); 12 U.S.C. § 1702 (Secretary of HUD); 12 U.S.C. § 1723a(a) (Government National Mortgage Association and Federal National Mortgage Association); 15 U.S.C. § 78ccc(b)(1) (Securities Investor Protection Corporation); 42 U.S.C. § 8105(b)(4) (Neighborhood Reinvestment Corporation).  Some of these statutes grant the power to sue and be sued "in any court of competent jurisdiction, State or Federal."  *E.g.*, 12 U.S.C. § 1723a(a).  The "of competent jurisdiction" language *weakens* the case for construing the statute as a grant of original federal jurisdiction, since a statute containing that language might be read to presuppose that jurisdiction is determined by some body of law other than the sue-and-be-sued clause itself.  See *Califano* v. *Sanders*, 430 U.S. 99, 106 n.6 (1977).  Nevertheless, at least one statute containing that language has been construed as a grant of federal jurisdiction (see *Portsmouth Redevelopment & Housing Authority* v. *Pierce*, 706 F.2d 471, 475 (4th Cir.), cert. denied, 464 U.S. 960 (1983)).  If that construction is proper, it follows *a fortiori* that the Red Cross charter, which lacks such language, confers jurisdiction.

against the Red Cross" and said that it was "tempt[ed] * * * to reach out for a reading of the statute which * * * may seem more in tune with the times."  Pet. App. 15a-16a.5/

Yet the First Circuit's decision that the Red Cross charter does not create federal jurisdiction will impede uniformity in resolving the federal questions that will arise repeatedly in litigation as a result of the Red Cross's status as a federal instrumentality.  Trial courts will need to decide, for example, whether the Red Cross shares the federal government's immunity from punitive damages and from jury trial demands. See *Okoro* v. *Children's Hospital National Medical Center*, Civ. No. 5325-87, slip op. 7 (D.C. Super. Ct. May 30, 1989) ("A Federal instrumentality retains its immunity from punitive damages unless Congress explicitly authorizes liability for such damages.  The statute creating the Red Cross did not provide such an explicit waiver.") (citation omitted); *Lehman* v. *Nakshian*, 453 U.S. 156, 168 (1981) (federal government exempt from jury trial demands); *In re Young*, 869 F.2d 158 (2d Cir. 1989) (United States Postal Service, as a federal instrumentality with a sue-and-be-sued clause, has immunity from jury trial demands); *Jones-Hailey* v. *TVA*, 660 F. Supp. 551 (E.D. Tenn. 1987) (same as to TVA).  Whatever the correct resolution of those questions may be, they are *federal* questions that should receive *federal* determination.  Cf. *International Primate Protection League* v. *Administrators of Tulane Educational Fund*, 111 S. Ct. 1700, 1709 (1991) (complex issues of federal immunity may "need[] the protection of a federal forum").  The potential for variant state court determinations of these issues strengthens the case for interpreting the Red Cross charter to create federal jurisdiction because the contrary result would undermine the national purposes for which the Red Cross was formed.

The only possible counterweight to these arguments is that some litigation against the Red Cross will principally involve questions of state law, and it could be argued that those questions should be entrusted to state courts.6/  But this Court rejected that very argument in its constitutional discussion in

_____

5/   The First Circuit's musings (Pet. App. 16a) about how it is easy to imagine that Congress *would have* wanted to confer federal jurisdiction over Red Cross cases, but impossible to find that it did so, are reminiscent of the comments of Justice Johnson's dissenting opinion in *Osborn*, 22 U.S. (9 Wheat.) at 873-874 ("I believe, that the good sense of a people, who know that they govern themselves, * * * would readily concede to the Bank, thus circumstanced, some, if not all the rights here contended for.  But I cannot persuade myself, that they have been conceded in the extent which this decision affirms.").  It is the philosophy of the *Osborn* dissent and not of the majority that animates the First Circuit's opinion.

