# EXHIBIT 6

As filed pursuant to Rule 424(b)(5)
Under the Securities Act of 1933
Registration No. 333-131662

PROSPECTUS SUPPLEMENT
(To Prospectus dated March 28, 2006)

$966,897,100
(Approximate)

CWMBS, INC.
Depositor

[LOGO] Countrywide(R)
---------------------
HOME LOANS
Sponsor and Seller

Countrywide Home Loans Servicing LP
Master Servicer

CHL Mortgage Pass-Through Trust 2006-HYB3
Issuing Entity
Distributions payable monthly, beginning May 22, 2006

----------

The issuing entity will issue certificates, including the following classes of
certificates that are offered pursuant to this prospectus supplement and the
accompanying prospectus:

| | |
|---|---|
| ❯❯ | **View the table below in Excel** 📊 |

| | Initial Class Certificate Balance/Initial Notional Amount(1) | Pass-Through Rate(2) | |
|---|---|---|---|
| Class 1-A-1A | $ 35,000,000 | Variable | Class 3-A-2 |
| Class 1-A-1B | $ 40,182,000 | Variable | Class 3-A-IO |
| Class 1-A-2 | $  8,354,000 | Variable | Class 4-A-1A |
| Class 1-A-IO | $ 83,536,000(3) | Variable | Class 4-A-1B |
| Class 2-A-1A | $141,112,000 | Variable | Class 4-A-1C |
| Class 2-A-B-1 | $ 70,292,000 | Variable | Class 4-A-2 |
| Class 2-A-B-2 | $ 29,363,000 | Variable | Class 4-A-IO |
| Class 2-A-B-3 | $ 41,457,000 | Variable | Class A-R |
| Class 2-A-2 | $ 31,358,000 | Variable | Class M |

| Class 2-A-IO | $243,290,000(3) | Variable | Class B-1 |
| --- | --- | --- | --- |
| Class 3-A-1A | $ 40,000,000 | Variable | Class B-2 |
| Class 3-A-1B | $218,684,000 | Variable | |

---

Consider carefully the risk factors beginning on page S-19 in this prospectus supplement and on page 2 in the prospectus.

The certificates represent obligations of the issuing entity only and do not represent an interest in or obligation of CWMBS, Inc., Countrywide Home Loans, Inc. or any of their affiliates.

This prospectus supplement may be used to offer and sell the offered certificates only if accompanied by the prospectus.

---

(1) This amount is subject to a permitted variance in the aggregate of plus or minus 5%.

(2) The classes of certificates offered by this prospectus supplement are listed, together with their pass-through rates and their initial ratings, in the tables under "Summary--Description of the Certificates" that begin on page S-6 of this prospectus supplement.

(3) The Class 1-A-IO, Class 2-A-IO, Class 3-A-IO and Class 4-A-IO Certificates are interest only notional amount certificates. The initial notional amounts of the Class 1-A-IO, Class 2-A-IO, Class 3-A-IO and Class 4-A-IO Certificates are set forth in the table but are not included in the aggregate certificate balance of all the certificates offered.

This prospectus supplement and the accompanying prospectus relate only to the offering of the certificates listed above and not to the other classes of certificates that will be issued by the issuing entity. The certificates represent interests in a pool consisting primarily of four loan groups of 30-year conventional, hybrid adjustable rate mortgage loans secured by first liens on one- to four-family residential properties.

Credit enhancement for the offered certificates consists of subordination. The credit enhancement for each class of certificates varies. Not all credit enhancement is available for every class. The credit enhancement for the certificates is described in more detail in this prospectus supplement.

These securities have not been approved or disapproved by the Securities and Exchange Commission or any state securities commission nor has the Securities and Exchange Commission or any state securities commission passed upon the accuracy or adequacy of this prospectus supplement or the prospectus. Any representation to the contrary is a criminal offense.

Countrywide Securities Corporation will offer the classes of certificates listed above (other than the Class 1-A-IO, Class 2-A-IO, Class 3-A-IO and Class 4-A-IO Certificates) to the public at varying prices to be determined at the time of sale. The Class 1-A-IO, Class 2-A-IO, Class 3-A-IO and Class 4-A-IO Certificates will not be purchased by Countrywide Securities Corporation and are being transferred to Countrywide Home Loans, Inc. as partial consideration on or about April 28, 2006 for the sale of the mortgage loans. See "Method of Distribution" in this prospectus supplement. The proceeds to the depositor from the sale of the offered certificates (other than the Class 1-A-IO, Class 2-A-IO, Class

weighted average lives of the certificates.

| | |
|---|---|
| Inability To Replace Master Servicer Could Affect Collections And Recoveries On The Mortgage Loans | The structure of the master servicing fee might affect the ability to find a replacement master servicer. Although the trustee is required to replace the master servicer if the master servicer is terminated or resigns, if the trustee is unwilling (including for example because the master servicing fee is insufficient) or unable (including for example, because the trustee does not have the systems to service mortgage loans), it may be necessary to appoint a replacement master servicer. Because the master servicing fee is structured as a percentage of the stated principal balance of each mortgage loan, it may be difficult to replace the master servicer at a time when the balance of the mortgage loans has been significantly reduced because the fee may be insufficient to cover the costs associated with servicing the mortgage loans and related REO properties remaining in the pool. The performance of the mortgage loans may be negatively impacted, beyond the expected transition period during a servicing transfer, if a replacement master servicer is not retained within a reasonable amount of time. |

S-25

Some of the statements contained in or incorporated by reference in this prospectus supplement and the accompanying prospectus consist of forward-looking statements relating to future economic performance or projections and other financial items. These statements can be identified by the use of forward-looking words such as "may," "will," "should," "expects," "believes," "anticipates," "estimates," or other comparable words. Forward-looking statements are subject to a variety of risks and uncertainties that could cause actual results to differ from the projected results. Those risks and uncertainties include, among others, general economic and business conditions, regulatory initiatives and compliance with governmental regulations, customer preferences and various other matters, many of which are beyond our control. Because we cannot predict the future, what actually happens may be very different from what we predict in our forward-looking statements.

The Mortgage Pool

General

CWMBS, Inc. (the "depositor") will purchase the mortgage loans in each loan group (the "Group 1 Mortgage Loans", the "Group 2 Mortgage Loans", the "Group 3 Mortgage Loans" and the "Group 4 Mortgage Loans", respectively, and together referred to as the "Mortgage Loans") in the mortgage pool from Countrywide Home Loans, Inc. ("Countrywide Home Loans") and one or more other sellers affiliated with Countrywide Financial Corporation (each of which is referred to as a "seller" and together they are referred to as the "sellers") pursuant to a pooling and servicing agreement (the "pooling and servicing

agreement") dated as of April 1, 2006, among the depositor, the sellers, Countrywide Home Loans Servicing LP, as master servicer (the "master servicer"), and The Bank of New York, as trustee (the "trustee"), and will cause the Mortgage Loans to be assigned to the trustee for the benefit of the holders of the certificates. Each seller, other than Countrywide Home Loans, will be a special purpose entity established by Countrywide Financial Corporation or one or more of its subsidiaries, which will sell mortgage loans previously acquired from Countrywide Home Loans.

