# EXHIBIT 7

**Execution Copy**

J.P. MORGAN ACCEPTANCE CORPORATION I
*Depositor*

U.S. BANK NATIONAL ASSOCIATION
*Master Servicer and Securities Administrator*

and

HSBC BANK USA, NATIONAL ASSOCIATION
*Trustee*

---

POOLING AND SERVICING AGREEMENT

Dated as of July 1, 2006

---

J.P. MORGAN MORTGAGE TRUST 2006-A5

MORTGAGE PASS-THROUGH CERTIFICATES

MNNYIMANAGE 94808v10

TABLE OF CONTENTS

Page

ARTICLE I
DEFINITIONS

Section 1.01   Definitions...........................................................................................5
Section 1.02   Calculations Respecting Mortgage Loans. ........................................44

ARTICLE II
DECLARATION OF TRUST; ISSUANCE OF CERTIFICATES

Section 2.01   Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans...........44
Section 2.02   Acceptance of Trust Fund by Trustee; Review of Documentation for Trust
               Fund. ..................................................................................................48
Section 2.03   Representations and Warranties of the Depositor...............................49
Section 2.04   Representations and Warranties as to the Mortgage Loans...................51
Section 2.05   Discovery of Breach; Repurchase or Substitution of Mortgage Loans. ...............54
Section 2.06   Grant Clause.......................................................................................57

ARTICLE III
THE CERTIFICATES

Section 3.01   The Certificates...................................................................................58
Section 3.02   Registration. .......................................................................................58
Section 3.03   Transfer and Exchange of Certificates................................................59
Section 3.04   Cancellation of Certificates................................................................62
Section 3.05   Replacement of Certificates...............................................................62
Section 3.06   Persons Deemed Owners. ...................................................................63
Section 3.07   Temporary Certificates. ......................................................................63
Section 3.08   Appointment of Paying Agent. ...........................................................64
Section 3.09   Book-Entry Certificates. ....................................................................64

ARTICLE IV
ADMINISTRATION OF THE TRUST FUND

Section 4.01   Custodial Accounts; Distribution Account. ........................................65
Section 4.02   [Reserved]...........................................................................................67
Section 4.03   [Reserved]...........................................................................................67
Section 4.04   Reports to Trustee and Certificateholders...........................................67

ARTICLE V
DISTRIBUTIONS TO HOLDERS OF CERTIFICATES

Section 5.01   Distributions Generally.......................................................................69
Section 5.02   Distributions from the Distribution Account. .....................................70
Section 5.03   Allocation of Losses. ..........................................................................75

i

Section 5.04    Advances by Master Servicer. ...........................................................76
Section 5.05    Compensating Interest Payments. ....................................................76

## ARTICLE VI
### CONCERNING THE TRUSTEE AND THE SECURITIES ADMINISTRATOR; EVENTS OF DEFAULT

Section 6.01    Duties of Trustee and the Securities Administrator. ...........................77
Section 6.02    Certain Matters Affecting the Trustee and the Securities Administrator. ............80
Section 6.03    Trustee and Securities Administrator Not Liable for Certificates. ........................81
Section 6.04    Trustee and the Securities Administrator May Own Certificates. .........................82
Section 6.05    Eligibility Requirements for Trustee. ...................................................82
Section 6.06    Resignation and Removal of Trustee and the Securities Administrator. ..............82
Section 6.07    Successor Trustee and Successor Securities Administrator......................................84
Section 6.08    Merger or Consolidation of Trustee or the Securities Administrator. ..................85
Section 6.09    Appointment of Co-Trustee, Separate Trustee or Custodian..................................85
Section 6.10    Authenticating Agents. ......................................................................86
Section 6.11    Indemnification of the Trustee and the Securities Administrator.......................87
Section 6.12    Fees and Expenses of Securities Administrator and the Trustee. ...........................88
Section 6.13    Collection of Monies.........................................................................88
Section 6.14    Events of Default; Trustee To Act; Appointment of Successor. ..........................88
Section 6.15    Additional Remedies of Trustee Upon Event of Default......................................92
Section 6.16    Waiver of Defaults...........................................................................92
Section 6.17    Notification to Holders. ....................................................................93
Section 6.18    Directions by Certificateholders and Duties of Trustee During Event of Default.............93
Section 6.19    Action Upon Certain Failures of the Master Servicer and Upon Event of Default.............93
Section 6.20    Preparation of Tax Returns and Other Reports......................................................93

## ARTICLE VII
### PURCHASE OF MORTGAGE LOANS AND TERMINATION OF THE TRUST FUND

Section 7.01    Purchase of Mortgage Loans; Termination of Trust Fund Upon Purchase or Liquidation of All Mortgage Loans.................................94
Section 7.02    Procedure Upon Redemption or Termination of Trust Fund.................95
Section 7.03    Additional Trust Fund Termination Requirements.............................96

## ARTICLE VIII
### RIGHTS OF CERTIFICATEHOLDERS

Section 8.01    Limitation on Rights of Holders. ......................................................97
Section 8.02    Access to List of Holders.................................................................98
Section 8.03    Acts of Holders of Certificates. .......................................................98

MNNYIMANAGE 94808v10

## ARTICLE IX
## ADMINISTRATION AND SERVICING OF MORTGAGE LOANS BY THE MASTER SERVICER

Section 9.01   Duties of the Master Servicer; Enforcement of Servicers' and Master
               Servicer's Obligations...................................................................................99
Section 9.02   Assumption of Master Servicing by Trustee. .......................................101
Section 9.03   Representations and Warranties of the Master Servicer. ......................102
Section 9.04   Compensation to the Master Servicer. ..................................................103
Section 9.05   Merger or Consolidation.......................................................................104
Section 9.06   Resignation of Master Servicer.............................................................104
Section 9.07   Assignment or Delegation of Duties by the Master Servicer. .............105
Section 9.08   Limitation on Liability of the Master Servicer and Others..................105
Section 9.09   Indemnification; Third-Party Claims.....................................................106

## ARTICLE X
## REMIC ADMINISTRATION

Section 10.01  REMIC Administration............................................................................106
Section 10.02  Prohibited Transactions and Activities. ................................................108
Section 10.03  Indemnification with Respect to Prohibited Transactions or Loss of
               REMIC Status. ......................................................................................109
Section 10.04  REO Property.........................................................................................109
Section 10.05  Fidelity. .................................................................................................110

