# EXHIBIT 11

MORTGAGE LOAN SALE AGREEMENT

between

AMERICAN HOME MORTGAGE CORP.,

as Seller,

and

AMERICAN HOME MORTGAGE SERVICING, INC.,

as Servicer,

and

J.P. MORGAN MORTGAGE ACQUISITION CORP.,

as Purchaser

April 1, 2006

Fixed and Adjustable Rate Mortgage Loans

# TABLE OF CONTENTS

**Page**

SECTION 1.        Definitions............................................................................................1
    Subsection 1.01        Definitions................................................................1

SECTION 2.        Purchase and Conveyance......................................................16
    17

SECTION 3.        Mortgage Loan Schedule.........................................................17

SECTION 4.        Purchase Price..........................................................................17

SECTION 5.        Examination of Mortgage Files. ..............................................17

SECTION 6.        Delivery of Mortgage Loan Documents. .................................17
    Subsection 6.01        Possession of Mortgage Files...............................17
    Subsection 6.02        Books and Records................................................18
    Subsection 6.03        Delivery of Mortgage Loan Documents. ..............18

SECTION 7.        Representations, Warranties and Covenants; Remedies for Breach. ...............19
    Subsection 7.01        Representations and Warranties Regarding Individual
        Mortgage Loans. ...................................................19
    Subsection 7.02        Seller Representations...........................................35
    Subsection 7.03        Remedies for Breach of Representations and Warranties.............39
    Subsection 7.04        Covenants of  Seller..............................................41
    Subsection 7.05        Servicing of The Mortgage Loans..........................43
    Subsection 7.06        Seller Covenants Regarding
        Transfer of Servicing.  .........................................43
    Subsection 7.07        Early Payment Default...........................................50
    Subsection 7.08        Purchase Price Protection. ...................................50

SECTION 8.        Closing. ....................................................................................51

SECTION 9.        Closing Documents. .................................................................51

SECTION 10.        Costs; Assignments.................................................................52

SECTION 11.        Notices. .....................................................................................53

SECTION 12.        Cooperation of Seller with a Reconstitution. .........................54

SECTION 13.        Compliance with Regulation AB...............................................56
    Subsection 13.01        Intent of the Parties; Reasonableness.  ...............56
    Subsection 13.02        Information to Be Provided by the Seller. .............56
    Subsection 13.03        Indemnification; Remedies. ..................................59

Subsection 13.04_____ Additional Representations and Warranties of the Seller. ...........59

SECTION 14._____ Additional Indemnification by the Seller and

Servicer; Third Party Claims. ..........................................................60

SECTION 15._____ Severability Clause. ..........................................................60

SECTION 16._____ No Partnership. ..........................................................61

SECTION 17._____ Counterparts. ..........................................................61

SECTION 18._____ Governing Law. ..........................................................61

SECTION 19._____ Intention of the Parties. ..........................................................61

SECTION 20._____ Waivers. ..........................................................61

SECTION 21._____ Exhibits. ..........................................................62

SECTION 22._____ General Interpretive Principles. ..........................................................62

SECTION 23._____ Reproduction of Documents. ..........................................................62

SECTION 24._____ Amendment. ..........................................................62

SECTION 25._____ Confidentiality. ..........................................................63

SECTION 26._____ Entire Agreement. ..........................................................63

SECTION 27._____ Further Agreements. ..........................................................63

SECTION 28._____ Successors and Assigns. ..........................................................63

SECTION 29._____ Non-Solicitation. ..........................................................64

## EXHIBITS

EXHIBIT 1    FORM OF SELLER'S AND SERVICER'S OFFICER'S CERTIFICATE

EXHIBIT 2    MORTGAGE LOAN DOCUMENTS

EXHIBIT 3    CONTENTS OF EACH MORTGAGE FILE

EXHIBIT 4    MORTGAGE LOAN SCHEDULE

EXHIBIT 5    UNDERWRITING GUIDELINES

EXHIBIT 6    FORM OF OPINION OF COUNSEL

NYLIB5 894674.4

EXHIBIT 7    FORM   OF   ASSIGNMENT,       ASSUMPTION   AND   RECOGNITION AGREEMENT

EXHIBIT 8    TRANSFER INSTRUCTIONS

EXHIBIT 9    ASSIGNMENT AND CONVEYANCE

EXHIBIT 10   SERVICER ACKNOWLEDGMENT

EXHIBIT 11   CO-OP LOAN FILE

NYLIB5 894674.4

## MORTGAGE LOAN SALE AGREEMENT

THIS MORTGAGE LOAN SALE AGREEMENT (the "Agreement"), dated April 1, 2006, is hereby executed by and between J.P. Morgan Mortgage Acquisition Corp., a Delaware corporation, as purchaser (the "Purchaser"), American Home Mortgage Corp., a New York corporation, as seller (the "Seller") and American Home Mortgage Servicing, Inc., a Maryland corporation, as servicer (the "Servicer").

## W I T N E S S E T H:

WHEREAS, from time to time, the Seller desires to sell to the Purchaser, and, from time to time, the Purchaser desires to purchase from the Seller, certain conventional, fixed and adjustable-rate, residential, first-lien mortgage loans (the "Mortgage Loans"), and certain fixed and adjustable rate first lien Co-op Loans (the "Co-op Loans"), together with the servicing rights associated with such Mortgage Loans and such Co-op Loans, as described herein, and which shall be delivered as whole loans as provided herein;

WHEREAS, each Mortgage Loan is secured by a mortgage, deed of trust or other security instrument creating a first lien on a residential dwelling located in the jurisdiction indicated on the Mortgage Loan Schedule; and

WHEREAS, each of the Co-op Loans is secured by a pledge of shares of stock issued by a Cooperative and the assignment of the appurtenant proprietary lease, all relating to a specified dwelling unit in an apartment building owned by the Cooperative and located in the state indicated on the related Mortgage Loan Schedule, which is annexed to the related Assignment and Conveyance; and

WHEREAS, the Purchaser, the Seller and the Servicer wish to prescribe the manner of the conveyance, master servicing, servicing and control of the Mortgage Loans.

NOW, THEREFORE, in consideration of the premises and mutual agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Purchaser and the Seller agree as follows:

SECTION 1.   Definitions.

Subsection 1.01   Definitions.

For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below.

Acceptance of Assignment and Assumption of Lease Agreement:   The specific agreement creating a first lien on and pledge of the Cooperative Shares and the appurtenant Proprietary Lease securing a Cooperative Loan.

Adjustment Date:   As to each ARM Mortgage Loan, the date on which the Mortgage Interest Rate is adjusted in accordance with the terms of the related Mortgage Note.

In the event that such original or copy of any document submitted for recordation to the appropriate public recording office is not so delivered to the Purchaser or its designee within ninety days following the related Closing Date, and in the event that the Seller does not cure such failure within sixty (60) days after receipt of written notification of such failure from the Purchaser, the related Mortgage Loan shall, upon the request of the Purchaser, be repurchased by the Seller at a price and in the manner specified in Subsection 7.03. The foregoing repurchase obligation shall not apply in the event the Seller cannot cause the Servicer to deliver such original or clerk-certified copy of any document submitted for recordation to the appropriate public recording office within the specified period due to a delay caused by the recording office in the applicable jurisdiction; provided that the Seller shall cause the Servicer instead to deliver a recording receipt of such recording office or, if such recording receipt is not available, an officer's certificate of a servicing officer of the Servicer, confirming that such document has been accepted for recording and that the Servicer shall immediately deliver such document upon receipt; and, provided further, that if the Seller cannot cause the Servicer to deliver such original or clerk-certified copy of any document submitted for recordation to the appropriate public recording office within the specified time for any reason within twelve (12) months after receipt of written notification of such failure from the Purchaser, the Seller shall repurchase the related Mortgage Loan at the price and in the manner specified in Subsection 7.03.

To the extent received by it, the Seller shall, or shall cause the Servicer to, promptly forward to the Purchaser, or its designee, original documents evidencing an assumption, modification, consolidation or extension of any Mortgage Loan entered into in accordance with this Agreement.

SECTION 7.    Representations, Warranties and Covenants; Remedies for Breach.

Subsection 7.01    Representations and Warranties Regarding Individual Mortgage Loans.

The Seller, with respect to Mortgage Loans sold by it, hereby represents and warrants to the Purchaser, its successors and assigns and the Successor Servicer, that, as to each Mortgage Loan, as of the related Closing Date and as of the applicable Reconstitution Closing Date for each Securitization Transaction:

(a) Mortgage Loans as Described.  The information set forth in the Mortgage Loan Schedule and the tape delivered by the Seller to the Purchaser is true, correct and complete in all material respects.

(b) No Outstanding Charges.  There are no defaults by the Seller, the Servicer or any prior originator or servicer in complying with the terms of the Mortgage, and (a) all taxes, special assessments, ground rents, governmental assessments, insurance premiums, leasehold payments, water, sewer and municipal charges which previously became due and owing have been paid prior to any "economic loss" dates or discount dates (or if payments were made after any "economic loss" date or discount date, then Seller has paid any penalty or reimbursed any discount out of Seller's corporate funds) and (2) all flood and hazard insurance premiums and mortgage insurance premiums which are due, have been paid without loss or penalty to the Mortgagor.  As of the Closing Date, no event

which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration under a Mortgage Loan has occurred and neither Seller nor its predecessors have waived any default, breach, violation or event of acceleration.  Seller has received no notice of, and has no knowledge of, any event, including but not limited to the bankruptcy filing or death of a Borrower, which may or could give rise to a Borrower default under the Note or Mortgage.  None of the Seller, the Servicer, a Prior Servicer or any originator (if not the Seller) has advanced funds, or induced, solicited or knowingly received any advance from any party other than the Mortgagor, directly or indirectly, for the payment of any amount due under the Mortgage Loan.

(c) Original Terms Unmodified.  The terms of the Mortgage Note and the Mortgage have not been impaired, waived, altered or modified in any respect, except by written instruments which (a) have been recorded in the applicable public recording office if required by law or if necessary to maintain the lien priority of the Mortgage, and (b) which have been delivered to the Purchaser; the substance of any such waiver, alteration or modification has been approved by the insurer under the Primary Mortgage Insurance Policy or LPMI Policy, if any, and by the title insurer, to the extent required by the related policy, and is reflected on the Mortgage Loan Schedule.  No other instrument of waiver, alteration or modification has been executed, and no Mortgagor has been released, in whole or in part, except in connection with an assumption agreement approved by the insurer under the Primary Mortgage Insurance Policy or LPMI Policy, if any, and by the title insurer, to the extent required by the policy, and which assumption agreement is a part of the Mortgage File and is reflected on the Mortgage Loan Schedule. As of the Transfer Date, the full original principal amount of each Mortgage Loan has been advanced as provided for in the Mortgage Loan documents, and there is no requirement for any future advances.

