Jun-02-99  10:46am  From-A1GDGMDM 1                    2143463601              T-136  P.02/02  F-243

# Addendum to Loan Purchase Agreement for Junior Loans

This Addendum, is made this __2__ day of __June__ __19 99__ between
Countrywide Home Loans, Inc., ("Countrywide"), and __Aegis Mortgage Corp.__ ("Seller"),
to the Loan Purchase Agreement ("LPA") Dated as of. _____

1 For the purposes of the sale of loans secured by liens that are other than senior liens ("Seconds"), including home equity lines of credit ("HELOCs") and fixed rate loans secured by junior liens, all provisions of the LPA shall be applicable and remain valid, binding and in full force and effect, except as specifically modified herein. For the purposes of the sale of all Loans other than Seconds, the provisions of the LPA as they currently exist without the modifications provided herein shall remain valid, binding and in full force and effect. The provisions in this Addendum shall have no effect upon the applicability of the LPA to Loans other than Seconds.

2. Wherever in the LPA the term "note" is used, the term shall include home equity credit line agreements, and agreements of similar import. Wherever in the LPA the term "manual" is used, the term "Guide" shall be used in its stead.

3 For the purposes of HELOCs, the first sentence of Section 6.A.(5) of the LPA is amended and restated in its entirety as follows: "The full amount of the draw indicated on the Authorization to Pay (as indicated in the Guide) delivered to Lender, and no other amount, has been fully funded to the Borrower."

4. Section 6.A.(9) of the LPA is amended and restated in its entirety as follows: "(9) There is in force for the Loan either (a) a paid-up valid and enforceable lenders title insurance policy on the Loan insuring Seller, its successors and assigns, issued by a Countrywide approved title company, as to the first or second priority lien position, as applicable, in full compliance with all requirements in the Guide, (b) an attorney's mortgage lien opinion, or (c) if permitted under the requirements specified in the Guide, a title guarantee or title search."

5 Section 6.A.(18) is added to the LPA as follows: "(18) If the Loan is in a second lien position, none of the documents evidencing, securing or otherwise relating to the mortgage loan in first lien position in any way restricts or prohibits the borrower(s) from obtaining the Loan or from creating any of the liens granted as security for the Loan and the Loan does not violate any term or condition imposed by any such document at."

6 Section 6.B.(1) of the LPA is hereby amended and restated in its entirety as follows: "(1) Seller is duly organized, validly existing and in good standing under the laws of its state of incorporation and is qualified and/or licensed as necessary to transact business, including the originating and selling of each loan, including without limitation, with rates of interest, loan type and other terms provided in the Loan documents, and is in good standing in each state where property securing a Loan is located."

7 All references in Section 8 of the LPA to "servicing release premium" are replaced with "premium paid to Seller by Countrywide at the time of its purchase of the Loan."

8 The following is added as Sections 8.A.4., 8.B.4. and 8.C.4.: "any un-reimbursed advances made by Countrywide with respect to such Loan, including but not limited to payments authorized by the loan documents or law to protect the security interest;" plus", and Sections 8.A(1), 8.B.(1) and 8.C.(1) are amended and restated in their entirety as follows: "The repurchase price shall be the original purchase price, less principal reduction made since the Closing Date."

The parties hereto do hereby agree to the foregoing as of the date above first written.

SELLER __Aegis Mortgage Corp.__            COUNTRYWIDE HOME LOANS, INC.

a __OKLAHOMA CORPORATION__                 A NEW YORK CORPORATION

By __Mac L Bremer__                        By _____
                                              (signature)
Name __MICHAEL C. KENNEDY__                Name _____

Title __CFO__                              Title _____


**Countrywide**
CORRESPONDENT LENDING

EXHIBIT 12
72

EXHIBIT 12
73

## Addendum to Loan Purchase Agreement for Junior Loans

*#124*

This Addendum, is made this ___6___ day of ___July___ 19 _99_ between ___124___

Countrywide Home Loans, Inc., ("Countrywide"), and ___Aegis Mtg. Corp.___ ("Seller"),

to the Loan Purchase Agreement ("LPA") dated as of. September 28, 1995

1. For the purposes of the sale of loans secured by liens that are other than senior liens ("Seconds"), including home equity lines of credit ("HELOCs") and fixed rate loans secured by junior liens, all provisions of the LPA shall be applicable and remain valid, binding and in full force and effect, except as specifically modified herein. For the purposes of the sale of all Loans other than Seconds, the provisions of the LPA as they currently exist without the modifications provided herein shall remain valid, binding and in full force and effect. The provisions in this Addendum shall have no effect upon the applicability of the LPA to Loans other than Seconds.

2. Wherever in the LPA the term "note" is used, the term shall include home equity credit line agreements, and agreements of similar import. Wherever in the LPA the term "manual" is used, the term "Guide" shall be used in its stead.

3. For the purposes of HELOCs, the first sentence of Section 6.A.(3) of the LPA is amended and restated in its entirety as follows: "The full amount of the draw indicated on the Authorization to Pay (as indicated in the Guide) delivered to Lender, and no other amount, has been fully funded to the borrower."

4. Section 6.A.(9) of the LPA is amended and restated in its entirety as follows:  "(9)  There is in force for the Loan either (a) a paid-up valid and enforceable lenders title insurance policy on the Loan insuring Seller, its successors and assigns, issued by a Countrywide approved title company, as to the first or second priority lien position, as applicable, in full compliance with all requirements in the Guide, (b) an attorney's mortgage lien opinion, or (c) if permitted under the requirements specified in the Guide, a title guarantee or title search."

5. Section 6.A.(18) of the LPA is added to the LPA as follows:  "(18)  If the Loan is in a second lien position, none of the documents evidencing, securing or otherwise relating to the mortgage loan in first lien position in any way restricts or prohibits the borrower(s) from obtaining the Loan or from creating any of the liens granted as security for the Loan and the Loan does not violate any term or condition imposed by any such document."

6. Section 6.B.(1) of the LPA is hereby amended and restated in its entirety as follows: "(1)  Seller is duly organized, validly existing and in good standing under the laws of its state of incorporation and is qualified and/or licensed as necessary to transact business, including the originating and selling of each Loan, including without limitation, rates of interest, loan type and other terms provided in the Loan documents, and is in good standing in each state where property securing a Loan is located."

7. All references in Section 8 of the LPA to "servicing release premium" are replaced with "premium paid to Seller by Countrywide at the time of its purchase of that Loan".

8. The following is added as Sections 8.A.4a, 8.B.4a and 8.C.4a: "any un-reimbursed advances made by Countrywide with respect to such Loan, including but not limited to payments authorized by the loan documents or law to protect the security interest; plus", and Sections 8.A.(1), 8.B.(1) and 8.C.(1) are amended and restated in their entirety as follows: "The repurchase price shall be the original purchase price, less principal reduction made since the Closing Date."

The parties hereto do hereby agree to the foregoing as of the date above first written.

SELLER: _Aegis Mortgage Corporation_

a: _Oklahoma Corporation_

By: _Michael L. Kennedy_
    SIGNATURE

Name: _Michael L. Kennedy_

Title: _CFO_

COUNTRYWIDE HOME LOANS, INC.

A NEW YORK CORPORATION

By: _____
    SIGNATURE

Name: Robert Gerber

Title: Vice President


**Countrywide**
CORRESPONDENT LENDING

EQUAL HOUSING LENDER. ©1996 COUNTRYWIDE HOME LOANS, INC. TRADEMARK/SERVICE MARKS ARE THE PROPERTY OF COUNTRYWIDE CREDIT INDUSTRIES, INC. AND/OR ITS SUBSIDIARIES. ARIZONA MORTGAGE BANKER LICENSE NUMBER BK8995; LICENSED RESIDENTIAL MORTGAGE LENDER - CALIFORNIA DEPARTMENT OF CORPORATIONS; GEORGIA RESIDENTIAL MORTGAGE LICENSEE, 3353 LAKE PARK, DR. #230, SMYRNA 30080; ILLINOIS RESIDENTIAL MORTGAGE LICENSEE, 1155 LINCOLN RD, #145, HOFFMAN ESTATES 60195; NEW JERSEY LICENSED MORTGAGE BANKER, NJ DEPARTMENT OF BANKING; 500 S. GATE DR. #505, MOUNT LAUREL 08054-0000 7736-8866; NEW YORK LICENSED MORTGAGE BANKERS, NYS BANKING DEPARTMENT; 300 WOODS PLAINS RD., TARRYTOWN 10591; RHODE ISLAND LENDER'S LICENSE. THIS DOCUMENTATION IS PROVIDED TO MORTGAGE PROFESSIONALS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT INTENDED FOR PUBLIC DISTRIBUTION. PRICES/CONTENTS SUBJECT TO CHANGE WITHOUT NOTICE. SOME PRODUCTS NOT AVAILABLE IN ALL STATES. RESTRICTIONS APPLY. 1/98

EXHIBIT 12
74

EXHIBIT 12
75

# *Addendum to Loan Purchase Agreement - Subprime*

This Addendum, is made this ___1ST___ day of ___AUGUST___, ___2000___ between

Countrywide Home Loans, Inc., ("Countrywide") and __AEGIS MORTGAGE CORPORATION__ ("Seller")

to the Loan Purchase Agreement ("LPA") dated as of __9/28/95__.

**1. Definitions.** The terms "Subprime Loan", "Mortgage Loan Schedule", "Commitment", "Commitment Letter", "Pool Commitment", "Spot Commitment" and "Closing Date" shall have the meanings set forth therefor in the "Guide" (as defined below).

**2. Commitment to Purchase Loans.** The following is hereby added at the end of the first sentence of Section 2: "except that for the purposes of Subprime Loans, the procedure pursuant to which Seller may commit to sell a Subprime Loan to Countrywide is detailed in the Subprime section of the Guide."

**3. Representations and Warranties.**

    A.   Section 6.A (7) is amended and restated in its entirety as follows: "All federal and state laws, rules and regulations applicable to the Loan for its applicable Loan Type have been complied with, including but not limited to: the Real Estate Settlement Procedures Act, the Flood Disaster Protection Act, the Federal Consumer Credit Protection Act including the Truth-in-Lending and Equal Credit Opportunity Acts, the Federal Fair Housing Act, the Home Ownership and Equity Protection Act of 1994 and all applicable federal and state statutes or regulations governing fraud, lack of consideration, unconscionability, consumer credit transactions, consumer protection, interest or other charges, licensing and mortgage insurance."

    B.   Section 6.B (1) is amended and restated in its entirety as follows: "Seller is duly organized, validly existing and in good standing under the laws of its state of incorporation and is qualified and/or licensed as necessary to transact business, including the originating and selling of each Loan, including without limitation, with rates of interest, loan type and other terms provided in the Loan documents, and is in good standing in each state where property securing a Loan is located."

    C.   Section 6.A (18) is added as follows: "For each Subprime Loan, all information regarding such Subprime Loan in the Confirmation therefor and the Mortgage Loan Schedule attached to such Confirmation is true and correct."

**4. Purchase Limitation.** The obligation to purchase any Subprime Loans identified in a Confirmation does not extend to any Loans that would violate any representation and warranty by Seller contained in the LPA.

**5. Purchase Price.** The purchase price of each Subprime Loan shall be calculated by multiplying the unpaid principal balance of each Subprime Loan (as adjusted for the borrower's next payment) on the Closing Date by its applicable purchase price percentage calculated in accordance with the rate sheet at the time of purchase for "Spot" Commitments, or as stated in the Commitment letter for "Pool" Commitments (the **"Purchase Price"**). If a borrower's payment is due 15 days or earlier after the Closing Date (an "Early Payment"), the portion of such payment attributable to principal shall be deducted from the unpaid principal balance for calculating the Purchase Price. Seller shall then retain borrower's Early Payment when made. The purchase proceeds paid by Countrywide to Seller shall consist of the Purchase Price plus accrued interest as of the Closing Date and less (i) any positive escrow balances, and (ii) any amounts actually owed and paid by Seller for Mortgage Loan tax service contracts and flood certification determinations which are transferable and transferred to Countrywide on the Closing Date. Without limitation on Countrywide's other rights herein, the Purchase Price is subject to change if it is determined that the loan characteristics of the Subprime Loan to be purchased differ from the characteristics represented on the Mortgage Loan Schedule.

**6. Premium Recapture.** Should any Borrower prepay a Subprime Loan during the twelve month period following Countrywide's purchase of the loan, Seller shall reimburse Countywide, upon demand, some or all of the purchase price premium above par paid by Countrywide. The reimbursement shall be calculated using the following formula for "Spot" commitments and "Pool" commitments unless stated otherwise in the "Pool" commitment letter:

$$\boxed{\begin{array}{c}\text{Purchase Price Premium} \\ \text{Paid by Countrywide}\end{array}} \times \boxed{\begin{array}{c}\text{12 minus the number of months expired} \\ \underline{\text{since the date of purchase}} \\ 12\end{array}} - \boxed{\text{Prepay Penalty}} = \textbf{Premium Refund}$$

**7. Seller's Repurchase Obligations.** Section 7.A (4) is amended and restated in its entirety as follows: "If the first payment due Countrywide is not received by Countrywide, whether from the borrower directly or forwarded by Seller if the Borrower has submitted the payment to Seller, within 90 days of the first payment due Countrywide. For this purpose a Borrower shall be considered to be 90 days delinquent with respect to the first monthly payment due Countrywide if the payment is not received by Countrywide

**Countrywide**
CORRESPONDENT LENDING

EXHIBIT 12

76

within three months of the payment due date, regardless of the number of days in the month.  For example, if the due date of the first payment due to Countrywide is January 15th and the Borrower has not made his/her January 15th payment by April 14th, the Borrower shall be considered 90 days delinquent with respect to the January 15th payment.  Seller shall not have the right to advance funds for or on behalf of a Borrower for any delinquent payment or to otherwise make funds available to any Borrower to avoid or cure a default by the Borrower.  A payment for which Countrywide deducted funds at the time it purchased the Loan from Seller shall not be considered the first payment due Countrywide."

**8. Repurchase Price.** For the purposes of determining the repurchase price of a Subprime Loan, Sections 8.A(4), 8.B(4) and 8.C(4) are deleted, and Sections 8.A(1), 8.B(1) and 8.C(1) are amended and restated in their entirety as follows: "The repurchase price shall be the original Purchase Price (as defined in this Addendum), less principal reduction made since the Closing Date."

**9. Sellers Guide.** All references to "Countrywide's Correspondent Lender Division Loan Purchase Program Seller's Manual" or "Manual"throughout the LPA are replaced with "Countrywide's Correspondent Lending Seller's Guide" or "Guide", respectively.  Seller acknowledges receipt of the Guide, which may be amended, modified or supplemented from time to time by Countrywide, in its sole and absolute discretion, which amendments, modifications or supplements shall be effective upon Countrywide's sending the same to Seller.

**10. Brokers.** Neither party has employed or otherwise engaged, nor shall employ, or otherwise engage, any broker or finder in connection with the negotiation or execution of the LPA, this Addendum or any Commitment, nor with respect to the transactions contemplated by this Addendum, in such a manner as to give rise to any claim, against any party, for any brokerage commission, finder's fee or similar payment.  Each party shall indemnify and defend the other party for any claims for brokerage commission, finder's fee or similar payment based upon statements or agreements alleged to have been made by the indemnifying party.

**11. LPA Terms.**All provisions of the LPA shall be applicable and remain valid, binding and in full force and effect, except as specifically modified herein.

**The parties hereto do hereby agree to the foregoing as of the date above first written.**

| | |
|---|---|
| SELLER: | COUNTRYWIDE: |
| AEGIS MORTGAGE CORPORATION | COUNTRYWIDE HOME LOANS, INC. |
| a: OKLAHOMA CORPORATION | A NEW YORK CORPORATION |
| By: _STUART D. MARVIN_ (signature) | By: _____ |
| Name: _STUART D. MARVIN_ | Name: _____ |
| Title: _EVP + CFO_ | Title: _____ |



RECEIVED
OCT 25 2000
BY:_____


CORRESPONDENT LENDING

PAGE 2

EXHIBIT 12
77

EXHIBIT 12
78

# AMENDMENT TO
## LOAN PURCHASE AGREEMENT

This AMENDMENT ("Amendment") by and between COUNTRYWIDE HOME LOANS, INC., having an address at 4500 Park Granada, Calabasas, California 91302 ("Countrywide"), and Aegis Mortgage Corp. ("Seller") is effective as of November 27, 2002. This Amendment modifies that certain Loan Purchase Agreement by and between Countrywide and Seller effective as of May 27, 1994 and September 28, 1995 and as amended from time to time (the "Loan Purchase Agreement").