6/   Another possible policy argument for requiring the Red Cross to litigate in state court is that only in state court can the Red Cross be sued along with other nondiverse co-defendants, such as a local doctor who treated the plaintiff.  Whatever force that policy argument might have had in the past, however, it is no

23

*Osborn*, 22 U.S. (9 Wheat.) at 819-820.  See also *The Mayor* v. *Cooper*, 73 U.S. (6 Wall.) 247, 252

(1867), *quoted in Mesa* v. *California*, 489 U.S. 121, 128-129 (1989).  Indeed, removal disputes arise

*only* when the case is brought under state law; suits expressly based on federal law are always removable

under 28 U.S.C. § 1441(b).  Nevertheless, Congress has determined that certain entities should have the

right always to litigate in federal rather than state court.  Although the need to protect certain federally

chartered entities from local prejudices manifested in state court has surely abated since the days of

*Osborn*,7/ just as surely there remain imbedded in the nation's statutory law a variety of provisions designed

to secure "the protection of a federal forum." *Willingham* v. *Morgan*, 395 U.S. 402, 407 (1969).  There

is no reason to deny the Red Cross that protection.  See *Reisner* v. *Regents of the University of*

*California*, No. CV-91-1252-JMI (JRx), slip op. 4-6 (C.D. Cal. Aug. 22, 1991) (observing, in

addressing the same jurisdictional issue presented here, that the national purposes for which the Red Cross

was chartered "may be thwarted if local or regional needs or prejudices are allowed to bring undue

pressure on the Red Cross[,] * * * [which] could easily be brought to bear in trial situations in a local

forum").

Ultimately, of course, the foregoing concerns are relevant only insofar as they bear on the proper

outcome as a matter of *statutory construction*, not the 1992 judicial perception of the Red Cross's "need"

*vel non* to remove cases to federal court.  But this discussion demonstrates that there are powerful reasons

to conclude that Congress would not have wanted to subject the Red Cross to state-court litigation without

its consent.8/  It would be unwise, as well as unfaithful to history, to read *Osborn* as the First Circuit read

---

longer relevant following the 1990 statutory amendments that provide for the exercise of pendent party jur-
isdiction to the fullest extent permitted by Article III of the Constitution.  See 28 U.S.C. § 1367(a).  It
would appear that, in many cases commenced after the effective date of Section 1367, if the Red Cross
is a defendant in federal court, other defendants could be joined as pendent parties without the need for
an independent basis of jurisdiction.

7/  It is no secret that a desire to protect the Bank of the United States from state hostility was part of the
impetus for the *Osborn* decision.  See 3-4 G. Edward White, *supra*, at 969; *Osborn*, 22 U.S. (9 Wheat.)
at 871-874 (Johnson, J., dissenting).

8/  Of course, the Red Cross can always consent to litigation in state court simply by forgoing exercise of
its right to remove the case.  It is in fact the Red Cross's practice to remove only those cases that it
perceives as implicating some interest of the national organization, not cases of purely local concern.  AIDS
cases, because they have ramifications for how the Red Cross runs its nationwide blood program, are of
far more than local concern.

24

it.  This Court should not go down that path, but should accept and reaffirm *Osborn* on the terms on which it was decided.

**II.     TO THE EXTENT THIS CASE CALLS FOR A PARTICULARIZED INQUIRY INTO THE INTENT OF CONGRESS IN AMENDING THE RED CROSS CHARTER, THAT INQUIRY CONFIRMS THAT THE SUE-AND-BE-SUED CLAUSE IS JURISDIC-TIONAL**

After distinguishing *Osborn* and *D'Oench* -- on grounds that we have shown to be erroneous -- the First Circuit proceeded to analyze what it called "the legislative history of the amendment."  Pet. App. 12a-16a.  The court then delved into the Harriman Committee Report, the reports of congressional committees, roughly contemporaneous amendments of *other* federal charters, and even the litigation position of the Red Cross in a 1951 district court case in its search for clues as to whether Congress really did or did not have jurisdiction in mind when it amended the Red Cross charter.