Under the pooling and servicing agreement, Countrywide Home Loans will make certain representations, warranties and covenants to the depositor relating to, among other things, the due execution and enforceability of the pooling and servicing agreement and certain characteristics of the Mortgage Loans. In addition, each of the sellers will represent and warrant that, prior to the sale of the related Mortgage Loans to the depositor, the applicable seller had good title to the Mortgage Loans sold by it, was the sole owner of those Mortgage Loans free and clear of any pledge, lien, encumbrance or other security interest and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign those Mortgage Loans pursuant to the pooling and servicing agreement. Subject to the limitations described in the next sentence and under "--Assignment of the Mortgage Loans," Countrywide Home Loans (or the related seller, in the case of the representation regarding good title) will be obligated to repurchase or substitute a similar mortgage loan for any Mortgage Loan as to which there exists deficient documentation or as to which there has been an uncured breach of any representation or warranty relating to the characteristics of the Mortgage Loans that materially and adversely affects the interests of the certificateholders in that Mortgage Loan. Countrywide Home Loans will represent and warrant to the depositor in the pooling and servicing agreement that the Mortgage Loans were selected from among the outstanding one- to four-family mortgage loans in Countrywide Home Loans' portfolio as to which the representations and warranties set forth in the pooling and servicing agreement can be made and that the selection was not made in a manner intended to adversely affect the interests of the certificateholders. See "Mortgage Loan Program--Representations by Sellers; Repurchases" in the prospectus.

Under the pooling and servicing agreement, the depositor will assign all of its right, title and interest in the representations, warranties and covenants (including the sellers' repurchase or substitution obligations) to the trustee for the benefit of the certificateholders. The depositor will represent that following the transfer of the Mortgage Loans to it by the sellers, the depositor had good title to the Mortgage Loans and that each of the mortgage notes was subject to no offsets, defenses or counterclaims. The depositor will make no other representations or warranties with respect to the Mortgage Loans and will have no obligation to repurchase or substitute Mortgage Loans with

S-26

deficient documentation or which are otherwise defective. The sellers are selling the Mortgage Loans without recourse and will have no obligation with respect to the certificates in their respective capacities as sellers other than the repurchase or substitution obligation described above. The obligations of the master servicer with respect to the certificates are limited to the master servicer's contractual servicing obligations under the pooling and servicing agreement.

The statistical information with respect to the Mortgage Loans set forth in this prospectus supplement is based on the Stated Principal Balances of the Mortgage Loans as of the later of (x) April 1, 2006 and (y) the date of

origination of each the Mortgage Loan (referred to as, the "cut-off date"). The depositor believes that the information set forth in this prospectus supplement regarding the Mortgage Loans as of the cut-off date is representative of the characteristics of the Mortgage Loans that will be delivered on the closing date. However, certain Mortgage Loans may prepay or may be determined not to meet the eligibility requirements for inclusion in the final mortgage pool. A limited number of mortgage loans may be added to or substituted for the Mortgage Loans described in this prospectus supplement, although any addition or substitution will not result in a material difference in the final mortgage pool. As a result, the cut-off date information regarding the actual Mortgage Loans delivered on the closing date may vary somewhat from the cut-off date information regarding the Mortgage Loans presented in this prospectus supplement.

As of the cut-off date, the aggregate Stated Principal Balance of the Mortgage Loans in the mortgage pool was approximately $981,621,231, which is referred to as the "Cut-off Date Pool Principal Balance." The principal balance of each Mortgage Loan as of the cut-off date reflects the application of scheduled payments of principal due on the Mortgage Loan on or prior to the cut-off date, whether or not received. Whenever reference is made in this prospectus supplement to a percentage of some or all of the Mortgage Loans, that percentage is determined on the basis of the Stated Principal Balances of such Mortgage Loans as of the cut-off date unless otherwise specified. The Mortgage Loans have been divided into four groups of Mortgage Loans (each is referred to as a "loan group"). Set forth below is the approximate aggregate Stated Principal Balance as of the cut-off date of the Mortgage Loans included in each loan group:

| Loan Group | Aggregate Stated Principal Balance |
| ---------- | ---------------------------------- |
| Loan Group 1 | $88,773,392 |
| Loan Group 2 | $333,242,945 |
| Loan Group 3 | $305,448,813 |
| Loan Group 4 | $254,156,080 |

The Cut-off Date Pool Principal Balance of the Mortgage Loans set forth above is subject to a variance of plus or minus five percent.

Set forth in the table below is the approximate percentage of Mortgage Loans in each loan group that were originated by the named originator, in each case by the aggregate Stated Principal Balance of the Mortgage Loans in the applicable loan group as of the cut-off date. The remainder of the Mortgage Loans were originated by unrelated third parties.

| Loan Group | Countrywide Home Loans, Inc. | American Home Mortgage Corp. | Ohio Savings Bank | Provident Funding Associates, LP |
| ---------- | ---------------- | -------------- | ------------ | -------------- |
| Loan Group 1 | 29.40% | 1.32% | 33.28% | 11.19% |
| Loan Group 2 | 54.08% | 21.44% | 1.03% | 0.72% |
| Loan Group 3 | 72.13% | 1.81% | 3.52% | 0.59% |
| Loan Group 4 | 71.80% | 8.99% | 0.00% | 0.00% |

All of the Mortgage Loans to be included in the issuing entity will be evidenced by promissory notes secured by first lien deeds of trust, security deeds or mortgages on one- to four-family residential properties. All of the Mortgage Loans have original terms to maturity of 30 years. Except for the "interest only loans," all of the Mortgage Loans provide for the amortization of the amount financed over a series of substantially equal monthly payments. An "interest only loan" requires monthly payments of only accrued interest for a

specified period of time from the date of origination for that mortgage loan.
Thereafter, the monthly payments will be adjusted so that the entire principal
balance of that mortgage loan will be amortized over the remaining term of that
mortgage loan. In

S-27

addition, all of the Mortgage Loans provide that payments are due on the first
day of each month (the "Due Date"). Scheduled monthly payments made by the
borrowers on the Mortgage Loans (referred to as "scheduled payments") either
earlier or later than their scheduled Due Dates will not affect the amortization
schedule or the relative application of the payments to principal and interest.
Except for certain of the Mortgage Loans as specified in the table below, the
borrowers may prepay their Mortgage Loans at any time without payment of a
prepayment charge. Any prepayment charges received on these Mortgage Loans will
not be distributed to certificateholders.