## ARTICLE XI110

## EXCHANGE ACT REPORTING

Section 11.01  Form 10-D Reporting.............................................................................110
Section 11.02  Form 10-K Reporting.............................................................................111
Section 11.03  Form 8-K Reporting...............................................................................113
Section 11.04  Delisting; Amendment; Late Filing of Reports ....................................114
Section 11.05  Annual Statements of Compliance.........................................................115
Section 11.06  Annual Assessments of Compliance......................................................115
Section 11.07  Accountant's Attestation........................................................................116
Section 11.08  Sarbanes-Oxley Certification.................................................................117
Section 11.09  Indemnification .....................................................................................118
Section 11.10  Additional Information ..........................................................................119
Section 11.11  Intention of the Parties and Interpretation ............................................120
Section 11.12  Notice under Article XI ........................................................................120

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

Section 12.01  Binding Nature of Agreement; Assignment. .........................................120
Section 12.02  Entire Agreement...................................................................................120

Section 12.03  Amendment.................................................................................................120
Section 12.04  Voting Rights............................................................................................122
Section 12.05  Provision of Information............................................................................122
Section 12.06  Governing Law. ........................................................................................123
Section 12.07  Notices. ....................................................................................................123
Section 12.08  Severability of Provisions.........................................................................123
Section 12.09  Indulgences; No Waivers..........................................................................123
Section 12.10  Headings Not To Affect Interpretation. ....................................................124
Section 12.11  Benefits of Agreement. .............................................................................124
Section 12.12  Special Notices to the Rating Agencies. ...................................................124
Section 12.13  Conflicts...................................................................................................125
Section 12.14  Counterparts..............................................................................................125
Section 12.15  No Petitions...............................................................................................125

ATTACHMENTS

| | |
|---|---|
| Exhibit A | Forms of Certificates |
| Exhibit B | Form of Residual Interest Transfer Affidavit (Transferee) |
| Exhibit C | Form of Residual Interest Transfer Affidavit (Transferor) |
| Exhibit D | [Reserved] |
| Exhibit E | List of Purchase and Servicing Agreements, Purchase Agreements and Servicing Agreements |
| Exhibit F | List of Custodial Agreements |
| Exhibit G | Set of Limited Purpose Surety Bonds |
| Exhibit H | Form of Rule 144A Transfer Certificate |
| Exhibit I | Form of Purchaser's Letter for Institutional Accredited Investors |
| Exhibit J | Form of ERISA Transfer Affidavit |
| Exhibit K | Form of Letter of Representations with the Depository Trust Company |
| Exhibit L | Form of Custodian Certification |
| Exhibit M | Regulation AB Relevant Servicing Criteria Matrix |
| Exhibit N | Form 10-D, Form 8-K and Form 10-K Reporting Responsibility |
| Exhibit O | [Reserved] |
| Exhibit P | [Reserved] |
| Exhibit Q | Form of Annual Back-Up Certification |
| Exhibit R | Additional Disclosure Notification |

| | |
|---|---|
| Schedule A | Mortgage Loan Schedule |

This POOLING AND SERVICING AGREEMENT, dated as of July 1, 2006 (the "Agreement"), by and among J.P. MORGAN ACCEPTANCE CORPORATION I, a Delaware corporation, as depositor (the "Depositor"), HSBC BANK USA, NATIONAL ASSOCIATION, as trustee (the "Trustee"), and U.S. BANK NATIONAL ASSOCIATION, in its dual capacities as master servicer (the "Master Servicer") and securities administrator (the "Securities Administrator"), and acknowledged by J.P. MORGAN MORTGAGE ACQUISITION CORP., a Delaware corporation, as seller (the "Seller"), for purposes of Sections 2.04 and 2.05 and JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, a national banking association, as custodian (the "Custodian") for purposes of Sections 11.06, 11.07 and 11.09.

## PRELIMINARY STATEMENT

The Depositor has acquired the Mortgage Loans from the Seller and at the Closing Date is the owner of the Mortgage Loans and the other property being conveyed by the Depositor to the Trustee hereunder for inclusion in the Trust Fund. On the Closing Date, the Depositor will acquire the Certificates from the Trustee as consideration for the Depositor's transfer to the Trust Fund of the Mortgage Loans and the other property constituting the Trust Fund. The Depositor has duly authorized the execution and delivery of this Agreement to provide for the conveyance to the Trustee of the Mortgage Loans and the other property constituting the Trust Fund. All covenants and agreements made by the Depositor, the Master Servicer, the Securities Administrator and the Trustee herein, with respect to the Mortgage Loans and the other property constituting the Trust Fund, are for the benefit of the Holders from time to time of the Certificates. The Depositor, the Trustee, the Master Servicer and the Securities Administrator are entering into this Agreement, and the Trustee is accepting the Trust Fund created hereby, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

As provided herein, the Trustee shall elect that the Trust Fund (exclusive of the Additional Collateral (the "Excluded Trust Property")) be treated for federal income tax purposes as comprising two real estate mortgage investment conduits (each, a "REMIC" or, in the alternative, "Lower-Tier REMIC 1" and "Upper-Tier REMIC 1"). Each Certificate related to the Aggregate Pool, other than the Class A R Certificate, shall represent ownership of a regular interest in Upper-Tier REMIC 1 for purposes of the REMIC Provisions. The Class A R Certificate represents ownership of the sole class of residual interest in the Upper-Tier REMIC. The Upper-Tier REMIC shall hold as assets the several classes of uncertificated Lower-Tier Interests in Lower-Tier REMIC 1 (other than the Class LT1-A-R Interest). Lower-Tier REMIC 1 shall hold as assets all property of the Trust Fund relating to the Aggregate Pool (except for any related Excluded Trust Property). The uncertificated Class LT1-A-R Interest represents ownership of the sole class of residual interest in Lower-Tier REMIC 1.

The latest possible maturity date of all REMIC regular interests created in this Agreement shall be the Latest Possible Maturity Date.

Section 860G(d) of the Code on certain contributions to a REMIC, on any REMIC created hereunder to the extent such tax would be payable from assets held as part of the Trust Fund.

Affiliate: With respect to any specified Person, any other Person controlling or controlled by or under common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

Aggregate Pool: Pool 1, Pool 2, Pool 3, Pool 4, Pool 5 and Pool 6.

Aggregate Pool Certificates: The Senior Certificates and Subordinate Certificates.

Aggregate Pool Mortgage Loans: The Pool 1 Mortgage Loans, Pool 2 Mortgage Loans, Pool 3 Mortgage Loans, Pool 4 Mortgage Loans, Pool 5 Mortgage Loans and Pool 6 Mortgage Loans.