(d) No Defenses.  The Mortgage Note and the Mortgage are not subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, nor will the operation of any of the terms of the Mortgage Note and the Mortgage, or the exercise of any right thereunder, render either the Mortgage Note or the Mortgage unenforceable, in whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including, without limitation, the defense of usury, and no such right of rescission, set-off, counterclaim or defense has been asserted with respect thereto; and the Mortgagor was not a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Mortgage Loan was originated.  The Mortgaged Property has not been subject to any bankruptcy proceeding or foreclosure proceeding and the Mortgagor has not filed for protection under, or has been a debtor under, applicable bankruptcy laws.

(e) Hazard Insurance.  All buildings or other customarily insured improvements upon the Mortgaged Property are insured by a Qualified Insurer generally acceptable to Fannie Mae and to prudent mortgage lending institutions against loss by fire, hazards of extended coverage and such other hazards as are provided for in the Fannie Mae Guides as well as all additional requirements set forth herein, pursuant to an insurance policy conforming to the requirements of Customary Servicing Procedures and providing

-20-

coverage in an amount equal to the lesser of (i) the full insurable value of the Mortgaged Property or (ii) the outstanding principal balance owing on the Mortgage Loan.  All such insurance policies are in full force and effect and contain a standard mortgagee clause naming the originator of the Mortgage Loan, its successors and assigns as mortgagee and all premiums thereon have been paid.  If the Mortgaged Property is in an area identified on a flood hazard map or flood insurance rate map issued by the Federal Emergency Management Agency as having special flood hazards (and such flood insurance has been made available), a flood insurance policy meeting the requirements of the current guidelines of the Federal Insurance Administration is in effect which policy conforms to the requirements of Fannie Mae.  The Mortgage obligates the Mortgagor thereunder to maintain all such insurance at the Mortgagor's cost and expense, and on the Mortgagor's failure to do so, authorizes the holder of the Mortgage to maintain such insurance at the Mortgagor's cost and expense and to seek reimbursement therefor from the Mortgagor.  Where required by state law or regulation, the Mortgagor has been given an opportunity to choose the carrier of the required hazard insurance, provided the policy is not a "master" or "blanket" hazard insurance policy covering the common facilities of a planned unit development.  The hazard insurance policy is the valid and binding obligation of the insurer, is in full force and effect, and will be in full force and effect and inure to the benefit of the Purchaser upon the consummation of the transactions contemplated by this Agreement.  The Seller, the Servicer and any subservicer have not engaged in, and has no knowledge of the Mortgagor, any prior servicer having engaged in, any act or omission which would impair the coverage of any such policy, the benefits of the endorsement provided for herein, or the validity and binding effect of either, including, without limitation, no unlawful fee, commission, kickback or other unlawful compensation or value of any kind has been or will be received, retained or realized by any attorney, firm or other person or entity, and no such unlawful items have been received, retained or realized by the Seller;

(f)  <u>Compliance with Applicable Laws</u>.   Any and all requirements of any applicable federal, state or local law including, without limitation, usury, truth in lending, real estate settlement procedures, consumer credit protection, predatory and abusive lending laws, equal credit opportunity, fair housing and disclosure laws or unfair and deceptive practices laws applicable to the origination and servicing of the Mortgage Loan including, without limitation, any provisions relating to prepayment penalties, have been complied with, the consummation of the transactions contemplated hereby will not involve the violation of any such laws or regulations.  Each Mortgage Loan at the time it was made complied in all material respects with applicable local, state, and federal laws, including, but not limited to, all applicable predatory and abusive lending laws.

(g)  <u>No Satisfaction of Mortgage</u>.  The Mortgage has not been satisfied, canceled, subordinated or rescinded, in whole or in part, and the Mortgaged Property has not been released from the lien of the Mortgage, in whole or in part, nor has any instrument been executed that would effect any such satisfaction, cancellation, subordination, rescission or release.   Neither the Seller nor the Servicer has waived the performance by the Mortgagor of any action, if the Mortgagor's failure to perform such action would cause the Mortgage Loan to be in default, and neither the Seller nor the Servicer has waived any default.

-21-

(h) <u>Valid First Lien</u>.  Except with respect to each Co-op Loan, the Mortgage is a valid, existing, perfected and enforceable first lien on the Mortgaged Property, including all improvements on the Mortgaged Property, free and clear of all adverse claims, liens and encumbrances having priority over the lien of the Mortgage.   Seller has no knowledge of any facts that would impair the validity or value of the Note, the Mortgage, any other Mortgage Loan document or the Mortgaged Property.  Except with respect to each Co-op Loan, any security agreement, chattel mortgage or equivalent document related to and delivered in connection with the Mortgage Loan establishes and creates a valid, existing and enforceable first lien and first priority security interest on the property described therein and the Seller has the full right to sell and assign the same to the Purchaser.

(i) <u>Validity of Mortgage Documents</u>.  With respect to each Mortgage Loan, Seller or its designee has in its possession all Servicing Files, or any miscellaneous items (except for those Servicing Files disclosed to Purchaser by Seller as outstanding).  All Servicing Files and miscellaneous items required to be delivered pursuant to this Agreement shall be delivered to Purchaser, within the time frames set forth in this Agreement, and if a Servicing File is delivered in imaged format, such images must be of sufficient quality to be readable and able to be copied.  The Mortgage, the Note, and each of the other documents executed in conjunction therewith are genuine, were duly executed by a Borrower of legal capacity, and all Mortgage Loan documents have been correctly completed and are valid and legally binding documents.  Neither the operation of any of the terms of any Mortgage or Note, nor the exercise of any right thereunder, will render the Mortgage or Note unenforceable, in whole or in part, or subject to any right of rescission, setoff, counterclaim or defense, and no such right of rescission, setoff, counterclaim or defense has been asserted with respect thereto.  All parties to the Mortgage Note and the Mortgage had the legal capacity to enter into the Mortgage Loan and to execute and deliver the Mortgage Note and the Mortgage, and the Mortgage Note and the Mortgage have been duly and properly executed by such parties.

(j) <u>Full Disbursement of Proceeds</u>.  The proceeds of the Mortgage Loan have been fully disbursed to or for the account of the Mortgagor and there is no obligation for the Mortgagee to advance additional funds thereunder and any and all requirements as to completion of any on site or off-site improvement and as to disbursements of any escrow funds therefor have been complied with.  All costs, fees and expenses incurred in making or closing the Mortgage Loan and the recording of the Mortgage have been paid, and the Mortgagor is not entitled to any refund of any amounts paid or due to the Mortgagee pursuant to the Mortgage Note or Mortgage.

(k) <u>Title Insurance</u>.  Except with respect to each Co-op Loan, the Mortgage Loan is covered by an ALTA or CLTA lender's title insurance policy, acceptable to Fannie Mae or Freddie Mac, issued by a title insurer acceptable to Fannie Mae or Freddie Mac and qualified to do business in the jurisdiction where the Mortgaged Property is located, insuring (subject to the exceptions contained in (i)(i), (ii) and (iii) above) the Seller, its successors and assigns as to the first priority lien of the Mortgage in the original principal amount of the Mortgage Loan and, with respect to ARM Mortgage Loans, against any loss by reason of the invalidity or unenforceability of the lien resulting from the

-22-

provisions of the Mortgage providing for adjustment in the Mortgage Interest Rate or Monthly Payment.  Where required by state law or regulation, the Mortgagor has been given the opportunity to choose the carrier of the required mortgage title insurance. Additionally, such lender's title insurance policy affirmatively insures ingress and egress, and against encroachments by or upon the Mortgaged Property or any interest therein. The Seller and its successors and assigns are the sole insureds of such lender's title insurance policy, and such lender's title insurance policy is in full force and effect and will be in full force and effect upon the consummation of the transactions contemplated by this Agreement and will inure to the benefit of the Purchaser and its assigns without any further act.  No claims have been made under such lender's title insurance policy, and the Seller has not done, by act or omission, anything which would impair the coverage of such lender's title insurance policy.

(l)  No Default.  There is no default, breach, violation or event of acceleration existing under the Mortgage or the Mortgage Note and no event which, with the passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event permitting acceleration, and neither the Seller nor the Servicer has waived any default, breach, violation or event permitting acceleration.

(m) No Mechanics' Liens.  There are no mechanics' or similar liens or claims filed for work, labor or material (and no rights are outstanding that under law could give rise to such lien) affecting the related Mortgaged Property which are or may be liens prior to, or equal or coordinate with, the lien of the related Mortgage.

(n)  Location of Improvements; No Encroachments.  All improvements subject to the Mortgage which were considered in determining the Appraised Value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property (and wholly within the project with respect to a condominium unit) and no improvements on adjoining properties encroach upon the Mortgaged Property except those which are insured against by the title insurance policy referred to in Subsection 7.01(k) above and all improvements on the Mortgaged Property comply with all applicable zoning and subdivision laws and ordinances.

(o)  Origination; Payment Terms.  The Mortgage Loan was originated by a mortgagee approved by the Secretary of Housing and Urban Development pursuant to Sections 203 and 211 of the National Housing Act, a savings and loan association, a savings bank, a commercial bank, credit union, insurance company or other similar institution which is supervised and examined by a federal or state authority.  The Seller and all other parties which have had any interest in the Mortgage Loan, whether as mortgagee, assignee, pledgee or otherwise, are (or, during the period in which they held and disposed of such interest, were) in compliance with any and all applicable "doing business" and licensing requirements of the laws of the state wherein the Mortgaged Property is located.  Principal payments on the Mortgage Loan commenced no more than sixty (60) days after the proceeds of the Mortgage Loan were disbursed.  The Mortgage Loans have an original term to maturity of not more than thirty (30) years, with interest payable in arrears on the first day of the month.  As to each ARM Mortgage Loan, on each applicable Adjustment Date, the Mortgage Interest Rate will be adjusted to equal the

sum of the Index plus the applicable Gross Margin, rounded up or down to the nearest multiple of 0.125%; provided, however, that the Mortgage Interest Rate will not increase or decrease by more than the Initial Rate Cap on the first Adjustment Date or the Periodic Rate Cap on any subsequent Adjustment Date, and will in no event exceed the Lifetime Rate Cap.  Each Mortgage Note requires a monthly payment which is sufficient (i) during the period prior to the first adjustment to the Mortgage Interest Rate, to amortize the original principal balance fully over the original term thereof and to pay interest at the related Mortgage Interest Rate, and (ii) during the period following each Adjustment Date, to amortize the outstanding principal balance fully as of the first day of such period over the then remaining term of such Mortgage Note and to pay interest at the related Mortgage Interest Rate.  The Mortgage Note does not permit negative amortization. Each Note is payable in monthly installments of principal and interest, with interest calculated and payable in arrears.  The Monthly Payments are sufficient to amortize the Mortgage Loan fully by the maturity date stated in the Note, over a remaining term of not more than thirty (30) years, within a tolerance of one hundred dollars ($100).  Purchaser shall be entitled to the remedies set out in this Sale Agreement for breach of representation or warranty as if the forgoing representation and warranty shall have been given without any reference to a tolerance.  Interest on each Mortgage Loan is calculated and payable in arrears.  No Mortgage Loan is a Convertible Mortgage Loan.  None of the Mortgage Loans are simple interest Mortgage Loans.