## R E C I T A L S

Countrywide and Seller previously entered into the Loan Purchase Agreement under which Seller agreed to sell and Countrywide agreed to purchase all of Seller's right, title and interest, including servicing rights, in and to certain mortgage loans agreed upon by the parties. Seller has requested Countrywide to provide certain nonpublic personal Loan information relating to delinquencies and early payoffs. Countrywide and Seller agree that the Loan Purchase Agreement shall be amended as provided below.

NOW, THEREFORE, for good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.  Countrywide and Seller agree that new Sections 12 and 13 shall be added to the Loan Purchase Agreement as follows and the current Section 12 and remaining Sections of the Loan Purchase Agreement shall be renumbered accordingly:

### 12. REPORTING OF DELINQUENCY & EARLY PAYOFF INFORMATION

In order for Countrywide and Seller to manage the risk of delinquencies and early payoffs (runoff) on Loans sold to Countrywide and to help Seller assess the risk of potential repurchase obligations for delinquencies, Countrywide shall provide Seller with certain nonpublic personal Loan information as determined by Countrywide. Seller represents and warrants that it shall not use such nonpublic personal Loan information for any other purpose. Seller specifically acknowledges, represents and warrants that it shall not use any of the nonpublic personal Loan information to contact borrowers about the collection of payments on the Loan. Seller understands and agrees that servicing the Loans is the sole responsibility and right of Countrywide. Seller represents and warrants to Countrywide that Seller will comply with any conditions contained in the Manual relating to maintenance of the privacy and security of the nonpublic personal Loan information.

EXHIBIT 12
79

### 13. COMPLIANCE WITH PRIVACY LAWS.

Seller shall comply with all federal, state and local laws, rules, regulations and ordinances governing or relating to privacy rights in connection with its performance under the Loan Purchase Agreement including, without limitation, the Gramm-Leach-Bliley Act ("GLB"). Seller shall implement such physical and other security measures as shall be necessary to (a) ensure the security and confidentiality of the "nonpublic personal information" of the "customers" and "consumers" (as those terms are defined in GLB) of Countrywide which Seller holds or receives, (b) protect against any threats or hazards to the security and integrity of such nonpublic personal information, and (c) protect against any unauthorized access to or use of such nonpublic personal information. Seller represents and warrants that it has implemented appropriate measures to meet the objectives of Section 501(b) of the GLB and of the applicable standards adopted pursuant thereto, as now or hereafter in effect. Upon request, Seller will provide evidence reasonably satisfactory to allow Countrywide to confirm that the providing party has satisfied its obligations as required under this Section. Without limitation, this may include Countrywide reviewing audits, summaries of test results, and other equivalent evaluations of Seller.

2.  Other than as modified and amended herein, the Loan Purchase Agreement shall remain in full force and effect.

3.  Any capitalized term not otherwise defined shall have the meaning ascribed to such term in the Loan Purchase Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement effective as of the date first written above.

Countrywide Home Loans, Inc.                    Seller: Aegis Mortgage Corp.

By: _Catherine A Kaiser_                          By: _R.A. Payne_ _Stu Marvin_
     Signature                                         Signature

Name: _Catherine A. Kaiser_      Name: _Richard A. Payne_ _Stu Marvin_

Title: _SVP & CFO_                Title: _V.P._ _EVP & CFO_

Dated: _5/2/2003_                Dated: _2/19/03_   _3/05/03_

EXHIBIT 12
80

EXHIBIT 12
81

**SLIM PAK ADDENDUM**  #124
**TO LOAN PURCHASE AGREEMENT**

THIS SLIM PAK ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Addendum") is made and entered into as of December 11, 2002 by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation ("Seller"). This Addendum supplements and amends that certain Loan Purchase Agreement by and between Countrywide and Seller dated September 28, 1995 (including any Commitments, Amendments, Addenda and Assignments related thereto, collectively, the "Loan Purchase Agreement"). Capitalized terms used herein and not defined herein shall have the meanings assigned such terms in the Agreements (as defined below), as applicable.

### RECITALS

A.    In connection with the sale and purchase of loans to Countrywide under the Loan Purchase Agreement, Seller is required to deliver to Countrywide certain Documents (as defined herein) as required by Countrywide's Correspondent Lending Division Seller's Guide (as amended from time to time by Countrywide, the "Guide") and the Loan Purchase Agreement (the Guide, the Loan Purchase Agreement and any other agreement by and between Countrywide and Seller related to the sale and purchase of loans to Countrywide under the Loan Purchase Agreement shall be collectively referred to herein as the "Agreements");.

B.    Seller has requested that in lieu of delivering such Documents as required by the Agreements that Seller be allowed to deliver the "Slim Pak Documents" (as defined below) to Countrywide and deliver all other Documents in accordance with the terms herein (loans delivered in such manner being referred to herein as "Slim Pak Loans").

C.    Countrywide has agreed to allow Seller to do so in accordance with the terms herein.

NOW, THEREFORE, in consideration of the above premises and the terms and conditions contained herein, Seller and Countrywide hereby agree as follows:

1.    **Definitions.**

(a)    As used herein, **"Slim Pak Documents"** shall mean those documents listed on Exhibit A attached hereto, which such list is hereby incorporated herein by reference.

(b)    As used herein, **"Documents"** shall mean all documents that Seller is required to deliver to Countrywide in accordance with any of the Agreements. As the context requires, Documents as used herein shall also include the Slim Pak Documents.

2.    **Sale and Purchase of Slim Pak Loans; Delivery of Documents.**

(a)    Sale and Purchase of Slim Pak Loans. To initiate a sale and purchase of a Slim Pak Loan under this Addendum, Seller shall deliver the related Slim Pak Documents to Countrywide. Unless agreed to otherwise by Countrywide, the Slim Pak Documents related to the Slim Pak Loan must be delivered to Countrywide on or prior to the File Due Date (as defined in the Agreements). Countrywide will review such Slim Pak Documents and confirm that the related Slim Pak Loan is eligible for purchase by Countrywide under this Addendum and the Agreements. In no event will Countrywide be obligated to purchase any Slim Pak Loan if one or more the Slim Pak Documents are missing or Countrywide determines that one or more of the Slim Pak Documents are deficient in any manner.

(b)    Slim Pak Loan Purchase Voucher. When the Slim Pak Documents are delivered to Countrywide, Seller must also deliver a Slim Pak Loan Purchase Voucher with the Slim Pak Documents, the form of which is attached hereto as Exhibit B.

(c)    Deficiencies. If Countrywide notifies Seller of deficiencies in the Slim Pak Documents, Seller will have five (5) business days after receipt of notification or by the Target Fund Date, whichever is later, in which to cure such deficiencies.

Aegis Mtg. Corp. Slim Pak Addendum                                                                    Page 1
Revised 10/02

EXHIBIT 12
82

(d)     <u>Delivery of Other Documents</u>.  All other Documents related to the Slim Pak Loan other than the Slim Pak Documents shall be delivered to Countrywide within sixty (60) days after the date that Countrywide actually purchases the Slim Pak Loan (such date, the "**Purchase Date**") unless the Agreements expressly provide for an additional time period in which Seller may deliver any such other Documents to Countrywide.   Notwithstanding the foregoing sixty (60) day delivery requirement, it is understood and agreed by Seller and Countrywide that with respect to the original security instrument with evidence of recording thereon, the original Assignment and all intervening Assignments with evidence of recording thereon, the original final policy of title insurance, the original recorded Power of Attorney, if applicable, and the original Modification Agreement with evidence of recording thereon, if applicable, Seller shall deliver such Documents to Countrywide promptly following receipt thereof, but in no event later than one hundred and twenty (120) days after the related Purchase Date (or such extended period during which such Document is held at the appropriate recording office for recording, which Seller shall certify to Countrywide upon request).

(e)     <u>Delivery of Imaged Documents</u>.  For purposes of complying with its obligations to deliver Documents related to Slim Pak Loans under the Agreements, Seller may deliver to Countrywide imaged versions of certain Documents (other than the Slim Pak Documents) in lieu of delivering the original or certified copy of such Documents.  Countrywide has or will deliver to Seller the list of those Documents which Seller may deliver an imaged version to Countrywide, which such list Countrywide may modify or add to from time to time upon notice to Seller at Countrywide's sole and absolute discretion.  Further, those Documents which Seller may deliver an imaged version to Countrywide shall be determined by Countrywide in its sole and absolute discretion.  Seller is solely responsible for having whatever computer systems or other software products necessary to deliver the imaged version of the Document in the format and in the manner required by Countrywide.

(f)     <u>Failure to Timely Deliver Documents</u>.  If, with respect to any Slim Pak Loan, any Document is not delivered within sixty (60) days after the related Purchase Date of such Slim Pak Loan (except for those Documents wherein the Agreements expressly provide for an additional time period in which Seller may deliver such Documents to Countrywide), Countrywide may assess, and Seller will be obligated to pay, Countrywide's then current late document delivery fee for each day that any such Document remains undelivered.  As of the date hereof, the current late document delivery fee is fifty ($50) dollars per Slim Pak Loan per day.  If any Document is not delivered to Countrywide within one hundred and twenty (120) days after the related Purchase Date of such Slim Pak Loan as required under this Addendum or the Agreements, Seller will, upon the request of Countrywide, repurchase the related Slim Pak Loan in accordance with the provisions of the Loan Purchase Agreement.

3.     **Representations and Warranties.**

(a)     <u>Representations and Warranties in Agreements</u>.  Any and all representations and warranties regarding the Documents contained in the Agreements, including, without limitation, Section 6 of the Loan Purchase Agreement or any section of the Guide, shall be applicable and enforceable regarding all Documents, regardless of when any such Document is actually delivered to Countrywide or the form in which any such Document is delivered.

(b)     <u>Additional Representations and Warranties</u>.  With respect to each Slim Pak Loan, Seller represents and warrants to Countrywide that as of the related Purchase Date: (i) nothing contained in any Document not delivered to Countrywide contradicts or is inconsistent with anything contained in any Slim Pak Document or any of the information otherwise provided by Seller to Countrywide on or prior to the Purchase Date  and (ii) each Slim Pak Loan is eligible for purchase by Countrywide and otherwise complies with all requirements of the Agreements.

4.     **Seller's Obligations under Agreements.**  Seller's obligations in connection with its obligations in the Agreements shall include its representations, warranties and agreements contained herein, including but not limited to Seller's obligations under Section 7.A.(5) and Section 9.A. of the Loan Purchase Agreement.

Aegis Mtg. Corp. Slim Pak Addendum                                                                                  Page 2
Revised 10/02

EXHIBIT 12
83

Without limitation, Seller. obligations under Section 9.A. of the Loan Purchase Agreement shall include any Loss arising out of or in connection with Seller's failure to perform its obligations under this Addendum. Additionally, without limitation, Seller's obligations under Section 7.A.(5) of the Loan Purchase Agreement shall include its failure to observe or perform or breach in any material respect any of the representations, warranties or agreements contained in this Addendum.

5.  **Interim Custodianship.**

(a)  <u>Custodian of Documents</u>.  Countrywide hereby appoints Seller, and Seller hereby accepts its appointment, to act as the interim agent and bailee of Countrywide, and its successors and assigns, for the purpose of taking custody of any and all Documents related to the Slim Pak Loans prior to delivery to Countrywide, which such interim appointment shall be subject to the terms and conditions set forth herein.  With respect to each individual Slim Pak Loan, Seller's interim appointment as Countrywide's bailee and agent shall terminate upon the earlier of (i) the delivery by Seller of all related Documents to Countrywide or its designee, (ii) the receipt by Seller of a written termination notice from Countrywide and delivery by Seller of all related Documents or (iii) Seller ceases to originate mortgage loans and delivers all related Documents to Countrywide. Within thirty (30) days of (i) receipt of written termination notice or (ii) Seller ceasing to originate mortgage loans, Seller shall deliver all Documents not already delivered to Countrywide or its designee.  Seller's obligations to deliver Documents to Countrywide hereunder will survive any termination of the Loan Purchase Agreement or this Addendum.

(b)  <u>Possession, Records and Insurance</u>.  At all times during which Seller is acting as Countrywide's agent and bailee with respect to any Documents not delivered to Countrywide, Seller shall retain possession and custody of the Documents for the sole benefit of Countrywide and as bailee and custodian for Countrywide for all purposes until otherwise notified by Countrywide pursuant to the terms hereof.  Seller shall segregate and maintain continuous custody of all Documents required by it in secure and firerated facilities, all in accordance with commercially reasonable standards in the mortgage banking business for such custody.   Seller shall implement and maintain administrative and operating procedures pursuant to which it shall keep and maintain all records and information necessary to permit the regular identification of all Documents held or released by it hereunder.  Seller shall also make appropriate notation in Seller's books and records reflecting that the Documents are owned by Countrywide unless otherwise notified by Countrywide pursuant to the terms hereof.   Seller shall maintain such insurance against loss or damage to the Documents as Countrywide deems appropriate.

(c)  <u>Delivery Upon Request</u>.  Notwithstanding the delivery time period requirements of this Addendum or the Agreements for any Document, within three (3) business days after Countrywide's request therefore, Seller shall provide originals or copies, as requested and at Seller's expense, to Countrywide, or such other person or entity as directed by Countrywide in such request, of any Document in Seller's possession or control. If any such Document is not received by Countrywide or such other person or entity as directed by Countrywide within such time period, Countrywide may, at its sole option and discretion, require Seller to repurchase the related Slim Pak Loan in accordance with the Loan Purchase Agreement, or, in lieu of requiring such repurchase, charge Seller Countrywide's then-current per loan late fee for each day that the Document remains undelivered.  Seller shall not deliver or give access to any Documents or permit any copies thereof to any person or entity other than Countrywide without the express written consent or instruction from Countrywide.

(d)  <u>Inspection</u>.  At all times during which Seller is acting as Countrywide's agent and bailee with respect to any Document, Seller shall permit Countrywide (and its auditors, if requested by Countrywide) to: (i) inspect any such Document  and the records of Seller related to this Addendum and (ii)  make copies of the Documents and the records of Seller related to this Addendum, which such inspection or making of copies may occur on Seller's premises during normal business hours after reasonable notice by Countrywide to Seller.

(e)  <u>No Set-Off</u>.  Notwithstanding anything contained in this Addendum or the Agreements to the contrary, Seller shall not at any time exercise or seek to enforce any claim, right or remedy, including any statutory or common law rights of set-off, if any, that the Seller may otherwise have against all or any part of the Documents.

Aegis Mtg. Corp. Slim Pak Addendum                                                                    Page 3
Revised 10/02

EXHIBIT 12
84

5.    **Successors and Assigns.**   This Addendum shall bind and inure to benefit of and be enforceable by Seller and Countrywide and the respective permitted successors and assigns of Seller and the successors and assigns of Countrywide.  This Addendum shall not be assigned, pledged or hypothecated by Seller without the prior written consent of Countrywide.  Seller shall not delegate or appoint any other person or entity to perform or carry out any of its duties, responsibilities or obligations under this Addendum, unless Seller has obtained the prior written consent of Countrywide.  This Addendum may be assigned, pledged or hypothecated or otherwise transferred or encumbered by Countrywide without the consent of Seller.

6.    **Severability Clause.**  Any part, provision, representation or warranty of this Addendum which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof.  Any part, provision, representation or warranty of this Addendum which is prohibited or unenforceable or is held to be void or unenforceable in any relevant jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Loan shall not invalidate or render unenforceable such provision in any other jurisdiction.  To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

7.    **Governing Law.**  This Addendum shall be governed by and interpreted in accordance with the laws of the State of California applicable to agreements entered into and wholly performed within said jurisdiction.