Far and away the best indication of Congress's intent in amending the Red Cross charter in 1947 is the words that Congress chose and their established interpretation at the time.  For the reasons we have already given, that analysis conclusively shows that the Red Cross charter confers jurisdiction on federal courts.  Nevertheless, the legislative history of the Red Cross charter, properly construed, strongly supports that conclusion.  Moreover, the other sources the First Circuit cited do not undermine it.

The actual legislative history of the charter amendments -- as opposed to the extraneous sources the First Circuit considered under the heading of "legislative history" -- certainly supports the Red Cross's position.  Nowhere does the Harriman Committee Report, any congressional debate, or either congressional committee report suggest that the amendment to the sue-and-be-sued clause was intended to address the Red Cross's *capacity* to sue.  Rather, those who commented on the issue in those materials -- the Harriman Committee and Senator George -- *expressly* stated the purpose of the amendment to be jurisdictional.  See pp. 3-4, *supra*.  Any perceived need to find legislative history to support the *Osborn*-based interpretation of the language of the statute therefore should have been satisfied.  See also *Anonymous Blood Recipient* v. *Sinai Hospital*, 692 F. Supp. 730, 733 (E.D. Mich. 1988) ("there is no ambiguity whatever in the language of the [Harriman Committee] recommendation").

25

The First Circuit, however, rejected these explicit references to "jurisdiction" on the curious ground that they were not repeated elsewhere. Pet. App. 12a-14a. The court found it significant, for example, that "the Senate Report makes no mention of the jurisdictional point whatsoever." *Id*. at 14a. But the Senate Report is less than two pages long (less than *one* full page of text) and states merely that the legislation incorporates the uncontroversial recommendations of the Harriman Committee Report. S. Rep. No. 38, 80th Cong., 1st Sess. (1947). Attaching importance to what that document does *not* say is grasping at straws. See *Harrison* v. *PPG Industries, Inc.*, 446 U.S. 578, 592 (1980) ("In ascertaining the meaning of a statute, a court cannot, in the manner of Sherlock Holmes, pursue the theory of the dog that did not bark."). Likewise, the First Circuit thought it meaningful that "the language of the [Harriman Committee] recommendation itself [Recommendation No. 22, App., *infra*, 2a] makes no such reference to jurisdiction" as is made in the explanatory paragraph accompanying the formal recommendation. Pet. App. 13a. But it makes no sense to disregard an explanatory paragraph just because it does more than repeat that which it is intended to explain. Finally, the First Circuit said that "the language of the amendment does not purport to expand the jurisdiction of federal courts to include all cases involving the Red Cross." Pet. App. 14a. But that statement simply assumes the court's conclusion. In fact, as we have shown, the language of the amendment, read in light of *Osborn*, plainly *does* give the federal courts jurisdiction over all cases involving the Red Cross. Indeed, the First Circuit's use of the word "expand" is a catachresis. Amending the charter in 1947 to provide for federal jurisdiction was not *expanding* such jurisdiction but merely *clarifying* that the federal jurisdiction undeniably conferred by the 1905 charter (see p. 3, *supra*) still would exist.

The remainder of the First Circuit's "legislative history" analysis proceeded by negative inference from extraneous sources. Because the Red Cross failed to argue that the charter confers federal jurisdiction in a single district court case in 1951, but rather argued for federal diversity jurisdiction, the court of appeals concluded that the charter cannot have "created a new basis for federal jurisdiction." Pet. App. 15a. Because Congress can use and sometimes has used clearer language to create jurisdiction, the court of appeals concluded that it must not have meant to confer jurisdiction here. *Id*. at 14a-15a. Those arguments are not convincing.

26

The court of appeals placed weight on the fact that, in *Patterson* v. *American Nat. Red Cross*, 101 F. Supp. 655 (S.D. Fla. 1951), the Red Cross is reported to have argued that the case was properly in federal court under diversity jurisdiction (a basis of jurisdiction that need not be invoked if the charter automatically confers federal jurisdiction over all Red Cross cases). The reported opinion of the district court is brief, and we have been unable to locate the papers that the parties filed with the court. It is possible that the Red Cross *did* argue for automatic jurisdiction under the sue-and-be-sued clause, but the district court either found it unnecessary to address the argument (because it ruled in the Red Cross's favor on what it may have considered simpler grounds) or simply misunderstood the argument. The district court did write, immediately after quoting the sue-and-be-sued clause: "Certainly Congress contemplated suits by or against the defendant in the Federal Courts when enacting the amendment." *Id*. at 656.