| Loan Group | Number of Mortgage Loans with Prepayment Charges | Percentage of Aggregate Cut-off Date Stated Principal Balance |
|------------|------------------------------------------------|--------------------------------------------------------------|
| Loan Group 1 | 35 | 0.98% |
| Loan Group 2 | 106 | 5.13% |
| Loan Group 3 | 258 | 9.43% |
| Loan Group 4 | 245 | 11.37% |

The mortgage rate (the "Mortgage Rate") of each of the Mortgage Loans will
be fixed for a certain period of time after the origination of that Mortgage
Loan. Each mortgage note for the Mortgage Loans will provide for adjustments to
the related Mortgage Rate at the end of the initial fixed-rate period and,
semi-annually or annually thereafter (each such date, an "Adjustment Date") to
equal the sum, rounded to the nearest 0.125%, of (1) one of (A) the weekly
average yield on United States Treasury securities adjusted to a constant
maturity of one year as published by the Federal Reserve Board in the Federal
Reserve Statistical Release H.15 and most recently available as of a day
specified in the related note (the "One-Year CMT Index"), (B) the average of the
London interbank offered rates for six-month U.S. dollar deposits in the London
market, generally as set forth in either The Wall Street Journal or some other
source generally accepted in the residential mortgage loan origination business
and specified in the related mortgage note, or, if such rate ceases to be
published in The Wall Street Journal or becomes unavailable for any reason, then
based upon a new index selected by the master servicer, based on comparable
information, in each case, as most recently announced as of either 45 days prior
to, or the first business day of the month immediately preceding the month of,
such Adjustment Date (the "Six-Month LIBOR Index") or (C) the average of the
London interbank offered rates for one-year U.S. dollar deposits in the London
market, generally as set forth in either The Wall Street Journal or some other
source generally accepted in the residential mortgage loan origination business
and specified in the related mortgage note, or, if such rate ceases to be
published in The Wall Street Journal or becomes unavailable for any reason, then
based upon a new index selected by the master servicer, based on comparable
information, in each case, as most recently announced as of either 45 days prior
to, or the first business day of the month immediately preceding the month of,
such Adjustment Date (the "One-Year LIBOR Index") (each of the One-Year CMT
Index, the Six-Month LIBOR Index and the One-Year LIBOR Index, a "Mortgage
Index") and (2) a fixed percentage amount specified in the related mortgage note
(the "Gross Margin"); provided, however, that the Mortgage Rate for a Mortgage
Loan will not increase or decrease by more than a certain amount specified in
the related mortgage note (each limit on adjustments in the Mortgage Rate is

referred to as a "Subsequent Periodic Rate Cap"), with the exception of the initial Adjustment Date, for which the Mortgage Rate on each Mortgage Loan will not increase or decrease by more than the amount specified in the related mortgage note (each limit on initial adjustments in the Mortgage Rate is referred to as an "Initial Periodic Rate Cap"). In addition, adjustments to the Mortgage Rate for each Mortgage Loan are subject to a lifetime maximum interest rate (the "Maximum Mortgage Rate"). Each Mortgage Loan specifies a lifetime minimum interest rate (the "Minimum Mortgage Rate"), which generally is equal to the Gross Margin for that Mortgage Loan.

All of the Mortgage Loans in loan group 1 are 3/1 Mortgage Loans or 3/27 Mortgage Loans; all of the Mortgage Loans in loan group 2 are 5/1 Mortgage Loans or 5/25 Mortgage Loans; all of the Mortgage Loans in loan group 3 are 7/1 Mortgage Loans or 7/23 Mortgage Loans; and all of the Mortgage Loans in loan group 4 are 10/1 Mortgage Loans or 10/20 Mortgage Loans. A substantial majority of the Mortgage Loans in loan group 1 are 3/1 Interest Only Loans or 3/27 Interest Only Loans. A substantial majority of the Mortgage Loans in loan group 2 are 5/1 Interest Only Loans or 5/25 Interest Only Loans. A substantial majority of the Mortgage Loans in loan group 3 are 7/1 Interest Only Loans or 7/23 Interest Only Loans. A substantial majority of the Mortgage Loans in loan group 4 are 10/1 Interest Only Loans or 10/20 Interest Only Loans.

A "3/1 Mortgage Loan", a "5/1 Mortgage Loan", a "7/1 Mortgage Loan" and a "10/1 Mortgage Loan" have mortgage rates that are fixed for approximately 36, 60, 84 and 120 months, respectively, after origination

S-28

before the Mortgage Rate for that Mortgage Loan becomes subject to annual adjustment based on the One-Year CMT Index or the One-Year LIBOR Index, as applicable. A "3/27 Mortgage Loan", a "5/25 Mortgage Loan", a "7/23 Mortgage Loan" and a "10/20 Mortgage Loan" have mortgage rates that are fixed for approximately 36, 60, 84 and 120 months, respectively, after origination before the Mortgage Rate for that Mortgage Loan becomes subject to semi-annual adjustment based on the Six-Month LIBOR Index.

A "3/1 Interest Only Loan" and a "3/27 Interest Only Loan" require a payment of only interest due for approximately 36, 60 or 120 months after origination after which amortization of the principal balance of that Mortgage Loan is required. A "5/1 Interest Only Loan" and a "5/25 Interest Only Loan" require the payment of only interest due for approximately 60 or 120 months after origination after which amortization of the principal balance of that Mortgage Loan is required. A "7/1 Interest Only Loan" and a "7/23 Interest Only Loan" require the payment of only interest due for approximately 84 or 120 months after origination after which amortization of the principal balance of that Mortgage Loan is required. A "10/1 Interest Only Loan" and a "10/20 Interest Only Loan" require the payment of only interest due for approximately 120 months after origination after which amortization of the principal balance of that Mortgage Loan is required.

The earliest first payment date, earliest stated maturity date and latest stated maturity date of any Mortgage Loan in each loan group is set forth in the following table:

| Loan Group | Earliest First Payment Date | Earliest Stated Maturity Date | Latest Stated Maturity Date |
| ---------- | --------------- | -------------- | ------------- |
| Loan Group 1 | June 1, 2005 | May 1, 2035 | April 1, 2036 |
| Loan Group 2 | June 1, 2005 | May 1, 2035 | April 1, 2036 |

| Loan Group 3 | May 1, 2005 | April 1, 2035 | April 1, 2036 |
| Loan Group 4 | June 1, 2005 | May 1, 2035 | March 1, 2036 |

As of the cut-off date, no Mortgage Loan was delinquent more than 30 days. As of the cut-off date, no Mortgage Loan has been delinquent more than 30 days since its origination.

As of the cut-off date, no Mortgage Loan will be subject to a buydown agreement. No Mortgage Loan will provide for deferred interest or negative amortization.