Aggregate Stated Principal Balance: As to any Distribution Date, the aggregate of the Stated Principal Balances for all Mortgage Loans (and when such term is used (a) with respect to a particular Mortgage Pool, the aggregate of the Stated Principal Balances of the Mortgage Loans in such Mortgage Pool or (b) with respect to the Aggregate Pool, the aggregate of the Stated Principal Balances of the Mortgage Loans in the Aggregate Pool) which were outstanding on the Due Date in the month preceding the month of such Distribution Date.

Aggregate Voting Interests: The aggregate of the Voting Interests of all the Certificates under this Agreement.

Agreement: This Pooling and Servicing Agreement and all amendments and supplements hereto.

American Home: American Home Mortgage Corp., or any successor in interest.

American Home Mortgage Loan: Each Mortgage Loan originated by American Home and listed on the Mortgage Loan Schedule.

American Home Purchase Agreement: Each agreement between the Seller and American Home listed under the heading "Purchase Agreements" in Exhibit E hereto.

Apportioned Principal Balance: As to any Distribution Date and each Class of Subordinate Certificates, the Class Principal Amount thereof immediately prior to such Distribution Date multiplied by a fraction, the numerator of which is the applicable Pool Subordinate Amount (*i.e.*, the Pool 1 Subordinate Amount, the Pool 2 Subordinate Amount, the Pool 3 Subordinate Amount, the Pool 4 Subordinate Amount, the Pool 5 Subordinate Amount or the Pool 6 Subordinate Amount, as the case may require), and the denominator of which is the sum of the Pool Subordinate Amounts in the Aggregate Pool, in each case, for such Distribution Date.

7

_Original Applicable Credit Support Percentage_: With respect to each Class of the Subordinate Certificates, the corresponding percentage set forth opposite its Class designation:

| Class of Subordinate Certificates | |
| --- | --- |
| Class B-1 ................................. | 3.80% |
| Class B-2 ................................. | 1.95% |
| Class B-3 ................................. | 1.30% |
| Class B-4 ................................. | 0.80% |
| Class B-5 ................................. | 0.50% |
| Class B-6 ................................. | 0.25% |

Originator:  Any one of American Home, the Chase Originators, CTX, Countrywide, GreenPoint, Market Street, M&T, NetBank, PHH, SunTrust or Weichert, as applicable.

Overcollateralized Group:  On any Distribution Date, any Certificate Group which is not an Undercollateralized Group.

Par Value:  The amount calculated pursuant to clause (1) of the definition of Redemption Price.

Paying Agent:  Any paying agent appointed pursuant to Section 3.08.  The initial Paying Agent shall be the Securities Administrator.

PCAOB:  The Public Company Accounting Oversight Board.

Percentage Interest:  With respect to any Certificate, its percentage interest in the undivided beneficial ownership interest in the Trust Fund evidenced by all Certificates of the same Class as such Certificate.  With respect to any Certificate, other than the Class A-R or Class P Certificates, the Percentage Interest evidenced thereby shall equal the initial Certificate Principal Amount thereof divided by the initial Class Principal Amount of all Certificates of the same Class.  With respect to the Class A-R or Class P Certificates, the Percentage Interest evidenced thereby shall be as specified on the face thereof, or otherwise, be equal to 100%.

Permitted Investments:  At any time, any one or more of the following obligations and securities:

(i)     obligations of the United States or any agency thereof, provided that such obligations are backed by the full faith and credit of the United States;

(ii)     general obligations of or obligations guaranteed by any state of the United States or the District of Columbia receiving the highest long-term debt rating of each Rating Agency, or such lower rating as shall not result in the downgrading or withdrawal of the ratings then assigned to the Certificates by the Rating Agencies, as evidenced by a signed writing delivered by each Rating Agency;

(iii)     commercial or finance company paper which is then receiving the highest commercial or finance company paper rating of each Rating Agency rating such paper, or such lower rating as shall not result in the downgrading or withdrawal of the ratings then

25

Weichert: Weichert Financial Services, or any successor in interest.

Weichert Mortgage Loan: Each Mortgage Loan originated by Weichert and listed on the Mortgage Loan Schedule.

Weichert Purchase Agreement: Each agreement between the Seller and Weichert, listed under the heading "Purchase Agreements" in Exhibit E hereto.

Section 1.02   Calculations Respecting Mortgage Loans.

Calculations required to be made pursuant to this Agreement with respect to any Mortgage Loan in the Trust Fund shall be made based upon current information as to the terms of the Mortgage Loans and reports of payments received from the Mortgagor on such Mortgage Loans and payments to be made to the Securities Administrator as supplied to the Securities Administrator by the Master Servicer.  The Securities Administrator shall not be required to recompute, verify or recalculate the information supplied to it by the Master Servicer or any Servicer.

## ARTICLE II

### DECLARATION OF TRUST;
### ISSUANCE OF CERTIFICATES

Section 2.01   Creation and Declaration of Trust Fund; Conveyance of Mortgage Loans.

(a)      Concurrently with the execution and delivery of this Agreement, the Depositor does hereby transfer, assign, set over, deposit with and otherwise convey to the Trustee, without recourse, subject to Sections 2.02 and 2.05, in trust, all the right, title and interest of the Depositor in and to the Trust Fund.  Such conveyance includes, without limitation, (i) the Mortgage Loans, including the right to all payments of principal and interest received on or with respect to the Mortgage Loans on and after the Cut-off Date, and all such payments due after such date but received prior to such date and intended by the related Mortgagors to be applied after such date; (ii) all of the Depositor's right, title and interest in and to all amounts from time to time credited to and the proceeds of the Distribution Account, any Custodial Accounts or any Escrow Account established with respect to the Mortgage Loans; (iii) all of the rights of the Depositor as assignee of the Seller with respect to the Seller's rights under the Purchase and Servicing Agreements, the Servicing Agreements, the Purchase Agreements and the Acknowledgements; (iv) all of the Depositor's right, title or interest in REO Property and the proceeds thereof; (v) all of the Depositor's rights under any Insurance Policies related to the Mortgage Loans; and (vi) if applicable, the Depositor's security interest in any collateral pledged to secure the Mortgage Loans, including the Mortgaged Properties and any Additional Collateral relating to the Additional Collateral Mortgage Loans, including, but not limited to, the pledge, control and guaranty agreements and the Limited Purpose Surety Bond, to have and to hold, in trust; and the Trustee declares that, subject to the review provided for in Section 2.02, it has received and shall hold the Trust Fund, as trustee, in trust, for the benefit and use of the Holders of the Certificates and for the purposes and subject to the terms and conditions set forth in this Agreement, and, concurrently with such receipt, has caused to be executed, authenticated and

44

delivered to or upon the order of the Depositor, in exchange for the Trust Fund, Certificates in the authorized denominations evidencing the entire ownership of the Trust Fund.