(p) <u>Mortgaged Property Undamaged; No Condemnation Proceedings</u>.  As of the related Closing Date, there are no uninsured casualty losses or casualty losses where coinsurance has been, or Seller has reason to believe will be, claimed by the insurance company or where the loss, exclusive of contents, is, or will be, greater than the recovery (less actual costs and expenses incurred in connection with such recovery) from the insurance carrier.  No casualty insurance proceeds have been used to reduce Mortgage Loan balances or for any other purpose except to make repairs to the Mortgaged Property, except as allowed pursuant to applicable law and the Mortgage Loan documents.  All damage with respect to which casualty insurance proceeds have been received by or through Seller has been properly repaired or is in the process of being repaired using such proceeds.  As of the related Closing Date, there is no damage to the Mortgaged Property from waste, fire, windstorm, flood, tornado, earthquake or earth movement, hazardous or toxic substances, other casualty, or any other property related circumstances or conditions that would adversely affect the value or marketability of any Mortgage Loan or Mortgaged Property, and adequate insurance is in place to cover all such events.  As of the related Closing  Date, there is no proceeding pending or, to the best of Seller's knowledge, threatened for the partial or total condemnation of the Mortgaged Property that would adversely affect the Mortgage Loan, except as disclosed in writing to Purchaser.

(q) <u>Customary Provisions</u>.  The Mortgage and related Mortgage Note contain customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of a Mortgage designated as a deed of trust by trustee's sale, and (ii) otherwise by judicial foreclosure.  There is no homestead or other exemption or right available to the Mortgagor or any other person

NYLIB5 894674.4

which would interfere with the right to sell the Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage.

(r)  No Additional Collateral.  The Mortgage Note is not and has not been secured by any collateral except the lien of the corresponding Mortgage on the Mortgaged Property.

(s)  Appraisal.  The Mortgage File contains an appraisal of the related Mortgaged Property, in a form acceptable to Fannie Mae or Freddie Mac and such appraisal complies with the requirements of FIRREA, and was made and signed, prior to the approval of the Mortgage Loan application, by a Qualified Appraiser.

(t)  Deeds of Trust.  In the event the Mortgage constitutes a deed of trust, a trustee, duly qualified under applicable law to serve as such, has been properly designated and currently so serves and is named in the Mortgage, and no fees or expenses are or will become payable by the Purchaser to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Mortgagor.

(u)  No Buydown Provisions; No Graduated Payments or Contingent Interests  The Mortgage Loan is not a graduated payment mortgage loan and the Mortgage Loan does not have a shared appreciation, balloon payment or other contingent interest feature, nor does it contain any "buydown" provision which is currently in effect wherein Monthly Payments are paid or partially paid with funds deposited in a separate account established by Seller, the Mortgagor or anyone on behalf of the Mortgagor, or paid by any source other than the Mortgagor.  As of the related Closing Date, none of the Mortgage Loans are the subject of nonstandard escrow arrangements.

(v)  Disclosure and Rescission Materials.  The Mortgagor has received all disclosure materials required by applicable law with respect to the making of the Mortgage Loan and rescission materials required by applicable law if the Mortgage Loan is a Refinanced Mortgage Loan and has acknowledged receipt of such materials to the extent required by applicable law and such documents will remain in the Mortgage File.

(w) LTV, PMI Policy.  In the event the Mortgage Loan had an LTV greater than 80.0% at origination, the Mortgage Loan has a valid and transferable PMI Policy, except that where such a policy was impermissible at origination under applicable law, such Mortgage Loan was originated in compliance with applicable law.  Unless the PMI Policy for a Mortgage Loan was cancelled at the request of the Borrower or automatically terminated, in either case in accordance with applicable law, all premiums have been paid and all provisions of such PMI Policy have been and are being complied with.  With respect to a purchase money Mortgage Loan, both the original appraised value and the purchase price are accurately depicted as such on Seller's (or, as applicable, Seller's servicer's) servicing system and are being transmitted, either electronically or via tape-to-tape, to Purchaser's servicing system.  Where a Mortgage Loan was closed as a streamlined refinance and a new appraisal was not required, the prior appraised value that was relied on in making the credit decision for the Mortgage Loan is accurately depicted on Seller's (or, as applicable, Seller's servicer's) servicing system and is being

-25-

transmitted, either electronically or via tape-to-tape, to Purchaser's servicing system. There are no Mortgage Loans for which Seller funds the PMI Policy premium.  The Mortgage Interest Rate for the Mortgage Loan as set forth on the Mortgage Loan Schedule is net of any such insurance premium.  As of the date of origination, no Mortgage Loan had an LTV greater than 95%.

(x) Occupancy of the Mortgaged Property.  The Mortgaged Property is lawfully occupied under applicable law.  All inspections, licenses and certificates required to be made or issued with respect to all occupied portions of the Mortgaged Property and, with respect to the use and occupancy of the same, including but not limited to certificates of occupancy, have been made or obtained from the appropriate authorities and no improvement located on or as a part of the Mortgaged Property is in violation of any zoning law or regulation.  The Mortgaged Property meets the requirement of either owner occupied or non-owner occupied property.

(y) Transfer of Mortgage Loans.  The Assignment of Mortgage is in recordable form and is acceptable for recording under the laws of the jurisdiction in which the Mortgaged Property is located (except with respect to each MERS Designated Mortgage Loan).  Each original Mortgage was recorded and, except for those Mortgage Loans subject to the MERS identification system, all subsequent assignments of the original Mortgage (other than the assignment to the Purchaser) have been recorded in the appropriate jurisdictions wherein such recordation is necessary to perfect the lien thereof as against creditors of the Seller, or is in the process of being recorded.  On or prior to the related Closing Date, Seller has provided the Custodian and the Purchaser with a MERS Report listing the Purchaser as the Investor with respect to each MERS Designated Mortgage Loan.  With respect to each MERS Designated Mortgage Loan, the Seller has designated the Purchaser as the Investor and no Person is listed as Interim Funder on the MERS® System;

(z) Delinquency.  All payments required to be made prior to the Closing Date for such Mortgage Loan under the terms of the Mortgage Note have been made, the Mortgage Loan has not been dishonored, and no Mortgage Loan has been more than thirty (30) days delinquent since the related origination date.

(aa) Mortgage File.  With respect to each Mortgage Loan, the Seller is in possession of a complete Mortgage File except for the documents which have been delivered to the Purchaser or the Custodian or which have been submitted for recording and not yet returned.

(bb) Ownership.  Immediately prior to the payment of the Purchase Price, the Seller was the sole owner and holder of the Mortgage Loans and the indebtedness evidenced by the Mortgage Note.  The Mortgage Loans, including the Mortgage Note and the Mortgage, are not assigned or pledged by the Seller and the Seller has good and marketable title thereto, and the Seller has full right to transfer and sell the Mortgage Loans (including, without limitation, any interest in the Servicing Rights) to the Purchaser free and clear of any encumbrance, participation interest, lien, equity, pledge, claim or security interest and has full right and authority subject to no interest or

-26-

participation in, or agreement with any other party to sell or otherwise transfer the Mortgage Loans.   Following the sale of the Mortgage Loan (including, without limitation, any interest in the Servicing Rights), the Purchaser will own such Mortgage Loan free and clear of any encumbrance, equity, participation interest, lien, pledge, charge, claim or security interest.   The Seller intends to relinquish all rights to monitor, possess and control the Mortgage Loan except in connection with the servicing of the Mortgage Loan by the Servicer as set forth in this Agreement.   After the related Closing Date, neither the Seller nor the Servicer will have any right to modify or alter the terms of the sale of the Mortgage Loan and neither the Seller nor the Servicer will have any obligation or right to repurchase the Mortgage Loan, except as provided in this Agreement or as otherwise agreed to in writing by the Seller, the Servicer and the Purchaser.   The transfer, sale and delivery of the Servicing Rights in accordance with the terms and conditions of this Agreement shall vest in Purchaser or its designee all rights as servicer free and clear of any and all claims, charges, defenses, offsets and encumbrances, including but not limited to those of Seller.

(cc)   <u>Consolidation of Future Advances.</u>  Any future advances made prior to the related Cut-off Date have been consolidated with the outstanding principal amount secured by the Mortgage, and the secured principal amount, as consolidated, bears a single interest rate and single repayment term.   The lien of the Mortgage securing the consolidated principal amount is expressly insured as having first lien priority by a title insurance policy, an endorsement to the policy insuring the mortgagee's consolidated interest or by other title evidence acceptable to Fannie Mae and Freddie Mac.   The consolidated principal amount does not exceed the original principal amount of the Mortgage Loan.

(dd)   <u>Underwriting Guidelines</u>.   The Mortgage Loan was underwritten in accordance with the Underwriting Guidelines in effect at the time of origination.   The Mortgage Note and Mortgage are on forms acceptable to Freddie Mac or Fannie Mae and no representations have been made to a Mortgagor that are inconsistent with the mortgage instruments used;

(ee)   <u>Location and Type of Mortgaged Property</u>.   The Mortgaged Property is located in the state identified in the Mortgage Loan Schedule and consists of a parcel of real property with a detached single family residence erected thereon, or a two- to four-family dwelling, or an individual condominium unit, or an individual unit in a planned unit development; provided, however, that any condominium project or planned unit development generally conforms with the Underwriting Guidelines regarding such dwellings, and no residence or dwelling is a mobile home, manufactured dwelling or a mixed-use property.   If the Mortgaged Property is a condominium unit or a planned unit development (other than a de minimis planned unit development) such condominium or planned unit development project is (i) acceptable to Fannie Mae or (ii) located in a condominium or planned unit development project which has received project approval from Fannie Mae.   The representations and warranties required by Fannie Mae with respect to such condominium or planned unit development have been satisfied and remain true and correct.   As of the date of origination, no portion of the Mortgaged Property was used for commercial purposes, and since the date of origination, no portion

NYLIB5 894674.4

of the Mortgaged Property has been used for commercial purposes; provided, that Mortgaged Properties which contain a home office shall not be considered as being used for commercial purposes as long as the Mortgaged Property has not been altered for commercial purposes and is not storing any chemicals or raw materials other than those commonly used for homeowner repair, maintenance and/or household purposes;

(ff)    Adverse Selection.  The Seller used no adverse selection procedures in selecting the Mortgage Loan from among the outstanding first-lien, residential mortgage loans owned by it which were available for inclusion in the Mortgage Loans.

(gg)    Qualified Mortgage.  Each Mortgage Loan is a "qualified mortgage" within Section 860G(a)(3) of the Code.

(hh)    No Fraud.  No fraud, error, omission, misrepresentation, negligence or similar occurrence with respect to the Mortgage Loan has taken place on the part of the Seller, the Servicer or any originator or servicer or the Mortgagor or on the part of any other party involved in the origination of the Mortgage Loan, including without limitation the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or, in the application of any insurance in relation to such Mortgage Loan.  The documents, instruments and agreements submitted for loan underwriting were not falsified and contain no untrue statement of material fact or omit to state a material fact required to be stated therein or necessary to make the information and statements therein not misleading.  The Seller has reviewed all of the documents constituting the Servicing File and has made such inquiries as it deems necessary to make and confirm the accuracy of the representations set forth herein.