8.    **Loan Purchase Agreement in Full Force and Effect.**    Nothing contained in this Addendum shall be deemed to waive any rights, remedies or privileges of Countrywide under the Agreements.  Except as expressly modified herein, the Loan Purchase Agreement and Guide, and all of the terms and conditions thereof, shall remain in full force and effect and apply equally to the terms hereof.

9.    **Counterparts.**  This Addendum may be executed in counterparts, each of which when so executed shall be an original, but all of which taken together shall constitute one and the same agreement, and either of the parties hereto may execute this Addendum by signing such counterpart.


      IN WITNESS WHEREOF, Countrywide and Seller have executed this Addendum by and through their duly authorized representatives as of the date first above written.

**COUNTRYWIDE HOME LOANS, INC.**

By:    _Carla W. Navas_

      Carla W. Navas
      Executive Vice President


**AEGIS MORTGAGE CORPORATION**

By:    _Stuart S. Marvin_

Name:  _STUART S. MARVIN_

Title:  _EVP + CFO_


Aegis Mtg. Corp. Slim Pak Addendum                                              Page 4
Revised 10/02

EXHIBIT 12
85

EXHIBIT 12
86

## ADDENDUM TO LOAN PURCHASE AGREEMENT

This Addendum to Loan Purchase Agreement (the "Addendum"), dated January 1, 2003, modifies that certain Loan Purchase Agreement, dated September 28, 1995, including all the Commitments, Amendments, Addenda, and Assignments thereto (collectively, the "Loan Purchase Agreement"), by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation, an Oklahoma corporation ("Seller"), as follows:

1. Seller has merged into Moulton Mortgage Corporation, a Delaware corporation and simultaneously changed its name to Aegis Mortgage Corporation ("Successor") on or about January 1, 2003.

2. Successor hereby agrees to be added as a party to the Loan Purchase Agreement, effective as of September 28, 1995.

3. Successor hereby assumes and agrees to be bound by all of the rights, liabilities and obligations of Seller under the Loan Purchase Agreement. This includes, without limitation, all of the terms and conditions of the Loan Purchase Agreement with respect to any loans that Seller or Successor sold to Countrywide under the Loan Purchase Agreement or that Seller or Successor sells or offers to sell to Countrywide under the Loan Purchase Agreement.

4. Successor expressly agrees to be jointly and severally liable for all rights, liabilities and obligations under, and all terms and conditions pursuant to, the Loan Purchase Agreement.

5. In the event of any conflict between the terms and conditions of the Loan Purchase Agreement and this Addendum, the terms and conditions of this Addendum shall prevail.

6. All other terms and conditions of the Loan Purchase Agreement shall remain in full force and effect.

THE PARTIES ACKNOWLEDGE AND AGREE TO THIS ADDENDUM TO LOAN PURCHASE AGREEMENT AS OF THE DATE ABOVE FIRST WRITTEN:

Aegis Mortgage Corporation (Successor):

By: _Stuart D. Marvin_

Name: _STUART D. MARVIN_

Its: _EVP + CFO_

Countrywide Home Loans, Inc.:

By: _Catherine A Kaiser_

Name: _Catherine A. Kaiser_

Its: _SVP and CFO, CLD_

EXHIBIT 12
87

EXHIBIT 12
88

## ADDENDUM TO LOAN PURCHASE AGREEMENT
## FOR RELATED SELLER

This Addendum to Loan Purchase Agreement for Related Seller (the "Addendum"), dated January 2, 2003, modifies that certain Loan Purchase Agreement dated September 28, 1995 (including all Commitments, Amendments, Addenda, and Assignments related thereto, collectively, the "Loan Purchase Agreement"), by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation ("Seller") as follows:

1.  Aegis Lending Corporation, Aegis Funding Corporation, and Aegis Wholesale Corporation are wholly owned subsidiaries of Seller (collectively referred to as the "Related Sellers").

2.  Countrywide, Seller and Related Sellers hereby add each Related Seller as an additional named "Seller" to the Loan Purchase Agreement, effective as of September 28, 1995.

3.  By being added as an additional named "Seller" to the Loan Purchase Agreement, each Related Seller agrees to be bound by all of the rights, liabilities and obligations of "Seller" under the Loan Purchase Agreement. This includes, without limitation, being bound by all the rights, liabilities and obligations of "Seller" under the Loan Purchase Agreement with respect to any loans that Seller, Related Sellers or any other related seller sold to Countrywide under the Loan Purchase Agreement prior to the date hereof or that Seller, Related Sellers or any other related seller sells or offers to sell to Countrywide under the Loan Purchase Agreement on or after the date hereof.

4.  Seller and Related Sellers hereby expressly agree to be jointly and severally liable for all rights, liabilities and obligations of "Seller" under, and all terms and conditions pursuant to, the Loan Purchase Agreement. This includes, without limitation, being jointly and severally liable for any repurchase and indemnification obligations of "Seller" under the Loan Purchase Agreement with respect to any loans that Seller, Related Sellers or any other related seller sold to Countrywide under the Loan Purchase Agreement prior to the date hereof or that Seller, Related Sellers or any other related seller sells or offers to sell to Countrywide under the Loan Purchase Agreement on or after the date hereof, regardless of which party sold or sells such loans to Countrywide.

5.  In the event of any conflict between the terms and conditions of the Loan Purchase Agreement and this Addendum, the terms and conditions of this Addendum shall prevail.

6.  All other terms and conditions of the Loan Purchase Agreement shall remain in full force and effect.

THE PARTIES ACKNOWLEDGE AND AGREE TO THIS ADDENDUM AS OF THE DATE ABOVE FIRST WRITTEN:

Aegis Mortgage Corporation (Seller):

By: _~Stuart D Marvin~_

Name: _STUART D. MARVIN_

Its: _EVP + CFO_

Countrywide Home Loans, Inc.:

By: _Catherine A Kaiser_ _ks_

Name: _Catherine A. Kaiser_

Its: _SVP and CFO, CLD_

1

EXHIBIT 12
89

Aegis Lending Corporation (Related Seller):

By: _Stuart D Marvin_

Name: _STUART D. MARVIN_

Its: _EVP + CFO_

Aegis Funding Corporation (Related Seller):

By: _Stuart D Marvin_

Name: _STUART D. MARVIN_

Its: _EVP + CFO_

Aegis Wholesale Corporation (Related Seller):

By: _Stuart D Marvin_

Name: _STUART D. MARVIN_

Its: _EVP + CFO_

2

EXHIBIT 12
90

EXHIBIT 12
91

*AEGIS MORTGAGE.COM*
*EDI 124*

## EDI DELIVERY ADDENDUM TO LOAN PURCHASE AGREEMENT

THIS EDI DELIVERY ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Addendum") is made as of **December 20, 2005**, by and between Countrywide Home Loans, Inc. ("Countrywide") and **Aegis Mortgage Corporation (124) (Seller)**. This Addendum supplements and amends that certain Loan Purchase Agreement by and between Countrywide and Seller dated **9/28/1995** (including any Commitments, Amendments, Addenda and Assignments related thereto, collectively, the "Loan Purchase Agreement"). Capitalized terms used herein and not defined herein shall have the meanings assigned such terms in the Agreements (as defined below), as applicable.

### RECITALS

A.  In connection with the sale and purchase of loans to Countrywide under the Loan Purchase Agreement, Seller is required to deliver to Countrywide certain Documents (as defined herein) as required by Countrywide's Correspondent Lending Seller's Guide (as amended from time to time by Countrywide, the "Guide") and the Loan Purchase Agreement (the Guide, the Loan Purchase Agreement and any other written agreement by and between Countrywide and Seller related to the sale and purchase of loans to Countrywide under the Loan Purchase Agreement shall be collectively referred to herein as the "**Agreements**").

B.  With respect to certain Documents, Seller has requested that in lieu of delivering such Documents as required by the Agreements that Seller be allowed to deliver to Countrywide the information contained on such Documents via Countrywide's EDI System and deliver such Documents in accordance with the terms herein (loans delivered in such manner being referred to herein as "**EDI Loans**").

C.  Countrywide has agreed to allow Seller to do so in accordance with the terms herein.

NOW, THEREFORE, in consideration of the above premises and the terms and conditions contained herein, Seller and Countrywide hereby agree as follows:

1.  **Definitions.**

    (a)  As used herein, the "**Documents**" shall mean all the documents that Seller is required to deliver to Countrywide in accordance with any of the Agreements.

2.  **Sale and Purchase of EDI Loans; Delivery of Documents.**

    (a)  Sale and Purchase of EDI Loans; EDI Delivery. To initiate a sale and purchase of an EDI Loan under this Addendum, Seller shall provide, at a minimum, the related Inputted Information (as defined below) through Countrywide's EDI System on or prior to the File Due Date (as defined in the Agreements). In no event will Countrywide be obligated to purchase any EDI Loan if the Inputted Information is not provided by Seller as required herein.

    (b)  Inputted Information. Countrywide has or shall deliver to Seller the list of certain loan information that Countrywide will require to be delivered through its EDI System, which Countrywide may modify or add to from time to time upon notice to Seller at Countrywide's sole and absolute discretion (such list, the "**Inputted Information**"). Seller is responsible for having whatever systems or other products necessary to deliver the Inputted Information to Countrywide in the format necessary for Countrywide's EDI System to process the Inputted Information in the manner required by Countrywide.

EDI Addendum                                                                                          Page 1
**Aegis Mortgage Corporation (124)**
Revised **10/2002**

EXHIBIT 12
92

(c)     <u>Failure to Provide Inputted Information</u>. If Seller attempts to provide Inputted Information in accordance with the terms herein, but is unsuccessful, then such EDI Loan shall be treated as a standard Loan, not an EDI Loan, and Seller shall be responsible for delivering all related Documents in accordance with the Agreements.

(d)     <u>Delivery of Documents</u>. All Documents related to any EDI Loan shall be delivered to Countrywide within thirty (30) days after the date that Countrywide actually purchases the EDI Loan (such date, the "**Purchase Date**") unless the Agreements expressly provide for an additional time period in which Seller may deliver any such Documents to Countrywide. Notwithstanding the foregoing thirty (30) day delivery requirement, it is understood and agreed by Seller and Countrywide that with respect to the original security instrument with evidence of recording thereon, the original Assignment and all intervening Assignments with evidence of recording thereon, the original final policy of title insurance, the original recorded Power of Attorney, if applicable, and the original Modification Agreement with evidence of recording thereon, if applicable, Seller shall deliver such Documents to Countrywide promptly following receipt thereof, but in no event later than one hundred and twenty (120) days after the related Purchase Date (or such extended period during which such Document is held at the appropriate recording office for recording, which Seller shall certify to Countrywide upon request)

(e)     <u>Delivery of Imaged Documents</u>. For purposes of complying with its obligations to deliver Documents related to EDI Loans under the Agreements, Seller may deliver to Countrywide imaged versions of certain Documents in lieu of delivering the original or certified copy of such Documents. Countrywide has or will deliver to Seller the list of those Documents which Seller may deliver an imaged version to Countrywide, which such list Countrywide may modify or add to from time to time upon notice to Seller at Countrywide's sole and absolute discretion. Further, those Documents which Seller may deliver an imaged version to Countrywide shall be determined by Countrywide in its sole and absolute discretion. Seller is solely responsible for having whatever computer systems or other software products necessary to deliver the imaged version of the Document in the format and in the manner required by Countrywide.

(f)     <u>Failure to Timely Deliver Documents</u>. If, with respect to any EDI Loan, any Document is not delivered within thirty (30) days after the related Purchase Date of such EDI Loan (except for those Documents wherein the Agreements expressly provide for an additional time period in which Seller may deliver such Documents to Countrywide), Countrywide may assess, and Seller will be obligated to pay, Countrywide's then current late document delivery fee for each day that any such Document remains undelivered. As of the date hereof, the current late document delivery fee is fifty ($50) dollars per EDI Loan per day. If any Document is not delivered to Countrywide within one hundred and twenty (120) days after the related Purchase Date of such EDI Loan as required under this Addendum or the Agreements, Seller will, upon the request of Countrywide, repurchase the related EDI Loan in accordance with the provisions of the Loan Purchase Agreement.

3.     **Representations and Warranties.**

(a)     <u>Representations and Warranties in the Agreements</u>. Any and all representations and warranties regarding the Documents contained in the Agreements, including, without limitation, Section 6 of the Loan Purchase Agreement or any section of the Guide, shall be applicable and enforceable regarding all Documents, regardless of when any such Document is actually delivered to Countrywide or the form in which any Document is delivered.

(b)     <u>Additional Representations and Warranties</u>. With respect to each EDI Loan, Seller represents and warrants to Countrywide that as of the related Purchase Date: (i) nothing

contained in any Document not delivered to Countrywide materially contradicts or is inconsistent with anything contained in any of the Inputted Information or any other information which may have otherwise been provided by Seller to Countrywide on or prior to the Purchase Date, (ii) the Inputted Information delivered to Countrywide is accurate, true and correct in all material respects and (iii) each EDI Loan is eligible for purchase by Countrywide and otherwise complies with all requirements of the Agreements.

4.   **Seller's Obligations under Agreements.** Seller's obligations in connection with its obligations in the Agreements shall include its representations, warranties and agreements contained herein, including but not limited to Seller's obligations under Section 7.A.(5) and Section 9.A of the Loan Purchase Agreement. Without limitation, Seller's obligations under Section 9.A. of the Loan Purchase Agreement shall include any Loss arising out of or in connection with Seller's failure to perform its obligations under this Addendum. Additionally, without limitation, Seller's obligations under Section 7.A.(5) of the Loan Purchase Agreement shall include its failure to observe or perform or breach in any material respect any of the representations, warranties or agreements contained in this Addendum.

5.   **Interim Custodianship.**

   (a)   <u>Custodian of Documents</u>. Countrywide hereby appoints Seller, and Seller hereby accepts its appointment, to act as the interim agent and bailee of Countrywide, and its successors and assigns, for the purpose of taking custody of any and all Documents related to EDI Loans prior to delivery to Countrywide, which such appointment shall be subject to the terms and conditions set forth herein. With respect to each individual EDI Loan, the Seller's interim appointment as Countrywide's bailee and agent shall terminate upon the earlier of (a) the delivery by Seller of all related Documents to Countrywide or its designee (b) the receipt by Seller of a written termination notice from Countrywide and delivery by Seller of all related Documents or (c) Seller ceases to originate mortgage loans and delivers all related Documents to Countrywide. Within thirty (30) days of (i) receipt of written termination notice or (ii) Seller ceasing to originate mortgage loans, Seller shall deliver all Documents not already delivered to Countrywide or its designee. Seller's obligations to deliver Documents to Countrywide hereunder will survive any termination of the Loan Purchase Agreement or this Addendum.

   (b)   <u>Possession, Records and Insurance</u>. At all times during which Seller is acting as Countrywide's agent and bailee with respect to any Documents not delivered to Countrywide, Seller shall retain possession and custody of the Documents for the sole benefit of Countrywide and as bailee and custodian for Countrywide for all purposes until otherwise notified by Countrywide pursuant to the terms hereof. Seller shall segregate and maintain continuous custody of all Documents required by it in secure and firerated facilities, all in accordance with commercially reasonable standards in the mortgage banking business for such custody. Seller shall implement and maintain administrative and operating procedures pursuant to which it shall keep and maintain all records and information necessary to permit the regular identification of all Documents held or released by it hereunder. Seller shall also make appropriate notation in Seller's books and records reflecting that the Documents are owned by Countrywide unless otherwise notified by Countrywide pursuant to the terms hereof. Seller shall maintain such insurance against loss or damage to the Documents as Countrywide deems appropriate.

   (c)   <u>Delivery Upon Request</u>. Subject to the delivery time period requirements of this Addendum or the Agreements for any Document, within five (5) business days after Countrywide's request therefore, Seller shall provide originals or copies, as requested and at Seller's expense, to Countrywide, or such other person or entity as directed by Countrywide in such request, of any Document in Seller's possession or control. If any such Document is not received by Countrywide or such other person or entity as directed by Countrywide within such time period, Countrywide may, at its sole option and

discretion, require Seller to repurchase the related EDI Loan in accordance with the Loan Purchase Agreement, or, in lieu of requiring such repurchase, charge Seller Countrywide's then-current per loan late fee for each day the Document remains undelivered. Seller shall not deliver or give access to any Documents or permit any copies thereof to any person other than Countrywide without the express written consent or instruction from Countrywide.