Even if the Red Cross did refrain from making the argument, there is no basis to discern why it did so. Its forbearance may have resulted from tactical considerations (*e.g.*, it may have been important to the Red Cross for some reason to establish judicially that it is a citizen of the District of Columbia) or from simple ignorance on the part of local counsel (who, in that era, were likely unpaid volunteers and may not even have been in touch with the national office of the Red Cross rather than its local Chapter), rather than -- as the court of appeals inferred -- from an informed knowledge that the charter was not intended to confer jurisdiction in the absence of an independent basis of jurisdiction. Accordingly, the possible failure of the Red Cross to argue its current position in *Patterson* says nothing meaningful about the correctness of that position.

The First Circuit's negative inference from Congress's failure to use clearer language fails for two reasons. First, in light of the long history of interpreting a reference to the federal courts in a sue-and-be-sued clause as a grant of jurisdiction, Congress had every reason to think that it *was* speaking clearly when it amended the Red Cross charter. Second, whether or not Congress could have chosen clearer language to express its wish to confer jurisdiction, Congress *certainly* could have spoken much more clearly if it had the intent that the court of appeals ascribed to it, *i.e.*, merely to confer capacity on the Red Cross to sue. The case against reading the charter as the First Circuit read it is far more compelling than the case against reading it as a grant of jurisdiction.

27

The court of appeals concluded that the 1947 amendment to the Red Cross charter had the effect of "conferring only the power to sue." Pet. App. 12a. But construing the amendment merely to endow the Red Cross with the capacity to sue makes the words "State or Federal" completely superfluous. It was unnecessary to add the words "State or Federal" to the 1905 charter to achieve that end, because the charter already empowered the Red Cross "to sue and be sued in courts of law and equity within the jurisdiction of the United States." Federal courts surely had been courts of law within the jurisdiction of the United States between 1905 and 1947; thus the First Circuit's interpretation of the 1947 amendment renders the amendment a nullity. That is error. See *South Carolina* v. *Catawba Indian Tribe, Inc.*, 476 U.S. 498, 510 n.22 (1986) ("[i]t is an `elementary canon of construction that a statute should be interpreted so as not to render one part inoperative'"); cf. *Freytag* v. *Commissioner of Internal Revenue*, 111 S. Ct. 2631, 2638 (1991).

Moreover, a comparison of the Red Cross charter to its most contemporaneous counterpart, which the First Circuit did not consider, shows that Congress would have chosen different words to convey only the *capacity* to sue and be sued in state and federal courts. If Congress had intended to do that, it could have given the Red Cross merely the power "to sue and be sued, to complain and to defend in any court of competent jurisdiction," without explicit reference to the federal courts. And that is precisely what Congress did in reincorporating the Export-Import Bank of the United States on June 9, 1947, just a month after it amended the Red Cross charter. Act of June 9, 1947, ch. 101, § 1, 61 Stat. 130 (current version at 12 U.S.C. § 635(a)(1)). But Congress was concerned with more than the capacity for suit; it wanted to confer on the Red Cross the *right* to be in federal court. Even the First Circuit grudgingly admitted that the relevant legislative history (the Harriman Committee Report) "refers to the jurisdiction of federal courts and the `right' of the Red Cross in this regard." Pet. App. 13a. That is why Congress inserted into the Red Cross charter language that had been held to create original federal jurisdiction.