No Mortgage Loan will have had a Loan-to-Value Ratio at origination of more than 100.00%. Generally, each Mortgage Loan with a Loan-to-Value Ratio at origination of greater than 80% will be covered by a primary mortgage guaranty insurance policy issued by a mortgage insurance company acceptable to Fannie Mae or Freddie Mac. The policy provides coverage in an amount equal to a specified percentage multiplied by the sum of the remaining principal balance of the related Mortgage Loan, the accrued interest thereon and the related foreclosure expenses. The specified coverage percentage for mortgage loans with terms to maturity between 25 and 30 years is generally,

o   12% for Loan-to-Value Ratios between 80.01% and 85.00%,

o   25% for Loan-to-Value Ratios between 85.01% and 90.00%,

o   30% for Loan-to-Value Ratios between 90.01% and 95.00%, and

o   35% for Loan-to-Value Ratios between 95.01% and 100%.

The specified coverage percentage for mortgage loans with terms to maturity of up to 20 years ranges from

o   6% to 12% for Loan-to-Value Ratios between 80.01% to 85.00%,

o   12% to 20% for Loan-to-Value Ratios between 85.01% to 90.00%, and

o   20% to 25% for Loan-to-Value Ratios between 90.01% to 95.00%.

S-29

The required coverage percentage of mortgage insurance is determined by the type, term and Loan-to-Value Ratio of the mortgage loan and may also vary based on occupancy type. However, under certain circumstances, the specified coverage level may vary from the foregoing.

With regard to the Mortgage Loans specified in the table below, the lender (rather than the borrower) acquired the primary mortgage guaranty insurance and charged the related borrower an interest premium.

| Loan Group | Percentage of Aggregate Cut-off Date Stated Principal Balance |
| --------- | --------------------------------- |
| Loan Group 1 | 0.16% |
| Loan Group 2 | 0.20% |
| Loan Group 3 | 0.46% |
| Loan Group 4 | 0.12% |

Except for these lender acquired mortgage insurance Mortgage Loans, no primary mortgage guaranty insurance policy will be required with respect to any

Mortgage Loan if maintaining the policy is prohibited by applicable law or after the date on which the related Loan-to-Value Ratio is 80% or less or, based on a new appraisal, the principal balance of the Mortgage Loan represents 80% or less of the new appraised value. The primary mortgage guaranty insurance policy will be maintained for the life of the lender acquired mortgage insurance Mortgage Loans, unless otherwise provided in the mortgage note or otherwise prohibited by law.

The "Loan-to-Value Ratio" of a mortgage loan at any given time is a fraction, expressed as a percentage, the numerator of which is the principal balance of the related mortgage loan at the date of determination and the denominator of which is

o  in the case of a purchase, the lesser of the selling price of the related mortgaged property or its appraised value at the time of sale or

o  in the case of a refinance, the appraised value of the mortgaged property at the time of the refinance, except as described in the following sentence.

If the borrower is refinancing an existing mortgage loan that was originated or acquired by Countrywide Home Loans, and that existing mortgage loan meets the delinquency criteria set forth in the pooling and servicing agreement, then with respect to the refinanced mortgage loan,

o  if the loan-to-value ratio at the time of the origination of the mortgage loan being refinanced was 80% or less and the loan amount of the new loan being originated is $650,000 or less, then the "Loan-to-Value Ratio" will be the ratio of the principal amount of the new mortgage loan being originated divided by the appraised value of the related mortgaged property at the time of the origination of the mortgage loan being refinanced, as reconfirmed by Countrywide Home Loans using an automated property valuation system; or

o  if the loan-to-value ratio at the time of the origination of the mortgage loan being refinanced was greater than 80% or the loan amount of the new loan being originated is greater than $650,000, then the "Loan-to-Value Ratio" will be the ratio of the principal amount of the new mortgage loan being originated divided by the appraised value of the related mortgaged property as determined by a limited appraisal report at the time of the origination of the new mortgage loan. See "--Underwriting Process--Countrywide Home Loans, Inc." in this prospectus supplement.

No assurance can be given that the value of any mortgaged property has remained or will remain at the level that existed on the appraisal or sales date. If residential real estate values generally or in a particular geographic area decline, the Loan-to-Value Ratios might not be a reliable indicator of the rates of delinquencies, foreclosures and losses that could occur with respect to the Mortgage Loans.

The following information sets forth certain characteristics of the Mortgage Loans in each loan group as of the cut-off date. Other than with respect to rates of interest, percentages (approximate) are stated by the aggregate

S-30

Stated Principal Balance of the Mortgage Loans in the applicable loan group as of the cut-off date and, due to rounding, may not total 100%. In addition, each

weighted average FICO credit score set forth in the following tables has been calculated without regard to any Mortgage Loan for which the FICO credit score is not available.

S-31

MORTGAGE LOANS

Loan Programs

 **View the table below in Excel**

| Loan Program | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| 3/1 One-Year CMT ............ | 13 | $ 3,076,649 | 0.31% | 236,665 |
| 5/1 One Year CMT ............ | 4 | 923,384 | 0.09 | 230,846 |
| 7/1 One Year CMT ............ | 5 | 2,728,741 | 0.28 | 545,748 |
| 10/1 One Year CMT .......... | 1 | 414,048 | 0.04 | 414,048 |
| 3/27 Six-Month LIBOR ........ | 2 | 403,652 | 0.04 | 201,826 |
| 3/27 Six-Month LIBOR – Interest Only ............. | 49 | 12,811,163 | 1.31 | 261,452 |
| 5/25 Six-Month LIBOR ........ | 13 | 3,860,035 | 0.39 | 296,926 |
| 5/25 Six-Month LIBOR – Interest Only .............. | 141 | 37,259,599 | 3.80 | 264,252 |
| 7/23 Six-Month LIBOR ........ | 8 | 2,621,044 | 0.27 | 327,630 |
| 7/23 Six-Month LIBOR – Interest Only ............. | 87 | 30,131,233 | 3.07 | 346,336 |
| 10/20 Six-Month LIBOR ....... | 1 | 83,881 | 0.01 | 83,881 |
| 10/20 Six-Month LIBOR – Interest Only .............. | 55 | 30,776,131 | 3.14 | 559,566 |
| 3/1 One-Year LIBOR .......... | 14 | 6,332,572 | 0.65 | 452,327 |
| 3/1 One-Year LIBOR – Interest Only ............. | 156 | 66,149,356 | 6.74 | 424,034 |
| 5/1 One-Year LIBOR .......... | 47 | 30,024,422 | 3.06 | 638,817 |
| 5/1 One-Year LIBOR – Interest Only ............. | 496 | 261,175,504 | 26.61 | 526,564 |
| 7/1 One-Year LIBOR .......... | 83 | 24,082,541 | 2.45 | 290,151 |
| 7/1 One-Year LIBOR – Interest Only ............. | 644 | 245,885,254 | 25.05 | 381,809 |
| 10/1 One-Year LIBOR ......... | 50 | 23,090,427 | 2.35 | 461,809 |
| 10/1 One-Year LIBOR – Interest Only ............. | 442 | 199,791,594 | 20.35 | 452,017 |
| Total .................... | 2,311 | $ 981,621,231 | 100.00% | |