The foregoing sale, transfer, assignment, set-over, deposit and conveyance does not and is not intended to result in the creation or assumption by the Trustee of any obligation of the Depositor, the Seller or any other Person in connection with the Mortgage Loans or any other agreement or instrument relating thereto except as specifically set forth therein.

In connection with such transfer and assignment of the Mortgage Loans, the Custodian acting on the Trustee's behalf, will hold or continue to hold the documents or instruments listed below with respect to each Mortgage Loan (each, a "Trustee Mortgage File") so transferred and assigned.

The Trustee shall be under no duty or obligation to inspect, review or examine said documents, instruments, certificates or other papers to determine that the same are genuine, enforceable or appropriate for the represented purpose or that they have actually been recorded in the real estate records or that they are other than what they purport to be on their face.

On the Closing Date, the Custodian shall deliver to the Trustee, the Securities Administrator and the Depositor a certification ("Custodian Certification") substantially in the form attached hereto as Exhibit L certifying that, pursuant to each related Custodial Agreement, the applicable Originator delivered and released to the Custodian, subject to and in accordance with the relevant section of each related Purchase and Servicing Agreement, Purchase Agreement or Custodial Agreement, the following documents pertaining to each of the Mortgage Loans identified in the Mortgage Loan Schedule (provided, however, that the Custodian shall not be required nor does it intend to re-examine the contents of the Trustee Mortgage File for any of the Mortgage Loans in connection with entering into this Agreement or providing the Custodian Certification required pursuant to this Section 2.01):

(i)     with respect to each Mortgage Loan, the original Mortgage Note endorsed without recourse in proper form to the order of the Trustee, or in blank (in each case, with all necessary intervening endorsements, as applicable);

(ii)     with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the original Mortgage with evidence of recording thereon and in the case of the each MERS Mortgage Loan, the original Mortgage, noting the presence of the MIN of the Mortgage Loans and either language indicating that the Mortgage Loan is a MOM Loan if the Mortgage Loan is a MOM Loan or if the Mortgage Loan was not a MOM Loan at origination, the original Mortgage and the assignment thereof to MERS, with evidence of recording indicated thereon;

(iii)     with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the Assignment of Mortgage in form and substance acceptable for recording in the relevant jurisdiction, such assignment being either (A) in blank, without recourse, or (B) endorsed to "HSBC Bank USA, National Association, as Trustee of J.P. Morgan Mortgage Trust 2006-A5, Mortgage Pass-Through Certificates, without recourse";

45

(iv)    with respect to each Mortgage Loan (other than a Cooperative Loan) that is not a MERS Mortgage Loan, the originals of all intervening assignments of the Mortgage, if any, with evidence of recording thereon, or if the original intervening assignment has not yet been returned from the recording office, a copy of such assignment certified by the applicable Seller to be a true copy of the original of the assignment which has been sent for recording in the appropriate jurisdiction in which the Mortgaged Property is located;

(v)    if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), the originals of all assumption, modification, consolidation or extension agreements, if any, with evidence of recording thereon;

(vi)    if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), the original policy of title insurance (or a true copy thereof) with respect to any such Mortgage Loan, or, if such policy has not yet been delivered by the insurer, the title commitment or title binder to issue same;

(vii)    if applicable, with respect to each Mortgage Loan (other than a Cooperative Loan), the original power of attorney and guaranty agreement with respect to such Mortgage Loan;

(viii)    if applicable, the original or certified copy of the certificates evidencing ownership of the Cooperative Shares issued by the Cooperative Corporation and related assignment of such certificates or an assignment of such Cooperative Shares, in blank, executed by the Mortgagor with such signature guaranteed;

(ix)    with respect to each Mortgage Loan which constitutes a Cooperative Loan:

(a)    the original of any security agreement or similar document executed in connection with the Cooperative Loan;

(b)    the original Recognition Agreement;

(c)    UCC-1 financing statements with recording information thereon from the appropriate governmental recording offices if necessary to perfect the security interest of the Cooperative Loan under the Uniform Commercial Code in the jurisdiction in which the Cooperative Property is located, accompanied by UCC-3 financing statements executed in blank for recordation of the change in the secured party thereunder;

(d)    the original Proprietary Lease and the Assignment of Proprietary Lease executed by the Mortgagor in blank or if the Proprietary Lease has been assigned by the Mortgagor to the Seller, then the Seller must execute an assignment of the Assignment of Proprietary Lease in blank;

46

(x)     [reserved]; and

(xi)    any other document or instruments required to be delivered under the related Custodial Agreement.

In addition, in connection with the assignment of any MERS Mortgage Loan, it is understood that the related Originator will cause the MERS® System to indicate that such Mortgage Loans have been assigned by the related Originator to the Trustee in accordance with this Agreement for the benefit of the Certificateholders by including (or deleting, in the case of Mortgage Loans which are repurchased in accordance with this Agreement) in such computer files the information required by the MERS® System to identify the series of Certificates issued in connection with such Mortgage Loans. It is further understood that the related Originator will not, and the Master Servicer hereby agrees that it will not, alter the information referenced in this paragraph with respect to any Mortgage Loan during the term of this Agreement unless and until such Mortgage Loan is repurchased in accordance with the terms of this Agreement.

(b)     [Reserved].

(c)     In instances where a title insurance policy is required to be delivered to the Trustee or the Custodian on behalf of the Trustee and is not so delivered, the Depositor will provide a copy of such title insurance policy to the Trustee, or to the Custodian on behalf of the Trustee, as promptly as practicable after the execution and delivery hereof, but in any case within 180 days of the Closing Date.

(d)     For Mortgage Loans (if any) that have been prepaid in full after the Cut-off Date and prior to the Closing Date, the Depositor, in lieu of delivering the above documents, herewith delivers to the Trustee, or to the Custodian on behalf of the Trustee, an Officer's Certificate which shall include a statement to the effect that all amounts received in connection with such prepayment that are required to be deposited in the Distribution Account pursuant to Section 4.01 have been so deposited. All original documents that are not delivered to the Trustee or the Custodian on behalf of the Trustee shall be held by the Master Servicer or the related Servicer in trust for the benefit of the Trustee and the Certificateholders.