(ii)  Origination Practices.  The origination practices used by the Seller and the collection and servicing practices used by the Servicer with respect to each Mortgage Loan have been in all respects legal and customary in the mortgage origination and servicing industry and the collection and servicing practices used by the Servicer have been consistent with Customary Servicing Procedures.  There has been no improper act or omission or alleged improper act or omission or error by the Seller or any employee, agent or representative acting on Seller's behalf, with respect to the origination or servicing of the Mortgage Loan.

(jj)  Unacceptable Investment.   Neither the Seller nor the Servicer have any knowledge of any circumstances or condition with respect to the Mortgage, the Mortgaged Property, the Mortgagor or the Mortgagor's credit standing that could reasonably be expected to cause investors to regard the Mortgage Loan as an unacceptable investment, cause the Mortgage Loan to become delinquent or adversely affect the value or the marketability of the Mortgage Loan or the related Servicing Rights.

(kk)    Servicemember's Civil Relief Act.  The Mortgagor has not notified the Seller or the Servicer, and neither the Seller nor the Servicer has knowledge of any relief requested or allowed to the Mortgagor under the Servicemember's' Civil Relief Act, as amended, or other similar state or federal law.

-28-

(ll) <u>No Construction Loans</u>.  No Mortgage Loan was made in connection with (i) the construction or rehabilitation of a Mortgaged Property or (ii) facilitating the trade-in or exchange of a Mortgaged Property.

(mm)  <u>Environmental Matters</u>.  There is no pending action or proceeding directly involving any Mortgaged Property of which the Seller or the Servicer is aware in which compliance with any environmental law, rule or regulation is an issue and nothing further remains to be done to satisfy in full all requirements of each such law, rule or regulation constituting a prerequisite to use and enjoyment of said property.  The Mortgaged Property is free from any and all toxic or hazardous substances and there exists no violation of any local, state or federal environmental law, rule or regulation.

(nn)  <u>Insurance</u>.  All required insurance policies, of whatever type, remain in full force and effect.  Seller has not engaged in, and has no knowledge of the Mortgagor's having engaged in, any act or omission which would impair the coverage validity or binding effect of any such policies.  No action, inaction, or event has occurred and no state of facts exists or has existed that has resulted or will result in the exclusion from, denial of, or defense to coverage under any applicable special hazard insurance policy, PMI Policy, LPMI Policy or bankruptcy bond, irrespective of the cause of such failure of coverage.   In connection with the placement of any such insurance, no commission, fee, or other compensation has been or will be received by the Seller or the Servicer or any designee of the Seller or the Servicer or any corporation in which the Seller, the Servicer or any officer, director, or employee of the Seller or the Servicer had a financial interest at the time of placement of such insurance.

(oo)  <u>Ground Leases</u>.  With respect to any ground lease to which a Mortgaged Property may be subject:  (A) the Mortgagor is the owner of a valid and subsisting leasehold interest under such ground lease; (B) such ground lease is in full force and effect, unmodified and not supplemented by any writing or otherwise; (C) all rent, additional rent and other charges reserved therein have been fully paid to the extent payable as of the Closing Date; (D) the Mortgagor enjoys the quiet and peaceful possession of the leasehold estate; (E) the Mortgagor is not in default under any of the terms of such ground lease, and there are no circumstances which, with the passage of time or the giving of notice, or both, would result in a default under such ground lease; (F) the lessor under such ground lease is not in default under any of the terms or provisions of such ground lease on the part of the lessor to be observed or performed; (G) the lessor under such ground lease has satisfied any repair or construction obligations due as of the Closing Date pursuant to the terms of such ground lease; (H) the execution, delivery and performance of the Mortgage do not require the consent (other than those consents which have been obtained and are in full force and effect) under, and will not contravene any provision of or cause a default under, such ground lease; and (I) the term of such lease does not terminate earlier than the maturity date of the Mortgage Note.

(pp)  <u>Escrow Payments</u>.  With respect to escrow deposits and payments that the Servicer is entitled to collect, all such payments are in the possession of, or under the control of the Servicer, and there exist no deficiencies in connection therewith for which customary arrangements for repayment thereof have not been made.   All escrow

-29-

payments have been collected in full compliance with state and federal law and the provisions of the related Mortgage Note and Mortgage.  As to any Mortgage Loan that is the subject of an escrow, escrow of funds is not prohibited by applicable law and has been established in an amount sufficient to pay for every escrowed item that remains unpaid and has been assessed but is not yet due and payable.  No escrow deposits or other charges or payments due under the Mortgage Note have been capitalized under any Mortgage or the related Mortgage Note.

(qq)   Interest on Escrows.  As of the related Closing Date, Seller has credited to the account of Mortgagors under the Mortgage Loans all interest required to be paid by applicable law or by the terms of the related Mortgage Note on any escrow account.  Evidence of such credit shall be provided to Purchaser upon request.

(rr) Escrow Analysis.  Seller has properly conducted an escrow analysis for each escrowed Mortgage Loan in accordance with applicable law.  All books and records with respect to each Mortgage Loan comply with applicable law and regulations, and have been adjusted to reflect the results of the escrow analyses.  Except as allowed by applicable law, there is no inflation factor used in the escrow analysis. Seller has delivered notification to the Mortgagor(s) under each Mortgage Loan of all adjustments resulting from such escrow analyses.

(ss)Completion Escrows.  There are no Mortgage Loans subject to outstanding completion escrows except those specifically identified by Seller as such to Purchaser.

(tt) Anti-Money Laundering Laws.  The Seller has complied with all applicable anti-money laundering laws and regulations, including without limitation the USA Patriot Act of 2001, the Bank Secrecy Act and the regulations of the Office of Foreign Asset Control (collectively, the "Anti-Money Laundering Laws"); the Seller has established an anti-money laundering compliance program as required by the Anti-Money Laundering Laws, has conducted the requisite due diligence in connection with the origination of each Mortgage Loan for purposes of the Anti-Money Laundering Laws, including with respect to the legitimacy of the applicable Mortgagor and the origin of the assets used by the said Mortgagor to purchase the property in question, and maintains, and will maintain, sufficient information to identify the applicable Mortgagor for purposes of the Anti-Money Laundering Laws.  No Mortgage Loan is subject to nullification pursuant to Executive Order 13224 (the "Executive Order") or the regulations promulgated by the Office of Foreign Assets Control of the United States Department of the Treasury (the "OFAC Regulations") or in violation of the Executive Order or the OFAC Regulations, and no Mortgagor is subject to the provisions of such Executive Order or the OFAC Regulations nor listed as a "blocked person" for purposes of the OFAC Regulations.

(uu)   Due on Sale.  The Mortgage contains an enforceable provision for the acceleration of the payment of the unpaid principal balance of the Mortgage Loan in the event that the Mortgaged Property or Cooperative Shares are sold or transferred without the prior written consent of the Mortgagee thereunder.

-30-

(vv)   <u>Interest Rate Adjustments.</u>   With respect to each ARM Mortgage Loan, all Mortgage Interest Rate adjustments have been made in strict compliance with state and federal law and the terms of the related Mortgage Note.   Any interest required to be paid pursuant to state and local law has been properly paid and credited.   The Mortgagor has executed a statement to the effect that the Mortgagor has received all disclosure materials required by applicable law with respect to the making of adjustable rate mortgage loans. The Seller shall maintain such statement in the Mortgage File.   The conversion features of any ARM Mortgage Loans which are convertible to fixed rate Mortgage Loans are reasonable and customary.

(ww)   <u>Regarding the Mortgagor.</u>   The Mortgagor is one or more natural persons and/or trustees for an Illinois land trust or a trustee under a "living trust" and such "living trust" is in compliance with Fannie Mae guidelines for such trusts.   Either the Mortgagor is a natural person or the related co-borrower or guarantor is a natural person.

(xx)   <u>Tax Service Contract; Flood Certification Contract.</u>   The Seller either (i) has obtained a Tax Service Contract with FARETS on each Mortgage Loans and such contract is assignable to the Purchaser or (ii) or shall reimburse the Purchaser in accordance with Section 7.06(r).   The Seller has either (i) obtained a life of loan, transferable flood certification contract from FAFDS for each Mortgage Loan and such contract is assignable to the Purchaser or the Purchaser's designee or (ii) or shall reimburse the Purchaser in accordance with Section 7.06(r).

(yy)   <u>Prepayment Penalties.</u>   With respect to each Mortgage Loan that has a Prepayment Penalty, each such Prepayment Penalty is enforceable and will be enforced by the Seller, and each Prepayment Penalty is permitted pursuant to federal, state and local law.   With respect to Mortgage Loans originated prior to October 1, 2002, no such Prepayment Penalty may be imposed for a term in excess of five (5) years following origination.   With respect to Mortgage Loans originated on or after October 1, 2002, no such Prepayment Penalty may be imposed for a term in excess of three (3) years following origination.   Except as otherwise set forth in the Mortgage Loan Schedule, with respect to each Mortgage Loan that contains a Prepayment Penalty, such Prepayment Penalty is at least equal to the lesser of (A) the maximum amount permitted under applicable law and (B) six months interest at the related Mortgage Interest Rate on the amount prepaid in excess of 20% of the original principal balance of such Mortgage Loan;

(zz)   <u>Georgia Fair Lending Act.</u>   There is no Mortgage Loan that was originated on or after October 1, 2002 and on or prior to March 7, 2003, which is secured by property located in the State of Georgia.   There is no Mortgage Loan that was originated after March 7, 2003, which is a "high-cost home loan" as defined under the Georgia Fair Lending Act;

(aaa)   <u>Mortgaged Property Located in New York State.</u>   There is no Mortgage Loan secured by Mortgaged Property located in the State of New York (1) with an original principal balance of $300,000 or less, (2) has an application date on or after April 1, 2003 and (3) the terms of such loan equal or exceed either the APR or the points and

-31-

fees threshold for "high-cost home loans," as defined in Section 6-L of the New York State Banking Law; and

(bbb)   <u>Credit Reporting</u>.   The Seller has caused to be fully furnished, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (i.e., favorable and unfavorable) on its borrower credit files to Equifax, Experian, and Trans Union Credit Information Company (three of the credit repositories), on a monthly basis.

(ccc)   <u>Arbitration</u>.   No Mortgagor agreed to submit to arbitration to resolve any dispute arising out of or relating in any way to the Mortgage Loan transaction.

(ddd)   <u>Tax Identification/Back Up Withholding</u>.   All tax identifications for individual Mortgagors, have been certified as required by law.   Seller has complied with all IRS requirements regarding the obtainment and solicitation of taxpayer identification numbers and the taxpayer identification numbers provided to Purchaser as reflected on the system are correct. To the extent a Mortgage Loan is on back up withholding, Seller has substantiated both the initial reason for the back up withholding and the amount of such back up withholding and the reason for such back up withholding in the amount currently withheld still exists.