(d)     Inspection. At all times during which Seller is acting as Countrywide's agent and bailee with respect to any Document, Seller shall permit Countrywide (and its auditors, if requested by Countrywide) to: (i) inspect any such Document and the records of Seller related to this Addendum and (ii) make copies of the Documents and the records of Seller related to this Addendum, which such inspection or making of copies may occur on Seller's premises during normal business hours after reasonable notice by Countrywide to Seller.

(e)     No Set-Off. Notwithstanding anything contained in this Addendum or the Agreements to the contrary, Seller shall not at any time exercise or seek to enforce any claim, right or remedy, including any statutory or common law rights of set-off, if any, that the Seller may otherwise have against all or any part of the Documents.

6.     **Successors and Assigns.** This Addendum shall bind and inure to the benefit of and be enforceable by Seller and Countrywide and the respective permitted successors and assigns of Seller and the successors and assigns of Countrywide. This Addendum shall not be assigned, pledged or hypothecated by Seller without the prior written consent of Countrywide. Seller shall not delegate or appoint any other person or entity to perform or carry out any of its duties, responsibilities or obligations under this Addendum, unless Seller has obtained the prior written consent of Countrywide. This Addendum may be assigned, pledged or hypothecated or otherwise transferred or encumbered by Countrywide without the consent of Seller.

7.     **Severability Clause.** Any part, provision, representation or warranty of this Addendum which is prohibited or which is held to be void or unenforceable shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof. Any part, provision, representation or warranty of this Addendum which is prohibited or unenforceable or is held to be void or unenforceable in any relevant jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction as to any Loan shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable law, the parties hereto waive any provision of law which prohibits or renders void or unenforceable any provision hereof.

8.     **Governing Law.** This Addendum shall be governed by and interpreted in accordance with the laws of the State of California applicable to agreements entered into and wholly performed within said jurisdiction.

9.     **Loan Purchase Agreement in Full Force and Effect.**     Nothing contained in this Addendum shall be deemed to waive any rights, remedies or privileges of Countrywide under the Agreements. Except as expressly modified herein, the Loan Purchase Agreement and Guide, and all of the terms and conditions thereof, shall remain in full force and effect and apply equally to the terms hereof.

10.     **Counterparts.** This Addendum may be executed in counterparts, each of which when so executed shall be an original, but all of which taken together shall constitute one and the same agreement, and either of the parties hereto may execute this Addendum by signing such counterpart.

(Signature page follows)

EDI Addendum                                                                                          Page 4
**Aegis Mortgage Corporation (124)**
Revised **10/2002**

EXHIBIT 12
95

IN WITNESS WHEREOF, Seller and Countrywide have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

COUNTRYWIDE HOME LOANS, INC.

By: _____

MARIUS NICOLAU
EVP. LOAN ACQUISITIONS

Aegis Mortgage Corporation (124)

By: _____

Name: _STEVEN HULTQUIST_

Title: _SVP_

EDI Addendum                                                                                                Page 5
**Aegis Mortgage Corporation (124)**
Revised **10/2002**

EXHIBIT 12
96

Recording Requested by
**Countrywide Home Loans, Inc.**

AND WHEN RECORDED MAIL TO:

Countrywide Home Loans, Inc.
155 North Lake Avenue, MSN 5-53
Post Office Box 7137
Pasadena, California  91109-7137
Attention:  Lender Approval Department

Space Above for Recorder's Use

## LIMITED POWER OF ATTORNEY

### KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, Countrywide Home Loans, Inc., a New York corporation ("Countrywide") has recently changed its name from Countrywide Funding Corporation;

WHEREAS, <u>Aegis Mortgage*</u>, a corporation organized and existing under the laws of <u>Oklahoma</u>, ("Lender") sells, transfers and assigns mortgage loans to Countrywide pursuant to a written agreement(s) between Countrywide and Lender;

WHEREAS,  Lender may, from time to time, incorrectly endorse the promissory notes and deliver assignments of the underlying security instruments relating to such mortgage loans in Countrywide's prior name (Countrywide Funding Corporation); and

WHEREAS, Lender has agreed to give to Countrywide a power of attorney on the terms and conditions contained herein in order to correct such notes endorsements and security assignments.

NOW, THEREFORE, Lender hereby constitutes and appoints Countrywide, its true and lawful Attorney-in-Fact and agent, with full power and authority hereby conferred in its name, place and stead and for its use and benefit, to correct any endorsement by Lender of any promissory note or any assignment by Lender of any mortgage instrument relating to any loan which Lender has sold, transferred and assigned to Countrywide in order to correct such note endorsement or assignment to properly reflect Countrywide's name change from "Countrywide Funding Corporation" to "Countrywide Home Loans, Inc.".

The undersigned gives to said Attorney-in-Fact and agent full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all that said Attorney-in-Fact and agent shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power by the Attorney-in-Fact and agent that all conditions precedent to such exercise of power have been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

Lender's Name including any DBAs:
<u>Aegis Mortgage Corporation</u>

By: <u>_D. Richard Thompson_</u>
Its: <u>Managing Director</u>
Typed Name: <u>D. Richard Thompson</u>
Typed Title: <u>Managing Director</u>
Date: <u>March 12, 1996</u>

*Corporation

EXHIBIT 12
97

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _Texas_                      )
                                      )      SS.
COUNTY OF _Harris_                    )


On this _12th_ day of _March_ , 199_6_ before me, ___Natalie Garcia___ , Notary Public, personally appeared _D. Richard Thompson_ personally known to me to be the person whose name is signed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

NATALIE M. GARCIA
MY COMMISSION EXPIRES
January 31, 1999

EXHIBIT 12
98

EXHIBIT 12
99

Recording Requested by | |
**Countrywide Home Loans, Inc.** | |
 | |
AND WHEN RECORDED MAIL TO: | |
 | |
Countrywide Home Loans, Inc. | |
400 Countrywide Way | |
Simi Valley, California  93063 | |
Attention: | |        Space Above for Recorder's Use

---

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That, Aegis Funding Corporation, a corporation organized and existing under the laws of Delaware ("Company") does by these presents make, constitute and appoint Countrywide Home Loans, Inc., a New York corporation (formerly known as Countrywide Funding Corporation) ("Countrywide") its true and lawful Attorney-in-Fact, with full power and authority hereby conferred in its name, place and stead and for its use and benefit, to make sign, execute, acknowledge, deliver, file for record and record any such instrument in its behalf and to perform such other act or acts as may be customarily and reasonably necessary and appropriate to effectuate and/or reflect the sale, transfer and assignment of all of Company's right, title and interest in and to certain mortgage loans pursuant to a Loan Purchase Agreement dated September 28, 1995 entered into by and between Company and Countrywide.

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instrument and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power by the Attorney-in-Fact that all conditions precedent to such exercise of power have been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

Aegis Funding Corporation


By: Stuart D. Marvin
Title: EVP and CFO

EXHIBIT 12
100

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _Texas_                )
                                                    )        SS.
COUNTY OF _Harris_          )


On this _31st_ day of _December_, 200_2_ before me, _ROZANNE R. RIBBLE_, Notary Public, personally appeared _Stuart D. Marvin_          personally known to me to be the person whose name is signed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

ROZANNE R. RIBBLE
MY COMMISSION EXPIRES
December 4, 2006

EXHIBIT 12
101

EXHIBIT 12
102

Recording Requested by            |
**Countrywide Home Loans, Inc.**   |
                                  |
AND WHEN RECORDED MAIL TO:        |
                                  |
Countrywide Home Loans, Inc.      |
400 Countrywide Way               |
Simi Valley, California  93063    |
Attention:                        |        Space Above for Recorder's Use

---

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That, Aegis Lending Corporation, a corporation organized and existing under the laws of Delaware ("Company") does by these presents make, constitute and appoint Countrywide Home Loans, Inc., a New York corporation (formerly known as Countrywide Funding Corporation) ("Countrywide") its true and lawful Attorney-in-Fact, with full power and authority hereby conferred in its name, place and stead and for its use and benefit, to make sign, execute, acknowledge, deliver, file for record and record any such instrument in its behalf and to perform such other act or acts as may be customarily and reasonably necessary and appropriate to effectuate and/or reflect the sale, transfer and assignment of all of Company's right, title and interest in and to certain mortgage loans pursuant to a Loan Purchase Agreement dated September 28, 1995 entered into by and between Company and Countrywide.

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instrument and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power by the Attorney-in-Fact that all conditions precedent to such exercise of power have been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

Aegis Lending Corporation


By: Stuart D. Marvin
Title: EVP and CFO

EXHIBIT 12
103

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _Texas_                    )
                                     )      SS.
COUNTY OF _Harris_          )

On this _31st_ day of _December_, 200_2_, before me, _ROZANNE R. RIBBLE_ Notary Public, personally appeared _Stuart D. Marvin_                    personally known to me to be the person whose name is signed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Rozanne R. Ribble_

ROZANNE R. RIBBLE
MY COMMISSION EXPIRES
December 4, 2006

EXHIBIT 12
104

EXHIBIT 12
105

Recording Requested by                    |
**Countrywide Home Loans, Inc.**          |
                                          |
AND WHEN RECORDED MAIL TO:                |
                                          |
Countrywide Home Loans, Inc.              |
400 Countrywide Way                       |
Simi Valley, California  93063            |
Attention:                                |       Space Above for Recorder's Use

---

## LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That, Aegis Wholesale Corporation, a corporation organized and existing under the laws of Delaware ("Company") does by these presents make, constitute and appoint Countrywide Home Loans, Inc., a New York corporation (formerly known as Countrywide Funding Corporation) ("Countrywide") its true and lawful Attorney-in-Fact, with full power and authority hereby conferred in its name, place and stead and for its use and benefit, to make sign, execute, acknowledge, deliver, file for record and record any such instrument in its behalf and to perform such other act or acts as may be customarily and reasonably necessary and appropriate to effectuate and/or reflect the sale, transfer and assignment of all of Company's right, title and interest in and to certain mortgage loans pursuant to a Loan Purchase Agreement dated September 28, 1995 entered into by and between Company and Countrywide.

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instrument and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power by the Attorney-in-Fact that all conditions precedent to such exercise of power have been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

Aegis Wholesale Corporation


By: Stuart D. Marvin
Title: EVP and CFO

EXHIBIT 12
106

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF _Texas_                    )
                                    )        SS.
COUNTY OF _Harris_                  )

On this _31st_ day of _December_, 200_2_ before me, _Rozanne R. Ribble_, Notary Public, personally appeared _Stuart D. Marvin_ personally known to me to be the person whose name is signed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Rozanne R. Ribble_

ROZANNE R. RIBBLE
MY COMMISSION EXPIRES
December 4, 2006

EXHIBIT 12
107

EXHIBIT 12
108

Recording Requested by                    |
**Countrywide Home Loans, Inc.**          |
                                          |
AND WHEN RECORDED MAIL TO:                |
                                          |
Countrywide Home Loans, Inc.              |
400 Countrywide Way                       |
Simi Valley, California  93063            |
Attention:                                |   Space Above for Recorder's Use

---

### LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:

That, Aegis Mortgage Corporation, a corporation organized and existing under the laws of Delaware ("Company") does by these presents make, constitute and appoint Countrywide Home Loans, Inc., a New York corporation (formerly known as Countrywide Funding Corporation) ("Countrywide") its true and lawful Attorney-in-Fact, with full power and authority hereby conferred in its name, place and stead and for its use and benefit, to make sign, execute, acknowledge, deliver, file for record and record any such instrument in its behalf and to perform such other act or acts as may be customarily and reasonably necessary and appropriate to effectuate and/or reflect the sale, transfer and assignment of all of Company's right, title and interest in and to certain mortgage loans pursuant to a Loan Purchase Agreement dated September 28, 1995 entered into by and between Company and Countrywide.

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instrument and to do and perform all and every act and thing requisite, necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all that said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power by the Attorney-in-Fact that all conditions precedent to such exercise of power have been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

Aegis Mortgage Corporation

By: _STUART D MARVIN_
Title: _EVP and CFO_

EXHIBIT 12
109

### CERTIFICATE OF ACKNOWLEDGMENT

STATE OF ~~TEXAS~~          )

                                    )          SS.

COUNTY OF ~~HARRIS~~        )

On this 31st day of ~~Dec~~ , 200 2 before me, *Rozanne R. Ribble* Notary Public, personally appeared ~~Stuart D. Marvin~~ personally known to me to be the person whose name is signed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

*Rozanne R. Ribble*

ROZANNE R. RIBBLE
MY COMMISSION EXPIRES
December 4, 2006

EXHIBIT 12
110

### EARLY PURCHASE PROGRAM
### ADDENDUM TO LOAN PURCHASE AGREEMENT

This addendum (the "Addendum") is entered into by and between Countrywide Home Loans, Inc. ("Countrywide") and AEGIS Mortgage Corp. ("Seller") as of March 20, 2001. This Addendum modifies the loan purchase agreement dated as of September 28, 1995 by and between Countrywide and Seller, as amended by the Amendments to Loan Purchase Agreement. (collectively, the "Loan Purchase Agreement"). All capitalized terms used in this Addendum and not otherwise defined in this Addendum shall have the meanings assigned to the terms in the Loan Purchase Agreement or the Manual.

### RECITALS

A.    Countrywide and Seller have entered into a Loan Purchase Agreement pursuant to which Countrywide may, from time to time, purchase certain mortgage loans from Seller.

B.    Countrywide and Seller now desire to amend the Loan Purchase Agreement to allow for the purchase and sale of certain mortgage loans prior to delivery of certain loan documents. (the "Early Purchase Program").

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and Seller hereby agree as follows:

1.    **Eligible Loans.** Seller may submit to Countrywide for purchase under the Early Purchase Program all loan types approved under the Loan Purchase Agreement, except Loans originated pursuant to a bond program, SubPrime Loans, HELOCs and Loans that have an original principal balance of more than $650,000.

2.    **Request to Purchase.** Seller shall initiate a purchase pursuant to the Early Purchase Program by delivering to Countrywide, electronically, a collateral data record that includes all of the information requested on <u>Exhibit A</u> attached hereto, as same may be amended by Countrywide in its sole discretion (the "Collateral Data Record"), for each Loan it intends to sell to Countrywide. Countrywide agrees to purchase each Loan that Countrywide, in its sole and reasonable discretion, determines meets the requirements of this Addendum, the Loan Purchase Agreement and the Manual, as same may be amended or supplemented from time to time (collectively, the "Program Agreements") on that date agreed by Countrywide and Seller or, if the Loan has not yet been originated, on the closing date of such Loan (the "Purchase Date").

3.    **Payment of Purchase Proceeds.** In consideration for the purchase of each Loan, Countrywide shall pay Seller, on or before the Purchase Date, the applicable Purchase Price less the Holdback Amount (as defined below); provided, however, that notwithstanding anything to the contrary contained in the Program Agreements, the Purchase Price shall be calculated based on the original principal balance of the Loan

1

EXHIBIT 12
111

without application of any payments thereon. Payment of purchase proceeds shall be made by wire transfer of immediately available funds to that account designated by Seller, which account may be Seller's corporate account; provided, however, that with respect to any Loan that has not yet been originated, Countrywide will only wire purchase proceeds to a closing agent approved by Countrywide. Further, if any Loan that has not yet been originated is not closed within two (2) business days following the day Countrywide wires funds to Seller or its agent, Seller shall, or shall cause its agent to, return the funds to Seller, and Seller shall also pay Countrywide (a) interest from the date such funds were wired by Countrywide until the date such funds are returned at an annual rate equal to LIBOR (rounded up to three (3) decimal places, as published on Bloomberg or in the Wall Street Journal for one-month U.S. dollar denominated deposits as offered to prime banks in the London interbank market (LIBOR) on the date the funds were wired by Countrywide) plus seventy-five (75) basis points; plus (b) a breakage fee of twenty-five dollars ($25.00) per Loan. All such amounts due to Countrywide shall be delivered to Countrywide by wire transfer of immediately available funds to the following account:

|              |                              |
|--------------|------------------------------|
| Bank:        | Bank of New York             |
| ABA:         | #021000018                   |
| Name:        | Countrywide Warehouse Lending |
| Account No.: | #8900404337                  |
| Reference:   | AEGIS Mortgage Corp.         |

4.   **Holdback**. With respect to each Loan purchased by Countrywide pursuant to the Early Purchase Program, Countrywide shall be entitled to hold back from the Purchase Price all amounts in excess One Hundred percent (100%) of the original principal balance of the loan (the "Holdback Amount"). Within three (3) business days following the completion of the applicable Review Period (as defined below), Countrywide shall pay to Seller, by wire transfer of immediately funds to an account designated by Seller, the Holdback Amount; provided, however, that upon thirty (30) days after notification to Seller, Countrywide shall have the right to offset any amounts owed by Seller to Countrywide against any amounts owed by Countrywide to Seller.