The court of appeals compounded its error by misquoting in a significant way the statute it regarded as the best evidence that Congress in the 1947 amendment did not intend to create original federal jurisdiction. In August 1947, Congress passed a statute conferring on federal district courts jurisdiction over cases in which the Federal Crop Insurance Corporation sues or is sued. The court of appeals asserted that "Congress so amended the F.C.I.C. charter despite the presence of the language `sue and

be sued in any court, state or federal' in the corporation's original charter."  Pet. App. 14a.9/  The actual

language in the original FCIC charter, however, was quite different:  "The Corporation * * * may sue and

be sued in its corporate name in any court *of competent jurisdiction*, State or Federal."  Act of Feb. 16,

1938, ch. 30, § 506, 52 Stat. 73 (emphasis added).  The "of competent jurisdiction" language -- which is

absent from the Red Cross charter -- introduces a potential ambiguity that Congress may have wished to

eliminate, since the earlier version might be read to presuppose that jurisdiction is determined by some body

of law other than the sue-and-be-sued clause itself.  See note 4, *supra*.  Because no such ambiguity has

ever appeared in the Red Cross charter, the 1947 amendment of the FCIC charter cannot form the basis

for any inference about the meaning of the 1947 amendment of the Red Cross charter.  The court of

appeals erred by drawing such an inference.

The inference that the court of appeals drew is wrong for the additional reason that it inverts the

proper time sequence that should guide the interpretation of the Red Cross charter.  Courts must look to

"the state of the law *at the time the legislation was enacted*," and not to subsequently enacted laws, to

interpret the meaning of statutory language. *Merrill, Lynch, Pierce, Fenner & Smith, Inc.* v. *Curran*, 456

U.S. 353, 378 (1982) (emphasis added).  Congress's subsequent ideas about how to make a jurisdictional

reference in a sue-and-be-sued clause even clearer than it is in the Red Cross charter cannot reach back

to introduce ambiguity into that charter, which, as of May 8, 1947, was as clear a conferral of jurisdiction

in a sue-and-be-sued clause as Congress had ever enacted.

Thus, even if a venture into "legislative history" is appropriate in this case, a fair construction of the

legislative history, which discusses federal jurisdiction and the "right" of the Red Cross to litigate in federal

court, strongly confirms that 36 U.S.C. § 2 creates original federal jurisdiction.  The First Circuit was able

to reach a contrary conclusion only by drawing negative inferences on one side without considering the

equally plausible inferences on the other side, by misquoting one of the statutes on which it heavily relied,

and in general by construing every possible ambiguity in the legislative history against a finding of jurisdic-

tion.  See, *e.g.*, Pet. App. 12a ("The legislative history of the amendment is relatively sparse and evinces

_____

9/  The court of appeals relied further on language in the charter of the Commodity Credit Corporation,
also enacted *after* the amendments to the Red Cross charter, that conferred *exclusive* original jurisdiction
on the federal courts.  Pet. App. 14a-15a (citing Act of June 29, 1948, ch. 704, § 4, 62 Stat. 1070).  The
court failed to appreciate that Congress naturally would use different language to create exclusive rather
than concurrent jurisdiction.

29

no *clear* intent on the part of Congress to confer original jurisdiction.") (emphasis added); *id.* at 13a ("The

Harriman Committee report itself does not *clearly* indicate that the proposed amendment was aimed at

conferring federal subject matter jurisdiction * * *.") (emphasis added).  By demanding *clear* evidence

before it would find jurisdiction, and disregarding the evidence that contradicts the alternative reading of

the statute as one that merely confers the capacity to sue, the court largely predetermined the outcome of

its analysis.  A more open-minded approach, however, yields a very different conclusion, and one

consistent with the intent of Congress and the prior rulings of this Court.

## CONCLUSION

The judgment of the court of appeals should be reversed.

Respectfully submitted.