S-32

Current Mortgage Loan Principal Balances(1)

 **View the table below in Excel**

| Range of Current Mortgage Loan Principal Balances ($) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| 0.01 - 50,000.00 ............ | 4 | $    139,059 | 0.01% | 34,765 |
| 50,000.01 - 100,000.00 ...... | 78 | 6,682,718 | 0.68 | 85,676 |
| 100,000.01 - 150,000.00 ..... | 207 | 25,871,538 | 2.64 | 124,983 |
| 150,000.01 - 200,000.00 ..... | 242 | 42,392,150 | 4.32 | 175,174 |
| 200,000.01 - 250,000.00 ..... | 211 | 47,110,489 | 4.80 | 223,272 |
| 250,000.01 - 300,000.00 ..... | 184 | 50,772,486 | 5.17 | 275,937 |
| 300,000.01 - 350,000.00 ..... | 150 | 48,627,268 | 4.95 | 324,182 |
| 350,000.01 - 400,000.00 ..... | 141 | 53,229,879 | 5.42 | 377,517 |
| 400,000.01 - 450,000.00 ..... | 181 | 77,462,426 | 7.89 | 427,969 |
| 450,000.01 - 500,000.00 ..... | 208 | 99,315,618 | 10.12 | 477,479 |
| 500,000.01 - 550,000.00 ..... | 150 | 78,751,886 | 8.02 | 525,013 |
| 550,000.01 - 600,000.00 ..... | 112 | 64,723,105 | 6.59 | 577,885 |
| 600,000.01 - 650,000.00 ..... | 149 | 94,115,868 | 9.59 | 631,650 |
| 650,000.01 - 700,000.00 ..... | 52 | 35,369,478 | 3.60 | 680,182 |
| 700,000.01 - 750,000.00 ..... | 29 | 20,974,452 | 2.14 | 723,257 |
| 750,000.01 - 1,000,000.00 ... | 154 | 136,559,299 | 13.91 | 886,749 |
| 1,000,000.01 - 1,500,000.00 . | 38 | 48,023,382 | 4.89 | 1,263,773 |
| 1,500,000.01 - 2,000,000.00 . | 8 | 14,656,628 | 1.49 | 1,832,079 |
| Greater than 2,000,000.00 ... | 13 | 36,843,502 | 3.75 | 2,834,116 |
| Total ................... | 2,311 | $ 981,621,231 | 100.00% | |

----------

(1)   As of the cut-off date, the average current mortgage loan principal balance of the Mortgage Loans was approximately $424,760.

S-33

Original Principal Balances

 **View the table below in Excel**

| Range of Original Principal Balances ($) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| 0.01 - 50,000.00 ............ | 2 | $     94,798 | 0.01% | 47,399 |
| 50,000.01 - 100,000.00 ...... | 78 | 6,682,718 | 0.68 | 85,676 |
| 100,000.01 - 150,000.00 ..... | 207 | 25,871,538 | 2.64 | 124,983 |
| 150,000.01 - 200,000.00 ..... | 241 | 42,194,257 | 4.30 | 175,080 |
| 200,000.01 - 250,000.00 ..... | 212 | 47,308,382 | 4.82 | 223,153 |
| 250,000.01 - 300,000.00 ..... | 185 | 50,814,969 | 5.18 | 274,676 |
| 300,000.01 - 350,000.00 ..... | 150 | 48,280,392 | 4.92 | 321,869 |
| 350,000.01 - 400,000.00 ..... | 140 | 52,829,879 | 5.38 | 377,356 |
| 400,000.01 - 450,000.00 ..... | 181 | 77,458,471 | 7.89 | 427,947 |

| | | | |
|---|---|---|---|
| 450,000.01 – 500,000.00 ..... | 205 | 97,849,371 | 9.97 | 477,314 |
| 500,000.01 – 550,000.00 ..... | 148 | 77,693,589 | 7.91 | 524,957 |
| 550,000.01 – 600,000.00 ..... | 111 | 64,070,193 | 6.53 | 577,209 |
| 600,000.01 – 650,000.00 ..... | 151 | 94,965,388 | 9.67 | 628,910 |
| 650,000.01 – 700,000.00 ..... | 54 | 36,382,852 | 3.71 | 673,757 |
| 700,000.01 – 750,000.00 ..... | 30 | 21,673,293 | 2.21 | 722,443 |
| 750,000.01 – 1,000,000.00 ... | 156 | 137,578,976 | 14.02 | 881,917 |
| 1,000,000.01 – 1,500,000.00 . | 38 | 48,023,382 | 4.89 | 1,263,773 |
| 1,500,000.01 – 2,000,000.00 . | 9 | 15,005,282 | 1.53 | 1,667,254 |
| Greater than 2,000,000.00 ... | 13 | 36,843,502 | 3.75 | 2,834,116 |
| | ----- | ------------- | ------ | |
| Total .................... | 2,311 | $ 981,621,231 | 100.00% | |
| | ===== | ============= | ====== | |

Geographic Distribution of Mortgaged Properties(1)



| | | **View the table below in Excel** |
|---|---|---|

| Geographic Distribution | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| ----------------------- | --------- | ----------- | ------- | -------------- |
| Alabama ................... | 12 | $   3,331,943 | 0.34% | 277,662 |
| Alaska .................... | 3 | 789,700 | 0.08 | 263,233 |
| Arizona ................... | 123 | 43,080,701 | 4.39 | 350,250 |
| Arkansas .................. | 2 | 283,931 | 0.03 | 141,966 |
| California ................ | 838 | 450,343,671 | 45.88 | 537,403 |
| Colorado .................. | 67 | 28,909,795 | 2.95 | 431,489 |
| Connecticut ............... | 16 | 9,157,624 | 0.93 | 572,352 |
| Delaware .................. | 1 | 571,410 | 0.06 | 571,410 |