(e)     The Depositor and the Trustee hereto agree and understand that it is not intended that any Mortgage Loan be included in the Trust Fund that is (i) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003, (ii) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004, (iii) a "High Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act effective November 7, 2004, (iv) a "high risk home loan" under the Illinois High Risk Home Loan Act, effective as of January 1, 2004, or (v) a "high-cost home loan" under the Indiana High Cost Home Loan Law, effective January 1, 2005. The Trustee shall be entitled to indemnification from the Depositor and the Trust Fund for any loss, liability or expense arising out of, or in connection with, the provisions of this Section 2.01(e), including, without limitation, all costs, liabilities and expenses (including reasonable legal fees and expenses) of investigating and defending itself against any claim, action or proceeding, pending or threatened, relating to such provisions.

47

Section 2.02   Acceptance of Trust Fund by Trustee; Review of Documentation for Trust Fund.

(a)   Subject to the review thereof by the Custodian as provided herein and in the Custodial Agreements, the Trustee, by execution and delivery hereof, acknowledges receipt by it or by the Custodian on its behalf of the Trustee Mortgage Files pertaining to the Mortgage Loans listed on the Mortgage Loan Schedule.

(b)   With respect to the PHH Mortgage Loans, within two Business Days after the delivery to the Custodian of the documents set forth in clauses (i), (iv), (v), (vii), (ix) and (xi), which shall be delivered within 120 days after the Closing Date (the "Follow-up Delivery Date") pursuant to the related Custodial Agreement, the Custodian shall, on behalf of the Trustee, ascertain that the original Assignment and Notice of Transfer with respect to each Additional Collateral Mortgage Loan is in its possession, and shall deliver an intermediate certification to the Trustee, the Securities Administrator and the Depositor to the effect that, as to each Additional Collateral Mortgage Loan listed in the related Mortgage Loan Schedule (other than any Additional Collateral Mortgage Loan paid in full or any Additional Collateral Mortgage Loan specifically identified in such certification as not covered by such certification), the Assignment and Notice of Transfer is in its possession. With respect to the PHH Mortgage Loans, within 30 days after the Follow-up Delivery Date, the Custodian on behalf of the Trustee shall, for the benefit of Holders of the Certificates, review each Trustee Mortgage File and deliver a final certification, with any applicable exceptions noted thereon, to the Trustee and the Depositor to the effect that (i) all documents required to be delivered under the related Custodial Agreement are in its possession, (ii) such documents have been reviewed by it and appear regular on their face and relate to such Mortgage Loan, and (iii) each Mortgage Note has been endorsed as required under the related Custodial Agreement.

(c)   With respect to the Mortgage Loans, other than the PHH Mortgage Loans, in the event there exist exceptions noted on the related Custodian Certification, not later than 120 Business Days, after the Closing Date, the Custodian shall deliver to the Trustee, the Securities Administrator and the Depositor a further certification with any applicable exceptions noted thereon.

(d)   Nothing in this Agreement shall be construed to constitute an assumption by the Trust Fund, the Trustee, any Custodian or the Certificateholders of any unsatisfied duty, claim or other liability on any Mortgage Loan or to any Mortgagor.

(e)   Each of the parties hereto acknowledges that (i) the Custodian has performed the applicable review of the Mortgage Loans and has delivered the Custodian Certification as provided herein and in the Custodial Agreements on the Closing Date and (ii) thereafter, if applicable, the Custodian shall perform the applicable review of the Mortgage Loans and deliver the further certifications as provided herein and in the applicable Custodial Agreements.

(f)   Upon execution of this Agreement, the Depositor hereby delivers to the Trustee and the Trustee acknowledges receipt of the Acknowledgements, together with the related Purchase and Servicing Agreements and Servicing Agreements.

48

(g)    Within two hundred and seventy (270) days after the Closing Date, the Custodian shall ascertain that all documents required to be delivered as set forth in Section 2.01 of this Agreement are in its possession, and shall deliver to a final certification with any applicable exceptions noted thereon and shall specifically identify any missing assignments or endorsements required to be delivered and the party or parties whose signatures may be required for any such assignment or endorsement.

Section 2.03    Representations and Warranties of the Depositor.

(a)    The Depositor hereby represents and warrants to the Trustee, for the benefit of the Certificateholders, and to the Master Servicer and the Securities Administrator as of the Closing Date or such other date as is specified, that:

(i)    the Depositor is a corporation duly organized, validly existing and in good standing under the laws governing its creation and existence and has full corporate power and authority to own its property, to carry on its business as presently conducted, to enter into and perform its obligations under this Agreement, and to create the trust pursuant hereto;

(ii)    the execution and delivery by the Depositor of this Agreement have been duly authorized by all necessary corporate action on the part of the Depositor; neither the execution and delivery of this Agreement, nor the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will conflict with or result in a breach of, or constitute a default under, any of the provisions of any law, governmental rule, regulation, judgment, decree or order binding on the Depositor or its properties or the certificate of incorporation or bylaws of the Depositor;

(iii)    the execution, delivery and performance by the Depositor of this Agreement and the consummation of the transactions contemplated hereby do not require the consent or approval of, the giving of notice to, the registration with, or the taking of any other action in respect of, any state, federal or other governmental authority or agency, except such as has been obtained, given, effected or taken prior to the date hereof;

(iv)    this Agreement has been duly executed and delivered by the Depositor and, assuming due authorization, execution and delivery by the Trustee, the Master Servicer and the Securities Administrator, constitutes a valid and binding obligation of the Depositor enforceable against it in accordance with its terms except as such enforceability may be subject to (A) applicable bankruptcy and insolvency laws and other similar laws affecting the enforcement of the rights of creditors generally and (B) general principles of equity regardless of whether such enforcement is considered in a proceeding in equity or at law;

(v)    there are no actions, suits or proceedings pending or, to the knowledge of the Depositor, threatened or likely to be asserted against or affecting the Depositor, before or by any court, administrative agency, arbitrator or governmental body (A) with respect to any of the transactions contemplated by this Agreement or (B) with respect to

49

any other matter which in the judgment of the Depositor will be determined adversely to the Depositor and will if determined adversely to the Depositor materially and adversely affect it or its business, assets, operations or condition, financial or otherwise, or adversely affect its ability to perform its obligations under this Agreement;