(eee)   <u>IRS Forms</u>.   All IRS forms, including, but not limited to, Forms 1099 and 1098, as appropriate, which are required to be filed with respect to the Servicing for activity occurring on or before year end 2003 have been filed or will be filed in accordance with applicable law.

(fff)   <u>Optional Insurance</u>.   All Mortgage Loans for which mortgage/credit life, accidental death, disability, unemployment, or any similar insurance is collected as part of the Mortgagor's monthly payment are identified in the Mortgage File and fully comply with applicable law.   None of the Mortgage Loans has a single payment credit life insurance or other optional insurance product that has been considered "predatory" by Fannie Mae or Freddie Mac.   Any Mortgage Loan involved with any type of optional insurance has been properly serviced including, without limitation, the proper application and collection of premiums, the maintenance of complete and accurate records, processing and payment of claims and the handling of correspondence.   None of the Mortgage Loans has an optional insurance product that, as of the Closing Date, is being provided free of charge to a Mortgagor.

(ggg)   <u>Electronic Drafting of Payments</u>.   Concerning Mortgage Loans for which Seller drafts Monthly Payments electronically from the Mortgagor's bank account, such drafting occurs in compliance with applicable law, and the applicable agreement with the Mortgagor; and such applicable agreement with the Mortgagor both legally and contractually can be, and will be fully assigned to Purchaser pursuant to the assignment provisions contained therein.

(hhh)   [Reserved]

(iii)     Third Party Lenders and Third Party Loans.  Seller shall be deemed to have made all of the representations and warranties contained herein on behalf of each any third party originator and with respect to each loan originated by a third party as though the Seller were the originator thereof.

(jjj)     Predatory Lending Regulations.   None of the Mortgage Loans are classified as (a) "high cost" loans under the Home Ownership and Equity Protection Act of 1994 or (b) "high cost," "threshold," "covered," or "predatory" loans under any other applicable state, federal or local law.   No predatory or deceptive lending practices, including, without limitation, the extension of credit without regard to the ability of the Mortgagor to repay and the extension of credit which has no apparent benefit to the Mortgagor, were employed in the origination of the Mortgage Loan.  No Mortgage Loan is a High Cost Loan or Covered Loan.

(kkk)    Single Premium Credit Life Insurance.   No borrower was required to purchase any single premium credit insurance policy (e.g., life, mortgage, disability, accident, unemployment, or health insurance product) or debt cancellation agreement as a condition of obtaining the extension of credit.   No borrower obtained a prepaid single-premium credit insurance policy (e.g., life, mortgage, disability, accident, unemployment, or health insurance product) in connection with the origination of the Mortgage Loan.  No proceeds from any Mortgage Loan were used to purchase single premium credit insurance policies or debt cancellation agreements as part of the origination of, or as a condition to closing, such Mortgage Loan;

(lll)     Anti-Predatory Lending.  Each Mortgage Loan is in compliance with the anti-predatory lending eligibility for purchase requirements of Fannie Mae's Selling Guide;

(mmm)   Arkansas High-Cost Home Loan.  No Mortgage Loan is a "High-Cost Home Loan" as defined in the Arkansas Home Loan Protection Act effective July 16, 2003 (Act 1340 of 2003);

(nnn)    Kentucky High-Cost Home Loan.  No Mortgage Loan is a "High-Cost Home Loan" as defined in the Kentucky high-cost home loan statute effective June 24, 2003 (Ky. Rev. Stat. Section 360.100);

(ooo)    New Jersey High-Cost Home Loan.  No Mortgage Loan is a "High-Cost Home Loan" as defined in the New Jersey Home Ownership Act effective November 27, 2003 (N.J.S.A. 46:10B-22 et seq.);

(ppp)    New Mexico High-Cost Home Loan.  No Mortgage Loan is a "High-Cost Home Loan" as defined in the New Mexico Home Loan Protection Act effective January 1, 2004 (N.M. Stat. Ann. §§ 58-21A-1 et seq.);

(qqq)    Illinois High-Risk Home Loan.  No Mortgage Loan is a "High-Risk Home Loan" as defined in the Illinois High-Risk Home Loan Act effective January 1, 2004 (815 Ill. Comp. Stat. 137/1 et seq.);

(rrr)   Massachusetts High-Cost Home Mortgage Loan.  No Mortgage Loan is a "High-Cost Home Mortgage Loan" as defined in the Massachusetts Predatory Home Loan Practices Act, effective November 7, 2004 (Mass. Ann. Laws Ch. 183C);

(sss)   Indiana High Cost Home Loan.  No Mortgage Loan is a "High Cost Home Loan" as defined in the Indiana Home Loan Practices Act, effective January 1, 2005 (Ind. Code Ann. Sections 24-9-1 through 24-9-9);

(ttt)   Origination.   No Mortgagor was encouraged or required to select a Mortgage Loan product offered by the Mortgage Loan's originator which is a higher cost product designed for less creditworthy borrowers, unless at the time of the Mortgage Loan's origination, such Mortgagor did not qualify taking into account credit history and debt to income ratios for a lower cost credit product then offered by the Mortgage Loan's originator or any affiliate of the Mortgage Loan's originator.  If, at the time of loan application, the Mortgagor may have qualified for a for a lower cost credit product then offered by any mortgage lending affiliate of the Mortgage Loan's originator, the Mortgage Loan's originator referred the Mortgagor's application to such affiliate for underwriting consideration;

(uuu)   Underwriting Methodology.   The methodology used in underwriting the extension of credit for each Mortgage Loan employs objective mathematical principles which relate the Mortgagor's income, assets and liabilities to the proposed payment and such underwriting methodology does not rely on the extent of the Mortgagor's equity in the collateral as the principal determining factor in approving such credit extension.  Such underwriting methodology confirmed that at the time of origination (application/approval) the Mortgagor had a reasonable ability to make timely payments on the Mortgage Loan;

(vvv)   Points/Fees.   All points and fees related to each Mortgage Loan were disclosed in writing to the Mortgagor in accordance with applicable state and federal law and regulation.  Except in the case of a Mortgage Loan in an original principal amount of less than $60,000 which would have resulted in an unprofitable origination, no borrower was charged "points and fees" (whether or not financed) in an amount greater than 5% of the principal amount of such loan, such 5% limitation is calculated in accordance with Fannie Mae's anti-predatory lending requirements as set forth in the Fannie Mae Selling Guide;

(www)   Fee Disclosure.   All fees and charges (including finance charges) and whether or not financed, assessed, collected or to be collected in connection with the origination and servicing of each Mortgage Loan has been disclosed in writing to the Mortgagor in accordance with applicable state and federal law and regulation

(xxx)   Valid Co-op Loan Lien.   With respect to each Co-op Loan, the related Mortgage is a valid, enforceable and subsisting first or second security interest on the related Cooperative Shares securing the related cooperative note, subject only to (a) liens of the Cooperative for unpaid assessments representing the Mortgagor's pro rata share of the Cooperative's payments for its blanket mortgage, current and future real property

taxes, insurance premiums, maintenance fees and other assessments to which like collateral is commonly subject and (b) other matters to which like collateral is commonly subject which do not materially interfere with the benefits of the security intended to be provided by the Security Agreement.  There are no liens against or security interest in the cooperative shares relating to each Co-op Loan (except for unpaid maintenance, assessments and other amounts owed to the related cooperative which individually or in the aggregate will not have a material adverse effect on such Co-op Loan), which have priority over the Seller's security interest in such Cooperative Shares;

(yyy)   <u>Filing Search</u>.  With respect to each Co-op Loan, a search for filings of financing statements has been made by a company competent to make the same, which company is acceptable to Fannie Mae and qualified to do business in the jurisdiction where the cooperative unit is located, and such search has not found anything which would materially and adversely affect the Co-op Loan;

(zzz)   <u>Co-op Compliance with all Laws</u>.  With respect to each Co-op Loan, the related cooperative that owns title to the related Cooperative Apartment building is a "cooperative housing corporation" within the meaning of Section 216 of the Code, and is in material compliance with applicable federal, state and local laws which, if not complied with, could have a material adverse effect on the Mortgaged Property;

(aaaa)  <u>Pledging</u>.  With respect to each Co-op Loan, there is no prohibition against pledging the shares of the Cooperative or assigning the Co-op Lease;

Subsection 7.02    <u>Seller Representations</u>.

The Seller hereby represents and warrants to the Purchaser, its successors and assigns and the Successor Servicer that, as to itself as of each Closing Date and as of the Reconstitution Closing Date of each Securitization Transaction:

(a) <u>Due Organization and Authority</u>.  It is a corporation, duly organized, validly existing, and in good standing under the laws of the state of New York and has all licenses necessary to carry on its business as now being conducted, except where the failure to be so licensed would not have a material adverse effect on the Seller, the Mortgage Loans, or the transactions contemplated by this Agreement and is licensed, qualified and in good standing in the states where the Mortgaged Property is located if the laws of such state require licensing or qualification in order to conduct business of the type conducted by it.  It is an approved seller/servicer in good standing of conventional residential mortgage loans for Fannie Mae or Freddie Mac and is a HUD-approved mortgagee under Section 203 of the National Housing Act.  It has corporate power and authority and capacity to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement (including all instruments of transfer to be delivered pursuant to this Agreement) by it and the consummation of the transactions contemplated hereby have been duly and validly authorized.  This Agreement evidences the legal, valid, binding and enforceable obligation of it, subject to applicable law except as enforceability may be limited by (i) bankruptcy, insolvency, liquidation, receivership, moratorium, reorganization or other

similar laws affecting the enforcement of the rights of creditors and (ii) general principles of equity, whether enforcement is sought in a proceeding in equity or at law. All requisite corporate action has been taken by it to make this Agreement valid and binding upon it in accordance with the terms of this Agreement.

(b) <u>No Consent Required</u>. No consent, approval, authorization or order is required for the transactions contemplated by this Agreement from any court, governmental agency or body, or federal or state regulatory authority having jurisdiction over it or, if required, such consent, approval, authorization or order has been or will, prior to the related Closing Date (or Reconstitution Closing Date, if applicable), be obtained.

(c) <u>No Conflicts</u>. The consummation of the transactions contemplated by this Agreement are in its ordinary course of business and will not result in the breach of any term or provision of its charter or by-laws or result in the breach of any term or provision of, or conflict with or constitute a default under or result in the acceleration of any obligation under, any agreement, indenture or loan or credit agreement or other instrument to which it or its property is subject, or result in the violation of any law, rule, regulation, order, judgment or decree to which it or its property is subject.

(d) <u>Ordinary Course of Business</u>. Its transfer, assignment and conveyance of the Mortgage Notes and the Mortgages pursuant to this Agreement are not subject to the bulk transfer or any similar statutory provisions in effect in any applicable jurisdiction.

(e) <u>No Litigation Pending</u>. There is no action, suit, proceeding or investigation pending or, to its best knowledge, threatened against it which, either individually or in the aggregate, would result in any material adverse change in its business, operations, financial condition, properties or assets, or in any material impairment of its right or ability to carry on its business substantially as now conducted or which would draw into question the validity of this Agreement or the Mortgage Loans or of any action taken or to be taken in connection with its obligations contemplated herein, or which would materially impair its ability to perform under the terms of this Agreement.