5.   **Delivery of Documents**. With respect to each Loan purchased by Countrywide pursuant to the Early Purchase Program, Seller shall deliver to Countrywide within seven (7) calendar days following the Purchase Date, the Collateral Documents and Additional Required Documents, as set forth in Exhibit B attached hereto. All deliveries of Collateral Documents and Additional Required Documents must be accompanied by a Collateral Transmittal Form in the form attached hereto as Exhibit C. Within fifteen calendar days following the Purchase Date, Seller shall deliver to Countrywide all remaining documentation needed to complete the loan file (the "Loan File") as described in and required by the Loan Purchase Agreement and Manual. With respect to each Loan, if Seller fails to deliver the Collateral Documents or Additional Required Documents within seven (7) calendar days following the Purchase Date, Seller shall pay Countrywide ten dollars ($10.00) per day until such documents are delivered or expiration of the Review Period, whichever occurs first. In addition, Seller understands and agrees that

2

EXHIBIT 12
112

failure to deliver the Collateral Documents within seven (7) calendar days following the Purchase Date may prevent Countrywide from boarding the related Loan on its servicing system in a timely manner, thereby delaying the transfer of servicing to Countrywide and obligating Seller to service the Loan for some period of time. Further, if, with respect to any Loan, Seller fails to deliver the complete Loan File within fifteen (15) calendar days following the Purchase Date, Seller shall pay Countrywide ten dollars ($10.00) per day until such documents are delivered or expiration of the Review Period, whichever occurs first. Notwithstanding the foregoing, if Seller fails to deliver the Collateral Documents within fifteen (15) calendar days following the Purchase Date or the complete Loan File within twenty-five (25) calendar days following the Purchase Date, Countrywide may require Seller to repurchase such Loan in accordance with Sections 7 and 8 of the Loan Purchase Agreement.

6.    **Review Period**. As a consequence of purchasing Loans pursuant to this Early Purchase Program, Countrywide will not have an opportunity to complete a full review of the mortgage files relating to the purchased Loans prior to the purchase. Accordingly, with respect to each Loan purchased by Countrywide pursuant to the Early Purchase Program, Countrywide shall have thirty (30) calendar days from the date it receives and accepts the Collateral Documents (the "Review Period") in which to review the mortgage file to determine if such Loan complies with the terms and conditions set forth in the Program Agreements; provided, however, that Countrywide shall use its commercially reasonable efforts to complete its review within ten (10) calendar days from the date it receives the Loan File. During the Review Period, if Countrywide, in its sole and reasonable discretion, determines that a Loan purchased from Seller does not comply with the requirements set forth in the Program Agreements, then Countrywide may provide written notice to Seller identifying such non-compliant Loan and request that Seller repurchase such non-compliant Loan within seven (7) business days of the date of such notice. The applicable repurchase price shall be calculated pursuant to Section 8 of the Loan Purchase Agreement.

7.    **Title to Loans**. Countrywide and Seller acknowledge and agree that each transaction pursuant to the Early Purchase Program is a purchase and sale and not a financing transaction. Title to each Loan purchased pursuant to the Early Purchase Program shall pass to Countrywide upon receipt by Seller or its agent of the purchase proceeds as described in <u>Section 2</u> above. If, however, any such transactions is deemed to be a financing transaction, Seller shall be deemed to have pledged to Countrywide as security for the performance by Seller of its obligations under each such transaction and shall be deemed to have granted to Countrywide a first priority security interest in and lien upon, the Loan. Seller shall pay all fees and expenses associated with perfecting such security interest, including without limitation, the cost of filing financing statements under the UCC and recording assignments of mortgage as and when require by Countrywide in its sole discretion.

8.    **Additional Representations and Warranties**. In addition to those representations and warranties set forth in the Loan Purchase Agreement, Seller represents and warrants to

Countrywide as to each Loan offered for sale under the Early Purchase Program that as of the Purchase Date:

(a)  Collateral Data Record. The information contained in the Collateral Data Record is true, correct and complete.

(b)  No Application of Payments. No payments have been applied to the original principal balance of the Loan.

(c)  Compliance With RESPA. Seller has complied with all terms and conditions of the Real Estate Settlement Procedures Act, including, without limitation, timely delivery of the loan transfer notice.

(d)  First Payment Due Date. The date on which the first monthly payment of principal and interest is to become due is ten (10) or more days following the applicable Purchase Date.

(e)  Escrow Disbursements. No escrow disbursements have been made, except for amounts that may have been distributed upon closing of the Loan.

9.  **Conditions Precedent**. As conditions precedent to Countrywide's purchase of any Loan pursuant to the Early Purchase Program, Seller shall have delivered to Countrywide:

(a)  this Addendum signed by Seller;

(b)  a certificate of Seller's corporate secretary, substantially in the form of Exhibit D attached hereto, as to the incumbency and authenticity of the signatures of the officers of Seller authorized to initiate transactions under the Early Purchase Program and the resolutions of the board of directors of Seller, substantially in the form of Exhibit E attached hereto; and

(c)  copies of Seller's fidelity bond and errors and omissions insurance policy or mortgage impairment insurance policy or certificates of insurance for such policies, all in form and content satisfactory to Countrywide, showing compliance by Seller with Section 9 below.

10.  **Fidelity Bonds and Insurance**. Seller shall maintain an insurance policy, in a form and substance satisfactory to Countrywide, covering against loss or damage relating to or resulting from any breach of fidelity by Seller, or any officer, director, employee or agent of Seller, any loss or destruction of documents (whether written or electronic), fraud, theft, misappropriation and errors and omissions. This policy shall name Countrywide as insured and loss payee and provide coverage in an amount equal to one million dollars ($1,000,000) or that required by FNMA in Section 1.01 of the FNMA Guaranteed Mortgage Backed Securities Sellers' and Servicers' Guide, whichever is greater. The deductible on such insurance policy shall not exceed fifty thousand dollars ($50,000). Following approval by Countrywide of a specific insurance policy, Seller shall not

4

EXHIBIT 12
114

amend, cancel, suspend or otherwise change such policy without the prior written consent of Countrywide.

11. **Tangible Net Worth**. Seller shall not permit, at any time, Seller's Tangible Net Worth (inclusive of subordinated debt) to be less than Twenty Four million dollars ($24,000,000). For purposes of the foregoing, "Tangible Net Worth" shall mean the excess of the total assets over total liabilities of Seller on such date, each to be determined in accordance with GAAP consistent with those applied in the preparation of Seller's financial statements less the sum of all other assets of Seller and its consolidated subsidiaries that would be treated as intangibles under GAAP including, without limitation, goodwill, research and development costs, trademarks, trade names, copyrights, patents, rights to refunds and indemnification and unamortized debt discount and expenses; provided further that, to the extent not already excluded, there shall be excluded from Tangible Net Worth, those assets of Seller that, if Seller were a HUD mortgagee, would be deemed by HUD to be non-acceptable in calculating adjusted net worth in accordance with its requirements in effect as of such date, as such requirements appear in the "Audit Guide for Use by Independent Public Accountants in Audits of HUD-Approved Nonsupervised Mortgagees, Loan Correspondents and Coinsuring Mortgagees" or any successor or replacement audit guide published by HUD.

12. **Financial Statements**. In addition to any other financial statements required to be provided by Seller pursuant to the Program Agreements, Seller shall deliver to Countrywide, within forty-five (45) calendar days after the end of each fiscal quarter of each fiscal year of Seller, financial statements of Seller, including statements of income and changes in shareholders' equity for the period from the beginning of such fiscal year to the end of such fiscal quarter and the related balance sheet as at the end of such fiscal quarter, all in reasonable detail and certified by the chief financial officer of Seller, subject, however, to year-end audit adjustments.

13. **Notice**. Seller shall give Countrywide prompt written notice, but in any event within five (5) calendar days of occurrence, in reasonable detail, of:

    (a)    any action, event or condition of any nature that may lead to or result in a material adverse effect on the business, operations, assets or financial condition of Seller or that, without notice or lapse of time or both, would constitute a default under any agreement, instrument or indenture to which Seller is a party or to which Seller, its properties or assets may be subject;

    (b)    the occurrence of any breach or potential breach of any representation and warranty set forth in the Program Agreements;

    (c)    Seller's Tangible Net Worth is less than the minimum required in Section 11 of this Addendum; and

    (k)    any change in the executive or senior management of Seller.

5

EXHIBIT 12
115

14. **Amendments**. Countrywide reserves the right, in its sole and reasonable discretion, to amend the terms and conditions of the Early Purchase Program upon not fewer than thirty (30) calendar days notice to Seller. Further, Countrywide reserves the right to discontinue the Early Purchase Program upon thirty (30) calendar days notice to Seller; provided, however, that in the event of a breach by Seller, Countrywide may terminate the Early Purchase Program immediately.

15. **Full Force and Effect**. Except as expressly modified hereby, the Loan Purchase Agreement and Manual shall remain in full force and effect. Nothing contained in this Addendum shall be deemed to waive any rights, remedies or privileges of Countrywide, including, without limitation, Countrywide' rights under Sections 7 and 9 of the Loan Purchase Agreement.

16. **Counterparts**. This Addendum may be executed in counterparts, each of which when so executed shall be an original, but all of which taken together shall constitute one and the same agreement and either of the parties hereto may execute this Addendum by signing such counterpart.

[Signature Page to Follow]

6

EXHIBIT 12
116

Please acknowledge your agreement with and acceptance of the terms of this Addendum by signing, dating and returning to us the enclosed copy hereof.

Sincerely,

**COUNTRYWIDE HOME LOANS, INC.**

By:_____

Name: _____

Title: _____

**Accepted and agreed.**

**AEGIS Mortgage Corp.**

By: _Steven Hult_

Name: _STEVEN HULTQUIST_

Title: _SVP_

EXHIBIT 12
117

**AMENDMENT NO. 1 TO**
**EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT**

This AMENDMENT NO. 1 TO EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Amendment") is made and entered into as of December 11, 2003 by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation, Aegis Funding Corporation, Aegis Wholesale Corporation, and Aegis Lending Corporation (collectively "Seller"). This Amendment amends that certain Early Purchase Program Addendum to Loan Purchase Agreement by and between Countrywide and Seller dated as of March 20, 2001 (the "EPP Addendum"), which such EPP Addendum supplements that certain Loan Purchase Agreement by and between Countrywide and Seller dated as of September 28, 1995 (including all the Commitments, Amendments, Addenda, Assignments of Trade and Assignments thereto, collectively, the "Loan Purchase Agreement").

R E C I T A L S

Countrywide and Seller have previously entered into the EPP Addendum pursuant to which Seller may sell certain loans to Countrywide prior to delivery of certain mortgage loan documents. Countrywide and Seller hereby agree that the EPP Addendum shall be amended as provided herein.

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and Seller hereby agree as follows:

**New Heading - Outstanding Loan Limit.** Countrywide and Seller agree to add a new heading of Outstanding Loan Limit as Section 6 (a):

"Outstanding Loan Limit. The outstanding loan balance of all Loans that are submitted to Countrywide by Seller for purchase hereunder, and for which the Review Period has not completed, shall not exceed One Hundred Fifty Million Dollars ($150,000,000)."

2. **New Heading – Over/Under Account.** Countrywide and Seller agree to add a new heading of Over/Under Account as Section 4 (a):

"Over/Under Account. For purposes of this Addendum, Seller shall at all times maintain a balance in an account to be established and managed by Countrywide (the "Over/Under Account"). The minimum balance in the Over/Under Account shall, at all times, be at least equal to $2,400,000 (the "Minimum Balance"). To the extent Seller is required to maintain a similar balance under the terms of the Credit Agreement, any such balance maintained by Seller under the terms of the Credit Agreement shall be credited against the amount required to be maintained by Seller hereunder. The Minimum Balance requirements of Seller with respect to the Over/Under Account as required under this Addendum shall not affect in any way the obligations of Seller to maintain a similar account and balance under any other agreement with Countrywide, its parent, subsidiaries and/or affiliates, including, without limitation, the minimum amount of the Over/Under Account required to be  maintained by Seller with Lender. Countrywide shall not be required to segregate and hold funds deposited by or on behalf of Seller in the Over/Under Account separate and apart from Countrywide's own funds or funds deposited by or held for others. Within three (3) business days after the completion of the applicable Review Period, Countrywide shall credit or debit the Over/Under Account, as applicable, in an  amount equal to the difference between the Initial Purchase Price and the Adjusted Purchase Price."

**Payment of Purchase Proceeds.** Countrywide and Seller agrees that Section 3 is deleted in its entirety and replaced with the following:

"In consideration for the purchase of each Loan, Countrywide shall pay Seller, on or before the Purchase Date, the applicable Initial Purchase Price less the Holdback Amount (as defined below); provided however, the notwithstanding anything to the contrary contained in the Program Agreements, the Initial Purchase Price shall be equal to the product of the unpaid principal balance of the EPP Loan multiplied by the lesser of (i) the Initial Purchase Price Percentage (as defined below) multiplied by the lesser of par, the estimated Final Purchase Price Percentage (as defined below) or (ii) ninety eight percent (98%) of the estimated Final Purchase Price of the EPP Loan. It is understood and agreed that the Initial Purchase Price, being a portion of the estimated Final Purchase Price, includes a holdback amount to account for Countrywide's post purchase review and confirmation that the EPP Loan fully complies with Countrywide's requirements and may include as a holdback certain other normal and customary adjustments, fees and/or discounts made by or owed to Countrywide with respect to the EPP Loan under the Program Agreements.

EXHIBIT 12
118

(a)     Initial Purchase Price Percentage.  The Initial Purchase Price Percentage shall be that percentage as set forth on Exhibit A attached hereto or as may be adjusted by Countrywide hereafter in accordance with this Addendum.  In addition to any other remedies afforded Countrywide, Countrywide may reduce the Initial Purchase Price Percentage in the event of Seller's breach of its obligations under the Program Agreements.  Further, Countrywide may, from time to time, reduce the Initial Purchase Price Percentage to account for any changes in Seller's financial condition and/or changes in general market conditions, which, in either case, Countrywide determines are material changes.

(b)     Recalculation of Initial Purchase Price During Review Period.  If, at any time during the Review Period, (A) (i) Countrywide reasonably determines that the loan characteristics of an EPP Loan are different than those originally represented by Seller and Countrywide reduces the Final Purchase Price Percentage for such EPP Loan, (ii) the Final  Purchase Price Percentage for any EPP Loan contained in any Assignment of Trade or Commitment applicable to such EPP Loan is reduced as permitted therein or (iii) any Assignment of Trade or Commitment applicable to any EPP Loan is cancelled as permitted therein and a new Assignment of Trade or Commitment is entered into by Countrywide and Seller with respect to such EPP Loan and the Final  Purchase Price Percentage for such EPP Loan is reduced in the new Assignment of Trade or Commitment, notwithstanding anything contained herein to the contrary, Countrywide shall have the right to recalculate the Initial Purchase Price paid for the related EPP Loan pursuant to subsection (a) above to account for any such reductions.  Further, if an Assignment of Trade or Commitment is cancelled during the Review Period and a new Assignment of Trade or Commitment is not entered into by Countrywide and Seller with respect to any EPP Loan, Countrywide shall have the right to determine the Final Purchase Price Percentage of the EPP Loan and recalculate the Initial Purchase Price pursuant to subsection (a) above based on its determination of the Final Purchase Price Percentage of the EPP Loan.  In determining the Final Purchase Price Percentage of any EPP Loan as permitted in the foregoing sentence, Countrywide shall base its determination of the Final Purchase Price Percentage on the current market value of the EPP Loan and use reasonable industry standards to determine the current market value of the EPP Loan and shall provide Seller with at least one (1) Business Day prior notice of any such determination of the Final Purchase Price Percentage.