KENNETH S. GELLER
  *Counsel of Record*
ROY T. ENGLERT, JR.
JAMES G. DUNCAN
  *Mayer, Brown & Platt*
  *2000 Pennsylvania Ave., N.W.*
  *Washington, D.C. 20006*
  *(202) 463-2000*

BRUCE M. CHADWICK
BRENDAN COLLINS
  *Arnold & Porter*
  *1200 New Hampshire Ave., N.W.*
  *Washington, D.C. 20036*

KAREN SHOOS LIPTON
  *General Counsel*
EDWARD L. WOLF
  *Associate General Counsel*
  *American National Red Cross*
  *17th & D Streets, N.W.*
  *Washington, D.C. 20006*

*Counsel for Petitioner*

JANUARY 1992

1a

## APPENDIX

**Excerpts from the *Report of the Advisory
Committee on Organization* (June 11, 1946)**

[15]                  V.  OBJECTIVES OF THE COMMITTEE.

In order to frame the recommendations for a modern structure for the Red Cross, the Committee, in line with the task outlined by the Chairman, adopted the three following objectives:

1) That the Red Cross will truly represent the Nation that it serves;

2) That the governing organization will truly represent, and be responsive to, the entire membership of the Red Cross;

3) That the organizational structure of the Red Cross will lend itself to the most effective possible handling of the programs and activities of the Red Cross.

Each of these objectives presents a separate problem.

The first objective requires a recognition of the national stature of the Red Cross and of the national interests in aid of which the Red Cross now functions, both in time of peace and in time of war.  The foregoing analysis of Red Cross programs indicates that while the organization has advanced far beyond the initial limited concept of a Red Cross society as an agency for the relief of sick and wounded military personnel, it still performs important functions under international treaties in time of war.  It also in World War II greatly extended the relief to the families of military personnel and contemplates extensive service to veterans during the post-war period. It has also assumed certain commitments in the international relief field.  In conducting this type of activity the Red Cross functions as an agency of the Federal Government. It would therefore seem that to meet the first objective the organization should afford proper representation of the national interest at large.

* * * * *

[20]          COMPOSITION OF THE BOARD OF GOVERNORS! PRESIDENTIAL APPOINTMENTS.

*Recommendation No. 2.  The Charter should provide that of the Board of Governors of 50, eight members shall be selected by the President of the United States, of whom one shall be designated by him as President of the Red Cross.  The remaining seven shall be selected from departments and agencies of the Federal Government.  Of these seven, at least one and not more than three shall be selected from the armed forces, and the remainder shall be officials whose positions and interests are such as to qualify them to contribute toward the accomplishment of Red Cross programs and objectives.\*/*

It is the belief of the Committee that, as laid down in the objectives which it has set to guide its recommendations, the organization should be truly representative of the membership of the Red Cross and of the various national interests and elements which it serves.

The American Red Cross is, and will continue to be, it is assumed, the agency of the Government of the United States for the performance of certain of the treaty obligations assumed by the United States under the Geneva Convention.  The American Red Cross, it is assumed, will continue also to be the agency of the United States in the performance of certain services to the armed forces in time of war, and to the armed forces and veterans in time of peace.  These responsibilities of the Red Cross, as well as responsibilities in the fields of disaster relief, health and welfare, require a close affiliation with the Federal

---

*Approved by the Central Committee without change.

2a

Government which can be best brought about by the continuation in the [21] Charter of provisions requiring the naming of a portion of the governing body by the President of the United States.

It is thought that adequate representation of the interests of the Federal Government and its various agencies which directly touch the American Red Cross can be achieved through a membership of 7 on a governing body of 50.

At least one member of the armed forces should be required to be named by Charter provision, but selections from the other departments or agencies of the Government should be left within the discretion of the President of the United States, who would, in making his selections from time to time, take into account the areas of activity of the Red Cross most closely touching the Federal Government.

* * * * *

[35] SUIT IN THE FEDERAL COURTS.

*Recommendation No. 22. The Charter should make it clear that the Red Cross can sue and be sued in the Federal Courts.*/

The present Charter gives the Red Cross the power "to sue and be sued in courts of law and equity within the jurisdiction of the United States". The Red Cross has in several instances sued in the Federal Courts, and its powers in this respect have not been questioned. How-
[36] ever, in view of the limited nature of the jurisdiction of the Federal Courts it seems desirable that the this right be clearly stated in the Charter.

---

*Approved by the Central Committee without change.