S-34

Geographic Distribution of Mortgaged Properties(1)



| | | **View the table below in Excel** |
|---|---|---|

| Geographic Distribution | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| ----------------------- | --------- | ----------- | ------- | -------------- |
| District of Columbia ........ | 3 | 1,270,000 | 0.13 | 423,333 |
| Florida ..................... | 240 | 81,091,336 | 8.26 | 337,881 |
| Georgia ..................... | 52 | 16,869,094 | 1.72 | 324,406 |
| Hawaii ...................... | 13 | 8,759,154 | 0.89 | 673,781 |
| Idaho ....................... | 27 | 6,230,522 | 0.63 | 230,760 |
| Illinois .................... | 60 | 21,280,845 | 2.17 | 354,681 |
| Indiana ..................... | 7 | 1,589,453 | 0.16 | 227,065 |
| Iowa ........................ | 2 | 478,000 | 0.05 | 239,000 |
| Kansas ...................... | 1 | 650,000 | 0.07 | 650,000 |

```
Kentucky ....................      12      4,865,895      0.50      405,491
Louisiana ...................       8      2,743,004      0.28      342,875
Maine .......................       2        300,737      0.03      150,368
Maryland ....................      42     16,756,533      1.71      398,965
Massachusetts ...............      42     19,914,016      2.03      474,143
Michigan ....................      58     15,152,889      1.54      261,257
Minnesota ...................       8      3,859,450      0.39      482,431
Mississippi .................       3        921,173      0.09      307,058
Missouri ....................      13      6,021,340      0.61      463,180
Montana .....................       5        884,692      0.09      176,938
Nebraska ....................       1        176,350      0.02      176,350
Nevada ......................     124     40,017,627      4.08      322,723
New Hampshire ...............       7      2,077,696      0.21      296,814
New Jersey ..................      70     29,001,756      2.95      414,311
New Mexico ..................       8      3,669,976      0.37      458,747
New York ....................      55     26,159,693      2.66      475,631
North Carolina ..............      20      9,664,792      0.98      483,240
Ohio ........................      16      3,797,918      0.39      237,370
Oklahoma ....................       4      2,189,363      0.22      547,341
Oregon ......................      76     21,530,721      2.19      283,299
Pennsylvania ................      14      2,906,833      0.30      207,631
Rhode Island ................       1        159,859      0.02      159,859
South Carolina ..............      19      3,666,186      0.37      192,957
Tennessee ...................      11      3,069,967      0.31      279,088
Texas .......................      37      9,820,005      1.00      265,406
Utah ........................      16      4,279,966      0.44      267,498
Vermont .....................       2        532,000      0.05      266,000
```

S-35

Geographic Distribution of Mortgaged Properties(1)



View the table below in Excel

| Geographic Distribution | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| --------------------- | --------- | ----------- | -------- | -------------- |
| Virginia ................... | 89 | 43,151,597 | 4.40 | 484,849 |
| Washington ................. | 67 | 24,584,816 | 2.50 | 366,938 |
| West Virginia .............. | 5 | 1,880,549 | 0.19 | 376,110 |
| Wisconsin .................. | 5 | 1,822,020 | 0.19 | 364,404 |
| Wyoming .................... | 4 | 1,354,635 | 0.14 | 338,659 |
| | ----- | ------------- | ------ | |
| Total ................... | 2,311 | $ 981,621,231 | 100.00% | |
| | ===== | ============= | ====== | |

----------
(1)   No more than approximately 0.53% of the Mortgage Loans were secured by
      mortgaged properties located in any one postal zip code area.

Original Loan-to-Value Ratios(1)(2)

| >> | View the table below in Excel  |
|----|----|

| Range of Original Loan-to-Value Ratios (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| 0.01 - 50.00 ............... | 52 | $ 29,269,206 | 2.98% | 562,869 |
| 50.01 - 55.00 ............. | 43 | 20,077,498 | 2.05 | 466,919 |
| 55.01 - 60.00 ............. | 47 | 31,910,074 | 3.25 | 678,938 |
| 60.01 - 65.00 ............. | 77 | 38,977,120 | 3.97 | 506,196 |
| 65.01 - 70.00 ............. | 205 | 96,739,319 | 9.86 | 471,899 |
| 70.01 - 75.00 ............. | 219 | 117,252,571 | 11.94 | 535,400 |
| 75.01 - 80.00 ............. | 1,528 | 612,140,994 | 62.36 | 400,616 |
| 80.01 - 85.00 ............. | 11 | 4,355,639 | 0.44 | 395,967 |
| 85.01 - 90.00 ............. | 94 | 22,594,363 | 2.30 | 240,366 |
| 90.01 - 95.00 ............. | 34 | 8,168,947 | 0.83 | 240,263 |
| 95.01 - 100.00 ............. | 1 | 135,500 | 0.01 | 135,500 |
| | ----- | ------------- | ------ | |
| Total .................... | 2,311 | $ 981,621,231 | 100.00% | |
| | ===== | ============= | ====== | |

----------

(1)    As of the cut-off date, the weighted average original Loan-to-Value Ratio
       of the Mortgage Loans was approximately 75.33%.

(2)    Does not take into account any secondary financing on the Mortgage Loans
       that may exist at the time of origination.

S-36

Current Mortgage Rates(1)

| >> | View the table below in Excel |
|----|----|

| Range of Current Mortgage Rates (%) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| 4.001 - 4.500 ............. | 1 | $ 459,992 | 0.05% | 459,992 |
| 4.501 - 5.000 ............. | 17 | 7,819,119 | 0.80 | 459,948 |
| 5.001 - 5.500 ............. | 96 | 46,647,718 | 4.75 | 485,914 |
| 5.501 - 6.000 ............. | 522 | 258,152,229 | 26.30 | 494,545 |
| 6.001 - 6.500 ............. | 890 | 391,691,643 | 39.90 | 440,103 |
| 6.501 - 7.000 ............. | 494 | 192,170,092 | 19.58 | 389,008 |
| 7.001 - 7.500 ............. | 203 | 63,931,195 | 6.51 | 314,932 |
| 7.501 - 8.000 ............. | 82 | 18,927,781 | 1.93 | 230,827 |
| 8.001 - 8.500 ............. | 5 | 1,194,499 | 0.12 | 238,900 |
| 8.501 - 9.000 ............. | 1 | 626,963 | 0.06 | 626,963 |
| | ----- | ------------- | ------ | |
| Total .................... | 2,311 | $ 981,621,231 | 100.00% | |
| | ===== | ============= | ====== | |

----------

(1)   The current mortgage rates listed in the preceding table include lender
      paid mortgage insurance premiums. As of the cut-off date, the weighted
      average current mortgage rate of the Mortgage Loans was approximately
      6.325% per annum. As of the cut-off date, the weighted average current
      mortgage rate of the Mortgage Loans net of the premium charged by the
      lender in connection with lender paid mortgage insurance was approximately
      6.320% per annum.