(vi)     immediately prior to the transfer and assignment of the Mortgage Loans to the Trustee, the Depositor was the sole owner of record and holder of each Mortgage Loan, and the Depositor had good and marketable title thereto, and had full right to transfer and sell each Mortgage Loan to the Trustee free and clear, subject only to (1) liens of current real property taxes and assessments not yet due and payable and, if the related Mortgaged Property is a condominium unit, any lien for common charges permitted by statute, (2) covenants, conditions and restrictions, rights of way, easements and other matters of public record as of the date of recording of such Mortgage acceptable to mortgage lending institutions in the area in which the related Mortgaged Property is located and specifically referred to in the lender's title insurance policy or attorney's opinion of title and abstract of title delivered to the originator of such Mortgage Loan, and (3) such other matters to which like properties are commonly subject which do not, individually or in the aggregate, materially interfere with the benefits of the security intended to be provided by the Mortgage, of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest, and had full right and authority, subject to no interest or participation of, or agreement with, any other party, to sell and assign each Mortgage Loan pursuant to this Agreement;

(vii)     This Agreement creates a valid and continuing security interest (as defined in the applicable Uniform Commercial Code (the "UCC")), in the Mortgage Loans in favor of the Trustee, which security interest is prior to all other liens, and is enforceable as such against creditors of and purchasers from the Depositor;

(viii)     The Mortgage Loans constitute "instruments" within the meaning of the applicable UCC;

(ix)     Other than the security interest granted to the Trustee pursuant to this Agreement, the Depositor has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Mortgage Loans. The Depositor has not authorized the filing of and is not aware of any financing statement against the Depositor that includes a description of the collateral covering the Mortgage Loans other than a financing statement relating to the security interest granted to the Trustee hereunder or that has been terminated. The Depositor is not aware of any judgment or tax lien filings against the Depositor;

(x)     None of the Mortgage Loans have any marks or notations indicating that such Mortgage Loans have been pledged, assigned or otherwise conveyed to any Person other than the Trustee; and

(xi)     The Depositor has received all consents and approvals required by the terms of the Mortgage Loans to convey the Mortgage Loans hereunder to the Trustee.

The foregoing representations made in this Section 2.03 shall survive the termination of this Agreement and shall not be waived by any party hereto.

Section 2.04    Representations and Warranties as to the Mortgage Loans.

(a)    Representations and Warranties of the Depositor as to the Mortgage Loans.

The Depositor hereby represents and warrants to the Trustee with respect to the Mortgage Loans or each Mortgage Loan, as the case may be, as of the date hereof or such other date set forth herein that as of the Closing Date:

(i)    Immediately prior to the transfer and assignment contemplated herein, the Depositor was the sole owner and holder of the Mortgage Loans. The Mortgage Loans were not assigned or pledged by the Depositor and the Depositor had good and marketable title thereto, and the Depositor had full right to transfer and sell the Mortgage Loans to the Trustee free and clear of any encumbrance, participation interest, lien, equity, pledge, claim or security interest and had full right and authority subject to no interest or participation in, or agreement with any other party to sell or otherwise transfer the Mortgage Loans.

(ii)    As of the Closing Date, the Depositor has transferred all right, title and interest in the Mortgage Loans to the Trustee on behalf of the Trust.

(iii)    As of the Closing Date, the Depositor has not transferred the Mortgage Loans to the Trustee on behalf of the Trust with any intent to hinder, delay or defraud an of its creditors.

It is understood and agreed that the representations and warranties set forth in this Section 2.04(a) shall survive the delivery of the respective Mortgage Files to the Trustee or the Custodian and shall inure to the benefit of the Trustee, notwithstanding any restrictive or qualified endorsement or assignment.

(b)    Representations and Warranties of the Seller as to the Mortgage Loans.

(i)    The representations and warranties of PHH with respect to the PHH Mortgage Loans in the PHH Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the PHH Purchase and Servicing Agreement. With respect to the PHH Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in clauses (4), (20), (21), (25), (31) and (57) of Section 3.03 of the PHH Purchase and Servicing Agreement with respect to each of the PHH Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(ii)    The representations and warranties of the applicable Chase Originator with respect to the Chase Originator Mortgage Loans in the related Chase Originator Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the Chase Originator

51

Purchase and Servicing Agreement. With respect to the Chase Originator Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 3.02 of each Chase Originator Purchase and Servicing Agreement with respect to each of the Chase Originator Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(iii)     The representations and warranties of CTX with respect to the CTX Mortgage Loans in the CTX Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the CTX Purchase and Servicing Agreement. With respect to the CTX Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in clauses (a), (b), (c), (d), (e), (g), (h), (i), (k), (l), (n), (o), (p), (q), (t) (u), (w), (x), (aa), (cc), (ee), (gg), (hh), (jj), (kk), (mm), (nn), (oo), (pp), (rr), (vv), (bbb), (ccc), (ddd), (eee), (fff), (ggg), (hhh), (iii) and (jjj) of Section 7.01 of the CTX Purchase and Servicing Agreement with respect to each of the CTX Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(iv)     The representations and warranties of Countrywide with respect to the Countrywide Mortgage Loans in the Countrywide Purchase and Servicing Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the related Purchase and Servicing Agreement. With respect to the Countrywide Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 3.02 of the Countrywide Purchase and Servicing Agreement with respect to each of the Countrywide Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(v)     The representations and warranties of GreenPoint with respect to the GreenPoint Mortgage Loans in the related GreenPoint Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the GreenPoint Purchase and Servicing Agreement. With respect to the GreenPoint Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the GreenPoint Purchase and Servicing Agreement with respect to each of the GreenPoint Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(vi)     The representations and warranties of Weichert with respect to the Weichert Mortgage Loans in the Weichert Purchase Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date. With respect to the Weichert Mortgage Loans and the period from the applicable Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the Weichert Purchase Agreement with respect to each of the Weichert Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

52

(vii)    The representations and warranties of NetBank with respect to the NetBank Mortgage Loans in the related NetBank Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the NetBank Purchase and Servicing Agreement. With respect to the NetBank Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.02 of the NetBank Purchase and Servicing Agreement with respect to each of NetBank Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(viii)    The representations and warranties of American Home with respect to the American Home Mortgage Loans in the related American Home Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date, as specified in the American Home Purchase and Servicing Agreement. With respect to the American Home Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the American Home Purchase and Servicing Agreement with respect to each of American Home Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(ix)    The representations and warranties of Market Street with respect to the Market Street Mortgage Loans in the Market Street Purchase Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date. With respect to the Market Street Mortgage Loans and the period from the applicable Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the Market Street Purchase Agreement with respect to each of the Market Street Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(x)    The representations and warranties of M&T with respect to the M&T Mortgage Loans in the M&T Purchase Agreement, which has been assigned to the Trustee, were made as of the applicable Bring-Down Date, as specified in the M&T Purchase Agreement. With respect to the M&T Mortgage Loans and the period from such Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Section 7.01 of the M&T Purchase Agreement with respect to each of the M&T Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(xi)    The representations and warranties of SunTrust with respect to the SunTrust Mortgage Loans in the Sun Trust Purchase and Servicing Agreement, which have been assigned to the Trustee hereunder, were made as of the applicable Bring-Down Date. With respect to the SunTrust Mortgage Loans and the period from the applicable Bring-Down Date to and including the Closing Date, the Seller hereby makes the representations and warranties contained in Sections 3.01 of the Sun Trust Purchase and Servicing Agreement with respect to each of the SunTrust Mortgage Loans to and for the benefit of the Depositor, the Trustee and the Trust Fund.