(f) <u>Ability to Perform</u>. It does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant contained in this Agreement. It is solvent and the sale of the Mortgage Loans will not cause it to become insolvent. The sale of the Mortgage Loans is not undertaken with the intent to hinder, delay or defraud any of its creditors.

(g) <u>Sale Treatment</u>. It has determined that the disposition of the Mortgage Loans pursuant to this Agreement will be afforded sale treatment for accounting and tax purposes.

(h) <u>No Brokers' Fees</u>. It has not dealt with any broker, investment banker, agent or other person that may be entitled to any commission or compensation in connection with the sale of the Mortgage Loans.

(i) <u>Fair Consideration</u>.  The consideration received by it upon the sale of the Mortgage Loans under this Agreement constitutes fair consideration and reasonably equivalent value for the Mortgage Loans.

(j) <u>MERS</u>.  It is a member of MERS in good standing, and will comply in all material respects with the rules and procedures of MERS in connection with the servicing of the MERS Mortgage Loans for as long as such Mortgage Loans are registered with MERS.

(k)  <u>No Untrue Information</u>.   Neither this Agreement nor any statement, report or other document furnished or to be furnished pursuant to this Agreement or in connection with the transactions contemplated hereby contains any untrue statement of material fact or omits to state a fact necessary to make the statements contained therein not materially misleading.

(l) <u>No Fraud</u>.  The Agreement and any other document contemplated hereby and the purchase has not been entered into fraudulently by Seller, or with the intent to hinder, delay or defraud any creditor or Purchaser.

(m)<u>Title to the Related Escrow Accounts</u>.  As of the related Closing Date, Seller is and shall remain, until such Transfer Date, the custodian of the related Escrow Accounts.  Neither Seller nor any Prior Servicer of the Mortgage Loans has entered into a settlement agreement with any party or with any state attorney general relative to the handling of tax and insurance escrows which would be binding on Purchaser or would otherwise result in Purchaser's having to change the escrow cushion requirements for any of the Mortgage Loans after the related Closing Date.

(n) <u>Related Escrow Account Maintenance</u>.   All related Escrow Accounts are being maintained in accordance with applicable law, and the terms of the Mortgages related thereto. Except as to payments which are past due under the Mortgage Notes, all escrow balances required by the Mortgages and paid to Seller for the account of the Mortgagors and Seller are on deposit in the appropriate Escrow Accounts.  All funds received by Seller in connection with the Mortgage Loans, including, without limitation, Liquidation Proceeds, Insurance Proceeds, Condemnation Proceeds and principal reductions, have promptly been deposited in the appropriate account, and all such funds have been applied to reduce the principal balance of the Mortgage Loans in question, or for reimbursement or repairs to the Mortgaged Property or as otherwise required by applicable law.  There are no pledged accounts in lieu of escrow deposits.

(o) <u>Litigation; Compliance with Laws</u>.  As of the related Closing Date, there is and shall be no litigation, proceeding or governmental investigation existing or pending or to the knowledge of Seller threatened, or any order, injunction, decree or settlement agreement outstanding against or relating to Seller or Mortgage Loans, which may have a material adverse effect upon the business, operations, assets or financial condition of Seller or which may draw into question the validity of this Agreement or which may impair the ability of Seller to perform its obligations under this Agreement, nor does Seller know of any basis for any such litigation, proceeding or governmental

investigation.  As of the related Closing Date, Seller has not violated and will not violate any applicable law, regulation, ordinance, order, injunction, decree or settlement agreement, nor any other requirement of any governmental body or court, which may materially affect any of the Mortgage Loans, the Mortgaged Properties or the Servicing Rights.  For purposes of this Subsection 7.02(p), "litigation" shall include a suit for damages alone and shall not require that a specific performance remedy or injunction impacting the transfer of the Servicing Rights be pending.

(p) <u>Insolvency</u>.  Seller has not (i) admitted in writing its inability to pay its debts generally as they become due, (ii) filed a petition to take advantage of any applicable insolvency or reorganization statute, (iii) made an assignment for the benefit of its creditors or (iv) voluntarily suspended payment of any of its obligations.

(q) <u>Compliance with Insurance Contracts</u>.  Seller has complied with all material obligations under all applicable insurance contracts, including hazard, flood and Primary Mortgage Insurance Policies.  Seller has not taken any action or failed to take any action that might cause the cancellation of or otherwise affect any of the insurance contracts.

(r) <u>Audits</u>.  Seller has not, as of the related Closing Date, been the subject of allegations of material failure to comply with applicable loan origination, servicing or claims procedures, in its most recent audits (if any) nor have any such audits resulted in a request for repurchase of Mortgage Loans or indemnification in connection with the Mortgage Loans, other than as has been disclosed to Purchaser.  Such disclosure shall not affect any rights or remedies which Purchaser may have against Seller as a result of an repurchase demand or any indemnity or other remedy of Purchaser hereunder.

(s) <u>Errors and Omissions Policy</u>.  Seller has in full force and effect an adequate errors and omissions policy or policies with respect to its servicing operations and a standard mortgage banker's blanket bond.

(t) <u>Financial Condition of Seller/Regulatory Approval</u>.  Seller is not in receivership, conservatorship or bankruptcy, nor are any of its subsidiaries or affiliates. Seller is not operating pursuant to any restrictive operating agreement or order mandated by the OTS, the FDIC or any federal or state regulatory body.  The capitalization plan of Seller has been approved by all applicable regulatory agencies.

(u) <u>Financial Statements</u>.  The Seller has delivered to the Purchaser financial statements as to its last three (3) complete fiscal years and any later quarter ended more than sixty (60) days prior to the execution of this Agreement.  All such financial statements fairly present the pertinent results of operations and changes in financial position for each of such periods and the financial position at the end of each such period of the Seller and its subsidiaries and have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods involved, except as set forth in the notes thereto.  There has been no change in the business, operations, financial condition, properties or assets of the Seller since the date of the Seller's financial statements that would have a material adverse effect on its ability to perform its obligations under this Agreement. The Seller has completed any forms

requested by the Purchaser in a timely manner and in accordance with the provided instructions;

Subsection 7.03    <u>Remedies for Breach of Representations and Warranties</u>.

It is understood and agreed that the representations and warranties set forth in Subsections 7.01 and 7.02 shall survive the sale of the Mortgage Loans to the Purchaser and shall inure to the benefit of the Purchaser, its successors and assigns and the Successor Servicer, notwithstanding any restrictive or qualified endorsement on any Mortgage Note or Assignment of Mortgage (except with respect to each MERS Designated Mortgage Loan) or the examination or lack of examination of any Mortgage File.  Upon discovery by the Seller, the Servicer or the Purchaser of a breach of any of the foregoing representations and warranties which materially and adversely affects the value of the Mortgage Loans or the interest of the Purchaser therein (or which materially and adversely affects the interest of the Purchaser in or the value of the related Mortgage Loan in the case of a representation and warranty relating to a particular Mortgage Loan), the party discovering such breach shall give prompt written notice to the others.

Within sixty (60) days of the earlier of either discovery by or notice to the Seller of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest of the Purchaser therein, the Seller shall use its best efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall repurchase such Mortgage Loan or Mortgage Loans at the Repurchase Price.  However, the Seller may, at its option, with the Purchaser's prior approval, such approval not to be withheld unreasonably, and assuming that the Seller has a Substitute Mortgage Loan, rather than repurchase the Mortgage Loan as provided above, remove such Mortgage Loan and substitute in its place a Substitute Mortgage Loan or Loans; provided, however, that any such substitution shall be effected within two (2) years of the related Closing Date.  Notwithstanding the above sentence, within sixty (60) days of the earlier of either discovery by, or notice to, the Seller of any breach of the representations or warranties set forth in clauses (gg), (zz), (bbb), (ccc), (jjj), and (kkk), of Subsection 7.01, the Seller shall repurchase such Mortgage Loan at the Repurchase Price.  If the Seller has no Substitute Mortgage Loan, it shall repurchase the deficient Mortgage Loan.  Any repurchase of a Mortgage Loan pursuant to the foregoing provisions of this Subsection 7.03 shall occur on a date reasonably designated by the Purchaser and shall be accomplished by the Seller remitting by wire transfer to the Purchaser the amount of the Repurchase Price.

At the time of repurchase of any deficient Mortgage Loan (or removal of any Deleted Mortgage Loan), the Purchaser and the Seller shall arrange for the assignment of the repurchased Mortgage Loan (or Deleted Mortgage Loan) to the Seller or its designee and the delivery to the Seller of any documents held by the Purchaser or any custodian relating to the repurchased Mortgage Loan in the manner required by this Agreement with respect to the purchase and sale of such Mortgage Loan on the related Closing Date.  In the event a deficient Mortgage Loan is repurchased, the Seller shall, simultaneously with its remittance to the Purchaser of such Repurchase Price, give written notice to the Purchaser that such repurchase has taken place. Upon such repurchase, the Mortgage Loan Schedule shall simultaneously be amended to reflect the withdrawal of the repurchased Mortgage Loan from this Agreement.

-39-

As to any Deleted Mortgage Loan for which the Seller substitutes one or more Substitute Mortgage Loans, the Seller shall effect such substitution by delivering to the Purchaser for each Substitute Mortgage Loan the Mortgage Note, the Mortgage, the Assignment of Mortgage (except with respect to each MERS Designated Mortgage Loan) and such other documents and agreements as are required by Subsection 6.03.   The Seller shall remit to the Servicer for distribution the Monthly Payment due on each Substitute Mortgage Loan in the month following the date of such substitution.  Monthly Payments due with respect to Substitute Mortgage Loans in the month of substitution will be retained by the Seller.   For the month of substitution, distributions to the Purchaser will include the Monthly Payment due on such Deleted Mortgage Loan in the month of substitution, and the Seller shall thereafter be entitled to retain all amounts subsequently received by it in respect of such Deleted Mortgage Loan.   The Seller shall give written notice to the Purchaser that such substitution has taken place and shall amend the Mortgage Loan Schedule to reflect the removal of such Deleted Mortgage Loan from the terms of this Agreement and the substitution of the Substitute Mortgage Loan.  Upon such substitution, each Substitute Mortgage Loan shall be subject to the terms of this Agreement in all respects, and the Seller shall be deemed to have made with respect to such Substitute Mortgage Loan, as of the date of substitution, the covenants, representations and warranties set forth in Subsections 7.01 and 7.02.

Purchaser shall return or cause to be promptly returned to Seller all Deleted Mortgage Loan Documents with respect to all such Deleted Mortgage Loans for which the Seller substitutes a Substitute Mortgage Loan.