If any recalculated Initial Purchase Price for any EPP Loan as permitted herein is less than the original Initial Purchase Price paid by Countrywide to Seller for such EPP Loan, Seller shall, at Countrywide's sole option, immediately refund to Countrywide the difference between the original Initial Purchase Price and the recalculated Initial Purchase Price.  Notwithstanding the foregoing, Countrywide shall be entitled to deduct from any excess balance in the Over/Under Account any amounts required to be refunded by Seller to Countrywide hereunder.

(c)     Final Purchase Price.  Upon Countrywide's review of the EPP Loan and the completion of the related Review Period (as defined below), Countrywide shall determine the Final Purchase Price Percentage and Final Purchase Price of the related EPP Loan.  The Final Purchase Price shall be an SRP Enhancement (as defined below).  The SRP Enhancement shall be equal to the product of (A) the positive difference between (i) the annual note rate of the EPP Loan and (ii) the SRP Enhancement Percent set forth in Exhibit A attached hereto plus (iii) the one month LIBOR rate multiplied by (B) the unpaid principal balance of the EPP Loan (the "SRP Enhancement").  The SRP Enhancement shall be calculated for the period commencing on the Purchase Date and ending on the completion of the Review Period.  The difference between the Initial Purchase Price and the Final Purchase Price, if any, shall be debited or credited, as applicable, by Countrywide to the Over/Under Account.

(d)     Final Purchase Price Percentage.  The Final Purchase Price Percentage shall be the estimated Final Purchase Price Percentage at the time the EPP Loan was sold to Countrywide, less any adjustments made thereto by Countrywide as permitted by the Program Agreements.  In addition to any other remedies afforded Countrywide, Countrywide may require Seller to repurchase such EPP Loan or Seller and Countrywide may negotiate a revised price based on current market conditions in the event of Seller's breach of its obligations under the Program Agreements.  Further, Countrywide may require Seller to repurchase an EPP Loan or Seller and Countrywide may negotiate a revised price based on current market conditions for any changes in Seller's financial condition and/or changes in general market conditions, which, in either case, Countrywide determines are material changes."

EXHIBIT 12
119

5.   **New exhibit – Exhibit A.** Seller and Countywide agree to add the following new Exhibit A to the Addendum:

**"Exhibit A**

**EPP Loans**

| Loan Product or Type | SRP Enhancement Percent | Initial Purchase Price Percentage | Requirements prior to purchase |
|---|---|---|---|
| Conventional Conforming (1st mortgages only) | 1.050 | 99.00 | None |
| Government Mortgage Loans (1st mortgages only) | 1.050 | 99.00 | None |
| Jumbo (1st mortgages with loan amounts to $650,000) | 1.350 | 99.00 | None |
| Super Jumbo (1st mortgages with loan amounts from $650,000 to $1,000,000) | 1.350 | 99.00 | Countrywide Prior Approval |
| Expanded (1st mortgages only) | 1.350 | 99.00 | None |

| Commitment Requirement Definitions | |
|---|---|
| Rate lock | A valid unexpired takeout commitment from an approved takeout investor |
| DU | FNMA desktop underwriting decision: Approve/Eligible |
|  | FHLMC Loan Prospector underwriting decision: Accept/Eligible |
|  | Countrywide CLUES or E-qual underwriting decision: Accept |
|  | MI contract underwriting decision: Approved per Countrywide guidelines with no remaining prior to doc or prior to close conditions |
|  | Takeout investor underwriting decision: Approved per Countrywide guidelines with no remaining prior to doc or prior to close conditions |

6.   **New Section – Term.** Seller and Countrywide agree to add the following new section of the Addendum as Section 17:

"**Term.** This EPP Addendum shall be in effect and continue as long as the Revolving Credit and Security Agreement dated December 14, 2000 between Seller and Countrywide Warehouse Lending ("Credit Agreement") is in effect. Any expiration or termination of the Credit Agreement shall automatically terminate  this EPP Addendum. Following termination of this EPP Addendum, all indebtedness due Countrywide under the EPP Addendum shall be immediately due and payable without notice to Seller and without presentment, demand, protest, notice of protest or dishonor, or other notice of default, and without formally placing Seller in default, all of which are hereby expressly waived by Seller."

EXHIBIT 12
120

7.  **No Other Amendments**. Other than as expressly modified and amended herein, the EPP Addendum and Loan Purchase Agreement shall remain in full force and effect and nothing herein shall affect the rights and remedies of Countrywide as provided under the EPP Addendum and Loan Purchase Agreement.

8.  **Capitalized Terms**. Any capitalized term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the EPP Addendum or Loan Purchase Agreement, as applicable.

9.  **Facsimiles:** Facsimile signatures shall be deemed valid and binding to the same extent as the original.

IN WITNESS WHEREOF, Countrywide and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

COUNTRYWIDE HOME LOANS, INC.

By: _____
     Signature

Name:
Title:

AEGIS MORTGAGE CORPORATION

By: _____
     Signature

Name: Stuart Marvin
Title: EVP & CFO

AEGIS FUNDING CORPORATION

By: _____
     Signature

Name: Stuart Marvin
Title: EVP & Treasurer

AEGIS WHOLESALE CORPORATION

By: _____
     Signature

Name: Stuart Marvin
Title: EVP & Treasurer

AEGIS LENDING CORPORATION

By: _____
     Signature

Name: Stuart Marvin
Title: EVP & Treasurer

EXHIBIT 12
121

### AMENDMENT NO. 2 TO
### EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT

This AMENDMENT NO. 2 TO EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Amendment") is made and entered into as of September 10, 2004 by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation, Aegis Funding Corporation, Aegis Wholesale Corporation, Aegis Lending Corporation and Aegis Correspondent Corporation (collectively "Seller"). This Amendment amends that certain Early Purchase Program Addendum to Loan Purchase Agreement by and between Countrywide and Seller dated as of March 20, 2001 (the "EPP Addendum"), which such EPP Addendum supplements that certain Loan Purchase Agreement by and between Countrywide and Seller dated as of September 28, 1995 (including all the Commitments, Amendments, Addenda, Assignments of Trade and Assignments thereto, collectively, the "Loan Purchase Agreement").

<u>R E C I T A L S</u>

Countrywide and Seller have previously entered into the EPP Addendum pursuant to which Seller may sell certain loans to Countrywide prior to delivery of certain mortgage loan documents. Countrywide and Seller hereby agree that the EPP Addendum shall be amended as provided herein.

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and Seller hereby agree as follows:

1.   **Eligible Loans – Section 1.** Countrywide and Seller agree to delete Section 1 in its entirety and replace it with the following:

"Seller may submit to Countrywide for purchase under the Early Purchase Program all mortgage loan products and/or mortgage loan types as set forth in, and subject to any additional requirements of, <u>Exhibit A</u> (such mortgage loan products and mortgage loan types, "EPP Loans")."

2.   **Section 3(c) – Final Purchase Price.** Countrywide and Seller agree to delete Section 3(c) in its entirety and replace it with the following:

"Upon Countrywide's review of the EPP Loan and the completion of the related Review Period, Countrywide shall determine the Final Purchase Price Percentage and Final Purchase Price of the related EPP Loan. The Final Purchase Price shall include a credit or debit equal to the EPP SRP Enhancement (as defined below). The EPP SRP Enhancement shall be equal to the product of (A) the difference between (i) the annual note rate of the EPP Loan and (ii) the sum of the EPP SRP Enhancement Percent set forth in <u>Exhibit A</u> and the one month LIBOR rate multiplied by (B) the unpaid principal balance of the EPP Loan (the "EPP SRP Enhancement"). The EPP SRP Enhancement shall be calculated for the period commencing on the Purchase Date and ending on the completion of the Review Period. Within three (3) business days after the completion of the applicable Review Period, Countrywide shall credit or debit the Over/Under Account, as applicable, in an amount equal to the difference between the Initial Purchase Price and the Final Purchase Price. "

3.   **New Heading - Fees.** Countrywide and Seller agree to add a new heading of Fees as Section 3(e) as follows:

"**Fees.** Countrywide shall charge, and Seller shall be obligated to pay, in addition to any other fees applicable under the Program Agreements, a File Fee and a Disbursement Fee in connection with each EPP Loan purchased pursuant to this Addendum. The current amounts of these fees, as well as the current amounts of any other fees which are applicable under the Early Purchase

EXHIBIT 12
122

Program, are set forth in Exhibit J. All fees under the Early Purchase Program may be changed by Countrywide from time to time upon notice to Seller and may be deducted by Countrywide from the Over/Under Account."

4.   **Section 4.** Countrywide and Seller agree to delete Section 4 in its entirety and replace it with the following:

"(a)   Over/Under Account; Minimum Balance; Failure to Maintain Minimum Balance. For purposes of this Addendum, Seller shall at all times maintain a balance in an account to be established and managed by Countrywide (the "Over/Under Account"). The minimum balance in the Over/Under Account shall, at all times, be at least equal to the amount set forth in Exhibit J (the "Minimum Balance"). Unless otherwise agreed to by Countrywide, the Minimum Balance requirements of Seller with respect to the Over/Under Account as required under this Addendum shall not affect in any way the obligations of Seller to maintain a similar account and balance under any other agreement with Countrywide, its parent, subsidiaries and/or affiliates. Countrywide shall not be required to segregate and hold funds deposited by or on behalf of Seller in the Over/Under Account separate and apart from Countrywide's own funds or funds deposited by or held for others. In the event Seller fails to maintain the Minimum Balance in the Over/Under Account at any time, in addition to any other rights and remedies of Countrywide, Seller shall be obligated to pay Countrywide interest on any shortfall amount at the rate specified in Exhibit J for as long as the Minimum Balance fails to be maintained.

(b)   Offsets. Notwithstanding the foregoing or anything to the contrary herein or hereafter, Seller expressly acknowledges and agrees that Countrywide is entitled to withdraw or debit from the Over/Under Account, or offset against any amounts owed by Countrywide to Seller, any amounts owed by Seller to Countrywide under this Addendum, the Loan Purchase Agreement or any other agreement(s) as between Seller and Countrywide.

(c)   Withdrawals.

(i)   Seller. If, at any time, the Over/Under Account balance exceeds the Minimum Balance, and the outstanding balance of EPP Loans for which the Review Period has not been completed does not exceed any of the loan limits set forth in Section 7(f), Seller shall be entitled to the return of all amounts in excess of the Minimum Balance. Countrywide shall wire transfer all such requested excess amounts to Seller from the Over/Under Account not later than two (2) business days after receipt of written notice, Countrywide shall use its commercially reasonable effort to wire transfer within one (1) business day, so long as Countrywide receives a written request by no later than 11:00 AM PST (facsimile and e-mail notices are acceptable for this purpose) thereof by Countrywide. Notwithstanding the foregoing, Countrywide shall not be required to return such portion of such excess amounts that Countrywide has determined, in its sole and reasonable discretion, is required to be retained in the Over/Under Account in furtherance of this Addendum and/or the Program Agreements.

(ii)   Countrywide. Countrywide may withdraw funds from the Over/Under Account as contemplated by this Addendum and the Program Agreements including, without limitation, for purposes of making disbursements to approved payees and properly allocating costs and expenses incurred hereunder.

(d)   Return of Over/Under Account Balance Upon Termination. Upon termination of this Addendum, Seller shall be required to maintain the Minimum Balance in the Over/Under Account until (i) the Review Periods for any EPP Loans have been completed and (ii) Countrywide has determined that all outstanding obligations of Seller under this Addendum have been satisfied, including, without limitation, Countrywide's determination

*[handwritten note in left margin: "Does this permit - authorize CA state law its to setoff"]*

EXHIBIT 12
123

that all outstanding repurchase obligations of Seller, if any, related to any EPP Loans have been satisfied. Countrywide will return the Minimum Balance to Seller within three (3) business days after the date upon which both subsection (i) and subsection (ii) have occurred. It is expressly understood that this provision shall not otherwise impair any of the rights and obligations of Seller and Countrywide in connection with debits, credits or withdrawals hereunder. All such rights and obligations shall remain in full force and effect, following termination, until Countrywide returns the entire Over/Under Account balance as set forth herein. "

5.   **Delivery of Documents – Section 5**. Countrywide and Seller agree to change the number of days in which Seller shall deliver the Collateral Document to Countrywide following the Purchase Document from 7 calendar days to 5 business days. In addition, the following shall be added a new subsection:

"Maximum Wet Loan Limit. Notwithstanding anything to the contrary contained herein, if, at any time, the aggregate unpaid principal balance of Wet EPP Loans (as defined below) is equal to or greater than the product of (i) the Wet Sublimit Percentage (as set forth on Exhibit J attached hereto) multiplied by (ii) the Outstanding Loan Limit (as set forth on Exhibit J attached hereto) (such product of (i) and (ii), the "Maximum Wet Loan Limit"), Countrywide shall not be obligated to purchase, nor shall Seller initiate a sale and purchase of, any Wet EPP Loans under this Early Purchase Program and all EPP Loans submitted for purchase by Seller shall be Dry EPP Loans.

The term "Wet EPP Loan" as used herein shall mean any EPP Loan subject to a Review Period (as defined in Section 7 below) for which the related Collateral Documents are not received by Countrywide on or prior to the related Purchase Date. The term "Dry EPP Loan" as used herein shall mean any EPP Loan subject to a Review Period for which the related Collateral Documents are received by Countrywide on or prior to the related Purchase Date."

6.   **Review Period – Section 6**. Countrywide and Seller agree to delete Section 6 in its entirety and replace it with the following:

"(a)   Review Period.  Seller acknowledges that prior to Countrywide's purchase of EPP Loans under the Early Purchase Program, Countrywide will not have an opportunity to complete a full review of the mortgage files, information and documents relating to such EPP Loans. Accordingly, Seller agrees that Countrywide shall have a period of up to 90 calendar days commencing on the date the EPP Loan closes (the "Review Period") in which to review the mortgage file, information and documents related to each EPP Loan to determine whether the related EPP Loan complies with the terms and conditions of the Program Agreements. Countrywide will use commercially reasonable efforts to complete its review of each EPP Loan as soon as practicable. The Review Period will be deemed complete with respect to any EPP Loan upon Countrywide's determination that the EPP Loan complies with all terms and conditions of the Program Agreements notwithstanding that additional time may be left in the applicable Review Period. Notwithstanding the foregoing, the fact that Countrywide has conducted or has failed to conduct any partial or complete examination of the mortgage file, information and/or documents related to an EPP Loan shall not affect Countrywide's right to demand repurchase or to avail itself of any other remedy available hereunder.

(b)   Compliance with Program Agreements; Repurchase.   During the Review Period, Countrywide may, in its sole and reasonable discretion, determine that an EPP Loan purchased from Seller is not eligible for purchase and/or does not otherwise comply with one or more of the requirements of the Program Agreements. In such event, Countrywide may provide written notice to Seller identifying the non-compliant EPP Loan and request that Seller repurchase such non-compliant EPP Loan within three (3) business days after the date of such notice. Repurchase of the EPP Loan, including calculation of the applicable repurchase price, shall be conducted pursuant to the Loan Purchase

EXHIBIT 12
124

Agreement. Seller expressly understands and agrees that this remedy is not exclusive and shall be in addition to all other rights and remedies available to Countrywide under the Program Agreements, including, but not limited to, Seller's Repurchase Obligations under the Loan Purchase Agreement. Nothing in this Section or this Addendum is intended to waive any right Countrywide may have to require Seller to repurchase an EPP Loan, during or after the Review Period, as otherwise set forth in the Program Agreements.