### Types of Mortgaged Properties

 View the table below in Excel

| Property Type | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| Single Family Residence ..... | 1,209 | $ 545,668,985 | 55.59% | 451,339 |
| Planned Unit Development .... | 648 | 290,585,293 | 29.60 | 448,434 |
| Low-rise Condominium ........ | 355 | 112,303,664 | 11.44 | 316,348 |
| 2-4 Family Residence ........ | 98 | 32,963,288 | 3.36 | 336,360 |
| Cooperative ................. | 1 | 100,000 | 0.01 | 100,000 |
| Total .................... | 2,311 | $ 981,621,231 | 100.00% | |

S-37

### Loan Purpose

 View the table below in Excel

| Loan Purpose | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| Purchase .................... | 1,517 | $ 622,689,681 | 63.43% | 410,474 |
| Refinance (cash-out) ........ | 502 | 231,781,661 | 23.61 | 461,716 |
| Refinance (rate/term) ....... | 292 | 127,149,889 | 12.95 | 435,445 |
| Total .................... | 2,311 | $ 981,621,231 | 100.00% | |

### Occupancy Types(1)

 View the table below in Excel

| Occupancy Type | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| Primary Residence ........... | 1,816 | $ 825,850,982 | 84.13% | 454,764 |
| Investment Property ......... | 334 | 79,896,636 | 8.14 | 239,211 |
| Secondary Residence ......... | 161 | 75,873,614 | 7.73 | 471,265 |
| Total .................... | 2,311 | $ 981,621,231 | 100.00% | |

----------

(1)   Based upon representations of the related borrowers at the time of
      origination.

S-38

Remaining Terms to Maturity(1)

> View the table below in Excel

| Remaining Term to Maturity (Months) | Number of Mortgage Loans | Aggregate Principal Balance Outstanding | % of Mortgage Loans | Average Principal Balance Outstanding ($ |
|---|---|---|---|---|
| 360 ......................... | 53 | $  19,027,323 | 1.94% | 359,006 |
| 359 ......................... | 938 | 392,821,217 | 40.02 | 418,786 |
| 358 ......................... | 633 | 282,548,589 | 28.78 | 446,364 |
| 357 ......................... | 405 | 186,672,226 | 19.02 | 460,919 |
| 356 ......................... | 126 | 45,243,871 | 4.61 | 359,078 |
| 355 ......................... | 71 | 22,126,357 | 2.25 | 311,639 |
| 354 ......................... | 33 | 14,013,054 | 1.43 | 424,638 |
| 353 ......................... | 9 | 3,036,836 | 0.31 | 337,426 |
| 352 ......................... | 19 | 7,279,430 | 0.74 | 383,128 |
| 351 ......................... | 11 | 2,852,312 | 0.29 | 259,301 |
| 350 ......................... | 6 | 2,268,263 | 0.23 | 378,044 |
| 349 ......................... | 6 | 2,631,753 | 0.27 | 438,625 |
| 348 ......................... | 1 | 1,100,000 | 0.11 | 1,100,000 |
| Total .................... | 2,311 | $ 981,621,231 | 100.00% | |

----------

(1)   As of the cut-off date, the weighted average remaining term to maturity of
      the Mortgage Loans was approximately 358 months.

S-39

Documentation Programs

loan application is reviewed to determine that the stated income is reasonable
for the borrower's employment and that the stated assets are

S-100

consistent with the borrower's income. The Stated Income/Stated Asset
Documentation Program permits maximum Loan-to-Value Ratios up to 90%.

None of the Mortgage Loans have been originated by Countrywide Home Loans
under the Stated Income/Stated Asset Program.

American Home Mortgage Corp.

General

American Home Mortgage Corp. ("American Home") is a New York corporation.
American Home conducts lending through retail and wholesale loan production
offices and its correspondent channel as well as its direct-to-consumer channel
supported by American Home's call center. American Home operates more than 600
retail and wholesale loan production offices located in 45 states and the
District of Columbia and makes loans throughout all 50 states and the District
of Columbia. American Home has been originating mortgage loans since its
incorporation in 1988, and has been originating adjustable-rate mortgage ("ARM")
loans since such date. The principal executive offices of American Home are
located at 538 Broadhollow Road, Melville, New York 11747.

The following table reflects American Home's originations of long reset
ARM loans for the past three years and for the quarter ended March 31, 2006:

| Long Reset ARM Loans | Year Ended December 31, 2003 | Year Ended December 31, 2004 | Year Ended December 31, 2005 | Quarter Ended March 31, 2006 |
|---|---|---|---|---|
| Number of Loans | 7,364 | 19,282 | 42,559 | 8,143 |
| Principal Balance | $1,651,545,617 | $4,611,088,818 | $11,228,861,541 | $2,377,361,891 |

With respect to the table above, a long reset ARM is any ARM loan with an
initial fixed-rate period of five years or longer.

American Home is not aware of any material legal proceedings pending
against it or against any of its property, including any proceedings known to be
contemplated by governmental authorities material to the holders of the
certificates.

Underwriting Criteria

The following information generally describes American Home's underwriting
guidelines with respect to mortgage loans originated pursuant to its
"conforming" or "prime" underwriting guidelines and its Alt-A underwriting
guidelines.

The mortgage loans have been purchased or originated, underwritten and
documented in accordance with the guidelines of Fannie Mae, Freddie Mac, the
Federal Housing Administration (FHA), the U.S. Department of Veterans Affairs
(VA), the U.S. Department of Agriculture Guaranteed Rural Housing Program (GRH),
Ginnie Mae, the underwriting guidelines of specific private investors, and the
non-conforming or Alt-A underwriting guidelines established by American Home.

Conforming conventional loans must generally be approved by the Desktop Underwriter and Loan Prospector automated underwriting systems of Fannie Mae and Freddie Mac. FHA and VA loans are generally approved by these same automated underwriting systems.

American Home's non-conforming underwriting guidelines are similar to those of the government sponsored enterprises Fannie Mae and Freddie Mac, but these loans are "non-conforming" in that they may not conform to the maximum loan amounts and in some cases to the underwriting guidelines of Fannie Mae and Freddie Mac. These non-conforming loans do not conform to and are not insurable by the Federal Housing Administration nor can they be guaranteed by the U.S. Department of Veterans Affairs.

S-101

American Home's underwriting philosophy is to weigh all risk factors inherent in the loan file, giving consideration to the individual transaction, borrower profile, the level of documentation provided and the property used to collateralize the debt. These standards are applied in accordance with applicable federal and state laws and regulations. Exceptions to the underwriting standards may be permitted where compensating factors are present. In the case of investment properties and two- to four-unit dwellings, income derived from the mortgaged property may have been considered for underwriting purposes, in addition to the income of the mortgagor from other sources. With respect to second homes and vacation properties, no income derived from the property will have been considered for underwriting purposes. Because each loan is different, American Home expects and encourages underwriters to use professional judgment based on their experience in making a lending decision.

American Home underwrites a borrower's creditworthiness based solely on information that American Home believes is indicative of the applicant's willingness and ability to pay the debt they would be incurring.