(xii)   In addition, the Seller hereby represents and warrants that, as of the Closing Date, (i) no Mortgage Loan is subject to the Home Ownership and Equity Protection Act of 1994 or any applicable, similar federal, state or local statutes or regulations related to "high cost" mortgage loans or "predatory," "high cost," "threshold" or "covered" lending (as such terms are defined in the applicable statute or regulation); (ii) no Mortgage Loan is (w) a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003, (x) a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004, (y) a "High Cost Loan" or "Covered Loan" (as such terms are defined in the current S&P's LEVELS® Glossary), or (z) governed by the Georgia Fair Lending Act, if such Mortgage Loan was originated on or after October 1, 2002 through March 6, 2003, (iii) each Mortgage Loan at origination complied in all material respects with applicable local, state and federal laws, including, but not limited to, applicable anti-predatory and abusive lending laws, and (iv) each Mortgage Loan is a "qualified mortgage" within the meaning of 860G(a)(3) of the Code.

The Seller agrees to comply with the provisions of Section 2.05 hereof in respect of a breach of any of such representations and warranties.

Section 2.05   Discovery of Breach; Repurchase or Substitution of Mortgage Loans.

(a)   Upon discovery by the Depositor, the Seller or the related Originator or receipt of written notice of any materially defective document in, or, following the date of delivery to the Trustee of the Custodian's certifications as required under the related Custodial Agreements, that a document is missing from, a Trustee Mortgage File, or discovery by the Trustee, the Securities Administrator, the Depositor, the Seller or the related Originator of the breach by such Originator or Seller of any representation or warranty under the related Purchase and Servicing Agreement, as modified by the Acknowledgement, or Purchase Agreement, as applicable, in the case of an Originator, or under this Agreement, in the case of the Seller, in respect of any Mortgage Loan which materially adversely affects the value of that Mortgage Loan or the interest therein of the Certificateholders (a "Defective Mortgage Loan") (each of the Depositor, the Seller and the related Originator hereby agreeing to give written notice thereof to the Trustee, the Securities Administrator and the other of such parties), the Securities Administrator, or its designee, on behalf of the Trust Fund, shall promptly notify the Depositor, the Trustee and the Seller or the related Originator, as applicable, in writing of such defective or missing document or breach and request that the Seller or related Originator deliver such missing document or cure or cause the cure of such defect or breach within a period of time specified in the related Purchase and Servicing Agreement or Purchase Agreement, as applicable (or, in the case of a breach by the Seller, within 90 days from the earlier of its discovery or its receipt of notice of such breach), and if the Trustee receives written notice that the Seller or related Originator, as applicable, has not delivered such missing document or cure such defect or breach in all material respects during such period, the Trustee, on behalf of the Trust Fund, shall enforce the obligations of the related Originator under the related Purchase and Servicing Agreement, as modified by the Acknowledgement, or Purchase Agreement, as applicable, and then, to the extent that the related Originator fails to cure such defect or breach, the Seller under this Agreement, and cause the related Originator or the Seller, as the case may be, to repurchase that Mortgage Loan from the Trust Fund at the Purchase Price on or prior to the Determination Date following the expiration

54

of such specified period (subject to Section 2.05(b) below); *provided, however,* that, in connection with any such breach that could not reasonably have been cured within such specified period (unless permitted a greater period of time to cure under the related Purchase and Servicing Agreement or Purchase Agreement, as applicable), subject to Section 2.05(c) below, if the related Originator or the Seller, as applicable, shall have commenced to cure such breach within such specified period, the related Originator or the Seller shall be permitted to proceed thereafter diligently and expeditiously to cure the same within such additional time as is reasonably determined by the Trustee to cure such breach. To the extent that any costs and damages are incurred by the Trust Fund as a result of any violation of any applicable federal, state, or local predatory or abusive lending law arising from or in connection with the origination of any Mortgage Loan repurchased by the related Originator or the Seller, such costs and damages shall be included in the Purchase Price of such repurchased Mortgage Loan and shall be borne by the Seller. The Purchase Price for the repurchased Mortgage Loan shall be deposited in the related Distribution Account, and the Trustee, or its designee, upon receipt of written certification from the Securities Administrator of such deposit, shall release or cause the Custodian to release to the related Originator or the Seller, as applicable, the related Trustee Mortgage File and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, representation or warranties, as either party shall furnish to it and as shall be necessary to vest in such party any Mortgage Loan released pursuant hereto and the Trustee, or its designee, shall have no further responsibility with regard to such Trustee Mortgage File (it being understood that the Trustee shall have no responsibility for determining the sufficiency of such assignment for its intended purpose). If pursuant to the foregoing provisions the related Originator or the Seller repurchases a Mortgage Loan that is a MERS Mortgage Loan, the related Servicer shall cause MERS to designate on the MERS® System the related Originator or the Seller, as applicable, as the beneficial holder of such Mortgage Loan.

In lieu of repurchasing any such Mortgage Loan as provided above, either party may cause such Mortgage Loan to be removed from the Trust Fund (in which case it shall become a Deleted Mortgage Loan) and substitute one or more Replacement Mortgage Loans in the manner and subject to the limitations set forth in Section 2.05(b) below. It is understood and agreed that the obligations of the Originators and the Seller to cure or to repurchase (or to substitute for) any related Mortgage Loan as to which a document is missing, a material defect in a constituent document exists or as to which such a breach has occurred and is continuing shall constitute the sole remedy against the such party respecting such omission, defect or breach available to the Trustee on behalf of the Certificateholders.