For any month in which the Seller substitutes one or more Substitute Mortgage Loans for one or more Deleted Mortgage Loans, the Seller will determine the amount (if any) by which the aggregate principal balance of all such Substitute Mortgage Loans as of the date of substitution is less than the aggregate Stated Principal Balance of all such Deleted Mortgage Loans (after application of scheduled principal payments due in the month of substitution).  The amount of such shortfall, plus an amount equal to the aggregate of any Monthly Advances made with respect to such Deleted Mortgage Loans, shall be remitted to the Servicer by the Seller for distribution by the Servicer in the month of substitution.

In addition to such cure, repurchase and substitution obligations, the Seller shall indemnify the Purchaser, its successors and assigns and the Successor Servicer, and hold each of them harmless against any out-of-pocket losses, penalties, fines, forfeitures, reasonable and necessary legal fees (including (without limitation) legal fees incurred in connection with the enforcement of the Seller's indemnification obligation under this Subsection 7.03)and related costs, judgments, and other costs and expenses resulting from any claim, demand, defense or assertion that is based on or grounded upon, or resulting from, a breach of the Seller representations and warranties contained in this Agreement.  For purposes of this paragraph, "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement and "Successor Servicer" shall mean the Person then acting as the Successor Servicer under this Agreement and any and all Persons who previously were "Successor Servicers" under this Agreement.

Any cause of action against the Seller relating to or arising out of the breach of any representations and warranties made in Subsection 7.01 or 7.02 shall accrue upon (i) discovery of

such breach by the Purchaser or notice thereof by the Seller or the Servicer to Purchaser, (ii) failure by the Seller to cure such breach, repurchase such Mortgage Loan as specified above, substitute a Substitute Mortgage Loan for such Mortgage Loan as specified above and/or indemnify the Purchaser, its successors and assigns and the Successor Servicer, and (iii) demand upon the Seller by the Purchaser for compliance with the terms of this Agreement.

It is understood and agreed that the obligations of the Seller set forth in this Subsection 7.03 to cure, repurchase or substitute for a defective Mortgage Loan and/or to indemnify the Purchaser constitute the sole remedies of the Purchaser respecting a breach of the representations and warranties set forth in Subsections 7.01 and 7.02.

Subsection 7.04    Covenants of Seller.

(a) Financial Reporting.   The Seller understands that in connection with the Purchaser's marketing of the Mortgage Loans, the Purchaser shall make available to prospective purchasers audited financial statements of the Seller for the most recently completed three (3) fiscal years respecting which such statements are available, as well as a Consolidated Statement of Condition of the Seller at the end of the last two (2) fiscal years covered by such Consolidated Statement of Operations.  The Seller shall also make available any comparable interim statements to the extent any such statements have been prepared by the Seller (and are available upon request to members or stockholders of the Seller or the public at large).  The Seller, if it has not already done so, agrees to furnish promptly to the Purchaser copies of the statements specified above.  The Seller shall also make available information on its servicing performance with respect to loans serviced for others, including delinquency ratios.  The Seller also agrees to allow reasonable access to a knowledgeable financial or accounting officer for the purpose of answering questions asked by any prospective purchaser regarding recent developments affecting the Seller or the financial statements of the Seller.

(b) Organization Documents.   On the reasonable request of the Purchaser, the Seller shall deliver to the Purchaser copies of (1) the articles of incorporation of Seller and any amendments thereto, certified by the Secretary of State of Seller's state of incorporation, (2) a copy of Seller's by laws, together with any amendments thereto, (3) a copy of the resolutions adopted by Seller's Board of Directors authorizing Seller to enter into this Agreement and authorizing one or more of Seller's officers to execute the documents related to this Agreement, and (4) a certificate of incumbency and signature of each officer of Seller executing any document in connection with this Agreement.

(c) No Economic Interest. Neither Seller nor any affiliate thereof will acquire at any time any economic interest in or obligation with respect to any Mortgage Loan.

(d) Sale Treatment.   Under GAAP and for federal income tax purposes, Seller will report each sale of a Mortgage Loan to Purchaser as a sale of the ownership interest in the Mortgage Loan.  Seller has been advised by or has confirmed with its independent public accountants that the foregoing transactions will be so classified under GAAP.  It is understood that, in making an independent decision to enter into the purchase contemplated hereby, Seller has obtained such independent legal, tax, financial,

-41-

With a copy of all legal correspondence to:

> American Home Mortgage Servicing, Inc.
> 538 Broadhollow Road
> Melville, New York  11747
> Attention: Alan B. Horn, General Counsel.
> Facsimile: (800) 209-7276

or such other address as may hereafter be furnished to the other party by like notice.  Any such demand, notice or communication hereunder shall be deemed to have been received on the date delivered to or received at the premises of the addressee (as evidenced, in the case of registered or certified mail, by the date noted on the return receipt).

SECTION 12. <u>Cooperation of Seller with a Reconstitution</u>.

The Seller and the Purchaser agree that with respect to some or all of the Mortgage Loans, after the related Closing Date, on one or more dates (each a "<u>Reconstitution Closing Date</u>") at the Purchaser's sole option, the Purchaser may effect a sale (each, a "<u>Reconstitution</u>") of some or all of the Mortgage Loans then subject to this Agreement, without recourse, to:

    (i)    Fannie Mae under its Cash Purchase Program or MBS Program (Special Servicing Option) (each a "<u>Fannie Mae Transfer</u>"); or

    (ii)    Freddie Mac (the "<u>Freddie Mac Transfer</u>"); or

    (iii)    one or more third party purchasers in one or more Whole Loan Transfers; or

    (iv)    one or more trusts or other entities to be formed as part of one or more Securitization Transaction.

With respect to each Reconstitution, the Purchaser agrees to deliver to the related Master Servicer on or prior to the date which is five (5) Business Days prior to the related Reconstitution Closing Date, a Mortgage Loan Schedule.  The Seller agrees to execute (i) in connection with any Agency Transfer, any and all pool purchase contracts, and/or agreements reasonably acceptable to the Master Servicer and the Purchaser among the Purchaser, the Master Servicer, the Seller, Fannie Mae or Freddie Mac (as the case may be) and any servicer, (ii) in connection with a Whole Loan Transfer, an assignment, assumption and recognition agreement, a seller's warranties and servicing agreement or a participation and servicing agreement in form and substance reasonably acceptable to the Purchaser, and (iii) in connection with a Securitization Transaction, a pooling and servicing agreement in form and substance reasonably acceptable to the Purchaser and the Master Servicer or an Assignment, Assumption and Recognition Agreement substantially in the form attached hereto as Exhibit 7 (collectively the agreements referred to herein are designated, the "<u>Reconstitution Agreements</u>").

In connection with each Securitization Transaction, the Seller agrees to enter into and deliver certain additional documents, instruments or agreements, including, but not limited to, 10b-5 opinions, assignment, assumption and recognition agreements, and enforceability opinions, as may be necessary to effect one or more Securitization Transactions.

-54-

With respect to each Whole Loan Transfer and each Securitization Transaction entered into by the Purchaser, the Seller agrees (1) to cooperate fully with the Purchaser and the Master Servicer and any prospective purchaser with respect to all reasonable requests and due diligence procedures; (2) to execute, deliver and perform all Reconstitution Agreements required by the Purchaser; (3) to restate the representations and warranties set forth in this Agreement as of the settlement or closing date in connection with such Reconstitution (each, a "Reconstitution Date") or make the representations and warranties set forth in the related selling/servicing guide of the Master Servicer or issuer, as the case may be, or such representations and warranties as may be required by any Rating Agency or prospective purchaser of the related securities or such Mortgage Loans, in connection with such Reconstitution; (4) to deliver to Purchaser and any prospective purchaser within three (3) days after request by Purchaser or prospective purchaser, information, in form and substance satisfactory to Purchaser and such prospective purchaser, with respect to each originator of the Mortgage Loans reasonably requested by the Purchaser The Seller shall use its reasonable best efforts to provide to such master servicer or issuer, as the case may be, and any other participants or purchasers in such Reconstitution: (i) any and all information and appropriate verification of information which may be reasonably available to the Seller or its affiliates, whether through letters of its auditors and counsel or otherwise, as the Purchaser, the Master Servicer or any such other participant shall request; (ii) such additional representations, warranties, covenants, opinions of counsel, letters from auditors, and certificates of public officials or officers of the Seller and/or the Servicer as are reasonably believed necessary by the Purchaser, or any such other participant; and (iii) to execute, deliver and satisfy all conditions set forth in any indemnity agreement required by the Purchaser, the Master Servicer or any such participant.  Moreover, the Seller agrees to cooperate with all reasonable requests made by the Purchaser or the Master Servicer to effect such Reconstitution Agreements.

The Seller shall indemnify the Purchaser, the Successor Servicer, the Master Servicer, and each Affiliate designated by the Purchaser or the Master Servicer and each Person who controls the Purchaser, the Master Servicer or such Affiliate and hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and any other costs, fees and expenses that each of them may sustain in any way related to any information provided by or on behalf of the Seller regarding the Seller, the Seller's servicing practices or performance, the Mortgage Loans or the Underwriting Guidelines set forth in any offering document prepared in connection with any Reconstitution.  For purposes of the previous sentence, "Purchaser" shall mean the Person then acting as the Purchaser under this Agreement and any and all Persons who previously were "Purchasers" under this Agreement and "Successor Servicer" shall mean the Person then acting as the Successor Servicer under this Agreement and any and all Persons who previously were "Successor Servicers" under this Agreement.

In the event the Purchaser has elected to have the Seller hold record title to the Mortgages, prior to the Reconstitution Date, the Seller shall prepare an assignment of mortgage in blank or to the prospective purchaser or trustee, as applicable, from the Seller, acceptable to the prospective purchaser or trustee, as applicable, for each Mortgage Loan that is part of the Reconstitution and shall pay all preparation and recording costs associated therewith (except with respect to each MERS Designated Mortgage Loan).  In connection with the Reconstitution, the Seller shall execute each Assignment of Mortgage, (except with respect to each MERS Designated Mortgage Loan), track such Assignments of Mortgage to ensure they have been

-55-

recorded and deliver them as required by the prospective purchaser or trustee, as applicable, upon the Seller's receipt thereof.  Additionally, the Seller shall prepare and execute, at the direction of the Purchaser or the Master Servicer, any note endorsement in connection with any and all seller/servicer agreements.

SECTION 13. Compliance with Regulation AB

Subsection 13.01   Intent of the Parties; Reasonableness.  The Purchaser and the Seller acknowledge and agree that the purpose of Section 13 of this Agreement is to facilitate compliance by the Purchaser and any Depositor with the provisions of Regulation AB and related rules and regulations of the Commission.  Although Regulation AB is applicable by its terms only to offerings of asset-backed securities that are registered under the Securities Act, the Company acknowledges that investors in privately offered securities may require that the Purchaser or any Depositor provide comparable disclosure in unregistered offerings.  References in this Agreement to compliance with Regulation AB include provision of comparable disclosure in private offerings.