(c)   <u>Servicing Transfer</u>. Unless otherwise agreed to by Countrywide, all EPP Loans will be purchased on a servicing released basis and serviced by Seller during the Review Period in accordance with Countrywide's instructions. Upon transfer of servicing of any EPP Loan, Seller shall comply with Countrywide's instructions regarding the transfer of such servicing. In the event the Review Period is not completed within fifteen (15) calendar days of the due date for the first payment of the EPP Loan, Countrywide may be unable to transfer such EPP Loan onto its servicing system in a timely manner. In such an event, Seller shall be obligated to service the EPP Loan, on behalf of Countrywide, during the period of delay. If Seller is unable to service the EPP Loan, Seller shall provide all required Additional Servicing Documents as set forth in <u>Exhibit E</u> and incur an EPP Loan Servicing Set-up Fee. If Countrywide requires Seller to repurchase an EPP Loan, Seller may retain Countrywide to subservice such EPP Loan for a fee to be mutually agreed upon by Countrywide and Seller.

(d)   <u>Pool Cut-Off Dates and Target Funding Dates</u>. The date on which the Review Period is deemed complete shall be the date used by Seller and Countrywide for the purposes of determining compliance with any time periods or deadlines that may be associated with any Pool Cut-Off Dates or Target Funding Dates arising out of the Program Agreements.

(e)   <u>Inability to Complete Review</u>. In the event Countrywide is unable to complete its review of any EPP Loan during the related Review Period as a result of any mortgage file, information and/or documents not being timely delivered or provided to Countrywide as required hereunder, Countrywide may, at Countrywide's sole option and in lieu of requiring Seller to repurchase the affected EPP Loan, either:

(i)   extend the Review Period for an additional period of time to be determined by Countrywide in its sole discretion, in which case, (A) as a holdback amount to compensate Countrywide for the risk that such EPP Loan may not comply with the Agreements, the Initial Purchase Price for the EPP Loan shall be reduced by Countrywide in accordance with the reduction schedule set forth in <u>Exhibit J</u>, (B) Countrywide shall charge, and Seller shall be obligated to pay, in addition to any other fees applicable under the Loan Purchase Agreement, a Review Period Extension Fee. Such holdback amount and Review Period Extension Fee may be deducted by Countrywide from the Over/Under Account; or

(ii)   mutually agree with Seller upon the Final Purchase Price of the related EPP Loan, in which case, the difference, if any, between the Initial Purchase Price and the agreed upon Final Purchase Price for such loan shall then be debited or credited, as applicable, by Countrywide to the Over/Under Account.

(f)   <u>Outstanding Loan Limits</u>. The maximum outstanding aggregate unpaid loan balance of all EPP Loans that are submitted to Countrywide by Seller for purchase hereunder, and for which the Review Period has not completed, shall not exceed the Outstanding Loan Limit set forth on <u>Exhibit J</u>. Further, with respect to certain loan types, the maximum outstanding aggregate unpaid loan balances of such loans for which the Review Period has not been completed shall not exceed the amounts set forth on <u>Exhibit A</u>.

7.   <u>**Term**</u>. The EPP Addendum shall be in effect through March 9, 2005.

EXHIBIT 12
125

8.     **Section 11 – Tangible Net Worth**. Countrywide and Seller agree to delete Section 11 of the Addendum in its entirety and replace it with the following:

"**Tangible Net Worth and Additional Financial Covenants**.  Seller shall not permit, at any time, Seller's Tangible Net Worth to be less than the amount set forth in Exhibit J.  In addition, Seller shall comply with any other financial covenants that may be set forth in Exhibit J.  For purposes of the foregoing, "Tangible Net Worth" shall mean the excess of the total assets over total liabilities of Seller on such date, each to be determined in accordance with GAAP consistent with those applied in the preparation of Seller's financial statements.  Further, for purposes of calculating Seller's Tangible Net Worth hereunder, total assets shall not include any assets of Seller and/or its consolidated subsidiaries that would be treated as intangibles under GAAP including, without limitation, good will, research and development costs, trademarks, trade names, copyrights, patents, rights to refunds and indemnification and unamortized debt discount and expenses (excluding unamortized debt discount and expenses related to security issuances).  Further, to the extent not already excluded, there shall be excluded from Tangible Net Worth, those assets of Seller that, if Seller were an approved HUD lender, would be deemed by HUD to be non-acceptable in calculating adjusted net worth in accordance with its requirements in effect as of such date, as such requirements appear in the "Audit Guide for Use by Independent Public Accountants in Audits of HUD-Approved Nonsupervised Mortgagees, Loan Correspondents and Coinsuring Mortgagees" or any successor or replacement audit guide published by HUD."

9.     **Replacement of Exhibit A**.  Countrywide and Seller agree that Exhibit A to the Addendum shall be deleted and replaced in its entirety with the Exhibit A attached hereto.

10.    **New Exhibit – Exhibit J**.  Countrywide and Seller agree to add to the Addendum as a new exhibit the Exhibit J attached hereto.

11.    **New Section 17– Default of EPP Addendum**.  Countrywide and Seller agree that the following new section shall be added to the EPP Addendum:

"Following the occurrence and continuation of any period when the Seller's ratio of Total Liabilities to Seller's Tangible Net Worth exceeds 20:1, the following shall apply: If Countrywide determines that a material and adverse change has occurred and is continuing with respect to Seller's financial condition, such an event will be considered a default of this Addendum. Without limiting the generality of the foregoing, it is understood and agreed that if Countrywide determines that the value of any "Class X," "Class P" certificates and/or any related mortgage servicing rights of any subordinate certificates retained by Seller have materially and adversely changed in value, and such change results in a material and adverse change in the financial condition of the Seller, such an event will be a default under this Addendum, notwithstanding that Seller is otherwise in compliance with its obligations and covenants hereunder.  Any determinations made by Countrywide under this Section will be made in its sole and reasonable discretion."

For an Event of Default resulting only from this section, Borrower shall have a period of Ten (10) days during which to cure such default.

12.    **No Other Amendments**. Other than as expressly modified and amended herein, the EPP Addendum and Loan Purchase Agreement shall remain in full force and effect and nothing herein shall affect the rights and remedies of Countrywide as provided under the EPP Addendum and Loan Purchase Agreement.

13.    **Capitalized Terms**.  Any capitalized term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the EPP Addendum or Loan Purchase Agreement, as applicable.

14.    **Facsimiles**.  Facsimile signatures shall be deemed valid and binding to the same extent as the original.

EXHIBIT 12
126

(signature page follows)

EXHIBIT 12
127

IN WITNESS WHEREOF, Countrywide and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

COUNTRYWIDE HOME LOANS, INC.

By: _____
Signature
Name: RICHIE WALLA
Title: AVP

Aegis Mortgage Corporation

By: _____
Signature
Name: PATRICK MONAHAN
Title: SVP

Aegis Funding Corporation

By: _____
Signature
Name: PATRICK MONAHAN
Title: SVP

Aegis Wholesale Corporation

By: _____
Signature
Name: PATRICK MONAHAN
Title: SVP

Aegis Lending Corporation

By: _____
Signature
Name: PATRICK MONAHAN
Title: SVP

Aegis Correspondent Corporation

By: _____
Signature
Name: PATRICK MONAHAN
Title: SVP

EXHIBIT 12
128

### Exhibit A - EPP Loans

| Loan Product or Type | SRP Enhancement Percent | Initial Purchase Price Percentage | Requirements prior to purchase |
|---|---|---|---|
| Conventional Conforming (1st mortgages only) | 1.100 | 99.00 | None |
| Government Mortgage Loans (1st mortgages only) | 1.100 | 99.00 | None |
| Jumbo (1st mortgages with loan amounts to $650,000) | 1.350 | 99.00 | None |
| Super Jumbo (1st mortgages with loan amounts from $650,000 to $1,000,000) | 1.350 | 99.00 | Countrywide Prior Approval |
| Expanded (1st mortgages only) | 1.350 | 99.00 | None |
| HELOC (1st and 2nd Mortgages) | 1.10 | 99.00 | None |

| Commitment Requirement Definitions | |
|---|---|
| Rate lock | A valid unexpired takeout commitment from an approved takeout investor |
| DU | FNMA desktop underwriting decision: Approve/Eligible |
| LP | FHLMC Loan Prospector underwriting decision: Accept/Eligible |
| CLUES | Countrywide CLUES or E-qual underwriting decision: Accept |
| 3rd Party | MI contract underwriting decision: Approved per Countrywide guidelines with no remaining prior to doc or prior to close conditions |
| Countrywide prior approval | Takeout investor underwriting decision: Approved per Countrywide guidelines with no remaining prior to doc or prior to close conditions |

EXHIBIT 12
129

### Exhibit J

| | |
|---|---|
| EPP Loan Servicing Set-up Fee | $0 per loan for HELOC's and $150 per loan if Seller defaults on Subservicing obligations |
| File Fee | $17.50 per loan |
| Review Period Extension Fee | Refer to Section 5 – Holdback Schedule. |
| Minimum Balance for Over/Under Account: | $0. (Seller to be entitled to interest on a monthly basis on balances up to Five Hundred Thousand ($500,000) Dollars at an annual rate of LIBOR plus 1.35% on the positive monthly average Over/Under Balance. Over/Under account balance in excess of $500,000 shall be due interest on a monthly basis payable at LIBOR minus 25 bps.) |
| Interest on Shortfall Amount: | One Month LIBOR Plus 1.10% |
| Outstanding Loan Limit: | $100,000,000 |
| Wet Sublimit Percentage: | 30%, 50% for the first and last five business days of each month. |
| Seller's Tangible Net Worth and additional financial covenants: | Seller's Tangible Net Worth: $70,000,000 |

Maximum ratio of Total Liabilities (including outstanding balances on and off balance sheet financing, repurchase facilities, repo facilities, but excluding debt related to securitizations) to Seller's Tangible Net Worth: 28:1

Minimum Liquidity (Seller shall maintain on the last day of each Month Cash and Cash Equivalents as defined below): $15,000,000

Any (a) securities with maturities of ninety (90) days or less from the date of acquisition issued or fully guaranteed or insured by the United States Government or any agency thereof, (b) certificates of deposit and Eurodollar time deposits with maturities of ninety (90) days or less from the date of acquisition and overnight bank deposits of any commercial bank having capital, surplus and retained earnings in excess of $70,000,000, (c) repurchase obligations of any commercial bank satisfying the requirements of clause (b) of this definition, having a term of more than seven days with respect to securities issued or fully guaranteed or insured by the United States Government, (d) commercial paper of a domestic issuer rated at least A-1 or the equivalent thereof by S&P or p-1 or the equivalent thereof by Moody's and in either case

EXHIBIT 12
130

maturing within ninety (90) days after the day of acquisition, (e) securities with maturities of ninety (90) days or less from the date of acquisition issued or fully guaranteed by any state, commonwealth or territory of the United States, by any political subdivision or taxing authority of any such state, commonwealth or territory or by any foreign government, the securities of which state, commonwealth, territory, political subdivision, taxing authority or foreign government (as the case may be) are rated at least A by S&P or A by Moody's, (f) securities with maturities of ninety (90) days or less from the date of acquisition backed by standby letters of credit issued by any commercial bank satisfying the requirements of clause (b) of this definition, or (g) shares of money market, mutual or similar funds which invest exclusively in assets satisfying the requirements of clauses (a) through (f) of this definition, or (h) plus unused amounts that are available to Seller for borrowing under all committed facilities, calculated as the product of unencumbered or unleveraged Mortgage Loans times the applicable advance rate under the committed facility

Holdback Schedules:

| Days over Review Period | Holdback as a percentage of Initial Purchase Price | Review Period Extension Fee |
|---|---|---|
| 1 to 30 days | 10% | 1.00% over the initial SRP Enhancement Percent |
| 31 to 60 days | 20% | 1.00% over the initial SRP Enhancement Percent |
| 61 to 90 days | 30% | 1.00% over the initial SRP Enhancement Percent |
| 91 to 150 days | 40% | 1.00% over the initial SRP Enhancement Percent |

*No more than 7% EPP Loans at any given time shall be subject to a Review Period Extension.

EXHIBIT 12
131

**AMENDMENT NO. 3 TO**
**EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT**

This AMENDMENT NO. 3 TO EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Amendment") is made and entered into as of December 9, 2004 by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation, Aegis Funding Corporation, Aegis Wholesale Corporation, Aegis Lending Corporation and Aegis Correspondent Corporation (collectively "Seller"). This Amendment amends that certain Early Purchase Program Addendum to Loan Purchase Agreement by and between Countrywide and Seller dated as of March 20, 2001 (the "EPP Addendum"), which such EPP Addendum supplements that certain Loan Purchase Agreement by and between Countrywide and Seller dated as of September 28, 1995 (including all the Commitments, Amendments, Addenda, Assignments of Trade and Assignments thereto, collectively, the "Loan Purchase Agreement").

R E C I T A L S

Countrywide and Seller have previously entered into the EPP Addendum pursuant to which Seller may sell certain loans to Countrywide prior to delivery of certain mortgage loan documents. Countrywide and Seller hereby agree that the EPP Addendum shall be amended as provided herein.

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and Seller hereby agree as follows:

1.   **Exhibit A – EPP Loans**. Countrywide and Seller agree that Exhibit A of the EPP Addendum shall be amended to add new The PayOption ARM's Loan Product as follows:

| Loan Product or Type | Maximum Percentage of Outstanding Loan Limit | SRP Enhancement Percent | Initial Purchase Price Percentage | Requirements prior to purchase |
|---|---|---|---|---|
| Specialty ARM's (Non-Conforming PayOption ARM's, loan amounts up to $3,000,000) | 100% | N/A | 99 | None |

2.   **Exhibit J – Term Sheet for Early Purchase Program**. Countrywide and Seller agree that Exhibit J of the EPP Addendum Shall be amended as follows:

"Fee:                                                        Amount:

EPP Loan Servicing Set-up Fee                $0 per loan for PayOption ARM's and HELOC's, $150 per loan if Seller defaults on Subservicing obligations

3.   **No Other Amendments**. Other than as expressly modified and amended herein, the EPP Addendum and Loan Purchase Agreement shall remain in full force and effect and nothing herein shall affect the rights and remedies of Countrywide as provided under the EPP Addendum and Loan Purchase Agreement.

4.   **Capitalized Terms**. Any capitalized term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the EPP Addendum or Loan Purchase Agreement, as applicable.

5.   **Facsimiles**. Facsimile signatures shall be deemed valid and binding to the same extent as the original.

[Signature Page Follows]

EXHIBIT 12
132

IN WITNESS WHEREOF, Lender and Borrower have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

**Countrywide Warehouse Lending**

By: _____

    Name:
    Title:
    Date:

**Aegis Mortgage Corporation**

By: _____

    Name:  **PATRICK MONAHAN**
    Title:   **SVP & TREASURER**
    Date:

**Aegis Funding Corporation**

By: _____

    Name:  **PATRICK MONAHAN**
    Title:   **SVP & TREASURER**
    Date:

**Aegis Wholesale Corporation**

By: _____

    Name:  **PATRICK MONAHAN**
    Title:   **SVP & TREASURER**
    Date:

**Aegis Lending Corporation**

By: _____

    Name:
    Title:
    Date:  **PATRICK MONAHAN**
          **SVP & TREASURER**

EXHIBIT 12
133

### AMENDMENT NO. 4 TO
### EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT

This AMENDMENT NO. 4 TO EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Amendment") is made and entered into as of March 29, 2005 by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation, Aegis Funding Corporation, Aegis Wholesale Corporation, Aegis Lending Corporation and Aegis Correspondent Corporation (collectively "Seller"). This Amendment amends that certain Early Purchase Program Addendum to Loan Purchase Agreement by and between Countrywide and Seller dated as of March 20, 2001 (the "EPP Addendum"), which such EPP Addendum supplements that certain Loan Purchase Agreement by and between Countrywide and Seller dated as of September 28, 1995 (including all the Commitments, Amendments, Addenda, Assignments of Trade and Assignments thereto, collectively, the "Loan Purchase Agreement").