Non-conforming loans are generally documented to the requirements of Fannie Mae and Freddie Mac, in that the borrower provides the same information on the loan application along with documentation to verify the accuracy of the information on the application such as income, assets, other liabilities, etc. Certain non-conforming stated income or stated asset products allow for less verification documentation than Fannie Mae or Freddie Mac require. Certain non-conforming Alt-A products also allow for less verification documentation than Fannie Mae or Freddie Mac require. For these Alt-A products, the borrower may not be required to verify employment income, assets required to close or both. For some other Alt-A products, the borrower is not required to provide any information regarding employment income, assets required to close or both. Alt-A products with less verification documentation generally have other compensating factors such as higher credit score or lower loan-to-value requirements.

American Home obtains a credit report for each borrower that summarizes each borrower's credit history. The credit report contains information from the three major credit repositories, Equifax, Experian and TransUnion. These companies have developed scoring models to identify the comparative risk of delinquency among applicants based on characteristics within the applicant's credit report. A borrower's credit score represents a comprehensive view of the borrower's credit history risk factors and is indicative of whether a borrower is likely to default on a loan. Some of the factors used to calculate credit scores are a borrower's incidents of previous delinquency, the number of credit accounts a borrower has, the amount of available credit that a borrower has utilized, the source of a borrower's existing credit, and recent attempts by a borrower to obtain additional credit. Applicants who have higher credit scores

will, as a group, have fewer defaults than those who have lower credit scores. The minimum credit score allowed by American Home non-conforming loan guidelines for these loans is 620 and the average is typically over 700. For American Home Alt-A products, the minimum credit score is generally 580. If the borrowers do not have a credit score they must have an alternative credit history showing at least three trade lines with no payments over 60 days past due in the last twelve months.

In addition to reviewing the borrower's credit history and credit score, American Home underwriters closely review the borrower's housing payment history. In general, for non-conforming loans the borrower should not have made any mortgage payments over 30 days after the due date for the most recent twelve months. In general, for Alt-A loans, the borrower may have no more than one payment that was made over 30 days after the due date for the most recent twelve months.

In order to determine if a borrower qualifies for a non-conforming loan, the loans have been either approved by Fannie Mae's Desktop Underwriter, Freddie Mac's Loan Prospector automated underwriting systems, a customized form of Fannie Mae's Desktop Underwriter called Custom Desktop Underwriter, or they have been manually underwritten by American Home's underwriters. American Home's Alt-A loan products generally have been approved manually by contract underwriters provided by certain mortgage insurance companies or by American Home's senior underwriters. American Home Solutions products must receive an approval from the Assetwise automated underwriting system. For manually underwritten loans, the underwriter must ensure that the borrower's income will support the total housing expense on an ongoing basis. Underwriters may give consideration to borrowers who have demonstrated an ability to carry a similar or greater housing expense for an extended period. In addition to the monthly housing expense, the underwriter must evaluate the borrower's ability to manage all recurring payments on all debts, including the monthly housing expense. When evaluating the ratio of all monthly debt payments to the borrower's monthly income (debt-to-income ratio), the underwriter should be aware

S-102

of the degree and frequency of credit usage and its impact on the borrower's ability to repay the loan. For example, borrowers who lower their total obligations should receive favorable consideration and borrowers with a history of heavy usage and a pattern of slow or late payments should receive less flexibility.

Every mortgage loan is secured by a property that has been appraised by a licensed appraiser in accordance with the Uniform Standards of Professional Appraisal Practice of the Appraisal Foundation. The appraisers perform on-site inspections of the property and report on the neighborhood and property condition in factual and specific terms. Each appraisal contains an opinion of value that represents the appraiser's professional conclusion based on market data of sales of comparable properties and a logical analysis with adjustments for differences between the comparable sales and the subject property and the appraiser's judgment. In addition, each appraisal is reviewed for accuracy and consistency by American Home's vendor management company or an underwriter of American Home or a mortgage insurance company contract underwriter.

The appraiser's value conclusion is used to calculate the ratio (loan-to-value) of the loan amount to the value of the property. For loans made to purchase a property, this ratio is based on the lower of the sales price of the property and the appraised value. American Home sets various maximum loan-to-value ratios based on the loan amount, property type, loan purpose and

occupancy of the subject property securing the loan. In general, American Home
requires lower loan-to-value ratios for those loans that are perceived to have a
higher risk, such as high loan amounts, loans in which additional cash is being
taken out on a refinance transaction, loans on second homes or loans on
investment properties. A lower loan-to-value ratio requires a borrower to have
more equity in the property, which is a significant additional incentive to the
borrower to avoid default on the loan. In addition, for all loans in which the
loan-to-value ratio exceeds 80%, American Home requires that the loan be insured
by a private mortgage insurance company that is approved by Fannie Mae and
Freddie Mac. Loans with higher loan-to-value ratios require higher coverage
levels. For example, non-conforming loans with loan-to-value ratios of 85%, 90%
and 95% require mortgage insurance coverage of 12%, 25% and 30%, respectively.
Alt-A loans with full or alternative documentation and loan-to-value ratios of
85%, 90%, 95% and 97% require mortgage insurance coverage of 12-20%, 25%, 30%
and 35%, respectively. Alt-A loans with loan-to-value ratios up to 100% require
35% coverage.

American Home realizes that there may be some acceptable quality loans
that fall outside published guidelines and encourages "common sense"
underwriting. Because a multitude of factors are involved in a loan transaction,
no set of guidelines can contemplate every potential situation. Therefore, each
case is weighed individually on its own merits and exceptions to American Home's
underwriting guidelines are allowed if sufficient compensating factors exist to
offset any additional risk due to the exception.

Ohio Savings Bank

Ohio Savings Bank ("OSB") is a federally chartered thrift that has been in
existence since the late 1800s. One of OSB's primary business activities is the
origination of residential mortgage loans for its own investment portfolio and
for sale in the secondary market. The current business model utilizes a network
of correspondents and brokers to originate mortgage loans. Most of these loans
are table-funded, although a percentage are originated by correspondents
utilizing third party warehouse lending facilities. This business model has been
in existence since 1995. A smaller percentage of the mortgage loans are
originated directly through OSB's branch system and loan origination offices.

OSB also has created a proprietary internet-based origination system for
its residential lending activity, called Gemstone. The Gemstone system has
embedded modules for each phase of the origination process, which modules are
often directly interfaced with the source for such activity, that are intended
to reduce the credit and processing risk in a transaction. As an example, the
Gemstone system pulls credit reports directly from the reporting agency and not
only electronically displays the report but also passes select data from the
report to data element fields within Gemstone. This same methodology is applied
throughout the Gemstone origination process for various origination process
activities.

S-103

General

OSB, through its mortgage banking division, originates or acquires first
lien residential mortgage loans on a nationwide basis, primarily through
approved wholesale brokers and correspondents. In addition, OSB originates loans
through its retail bank branches and loan production offices.

In evaluating a borrower's loan request, OSB makes extensive use of its
proprietary automated underwriting engine, Gemstone AU, which leverages the