(b)      Any substitution of Replacement Mortgage Loans for Deleted Mortgage Loans made pursuant to Section 2.05(a) above must be effected prior to the last Business Day that is within two years after the Closing Date. As to any Deleted Mortgage Loan for which the related Originator or the Seller substitutes a Replacement Mortgage Loan or Loans, such substitution shall be effected by delivering to the Custodian, on behalf of the Trustee, for such Replacement Mortgage Loan or Loans, the Mortgage Note, the Mortgage, the Assignment to the Trustee, and such other documents and agreements, with all necessary endorsements thereon, together with an Officers' Certificate stating that each such Replacement Mortgage Loan satisfies the definition thereof and specifying the Substitution Amount (as described below), if any, in connection with such substitution. Scheduled Payments due with respect to Replacement Mortgage Loans in the Due Period related to the Distribution Date in the month of substitution shall not be included as

55

part of the Trust Fund and shall be retained by the related Originator or the Seller, as applicable. For the month of substitution, distributions to the Certificateholders shall reflect the Scheduled Payments in respect of such Deleted Mortgage for the related Due Period preceding the month of substitution and the related Originator or the Seller, as applicable, shall thereafter be entitled to retain all amounts subsequently received in respect of such Deleted Mortgage Loan. Upon such substitution, such Replacement Mortgage Loan shall constitute part of the Trust Fund and shall be subject in all respects to the terms of this Agreement and the related Purchase and Servicing Agreement, as modified by the related Acknowledgement or Purchase Agreement, as applicable, including all representations and warranties thereof included in such Purchase and Servicing Agreement or Purchase Agreement, as applicable, as modified by the Acknowledgement, in each case as of the date of substitution.

For any month in which an Originator or the Seller substitutes one or more Replacement Mortgage Loans for one or more Deleted Mortgage Loans, the related Servicer shall determine the excess (each, a "Substitution Amount"), if any, by which the aggregate Stated Principal Balance of all such Deleted Mortgage Loans exceeds the aggregate Stated Principal Balance of the Replacement Mortgage Loans. On the date of such substitution, the related Originator or Seller, as applicable, shall deliver or cause to be delivered to the related Servicer for deposit in the related Custodial Account an amount equal to the related Substitution Amount, if any, plus one month's interest, at the applicable Net Mortgage Rate, on such Substitution Amount, and the Custodian, on behalf of the Trustee, upon receipt of the related Replacement Mortgage Loan or Loans and certification by such Servicer of such deposit, shall release to the related Originator or the Seller, as applicable, the related Trustee Mortgage File or Files and shall execute and deliver such instruments of transfer or assignment, in each case without recourse, as the related Originator or Seller shall deliver to it and as shall be necessary to vest therein any Deleted Mortgage Loan released pursuant hereto.

In addition, the related Originator or the Seller, as applicable, shall obtain at its own expense and deliver to the Trustee and the Securities Administrator an Opinion of Counsel to the effect that such substitution (either specifically or as a class of transactions) shall not cause an Adverse REMIC Event. If such Opinion of Counsel can not be delivered, then such substitution may only be effected at such time as the required Opinion of Counsel can be given.

(c)      Upon discovery by the related Originator, the Seller, the Depositor, the Securities Administrator or the Trustee that any Mortgage Loan does not constitute a "qualified mortgage" within the meaning of Section 860G(a)(3) of the Code, the party discovering such fact shall within two Business Days give written notice thereof to the other parties. In connection therewith, the applicable party shall repurchase or, subject to the limitations set forth in Section 2.05(b), substitute one or more Replacement Mortgage Loans for the affected Mortgage Loan within 90 days of the earlier of discovery or receipt of such notice with respect to such affected Mortgage Loan. Any such repurchase or substitution shall be made in the same manner as set forth in Section 2.05(a) above. The Trustee shall re-convey to the related Originator or the Seller, as applicable, the Mortgage Loan to be released pursuant hereto in the same manner, and on the same terms and conditions, as it would a Mortgage Loan repurchased for breach of a representation or warranty.

Section 2.06    Grant Clause.

(a)    It is intended that the conveyance of the Depositor's right, title and interest in and to property constituting the Trust Fund pursuant to this Agreement shall constitute, and shall be construed as, a sale of such property and not a grant of a security interest to secure a loan. However, if such conveyance is deemed to be in respect of a loan, it is intended that: (1) the rights and obligations of the parties shall be established pursuant to the terms of this Agreement; (2) the Depositor hereby grants to the Trustee for the benefit of the Holders of the Certificates a first priority security interest in all of the Depositor's right, title and interest in, to and under, whether now owned or hereafter acquired, the Trust Fund and all proceeds of any and all property constituting the Trust Fund to secure payment of the Certificates; and (3) this Agreement shall constitute a security agreement under applicable law.  If such conveyance is deemed to be in respect of a loan and the trust created by this Agreement terminates prior to the satisfaction of the claims of any Person holding any Certificate, the security interest created hereby shall continue in full force and effect and the Trustee shall be deemed to be the collateral agent for the benefit of such Person, and all proceeds shall be distributed as herein provided.

(b)    The Depositor shall, to the extent consistent with this Agreement, take such reasonable actions as may be necessary to ensure that, if this Agreement were deemed to create a security interest in the Mortgage Loans and the other property described above, such security interest would be deemed to be a perfected security interest of first priority under applicable law and will be maintained as such throughout the term of this Agreement.  The Depositor will, at its own expense, make all initial filings on or about the Closing Date and shall forward a copy of such filing or filings to the Trustee and the Securities Administrator.  Without limiting the generality of the foregoing, the Depositor shall prepare and forward for filing, or shall cause to be forwarded for filing, at the expense of the Depositor, all filings necessary to maintain the effectiveness of any original filings necessary under the relevant UCC to perfect the Trustee's security interest in or lien on the Mortgage Loans, including without limitation (x) continuation statements, and (y) such other statements as may be occasioned by (1) any change of name of an Originator, the Depositor or the Trustee, (2) any change of location of the place of business or the chief executive office of the Seller or the Depositor, (3) any transfer of any interest of an Originator or the Depositor in any Mortgage Loan or (4) any change under the relevant UCC or other applicable laws.  Neither the Originators nor the Depositor shall organize under the law of any jurisdiction other than the State under which each is organized as of the Closing Date (whether changing its jurisdiction of organization or organizing under an additional jurisdiction) without giving 30 days prior written notice of such action to its immediate and intermediate transferee, including the Trustee.  Before effecting such change, any Originator or the Depositor proposing to change its jurisdiction of organization shall prepare and file in the appropriate filing office any financing statements or other statements necessary to continue the perfection of the interests of its immediate and mediate transferees, including the Trustee, in the Mortgage Loans.  In connection with the transactions contemplated by this Agreement, each of the Originators and the Depositor authorizes its immediate or mediate transferee to file in any filing office any initial financing statements, any amendments to financing statements, any continuation statements, or any other statements or filings described in this paragraph (b), it being understood that such immediate or mediate transferees are under no obligation to make such filings.