Neither the Purchaser nor any Depositor shall exercise its right to request delivery of information or other performance under these provisions other than in good faith, or for purposes other than compliance with the Securities Act, the Exchange Act and the rules and regulations of the Commission thereunder (or the provision in a private offering of disclosure comparable to that required under the Securities Act).  The Seller acknowledges that interpretations of the requirements of Regulation AB may change over time, whether due to interpretive guidance provided by the Commission or its staff, consensus among participants in the asset-backed securities markets or advice of counsel, and agrees to comply with requests made by the Purchaser or any Depositor in good faith for delivery of information under these provisions on the basis of evolving interpretations of Regulation AB.

The Purchaser (including any of its assignees or designees) shall cooperate with the Company by providing timely notice of requests for information under these provisions and by reasonably limiting such requests to information required, in the Purchaser's reasonable judgment, to comply with Regulation AB.

Subsection 13.02   Information to Be Provided by the Seller. In connection with any Securitization Transaction the Seller shall (1) within five Business Days following request by the Purchaser or any Depositor, provide to the Purchaser and such Depositor (or, as applicable, cause each Third-Party Originator to provide), the information and materials specified in paragraphs (a) and (b) of this Section 13.02, and (2) as promptly as practicable following notice to or discovery by the Seller, provide to the Purchaser and any Depositor (in writing and in form and substance reasonably satisfactory to the Purchaser and such Depositor) the information specified in paragraph (c) of this Section.

(a) If so requested by the Purchaser or any Depositor, the Seller shall provide such information regarding (y) the Seller, as originator of the Mortgage Loans (including as an acquirer of Mortgage Loans from a Qualified Correspondent), or (z) each Third-Party Originator, as is requested for the purpose of compliance with Items 1103(a)(1), 1110(b), 1117 and 1119 of Regulation AB; provided, that, such Purchaser or Depositor

-56-

shall confirm in writing that Seller and each Third-Party Originator, as applicable, meets the threshold disclosure requirements of Items 1110(b), 1117, and 1119 of Regulation AB, as the case may be.  Such information shall be in writing and in form and substance reasonably satisfactory to the Purchaser and such Depositor include, at a minimum:

(1)   the originator's form of organization;

(2)   a description of the originator's origination program and how long the originator has been engaged in originating residential mortgage loans, which description shall include a discussion of the originator's experience in originating mortgage loans of a similar type as the Mortgage Loans; information regarding the size and composition of the originator's origination portfolio; and information that may be material, in the good faith judgment of the Purchaser or any Depositor, to an analysis of the performance of the Mortgage Loans, such as the originators' credit-granting or underwriting criteria for mortgage loans of similar type(s) as the Mortgage Loans for the purpose of compliance with Item 1110(b)(2) of Regulation AB;

(3)   a description of any material legal proceedings pending or known to be contemplated by governmental authorities against the Seller and each Third-Party Originator; and

(4)   a description of any known affiliation or relationship between the Seller, each Third-Party Originator and any of the following parties to a Securitization Transaction, as such parties are identified to the Seller by the Purchaser or any Depositor in writing in advance of such Securitization Transaction:

(A)   the sponsor;

(B)   the depositor;

(C)   the issuing entity;

(D)   any servicer;

(E)   any trustee;

(F)   any originator;

(G)   any significant obligor;

(H)   any enhancement or support provider; and

(I)   any other material transaction party.

(b) If so requested by the Purchaser or any Depositor on the basis of such party's good faith interpretation of the requirements of Item 1105 of Regulation AB;, the Seller

NYLIB5 894674.4

shall provide (or, as applicable, cause each Third-Party Originator to provide) Static Pool Information with respect to the mortgage loans (of a similar type as the Mortgage Loans, as reasonably identified by the Purchaser as provided below) originated by (a) the Seller, if the Seller is an originator of Mortgage Loans (including as an acquirer of Mortgage Loans from a Qualified Correspondent), and/or (b) each Third-Party Originator.  Such Static Pool Information shall be prepared by the Seller (or Third-Party Originator) on the basis of its reasonable, good faith interpretation of the requirements of Item 1105(a)(1)-(3) of Regulation AB; provided, however, that Seller shall not be required provide Static Pool Information with respect to mortgage loans originated prior to January 1, 2006 pursuant to Item 1105(f) of Regulation AB.  To the extent that there is reasonably available to the Seller (or Third-Party Originator) Static Pool Information with respect to more than one mortgage loan type, the Purchaser or any Depositor shall be entitled to specify whether some or all of such information shall be provided pursuant to this paragraph.  The content and presentation of such Static Pool Information may be in the form customarily provided by the Seller, and need not be customized for the Purchaser or any Depositor.  Such Static Pool Information for each vintage origination year or prior securitized pool, as applicable, shall be presented in increments no less frequently than quarterly over the life of the mortgage loans included in the vintage origination year or prior securitized pool.  The most recent periodic increment must be as of a date no later than 135 days prior to the date of the prospectus or other offering document in which the Static Pool Information is to be included or incorporated by reference.  The Static Pool Information shall be provided in an electronic format that provides a permanent record of the information provided, such as a portable document format (pdf) file, or other such electronic format as customarily provided by Seller or if Seller does not customarily provide such information as reasonably required by the Purchaser or the Depositor, as applicable.

Promptly following notice or discovery of a material error in Static Pool Information provided pursuant to the immediately preceding paragraph (including an omission to include therein information required to be provided pursuant to such paragraph), the Company shall provide corrected Static Pool Information to the Purchaser or any Depositor, as applicable, in the same format in which Static Pool Information was previously provided to such party by the Company.

(c) If so requested by the Purchaser or any Depositor for the purpose of satisfying its reporting obligation under the Exchange Act with respect to any class of asset-backed securities and provided that the Seller (or any Third-Party Originator) meets the requirements for disclosure pursuant to Item 1117 of Regulation AB, the Seller shall (or shall cause each Third-Party Originator to) (a) notify the Purchaser and any Depositor in writing of (1) any material litigation or governmental proceedings pending, in each case within the meaning of Item 1117 of Regulation AB, against the Seller or any Third-Party Originator and (2) any affiliations or relationships that develop following the closing date of a Securitization Transaction between the Seller or any Third-Party Originator and any of the parties specified in clause (4) of paragraph (a) of this Section 13.02 (and any other parties identified in writing by the requesting party) with respect to such Securitization Transaction, and (b) provide to the Purchaser and any Depositor a description of such proceedings, affiliations or relationships.

-58-

Subsection 13.03 <u>Indemnification; Remedies</u>.   (i)   The Seller shall indemnify the Purchaser, each affiliate of the Purchaser and each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction; and the respective present and former directors, officers, employees and agents of each of the foregoing (collectively, the "Indemnified Parties"), and shall hold each of them harmless from and against any losses, damages, penalties, fines, forfeitures, legal fees and expenses and related costs, judgments, and any other costs, fees and expenses (collectively, "Losses") that any of them may sustain arising out of or based upon:

> (a) (1) any untrue statement of a material fact contained or alleged to be contained in any information, report, or other material provided in written or electronic form under this Section 13 by or on behalf of the Seller, or provided under this Section 13 by or on behalf of any Third-Party Originator (collectively, the "<u>Seller Information</u>"), or (2) the omission or alleged omission to state in the Seller Information a material fact required to be stated in the Seller Information or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; provided, by way of clarification, that clause (2) of this paragraph shall be construed solely by reference to the Seller Information and not to any other information communicated in connection with a sale or purchase of securities, without regard to whether the Seller Information or any portion thereof is presented together with or separately from such other information;

> (b) any failure by the Seller or any Third-Party Originator to deliver any information, report, accountants' letter or other material when and as required under this Section 13; or

> (c)    any breach by the Seller of a representation or warranty set forth in Section 13 or in a writing furnished pursuant to Section 13 and made as of a date prior to the closing date of the related Securitization Transaction, to the extent that such breach is not cured by such closing date, or any breach by the Seller of a representation or warranty in a writing furnished pursuant to Section 13 to the extent made as of a date subsequent to such closing date.

In the case of any failure of performance described in clause (i)(B) of this Section, the Seller shall promptly reimburse the Purchaser, any Depositor, as applicable, and each Person responsible for the preparation, execution or filing of any report required to be filed with the Commission with respect to such Securitization Transaction for all costs reasonably incurred by each such party in order to obtain the information, report, accountants' letter or other material not delivered as required by the Seller or any Third-Party Originator.

Subsection 13.04 <u>Additional Representations and Warranties of the Seller.</u>  If either the Seller or any Third-Party Originator meets the requirements for disclosure under Items 1117 or 1119 of Regulation AB, the Seller shall be deemed to represent to the Purchaser and to any Depositor, as of the date on which information is first provided to the Purchaser or any Depositor under Section 2(c) that, except as disclosed in writing to the Purchaser or such Depositor on or prior to such date:  (i) there are no material legal proceedings pending or known to be contemplated by governmental authorities, within the meaning of Item 1117 of Regulation AB,

-59-

against the Seller or any Third-Party Originator; and (ii) there are no affiliations, relationships or transactions relating to the Seller or any Third-Party Originator with respect to any Securitization Transaction and any party thereto identified by the related Depositor of a type described in Item 1119 of Regulation AB.

SECTION 14.  Additional Indemnification by the Seller and Servicer; Third Party Claims.

The Seller and Servicer shall each indemnify the Purchaser, its successors and assigns and the Successor Servicer and hold each of them harmless against any and all claims, losses, damages, penalties, fines, forfeitures, reasonable legal fees (including (without limitation) legal fees incurred in connection with the enforcement of the Seller's and Servicer's indemnification obligation under this Section 14) and related costs, judgments, and any other costs, fees and expenses that the Purchaser, its successors or assigns or the Successor Servicer may sustain in any way related to (a) any breach of any of Seller's representations, warranties or covenants set forth in this Agreement, (b) the failure of the Seller to perform its duties under this Agreement or (c) the failure of the Seller or the Servicer to service the Mortgage Loans in compliance with the terms of this Agreement, the Interim Servicing Agreement or any Reconstitution Agreement entered into pursuant to Section 12.  The Seller or the Servicer immediately shall notify the Purchaser if a claim is made by a third party with respect to this Agreement, the Interim Servicing Agreement or any Reconstitution Agreement or the Mortgage Loans, assume (with the prior written consent of the Purchaser) the defense of any such claim and pay all expenses in connection therewith, including reasonable counsel fees, and promptly pay, discharge and satisfy any judgment or decree which may be entered against it or the Purchaser in respect of such claim.  The Purchaser promptly shall reimburse the Seller or the Servicer, as applicable, for all amounts advanced by it pursuant to the preceding sentence, except when the claim is related to the Seller's indemnification pursuant to Section 7.03 or the first sentence of this Section 13, or is related to the failure of the Seller or the Servicer to service and administer the Mortgage Loans in compliance with the terms of this Agreement, the Interim Servicing Agreement or any Reconstitution Agreement.

SECTION 15.  Severability Clause.

Any part, provision, representation or warranty of this Agreement which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.  Any part, provision, representation or warranty of this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Mortgage Loan shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.  If the invalidity of any part, provision, representation or warranty of this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good-faith, to develop a structure the economic effect of which is nearly as possible the same as the economic effect of this Agreement without regard to such invalidity.