### R E C I T A L S

Countrywide and Seller have previously entered into the EPP Addendum pursuant to which Seller may sell certain loans to Countrywide prior to delivery of certain mortgage loan documents. Countrywide and Seller hereby agree that the EPP Addendum shall be amended as provided herein.

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and Seller hereby agree as follows:

1.  **Outstanding Loan Limit.** Countrywide and Seller agree delete in its entirety the Outstanding Loan Limit and replace it with the following:

    "Outstanding Loan Limit.  One Hundred Fifty Million Dollars ($150,000,000)."

2.  **Over/Under Account.** Countrywide and Seller agree to delete in its entirety the Over/Under Account Minimum Balance and replace it with the following:

    "Over/Under Account. Four Hundred Eighty Thousand Dollars ($480,000). To the extent Seller is required to maintain a similar balance under the terms of the Credit Agreement, any such balance maintained by Seller under the terms of the Credit Agreement shall be credited against the amount required to be maintained by Seller hereunder. The Minimum Balance requirements of Seller with respect to the Over/Under Account as required under this Addendum shall not affect in any way the obligations of Seller to maintain a similar account and balance under any other agreement with Countrywide, its parent, subsidiaries and/or affiliates, including, without limitation, the minimum amount of the Over/Under Account required to be maintained by Seller with Lender. Countrywide shall not be required to segregate and hold funds deposited by or on behalf of Seller in the Over/Under Account separate and apart from Countrywide's own funds or funds deposited by or held for others. Within three (3) business days after the completion of the applicable Review Period, Countrywide shall credit or debit the Over/Under Account, as applicable, in an amount equal to the difference between the Initial Purchase Price and the Adjusted Purchase Price."

3.  **No Other Amendments.** Other than as expressly modified and amended herein, the EPP Addendum and Loan Purchase Agreement shall remain in full force and effect and nothing herein shall affect the rights and remedies of Countrywide as provided under the EPP Addendum and Loan Purchase Agreement.

4.  **Capitalized Terms.** Any capitalized term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the EPP Addendum or Loan Purchase Agreement, as applicable.

5.  **Facsimiles:** Facsimile signatures shall be deemed valid and binding to the same extent as the original.

IN WITNESS WHEREOF, Countrywide and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

COUNTRYWIDE HOME LOANS, INC.

By: _____
Name:  _RICHIE WALIA_
Title:  _AVP_

AEGIS MORTGAGE CORPORATION

By: _____
Name: Patrick Monahan
Title: Senior Vice President

EXHIBIT 12
134

AEGIS FUNDING CORPORATION

By: _____
Name: Patrick Monahan
Title: Senior Vice President

AEGIS WHOLESALE CORPORATION

By: _____
Name: Patrick Monahan
Title: Senior Vice President

AEGIS LENDING CORPORATION

By: _____
Name: Patrick Monahan
Title: Senior Vice President

AEGIS CORRESPONDENT CORPORATION

By: _____
Name: Patrick Monahan
Title: Senior Vice President

EXHIBIT 12
135

## AMENDMENT NO. 5 TO
## EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT

This AMENDMENT NO. 5 TO EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Amendment") is made and entered into as of July 7, 2005 by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation, Aegis Funding Corporation, Aegis Wholesale Corporation, Aegis Lending Corporation and Aegis Correspondent Corporation (collectively "Seller"). This Amendment amends that certain Early Purchase Program Addendum to Loan Purchase Agreement by and between Countrywide and Seller dated as of March 20, 2001 (the "EPP Addendum"), which such EPP Addendum supplements that certain Loan Purchase Agreement by and between Countrywide and Seller dated as of September 28, 1995 (including all the Commitments, Amendments, Addenda, Assignments of Trade and Assignments thereto, collectively, the "Loan Purchase Agreement").

### R E C I T A L S

Countrywide and Seller have previously entered into the EPP Addendum pursuant to which Seller may sell certain loans to Countrywide prior to delivery of certain mortgage loan documents.  Countrywide and Seller hereby agree that the EPP Addendum shall be amended as provided herein.

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and Seller hereby agree as follows:

1.      **Exhibit J - Outstanding Loan Limit.** Countrywide and Seller agree that the Outstanding Loan Limit set forth within Exhibit J of the EPP addendum shall be amended as follows:

"Outstanding Loan Limit:                     Three Hundred Twenty Five Million Dollars ($325,000,000)."

2.      **Exhibit J – Over/Under Account; Minimum Balance.** Countrywide and Seller agree that the "Minimum Balance" of the Over/Under Account set forth within in Exhibit J required to be maintained by Seller shall be amended to $925,000, to the extent Seller is required to maintain a similar balance under the terms of the Credit Agreement, any such balance maintained by Seller under the terms of the Credit Agreement shall be credited against the amount required to be maintained by Seller hereunder."

3.      **Exhibit A – EPP Loans; Loan Product Type.** Countrywide and Seller agree that the Loan Product or Type definition for Jumbo Mortgage Loans and Super Jumbo Mortgage Loans in Exhibit A of the EPP Addendum shall be amended as follows:

"Jumbo Mortgage Loans (1st Mortgages with loan amount to $1,000,000)"

"Super Jumbo Mortgage Loans (1st mortgages with loan amounts from $1,000,001 to $1,500,000). Loans greater than $1,500,001 may be funded on an exception basis."

4.      **No Other Amendments.** Other than as expressly modified and amended herein, the EPP Addendum and Loan Purchase Agreement shall remain in full force and effect and nothing herein shall affect the rights and remedies of Countrywide as provided under the EPP Addendum and Loan Purchase Agreement.

5.      **Capitalized Terms.** Any capitalized term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the EPP Addendum or Loan Purchase Agreement, as applicable.

6.      **Facsimiles.** Facsimile signatures shall be deemed valid and binding to the same extent as the original.

[Signature page to follow]

EXHIBIT 12
136

IN WITNESS WHEREOF, Countrywide and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

**COUNTRYWIDE HOME LOANS, INC.**

By: _____
      Signature

Name:   Richie Walia
Title:   ~~1st Vice President~~

**AEGIS MORTGAGE CORPORATION**

By: _____
      Signature

Name: Patrick Monahan
Title: Senior Vice President

**AEGIS LENDING CORPORATION**

By: _____
      Signature

Name: Patrick Monahan
Title: Senior Vice President

**AEGIS FUNDING CORPORATION**

By: _____
      Signature

Name: Patrick Monahan
Title: Senior Vice President

**AEGIS CORRESPONDENT CORPORATION**

By: _____
      Signature

Name: Patrick Monahan
Title: Senior Vice President

**AEGIS WHOLESALE CORPORATION**

By: _____
      Signature

Name: Patrick Monahan
Senior Vice President

EXHIBIT 12
137

## AMENDMENT NO. 6 TO
### EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT

This AMENDMENT NO. 6 TO EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Amendment") is made and entered into as of January 9, 2007 by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation, Aegis Funding Corporation, Aegis Wholesale Corporation, Aegis Lending Corporation and Aegis Correspondent Corporation (collectively, "Seller"). This Amendment amends that certain Early Purchase Program Addendum to Loan Purchase Agreement by and between Countrywide and Seller dated as of March 20, 2001 (the "EPP Addendum"), which such EPP Addendum supplements that certain Loan Purchase Agreement by and between Countrywide and Seller dated as of September 28, 1995 (including all the Commitments, Amendments, Addenda, Assignments of Trade and Assignments thereto, collectively, the "Loan Purchase Agreement").

### R E C I T A L S

Countrywide and Seller have previously entered into the EPP Addendum pursuant to which Seller may sell certain loans to Countrywide prior to delivery of certain mortgage loan documents.  Countrywide and Seller hereby agree that the EPP Addendum shall be amended as provided herein.

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and Seller hereby agree as follows:

1.  **Exhibit A – EPP Loans**.  Countrywide and Seller agree that Exhibit A of the EPP Addendum shall be amended for the addition of Closed-End Second Lien Mortgage Loans (A credit grade only) as follows:

| Loan Product or Type | Maximum Percentage of Outstanding Loan Limit | SRP Enhancement Percent | Initial Purchase Price Percentage | Requirements prior to purchase |
|---|---|---|---|---|
| Closed-End Second Lien Mortgage Loans (A credit grade only) | 30% | 1.10% | 99. 00 | None |

2.  **No Other Amendments**.  Other than as expressly modified and amended herein, the EPP Addendum and Loan Purchase Agreement shall remain in full force and effect and nothing herein shall affect the rights and remedies of Countrywide as provided under the EPP Addendum and Loan Purchase Agreement.

3.  **Capitalized Terms**.  Any capitalized term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the EPP Addendum or Loan Purchase Agreement, as applicable.

4.  **Facsimiles**.  Facsimile signatures shall be deemed valid and binding to the same extent as the original.

(Signature Page to Follow)

EXHIBIT 12
138

IN WITNESS WHEREOF, Countrywide and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

COUNTRYWIDE HOME LOANS, INC.

By: _____
      Signature

Name: **RIJU WALIA**
      **ASSISTANT VICE PRESIDENT**
Title: **COUNTRYWIDE HOME LOANS, INC.**

**AEGIS MORTGAGE CORPORATION**

By: _____
      Signature

Name: Eugene S Putnam, Jr.
Title: Executive Vice President and CFO

**AEGIS LENDING CORPORATION**

By: _____
      Signature

Name: Eugene S Putnam, Jr.
Title: Executive Vice President and CFO

**AEGIS FUNDING CORPORATION**

By: _____
      Signature

Name: Eugene S Putnam, Jr.
Title: Executive Vice President and CFO

**AEGIS CORRESPONDENT CORPORATION**

By: _____
      Signature

Name: Eugene S Putnam, Jr.
Title: Executive Vice President and CFO

**AEGIS WHOLESALE CORPORATION**

By: _____
      Signature

Name: Eugene S Putnam, Jr.
Title: Executive Vice President and CFO

EXHIBIT 12

**AMENDMENT NO. 7 TO**
**EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT**

This AMENDMENT NO. 7 TO EARLY PURCHASE PROGRAM ADDENDUM TO LOAN PURCHASE AGREEMENT (the "Amendment") is made and entered into as of January 12, 2007 by and between Countrywide Home Loans, Inc. ("Countrywide") and Aegis Mortgage Corporation, Aegis Funding Corporation, Aegis Wholesale Corporation, Aegis Lending Corporation and Aegis Correspondent Corporation (collectively, "Seller"). This Amendment amends that certain Early Purchase Program Addendum to Loan Purchase Agreement by and between Countrywide and Seller dated as of March 20, 2001 (the "EPP Addendum"), which such EPP Addendum supplements that certain Loan Purchase Agreement by and between Countrywide and Seller dated as of September 28, 1995 (including all the Commitments, Amendments, Addenda, Assignments of Trade and Assignments thereto, collectively, the "Loan Purchase Agreement").

**R E C I T A L S**

Countrywide and Seller have previously entered into the EPP Addendum pursuant to which Seller may sell certain loans to Countrywide prior to delivery of certain mortgage loan documents.  Countrywide and Seller hereby agree that the EPP Addendum shall be amended as provided herein.

In consideration of the mutual promises contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Countrywide and Seller hereby agree as follows:

1.    **Exhibit A – EPP Loans**.  Countrywide and Seller agree that Exhibit A of the EPP Addendum shall be amended for the addition of No-intro Option ARM's (maximum loan amounts to $3,000,000) as follows:

| Loan Product or Type | Maximum Percentage of Outstanding Loan Limit | SRP Enhancement Percent | Initial Purchase Price Percentage | Requirements prior to purchase |
|---|---|---|---|---|
| No-intro Option ARM's (maximum loan amounts to $3,000,000)  (Countrywide and Seller agree to identify these loans in the CDR as 'CHL Specialty ARM's Plus' Mortgage Loans | 40% | 1.35 | 99.00 | None for loans less than $1,000,000; all loans greater than $1,000,000 shall require Rate lock and Countrywide prior approval |

2.    **No Other Amendments**.  Other than as expressly modified and amended herein, the EPP Addendum and Loan Purchase Agreement shall remain in full force and effect and nothing herein shall affect the rights and remedies of Countrywide as provided under the EPP Addendum and Loan Purchase Agreement.

3.    **Capitalized Terms**.  Any capitalized term used herein and not otherwise defined herein shall have the meaning ascribed to such term in the EPP Addendum or Loan Purchase Agreement, as applicable.

4.    **Facsimiles**.  Facsimile signatures shall be deemed valid and binding to the same extent as the original.

(Signature Page to Follow)

EXHIBIT 12
140

IN WITNESS WHEREOF, Countrywide and Seller have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first written above.

COUNTRYWIDE HOME LOANS, INC.

By: _____
    Signature
         RIJU WALIA
Name:  ASSISTANT VICE PRESIDENT
    COUNTRYWIDE HOME LOANS, INC.
Title:

**AEGIS MORTGAGE CORPORATION**

By: _____
    Signature

Name:  Eugene S Putnam, Jr.
Title:  Executive Vice President and CFO

**AEGIS LENDING CORPORATION**

By: _____
    Signature

Name:  Eugene S Putnam, Jr.
Title:  Executive Vice President and CFO

**AEGIS FUNDING CORPORATION**

By: _____
    Signature

Name:  Eugene S Putnam, Jr.
Title:  Executive Vice President and CFO

**AEGIS CORRESPONDENT CORPORATION**

By: _____
    Signature

Name:  Eugene S Putnam, Jr.
Title:  Executive Vice President and CFO

**AEGIS WHOLESALE CORPORATION**

By: _____
    Signature

Name:  Eugene S Putnam, Jr.
Title:  Executive Vice President and CFO

EXHIBIT 12
141

876f

1000

# FedEx Express. US Airbill

FedEx Tracking Number: **8630 5094 3226**

**Recipient's Copy**

### 1 From  This portion can be removed for Recipient's records.

Date **01/31/2008**

FedEx Tracking Number: **863050943226**

Sender's Name: **KATHERINE M. WINDLER (PCD)**   Phone: 310 576-2100

Company: **BRYAN CAVE LLP**

Address: **120 BROADWAY STE 300**

City: **SANTA MONICA**   State: **CA**   ZIP: **90401-2382**

### 2 Your Internal Billing Reference  **50E:0213320**

### 3 To

Recipient's Name: **EPIQ BANKRUPTCY SOLUTIONS, LLC**   Phone

Company: **ATTN: AEGIS MORTGAGE CORPORATION CLAIMS PROCESSING CENTER**

Recipient's Address: **757 THIRD AVENUE, 3RD FLOOR**

We cannot deliver to P.O. boxes or P.O. ZIP codes.

Address
To request a package be held at a specific FedEx location, print FedEx address here.

City: **NEW YORK**   State: **NY**   ZIP: **10017**

8630 5094 3226

0368968239

### 4a Express Package Service  *Packages up to 150 lbs.*

- ☐ FedEx Priority Overnight
- ☐ FedEx Standard Overnight
- ☒☒ FedEx First Overnight

### 4b Express Freight Service  *Packages over 150 lbs.*

- ☐ FedEx 1Day Freight
- ☐ FedEx 2Day Freight
- ☐ FedEx 3Day Freight

### 5 Packaging

- ☐ FedEx Envelope*
- ☐ FedEx Pak*
- ☒ FedEx Box (circled)
- ☐ FedEx Tube
- ☐ Other

### 6 Special Handling

- ☐ SATURDAY Delivery
- ☐ HOLD Weekday at FedEx Location
- ☐ HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?
One box must be checked.

- ☐ No
- ☐ Yes
- ☐ Yes
- ☐ Dry Ice
- ☐ Cargo Aircraft Only

### 7 Payment  Bill to:

- ☒☒ Sender
- ☐ Recipient
- ☐ Third Party
- ☐ Credit Card
- ☐ Cash/Check

Total Packages: **1**

Total Weight

### 8 Residential Delivery Signature Options

- ☐ No Signature Required
- ☐ Direct Signature
- ☐ Indirect Signature

**519**

Rev. Date 10/06•Part #158279•D1504-2006 FedEx•PRINTED IN U.S.A.•SRF

EXHIBIT 12
142